**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BAGGAGE AIRLINE GUEST SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROADIE, INC., <br><br> Defendant. | C.A. No. 18-707-RGA |

**DEFENDANT ROADIE, INC.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO DECLARE THIS CASE EXCEPTIONAL
AND AWARD ATTORNEYS' FEES UNDER 35 U.S.C. § 285**

SMITH, GAMBRELL & RUSSELL LLP

Edward A. Pennington
John P. Moy
John P. Pennington
Darlene K. Tzou
1055 Thomas Jefferson Street, NW
Suite 400
Washington, DC 20007
(202) 263-4300
epennington@sgrlaw.com
jmoy@sgrlaw.com
jpennington@sgrlaw.com
dtzou@sgrlaw.com

Dated: January 22, 2019

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Pilar G. Kraman (No. 5199)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com

*Attorneys for Defendant
ROADIE, INC.*

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................1

II.     NATURE AND STAGE OF PROCEEDINGS ...................................................................1

III.    SUMMARY OF ARGUMENT ..........................................................................................3

IV.     STATEMENT OF FACTS AND ARGUMENT ................................................................4

        A.      Legal Standard ......................................................................................................4

        B.      Baggage Advanced an Untenable Position Regarding Section 101 ........................5

        C.      Baggage's Baseless Infringement Contentions and Litigation Misconduct
                Compel an Exceptional Case Finding .....................................................................9

        D.      Roadie Should Be Awarded Its Attorneys' Fees and Non-Taxable Costs ............18

V.      CONCLUSION ...............................................................................................................19

## **TABLE OF AUTHORITIES**

**Cases**

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) .................................................................................. 7

*Cent. Soya Co. v. Geo. A. Hormel & Co.*,
    723 F.2d 1573 (Fed. Cir. 1983) ................................................................................ 18

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*,
    No. 11-1175-RGA,
    2014 WL 5814062 (D. Del. Sept. 12, 2014) ............................................................ 19

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .................................................................................................. 18

*Highmark Inc. v. Allcare Health Management Sys., Inc.*,
    134 S.Ct. 1744 (2014) ................................................................................................ 5

*Inland Steel Co. v. LTV Steel Co.*,
    364 F.3d 1318 (Fed. Cir. 2004) .................................................................................. 5

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) .................................................................................. 7

*Kilopass Tech., Inc. v. Sidense Corp.*,
    738 F.3d 1302 (Fed. Cir. 2013) ................................................................................ 18

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988) .................................................................................. 18

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) ............................................................................................ 4, 5

*Parallel Iron LLC v. NetApp Inc.*,
    70 F. Supp. 2d 585 (D. Del. 2014) ............................................................................. 5

*Yufa v. TSI Inc.*,
    No. 12-cv-01315,
    2014 WL 4071902 (N.D. Cal. Aug. 14, 2014) .......................................................... 4

**Statutes**

35 U.S.C. § 101 ................................................................................................... 3, 5, 6, 7

35 U.S.C. § 285 .................................................................................................... passim

**Rules**

Delaware Lawyers' Rules of Professional Conduct Rule 3.7 ..................................... 14

Fed. R. Civ. P. 54(d)(2)(B)(iii) .................................................................................. 18

Fed. R. Civ. P. 54(d)(2)(C) ....................................................................................................... 19

Florida Rule of Professional Conduct 4-3.7 ............................................................................... 14

## I.     INTRODUCTION

Defendant Roadie, Inc. ("Roadie"), by counsel, submits this opening brief in support of its motion to declare this case exceptional under 35 U.S.C. § 285 and to award Roadie its attorneys' fees and associated non-taxable costs against Plaintiff Baggage Airline Guest Services, Inc. ("Baggage").

## II.    NATURE AND STAGE OF PROCEEDINGS

Baggage filed its first suit against Roadie, Civil Action No. 6:17-cv-1253-Orl-37GJK (M.D. Fla.) (the "1253 Case"), on July 6, 2017.  In that action, Baggage alleged that Roadie infringed U.S. Patent No. 9,659,336 ("the '336 patent") (Ex. A)[1], the same patent asserted by Baggage in the present action.  (Ex. B).  Baggage further contended that Roadie's alleged infringement of the '336 patent also constituted a violation of the Florida Deceptive and Unfair Trade Practices Act.  (*Id.*).  Curiously, Baggage's own complaint acknowledged that it did not own the '336 patent.  (*Id.*).  The complaint was signed by Mayanne Downs, Jason Zimmerman and Trace Jackson of GrayRobinson, P.A.'s Orlando, Florida office.  (*Id.*).

On the same day that Baggage filed the 1253 Case, Mr. Craig Mateer, the purported inventor of the '336 patent and Founder and CEO of "Bags, Inc.," sent a cease-and-desist letter to Mr. Marc Gorlin, the president of Roadie, demanding that Roadie exit the baggage delivery business and turn over confidential Roadie business information, including Roadie financials, customer lists, and contracts Roadie has with airlines for delayed baggage delivery.  (Ex. C).

On August 3, 2017, Roadie moved to dismiss the 1253 Case on multiple independent grounds.  (Ex. D).  First, Baggage admitted that the complaint suffered from a fatal infirmity –

---

[1] References to "Exhibits" herein are to the exhibits that accompany the supporting Declaration of John P. Moy, which is being filed contemporaneously with the present motion.

namely, that the court lacked subject matter jurisdiction over the lawsuit because Baggage did not own the '336 patent when it filed the complaint.  (*Id.*).  Additionally, the state law unfair competition claim asserted by Baggage was wholly premised on Roadie's alleged infringement of the '336 patent and therefore preempted by federal patent law.  (*Id.*).  Finally, Roadie argued that venue in the Middle District of Florida was improper, as Roadie, a Delaware corporation headquartered in Atlanta, Georgia, had no regular and established place of business in Florida, let alone the Middle District.  (*Id.*).

Baggage filed its response to Roadie's motion to dismiss on August 24, 2017 and on that same day instituted a second patent infringement action against Roadie, Civil Action No. 6:17-cv-1549-Orl-37TBS (M.D. Fla.) (the "1549 Case"), again asserting infringement of the '336 patent but this time omitting its preempted state law unfair competition claim.  (D.I. 1).  Roadie implored counsel for Baggage by letter on August 28, 2017 to withdraw the 1253 Case, as lack of subject matter jurisdiction was a defect that could not be cured.  (Ex. E).  Baggage ignored Roadie's warning, instead leaving it to Judge Dalton of the Middle District of Florida to dispose of the 1253 Case on September 1, 2017 for lack of subject matter jurisdiction.  (Ex. F).

Baggage's new 1549 Case was also improperly filed.  As with the first action, Baggage filed the 1549 Case in the wrong court – the Middle District of Florida.  Despite the fact that Roadie – a Delaware corporation headquartered in Atlanta, Georgia – had no regular place of business in Florida, no office space in Florida, no equipment in Florida, and no employees working in or residing within the state of Florida, Baggage nevertheless persisted in maintaining the 1549 Case in the Middle District of Florida.  Again, Roadie contacted counsel for Baggage by letter to request that Baggage voluntarily dismiss the 1549 Case or transfer it to the District of Delaware.  (Ex. G).  Baggage refused, forcing Roadie to file a motion to transfer the case to this

court for improper venue.  (D.I. 8).  Ultimately, Judge Dalton of the Middle District of Florida granted the motion and transferred the 1549 Case to this Court, where it was docketed as the present action, C.A. No. 18-707-RGA.  (D.I. 67).

In the meantime, on February 6, 2018, while the venue motion was pending, Roadie filed a motion for judgment on the pleadings on two independent bases – first, that the '336 patent was invalid under 35 U.S.C. § 101 as being directed to ineligible subject matter, and second, that the complaint failed to state a proper claim of infringement.  (D.I. 39).  After the 1549 Case had been transferred to the District of Delaware, this Court requested that Roadie submit a reply brief limited to addressing the Section 101 argument and ordered a hearing on the same.  (D.I. 102).

The hearing took place on December 4, 2018, and on January 7, 2019, the Court granted Roadie's motion for judgment on the pleadings, finding that the '336 patent was directed to ineligible subject matter and therefore invalid under 35 U.S.C. § 101.  (D.I. 115).

## III.   SUMMARY OF ARGUMENT

Under 35 U.S.C. § 285, the prevailing party may be awarded its reasonable attorneys' fees in "exceptional" cases.  Exceptionality can be found where the substantive strength (or lack thereof) of a party's litigating position "stands out," or when the case was litigated in an unreasonable manner.  Here, Baggage's lack of substantive strength in its litigating position, and the unjustified manner in which Baggage maintained this action, despite overwhelming evidence of noninfringement, compel an exceptional case finding.

Baggage's litigating position was wholly unsupported in fact and in law.  As set forth in more detail below, Baggage's shifting position regarding validity under Section 101 was untenable and without any legal basis, and Baggage's infringement allegations – designed to cover up Baggage's earlier failure to conduct a proper pre-filing investigation and stymie a direct competitor – were divorced from reality.

3

Indeed, Baggage failed to conduct a good-faith investigation prior to filing suit against Roadie.  Moreover, Baggage repeatedly misattributed the functionality of other software applications from other manufacturers to the accused Roadie App.  Yet, when alerted to these serious infirmities of its case, Baggage ignored Roadie's warnings, instead choosing to maintain this baseless action against its direct competitor.  And, after aggressively pursuing production of the source code for the Roadie App, once counsel for Roadie made the source code available for inspection, Baggage took no steps whatsoever to review the source code, knowing full well that a review of Roadie's highly confidential source code would only confirm the overwhelming amount of public information establishing that Roadie did not infringe any claim of the '336 patent.

## IV. STATEMENT OF FACTS AND ARGUMENT

### A. Legal Standard

The Patent Act provides that "in exceptional cases [the court] may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  Thus, under the statute there are two basic requirements: (1) that the case is "exceptional" and (2) that the party seeking fees is a "prevailing party."  The Supreme Court defined an "exceptional" case as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  In a post-*Octane Fitness* decision granting a motion for attorney's fees and non-taxable costs, the Court stated that the failure to conduct an adequate pre-filing investigation "weighs in favor of finding that … [a] case is exceptional."  *Yufa v. TSI Inc.*, No. 12-cv-01315, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014).

Further, exceptionality need only be proved by a preponderance of the evidence, and no independently sanctionable conduct or bad faith is required. *Octane Fitness*, 134 S. Ct. at 1757-58. Section 285 demands "a simple discretionary inquiry" which imposes "no specific evidentiary burden." *Id.* And exceptionality determinations are reviewed on an abuse of discretion standard. *Highmark Inc. v. Allcare Health Management Sys., Inc.*, 134 S.Ct. 1744, 1749 (2014).

When determining whether a party is a prevailing party, the Federal Circuit has followed the Supreme Court's definition of a prevailing party as used in other fee-shifting statutes. *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004). In *Inland Steel*, the Federal Circuit held that district courts are to "apply the general principle that to be a prevailing party, one must receive at least some relief on the merits, which alters ... the legal relationship of the parties." *Id.* (quotation marks omitted, ellipses in original). "In sum, precedent from both the Supreme Court and the Federal Circuit make clear that for a party to be a *prevailing party*, that party must win a dispute within the case in favor of it that materially alters the legal relationship between the parties at the time of the judgment." *Parallel Iron LLC v. NetApp Inc.*, 70 F. Supp. 2d 585, 589 (D. Del. 2014).

There can be no reasonable dispute that Roadie is the prevailing party in this action, as the Court has granted Roadie's motion for judgment on the pleadings, finding that the '336 patent is invalid under 35 U.S.C. § 101 as being directed to ineligible subject matter. Thus, the Court must turn to the question of whether this case is "exceptional."

### B.    Baggage Advanced an Untenable Position Regarding Section 101

In its motion for judgment on the pleadings, Roadie argued that the '336 patent was directed to the abstract idea of "coordinating and monitoring baggage delivery," and that the patent claims lacked any inventive concept. (*See generally* D.I. 39). Baggage, in response, did

not seriously refute that the '336 patent was directed to "coordinating and monitoring baggage delivery," indeed, conceding that the '336 patent was directed to "coordinating and monitoring delivery" but with a particular configuration of computing devices.  (D.I. 46 at 8); (*see also* Ex. H at 28).

As for the second step of the Section 101 inquiry, Baggage contended in its briefing that the "inventive concept behind the '336 Patent is the creation of a specially configured system of computing devices designed to coordinate baggage delivery such that delivery of the missing baggage is guaranteed":

> As explained by the '336 Patent, the prior method of retrieving lost baggage required contracting with an unknown and potentially untrustworthy agent to deliver the baggage and hope that it would still be there when you were able to pick the baggage up.  '336 Patent at 10-30.  The inventive concept behind the '336 Patent is the creation of a specifically configured system of computing devices designed to coordinate baggage delivery such that delivery of the missing baggage is guaranteed.  It is Bags' contention and allegation that this system of computing devices was heretofore unknown and not conventional within the art.
>
> Roadie attempts to point to individual components of the '336 Patent and claim that they are generic computing devices making the application of an idea faster or more efficient.  (Dkt. 39) at 13.  However, the '336 Patent requires that the computing devices recited within its specification be configured, i.e. coded, in a certain way such that baggage information is communicated "amongst each other to increase the efficiency of missing baggage delivery, enhance passenger experience, and provide a record of baggage delivery."  '336 Patent at 6:21-23.

(D.I. 46 at 9) (emphasis added); (*see also* Ex. H) (confirming Baggage's purported inventive concept).

This argument, however, lacked any legal support whatsoever.  First, under controlling Federal Circuit precedent, Baggage's "specially configured system" that led to purported efficiency gains could not serve as an inventive concept.  *Intellectual Ventures I LLC v. Capital*

*One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (potential gains in speed or efficiency from the implementation of the abstract idea on a computer does not satisfy the requirement for an "inventive concept").  Second, Baggage's purportedly inventive concepts – guaranteeing delivery of missing baggage, increasing efficiency of baggage delivery, passenger experience, and providing a record of delivery – were nowhere to be found in the claim language of any of the patent claims of the '336 patent and therefore could not serve as an inventive concept. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) (improvements in computer functionality described in the specification must be captured in the claim language in order to serve as an inventive concept).

In the face of this overwhelming evidence of invalidity under Section 101, counsel for Baggage inexplicably advanced a different inventive concept from what it had briefed, arguing for the first time at oral argument that the inventive concept was now the "selection to hold delivery" feature.  At argument, the Court probed Baggage's newly-derived argument:

> THE COURT:  Well, so the first part of the specification where they describe what used to happen, I take it I can rely on that as for what used to happen; right?

> MR. STEIN:  Yes, sir.

> THE COURT:  And the business of delivering airline luggage that has been lost, or misplaced, or not kept up with the travelers, there's no dispute that's been going on probably since the invention of airlines; right?

> MR. STEIN:  I'm sure we've all been through that.

> THE COURT:  Yeah.  And so there's a line of cases where going back to, I believe, the Supreme Court where they say more or less that taking some practice that exists and saying apply it on a computer, that's an abstract idea with no inventive concept.

> Why isn't this, you know, do lost luggage on a computer?

> MR. STEIN:  Well, first of all, that's exactly what was argued by the patent examiner twice pre-Alice and post-Alice.

THE COURT:  Okay.  Well, so --

MR. STEIN:  In our view --

THE COURT:  So that's all good, but so why isn't it that?

MR. STEIN:  Well, the last two elements of the claim, each of the independent claims directed to the selection to hold delivery, that option was not available in the old days.  So we have a combination of --

THE COURT:  So you're telling me that in the old days, you couldn't call up the airline and say, I won't be home on this day; deliver my bags the next day?

MR. STEIN:  I think you could make a phone call to the airline and try to get that done.  Okay.  I can tell you from experience that that doesn't work.

THE COURT:  Well, no.  No.  No.  But that's the point of like when computers, it seems to me are not an invention is when you rely on the efficiency of computers to do some process, but without the human mistakes.  And so, you know, the idea that you would try to get the bags delivered when somebody was there to receive them, that's not a new idea.

It may be that computers may get it more likely that that will be accomplished, but you know, that's the same thing with intermediated settlement and all the other kinds of things that are done on computers is computers have certain capabilities that human beings don't have, even companies don't have.  And so when the computer takes advantage of the computer thing that it's a machine and gets things right that humans don't, that's not patentable.

Right?

MR. STEIN:  Well, we think it is, Your Honor, because the claim language which defines the scope of protection.  Okay.  There's no evidence in the record, particularly for this motion, that the claimed elements directed to the selection of all discovery [sic] was common, was not inventive.

(D.I. 109 at 23:14-25:9).

Not surprisingly, the Court rejected Baggage's arguments and granted Roadie's motion for judgment on the pleadings, holding that the '336 patent claims were directed to the abstract idea of coordinating and monitoring baggage delivery and lacked an inventive concept.  (D.I. 115).

**C.     Baggage's Baseless Infringement Contentions and Litigation Misconduct Compel an Exceptional Case Finding**

While the "selection to hold delivery" claim limitations did not play a prominent role in the Section 101 analysis – at least not until Baggage's eleventh-hour injection of it at oral argument – the claim limitation is critical to the infringement analysis.  Indeed, an examination of Baggage's infringement contentions illustrate that this case should never have been brought, and Baggage's refusal to examine or address the evidence of non-infringement compels an exceptional case finding.[2]

Baggage served its infringement contentions on January 31, 2018, over four months after filing the complaint in the instant action and nearly seven months after filing the 1253 Case.  In its infringement contentions, Baggage identified the "Roadie App" as the accused product.  (Ex. I at 1). The contentions track a Roadie delivery request, or "gig," initiated by Baggage's lead trial counsel, Stefan V. Stein, on the morning of August 24, 2017, in which Mr. Stein uses the Roadie app to send a box from his law office to his home address:

---

[2] The inadequacy of Baggage's infringement contentions suggest that Baggage lacked a good-faith basis for initiating not only the present action but also the earlier 1253 Case, which was filed on July 7, 2017.  In an interrogatory response, Baggage identified the individuals involved in its pre-filing investigation as Stefan V. Stein, William V. Stein, Cole Carlson (counsel of record in the instant action) and Terry Sanks (the patent attorney for the '336 patent).  (Ex. J at 17-19).  None of these attorneys, however, were counsel of record when Baggage filed the 1253 Case on July 7, 2017.  Instead, the 1253 Case was filed by three attorneys from a different office of the GrayRobinson law firm, Mayanne Downs, Jason Zimmerman and Trace Jackson, and Baggage failed to produce any evidence to show that any pre-filing investigation was conducted prior to Baggage's July 7, 2017 filing of the 1253 Case.



(Ex. I at 5-6).

Baggage's infringement contentions clearly evidence that Baggage made no attempt to investigate its claims before filing suit.  The most obvious deficiency is that Baggage's contentions made no attempt to show that the <u>server</u> receives from the <u>passenger interface</u> of the <u>passenger computing device</u> a "selection to hold delivery."  Each of the independent claims of the '336 patent – and therefore each claim of the '336 patent – contains a claim limitation requiring a "selection to hold delivery."  For example, independent claim 7 recites, in pertinent part:

> receiving, through the transceiver [of the server], from the <u>passenger computing device</u> a <u>selection to hold delivery</u> of the piece of baggage <u>using a passenger interface</u> until a delayed delivery time

(Ex. A, claim 7) (emphasis added).

Baggage's infringement contentions, however, are devoid of any evidence that the Roadie server received from a passenger computing device a "selection to hold delivery."

Instead, Baggage states the following as "evidence" that the "selection to hold delivery" claim

limitations are met:

> On information and belief, a passenger can choose to hold delivery of the
> baggage until a delayed delivery time. As shown below, the passenger can
> contact the deliverer, using the Accused Device and Roadie's servers, to
> change the delivery location. <u>It is just as likely that a user will request a
> delay in delivery</u>.



(Ex. I at 11-12, 32-33, 52-53) (emphasis added).

Baggage's infringement contentions are problematic for several reasons.  ***First***, although

the claim limitation requires a "selection to hold delivery," Baggage's infringement evidence is

directed instead to a request "to change the delivery location."  (*Id.*).  Indeed, by further stating,

"It is just as likely that a user will request a delay in delivery" (*id.*), Baggage tacitly

acknowledges that it lacks evidence of infringement of a "selection to hold delivery."

***Second***, Baggage twists facts in an attempt to demonstrate that Roadie plays any role in

this interaction between the "passenger" and the "deliverer."  For example, in its infringement

contentions, Baggage makes the bald assertion that, "As shown below, the passenger can contact the deliverer, <u>using the Accused Device and Roadie's servers</u>, to change the delivery location." (*Id.*) (emphasis added).

However, as Baggage was no doubt aware when it made this statement, the screenshot in Baggage's infringement contentions comes <u>not</u> from the accused Roadie App, but instead from the <u>Apple "Messages" application</u>:



(*Id.*) (emphasis added in red).  In other words, the user did not request a change of delivery location through the Roadie App and through Roadie's servers.  Rather, the user sent an iMessage (the Apple iPhone equivalent of a text message) directly to the driver, <u>entirely outside of the Roadie environment</u>.  This message goes directly from one mobile phone user to the other; it simply cannot and does not go through a Roadie server, as required by all the claims of the

'336 patent.  The reason Baggage cannot show a screenshot from the Roadie App that depicts a selection to hold delivery was clear, and entirely known to Baggage at the time it filed this case – <u>the accused Roadie App does not have this functionality</u>.  (*See* Ex. K at 8).

    ***Third***, Baggage's so-called infringement "evidence" was generated by its lead trial counsel, Stefan V. Stein:



(*Id.*) (emphasis added in red).  There is no evidence that Roadie directed, instructed, or forced Mr. Stein to request a change in the delivery location.  Instead, Mr. Stein, <u>of his own volition</u>, sent an iMessage through the Apple "Messages" app directly to the delivery driver.  Yet, incredibly, Mr. Stein claimed in Baggage's infringement contentions – which he personally signed and served (*see* Ex. I at 68-69) – that his personal contact with the delivery driver was made "using the Accused Device and Roadie's servers."

This was not an isolated incident.  On March 19, 2018, shortly after serving its non-infringement contentions, Roadie, through its counsel, sent Baggage's counsel a nine-page, single-spaced letter in which Roadie detailed these and other fatal infirmities in Baggage's infringement case and implored Baggage to dismiss the litigation before the legal costs escalated. (Ex. L).  Yet, despite being specifically warned by Roadie that it had misrepresented the Apple "Messages" app as being the Roadie App in its initial infringement contentions, Baggage ignored this critical evidence of noninfringement and, unbelievably, repeated the misrepresentation, except this time, it was another member of Baggage's litigation counsel, William Stein.

In a supporting declaration filed with the Court, Mr. William Stein stated that he took a flight from Atlanta to Orlando, checked in a piece of luggage, and intentionally left it at the Orlando airport baggage claim.  (D.I. 60, Ex. D, ¶¶ 7-10).  Mr. Stein then initiated a Roadie "gig," requesting that a driver pick up his "lost" luggage and deliver it to his office in Orlando. (*Id.*, ¶¶ 11-13).  Thus, as with Mr. Stefan Stein and his box in the infringement contentions, Mr. William Stein was both the sender and the recipient of the "lost luggage" depicted in Baggage's amended infringement contentions.[3]

This second Roadie "gig" initiated by Baggage's litigation counsel was incorporated in Baggage's amended infringement contentions, which were served on June 8, 2018, over nine months after the filing of the complaint in this action and over eleven months after Baggage first accused Roadie of infringement in the 1253 Case.

---

[3] Roadie also notes that because Mr. Stefan Stein and Mr. William Stein provided Baggage's only purported fact evidence of infringement, both attorneys became necessary fact witnesses in this litigation and were thus potentially subject to disqualification as trial counsel under both Florida Rule of Professional Conduct 4-3.7 and Delaware Lawyers' Rules of Professional Conduct Rule 3.7.

With respect to the "selection to hold delivery" limitation, Baggage added the italicized passage below, along with the second screenshot, which is of the <u>Android messaging app and not the Roadie App</u>, in its amended infringement contentions:

> On information and belief, a passenger can choose to hold delivery of the baggage until a delayed delivery time. As shown below, the passenger can contact the deliverer, using the Accused Device and Roadie's servers, to change the delivery location. It is just as likely that a user will request a delay in delivery.
>
> *Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.*

 

(Ex. M, Baggage's Amended Infringement Contentions, at 72-74).

Putting aside for the moment whether the text conversations depicted in the screenshots above can fairly be considered a "selection to hold delivery," there are myriad ways in which Baggage could have easily determined that its suspicions of infringement were unfounded.  For example, if Baggage suspected that the phone number associated with the Roadie delivery driver was in fact assigned to the driver by Roadie, as Baggage claimed could be the case in its amended infringement contentions, Baggage could have easily determined whether this was the case.  For example, Baggage could have asked a Roadie delivery driver whether the phone number shown on the Roadie App belonged to the driver or was assigned to the driver by Roadie.  Or, Baggage could have had someone sign up to be a Roadie driver to seek the same information.  Had Baggage done so, it would have learned that Roadie does not provide phone numbers to Roadie drivers.[4]

All of these actions could have been taken before bringing suit, yet Baggage chose not to perform any meaningful investigation before doing so.  Furthermore, after aggressively pursuing production of the source code associated with the Roadie App, <u>Baggage never bothered to review it</u>, even though it had been available for Baggage's inspection for nearly four months. (Ex. N; see also Moy Decl., ¶¶ 18-19).

Indeed, Baggage's failure to review the Roadie source code was consistent with its conduct in maintaining this case.  After counsel for Roadie sent its March 19 letter detailing the infirmities in Baggage's infringement theory, Roadie repeatedly implored Baggage to either dismiss its case or to provide any justification for its decision to proceed, including through e-

---

[4] Of course, even if Roadie did provide new phone numbers to Roadie drivers, Baggage still would not have a reasonable basis for asserting that a text message or an Apple iMessage – both of which move directly from one mobile phone number to another – are received by a Roadie server, as required in all the claims of the '336 patent.

mail correspondence on March 29, 2018 (Ex. P), April 16, 2018 (Ex. Q), April 30, 2018 (Ex. R),

and June 5, 2018. (Ex. S).  Baggage never provided a substantive response to the March 19 letter,

instead only claiming the following in a June 8, 2018 e-mail:

> [B]eside the fact that the letter does not conform to the procedure dictated by Rule 11 and Plaintiff is not required to respond under any rule, Plaintiff considers the letter moot given the preliminary claim construction activities performed by the parties negating most of the arguments contained in the letter, if not all. Plaintiff considers the previously served amended infringement contentions as an adequate response.

(Ex. T).  While Roadie's counsel asked Baggage's counsel to explain how the "preliminary

construction activities performed by the parties negat[ed] most of the arguments contained in the

letter," Baggage's counsel never provided an explanation.  (Ex. U).

Perhaps Baggage neglected to review the source code in an effort to conserve its costs

while escalating the costs incurred by Roadie, its direct competitor.  Indeed, Baggage

propounded a third set of interrogatories on Roadie on December 13, 2018, well after Roadie had

made the Roadie App source code available.  (D.I. 111).  Perhaps Baggage desired to extend the

litigation so as to interfere with Roadie's ability to pursue more business with additional airlines,

as suggested in Baggage's July 6, 2017 demand that Roadie disclose its customer lists and

contracts with airlines.  (Ex. B at 3).  Or, perhaps Baggage wanted to keep the litigation afloat

just long enough until it was acquired by another company in a $275 million, all-cash deal.[5]

Whatever its motive, Baggage's steadfast refusal to consider the substantial evidence of

---

[5] The GrayRobinson law firm issued a news release dated December 4, 2018, the day of oral argument on Roadie's Motion for Judgment on the Pleadings, in which it announced that it had represented Baggage in its acquisition by SP Plus Corporation, where SP Plus paid $275 million in an all-cash deal on November 30, 2018.  (Ex. O).  Baggage did not supplement its discovery to disclose this transaction, nor did it supplement its Federal Rule of Civil Procedure 7.1 disclosure statement with this Court.

noninfringement and its failure to make any reasonable inquiry into the operation of the accused Roadie App is inexcusable and indicative of its bad faith in maintaining this action.

### D.      Roadie Should Be Awarded Its Attorneys' Fees and Non-Taxable Costs

"[I]t is clear that the aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur.  *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013).  Where a prevailing party "has obtained excellent results, his attorney should recover a fully compensatory fee." *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)) (internal quotations omitted). Additionally, under 35 U.S.C. § 285, a court may award non-taxable costs accompanying the incurred attorneys' fees.  *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983).

Here, Baggage should have never initiated litigation against Roadie.  Baggage's flimsy infringement position could have been easily debunked prior to filing its lawsuit, and when given notice of its untenable position, Baggage should have withdrawn its case.  Further, Baggage's behavior during the litigation of ignoring significant and verifiable evidence of non-infringement and neglecting to review the source code for the accused product, all in an effort to prolong the litigation, compels an attorneys' fee award.

Pursuant to Fed. R. Civ. P. 54(d)(2)(B)(iii), Roadie provides the following current estimate of the fees and costs that it intends to seek in the event this litigation is determined to be exceptional.[6]

---

[6] Roadie has not yet separately sought its taxable costs through a bill of costs.  Pursuant to Local Rule 54.1(a)(1), Roadie will file its separate bill of costs within 14 days after the time for appeal has expired or within 14 days after issuance of the mandate of the appellate court.  Should Baggage decide to appeal this Court's judgment, Roadie will also seek fees for defending against Baggage's appeal pursuant to 35 U.S.C. § 285.

| Attorneys' Fees | $642,000 |
|---|---|
| Non-Taxable Costs | $12,700 |

Once the Court finds this litigation exceptional and determines that Roadie is entitled to an award under § 285, Roadie will provide an accounting of its fees and costs. *See* Fed. R. Civ. P. 54(d)(2)(C) ("The court may decide issues of liability for fees before receiving submissions on the value of services."); *id.* Notes of Advisory Committee on Rule – 1993 Amendment ("The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. . . .  What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees and the amount of such fees (or a fair estimate)."); *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. 11-1175-RGA, 2014 WL 5814062, at *3 (D. Del. Sept. 12, 2014) (ordering accounting after declaration of exceptionality).

## V.    CONCLUSION

For the reasons stated above, Roadie respectfully requests that this Court declare this case exceptional pursuant to 35 U.S.C. § 285 and award Roadie its attorneys' fees and non-taxable costs.

Dated: January 22, 2019

*Of Counsel:*
Edward A. Pennington
John P. Moy
John P. Pennington
Darlene K. Tzou
SMITH, GAMBRELL & RUSSELL LLP
1055 Thomas Jefferson Street, NW
Suite 400
Washington, DC 20007
(202) 263-4300
epennington@sgrlaw.com
jmoy@sgrlaw.com
jpennington@sgrlaw.com
dtzou@sgrlaw.com

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP

/s/ *Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com

*Attorneys for Defendant
ROADIE, INC.*

## CERTIFICATE OF SERVICE

I, Pilar G. Kraman, Esquire, hereby certify that on January 22, 2019, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to registered participants.

I further certify that on January 22, 2019, I caused the foregoing document to be served by e-mail upon the following counsel:

Neal Belgam
Eve H. Ormerod
SMITH KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
nbelgam@skjlaw.com
eormerod@skjlaw.com

Stefan V. Stein
Cole Carlson
William V. Stein
GRAYROBINSON, P.A.
401 East Jackson Street, Suite 2700
Tampa, Florida 33602
stefan.stein@gray-robinson.com
cole.carlson@gray-robinson.com
william.stein@gray-robinson.com

*Attorneys for Baggage Airline*
*Guest Services, Inc.*

Dated: January 22, 2019                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
(302) 571-6600
pkraman@ycst.com

*Attorneys for Roadie, Inc.*