# EXHIBIT A

US009659336B2

(12) **United States Patent**
Mateer

(10) Patent No.: **US 9,659,336 B2**
(45) Date of Patent: **May 23, 2017**

(54) **MOBILE BAGGAGE DISPATCH SYSTEM AND METHOD**

(75) Inventor: **Craig Mateer**, Orlando, FL (US)

(73) Assignee: **BAGS, INC.**, Orlando, FL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **13/443,640**

(22) Filed: **Apr. 10, 2012**

(65) **Prior Publication Data**

US 2013/0268454 A1    Oct. 10, 2013

(51) **Int. Cl.**
*G06Q 50/28* (2012.01)
*G06Q 10/08* (2012.01)

(52) **U.S. Cl.**
CPC ............. *G06Q 50/28* (2013.01); *G06Q 10/08* (2013.01); *G06Q 10/083* (2013.01)

(58) **Field of Classification Search**
CPC ................................................ G06Q 10/0833
USPC ........ 705/333, 26.62; 340/539.13; 455/422.1
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,711,994 A | 12/1987 | Greenberg | |
| 4,984,156 A | 1/1991 | Mekata | |
| 5,322,473 A | 6/1994 | Hofstra et al. | |
| 5,401,944 A | 3/1995 | Bravman et al. | |
| 5,793,639 A | 8/1998 | Yamazaki | |
| 5,835,376 A | 11/1998 | Smith et al. | |
| 5,866,888 A * | 2/1999 | Bravman et al. ............. 235/375 |
| 5,914,671 A | 6/1999 | Tuttle | |

| | | | |
|---|---|---|---|
| 6,044,353 A | 3/2000 | Pugliese, III | |
| 6,119,096 A | 9/2000 | Mann et al. | |
| 6,127,917 A | 10/2000 | Tuttle | |
| 6,430,496 B1 | 8/2002 | Smith et al. | |
| 6,509,829 B1 | 1/2003 | Tuttle | |
| 6,512,964 B1 | 1/2003 | Quackenbush et al. | |
| 6,542,081 B2 | 4/2003 | Torch | |
| 6,544,173 B2 | 4/2003 | West et al. | |
| 6,544,174 B2 | 4/2003 | West et al. | |
| 6,594,547 B2 | 7/2003 | Manabe et al. | |
| 6,616,606 B1 | 9/2003 | Petersen et al. | |
| 6,662,078 B1 | 12/2003 | Hardgrave et al. | |
| 6,694,248 B2 | 2/2004 | Smith et al. | |
| 6,696,954 B2 | 2/2004 | Chung | |
| 6,703,935 B1 | 3/2004 | Chung et al. | |
| 6,711,463 B2 | 3/2004 | Tozuka et al. | |
| 6,720,874 B2 | 4/2004 | Fufido et al. | |
| 6,807,458 B2 | 10/2004 | Quackenbush et al. | |
| 6,816,762 B2 | 11/2004 | Hensey et al. | |
| 6,845,293 B1 * | 1/2005 | Ananda ........................ 700/226 |

(Continued)

OTHER PUBLICATIONS

Airportbags Plus News Archives, "Welcome to Plus", Sep. 12, 2012 (17 pages).

(Continued)

*Primary Examiner* — Akiba Allen

(74) *Attorney, Agent, or Firm* — Terry M. Sanks, Esq.; Beusse Wolter Sanks & Maire, PLLC

(57) **ABSTRACT**

The disclosure relates to an apparatus, method and system for dispatching baggage. The apparatus includes a processor configured to receive baggage information associated with a passenger; associate the baggage information with a delivery person, where the delivery person is associated with delivery person information; and transmit at least apportion of the baggage information and the delivery person information to a passenger computing device associated with the passenger.

**20 Claims, 9 Drawing Sheets**



(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,870,477 | B2 | 3/2005 | Gruteser et al. |
| 6,892,066 | B2 | 5/2005 | Detweiler et al. |
| 6,943,688 | B2 | 9/2005 | Chung et al. |
| 6,960,715 | B2 | 11/2005 | Riopelle |
| 6,988,989 | B2 | 1/2006 | Weiner et al. |
| 6,990,491 | B2 | 1/2006 | Dutta et al. |
| 7,027,773 | B2 | 4/2006 | McMillin |
| 7,030,732 | B2 | 4/2006 | Tuttle |
| 7,040,541 | B2 | 5/2006 | Swartz et al. |
| 7,044,371 | B2* | 5/2006 | Dove et al. ................. 235/384 |
| 7,079,921 | B2 | 7/2006 | Quackenbush et al. |
| 7,096,089 | B2 | 8/2006 | Quackenbush et al. |
| 7,113,864 | B2 | 9/2006 | Smith et al. |
| 7,117,121 | B2 | 10/2006 | Brinton et al. |
| 7,149,533 | B2 | 12/2006 | Laird et al. |
| 7,221,928 | B2 | 5/2007 | Laird et al. |
| 7,319,321 | B2 | 1/2008 | Murray et al. |
| 7,327,262 | B2 | 2/2008 | Motteram et al. |
| 7,327,268 | B2 | 2/2008 | Gruteser et al. |
| 7,343,243 | B2 | 3/2008 | Smith et al. |
| 7,376,623 | B2 | 5/2008 | Dutta et al. |
| 7,378,975 | B1 | 5/2008 | Smith et al. |
| 7,390,299 | B2 | 6/2008 | Weiner et al. |
| 7,403,844 | B2 | 7/2008 | Chopcinski et al. |
| 7,439,694 | B2 | 10/2008 | Atlas et al. |
| 7,447,562 | B2 | 11/2008 | Quackenbush et al. |
| 7,477,153 | B2 | 1/2009 | Gruteser et al. |
| 7,480,622 | B2 | 1/2009 | Dutta et al. |
| 7,488,294 | B2 | 2/2009 | Torch |
| 7,523,385 | B2 | 4/2009 | Nguyen et al. |
| 7,570,151 | B2 | 8/2009 | Tuttle |
| 7,573,257 | B2 | 8/2009 | Li et al. |
| 7,599,847 | B2 | 10/2009 | Block et al. |
| 7,653,394 | B2 | 1/2010 | McMillin |
| 7,658,247 | B2 | 2/2010 | Carter |
| 7,840,427 | B2 | 11/2010 | O'Sullivan |
| 7,890,358 | B2 | 2/2011 | Dutta et al. |
| 7,978,066 | B2 | 7/2011 | Lim et al. |
| 8,046,160 | B2 | 10/2011 | Carter et al. |
| 8,571,902 | B1 | 10/2013 | Glavan et al. |
| 2001/0034623 | A1 | 10/2001 | Chung |
| 2002/0095318 | A1 | 7/2002 | Parry |
| 2003/0055689 | A1 | 3/2003 | Block et al. |
| 2003/0061085 | A1 | 3/2003 | Lanigan, Sr. |
| 2003/0189094 | A1 | 10/2003 | Trabitz |
| 2004/0035928 | A1 | 2/2004 | Anderson |
| 2004/0056779 | A1 | 3/2004 | Rast |
| 2004/0066273 | A1 | 4/2004 | Cortina et al. |
| 2004/0117278 | A1 | 6/2004 | Dutta et al. |
| 2004/0181570 | A1* | 9/2004 | Kaneko ..................... 709/200 |
| 2004/0220845 | A1* | 11/2004 | Malapitan ................... 705/8 |
| 2004/0250076 | A1 | 12/2004 | Kung |
| 2005/0083171 | A1 | 4/2005 | Hamilton |
| 2005/0096946 | A1 | 5/2005 | Janakiraman et al. |
| 2005/0159838 | A1 | 7/2005 | Quackenbush et al. |
| 2005/0197848 | A1 | 9/2005 | Chou et al. |
| 2005/0212657 | A1 | 9/2005 | Simon |
| 2005/0251430 | A1 | 11/2005 | Jindel |
| 2005/0258231 | A1 | 11/2005 | Wiater |
| 2005/0269404 | A1 | 12/2005 | Landwirth et al. |
| 2006/0026871 | A1 | 2/2006 | Alexander et al. |
| 2006/0032417 | A1 | 2/2006 | Goschy et al. |
| 2006/0145852 | A1 | 7/2006 | McElhannon et al. |
| 2006/0197523 | A1 | 9/2006 | Palecki et al. |
| 2006/0235739 | A1* | 10/2006 | Levis et al. ................. 705/9 |
| 2006/0249320 | A1 | 11/2006 | Carter et al. |
| 2006/0271552 | A1 | 11/2006 | McChesney et al. |
| 2007/0038476 | A1 | 2/2007 | Sternlicht |
| 2007/0176739 | A1 | 8/2007 | Raheman |
| 2007/0203765 | A1* | 8/2007 | Schoen et al. ................. 705/6 |
| 2007/0273611 | A1 | 11/2007 | Torch |
| 2007/0290848 | A1 | 12/2007 | Tuttle |
| 2007/0290849 | A1 | 12/2007 | Tuttle |
| 2007/0290879 | A1 | 12/2007 | Tuttle |
| 2008/0041282 | A1 | 2/2008 | Goschy et al. |
| 2008/0046298 | A1 | 2/2008 | Ben-Yehuda et al. |
| 2008/0070771 | A1* | 3/2008 | Campbell, Jr. ............... 493/186 |
| 2008/0228562 | A1 | 9/2008 | Smith et al. |
| 2009/0066476 | A1 | 3/2009 | Raheman |
| 2009/0115572 | A1* | 5/2009 | Valbh et al. ................. 340/7.58 |
| 2009/0164261 | A1 | 6/2009 | Mateer |
| 2010/0156606 | A1 | 6/2010 | Gold |
| 2010/0205105 | A1* | 8/2010 | Robertson et al. ........... 705/334 |
| 2010/0223245 | A1 | 9/2010 | Vermilye |
| 2010/0318783 | A1 | 12/2010 | Raj et al. |
| 2012/0030133 | A1 | 2/2012 | Rademaker |

OTHER PUBLICATIONS

Cisco Systems, White Paper, "Wi-Fi Based Real-Time Location Tracking: Solutions and Technology," 2006, (6 pages).

Concourse Communications Group, LLC, "The WiFi-enabled Airport," 2004, (4 pages).

Cox, John, "RFID, Radio Location Service Use Soaring at Hospitals," PC World website, Aug. 20, 2008 (printed Oct. 12, 2012), http://www.pcworld.com/article/150075/rfid__in__hospitals.html, (3 pages).

IBSS Press Release, "IBSS and Prospect Airport Services' PDS Express Improves Efficiency While Increasing the Customer Satisfaction of Airline Travelers in Detroit Metropolitan Airport: Greatly Improved Passenger Service Is Enjoyed by 'Special Needs' Travelers Being Serviced Each Day. First Year's Success in Detroit Leads to Multi-Site Expansion," (printed Oct. 12, 2012), http://www.ibss.net/cgi-bin/news/20050308, (2 pages).

IBSS Press Release, "IBSS and Prospect Airport Services' PDS Express Selected by America West Airlines for Las Vegas, McCarran International Airport: The Nation's Second Largest Low-Cost Carriers 'Special Needs' Travelers to Enjoy Improved Passenger Service Via Synapse™-Based System," (printed Oct. 12, 2012), http://www.ibss.net/cgi-bin/news/20050719, (1 page).

IBSS Press Release, "IBSS Introduces SynTrack™ Mobile Dispatch and Transport for Healthcare. Showcased at AHRMM Technology Conference, System Empowers Hospitals to Increase Efficiency and Patient Throughput While Improving the Quality of Patient Care," (printed Oct. 12, 2012), http://www.ibss.net/cgi-bin/news/200603211, (2 pages).

USAToday.com, "Las Vegas airport offering free Wi-Fi Internet Connections," Posted Jan. 4, 2005 (printed Oct. 12, 2012), http://usatoday30.usatoday.com/tech/wireless/data/2005-01-04-vegas-wifi__x.htm, (2 pages).

International Search Report and Written Opinion issued in Application No. PCT/US13/35765 mailed Aug. 26, 2013 (6 pages).

Driscoll, Louise, "Remote Check-in-driving NewTrends," Jun. 2009.

Taylor, "Hotel Min-Bars Provide Instant Room Service," Sep. 20, 1987 Los Angeles Times.

Weisel, "How Secure is Your Hotel Safe," Mar. 1999 Travel and Leisure Magazine.

Trip Advisor, McCaran Airport Hotel Check-in Service (MGM) Jun. 28, 2008.

Business Wire, "National Airlines Introduces National Flight Centers and Adds a Third New York, JFK Flight," May 6, 1999.

Certifed Airline Passenger Services, "CAPS of Las Vegas Selects Unisys to Move Check-in Out of the Airport," Business Wire, Inc., Jun. 28, 2000.

Certified Airline Passenger Services, "Facsimile" Oct. 16, 2003.

Gibson, Stan, "Cleared for takeoff: National Airlines Outsources IT for Lean and Mean Flight Operations Fueled by Web Techology," Company Business and Marketing, PC Week, No. 20, vol. 16, p. 87, May 17, 1999.

Gould, Lark Ellen, "Raising the Stakes," Travel Agent, No. 10, vol. 294, p. 100, Apr. 12, 1999.

Smith, Hubble, "Airline Passenger Service Has Lofty Expansion Goals," Las Vegas Review Journal, Jun. 22, 2001.

Golf Bag Shipping, "Golf Bag Shipping Delivers Your Golf Clubs" Aug. 2000.

LA Times, "News, Tips & Bargains; A Seamless Takeoff—From Your Room," Part L, p. 3, Sunday Home Edition, Oct. 10, 1999.

**US 9,659,336 B2**

Page 3

(56)                  **References Cited**

OTHER PUBLICATIONS

PR Newswire, "America West Offers Baggage Check-In Service at Imperial Palace," Jun. 21, 1999.
Purnell et al., Design and Development Airport Security Systems and Related Applications, Baggage Direct, Apr. 24, 2001.
Florida Department of Transportation, "Scope of Services for Off-Line Baggage Processing," Dec. 9, 2002.
Velotta, Richard N., "CAPS Outlines Growth Plans at Conference," Las Vegas Sun, Jun. 27, 2001.
Scientific and Technical Information Center, Case Study: Dublin Airport, Airports International, Apr. 2001, C. 34, N. 3, p. 26.

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6

700

710

720

730



FIG. 7

800

410

420

430

440



FIG. 8



FIG. 9



FIG. 10

1100



FIG. 11

1200



FIG. 12



FIG. 13



FIG. 14

US 9,659,336 B2

1

# MOBILE BAGGAGE DISPATCH SYSTEM AND METHOD

## BACKGROUND

The present disclosure relates generally to the field of baggage management. In particular, the present disclosure relates to a system and a method of coordinating and monitoring baggage delivery.

When baggage is lost during an airline flight, a passenger usually reports the bag missing and leaves an address and phone number where the baggage can be dropped off. The passenger continues to his destination, for example, to a hotel, his home, or a resort, without his baggage. The airline or airport then commences a search for the baggage, for example, by parsing unclaimed baggage in the system. After the baggage is located by the airline or airport, the airline can then deliver the baggage to the passenger. It can be a number of days before baggage is located and forwarded to the correct destination. Typically, the baggage is actually delivered to the passenger by a sub-contractor, such as a taxi service.

Often, the sub-contractor will call the passenger at the address to confirm the drop-off location, to determine if the passenger is home, and to let the passenger know that the baggage will be dropped off. A typical sub-contractor will drop the baggage off at the front door, ring the doorbell, and leave; where the baggage could then be stolen. Further, the sub-contractor could simply keep the baggage and merely report the baggage as delivered. Thus, improved systems and methods for coordinating and monitoring baggage delivery are needed.

## SUMMARY

One embodiment relates to an apparatus for dispatching baggage. The apparatus includes a processor configured to receive baggage information associated with a passenger; associate the baggage information with a delivery person, where the delivery person is associated with delivery person information; and transmit at least apportion of the baggage information and the delivery person information to a passenger computing device associated with the passenger.

Another embodiment relates to a method of dispatching baggage including receiving baggage information associated with a passenger; associating the baggage information with a delivery person, wherein the delivery person is associated with delivery person information; and transmitting at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger.

Another embodiment relates to a non-transitory computer-readable storage medium having instructions stored thereon that, if executed by a computing device, cause the computing device to perform operations including receiving baggage information associated with a passenger; associating the baggage information with a delivery person, wherein the delivery person is associated with delivery person information; and transmitting at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger.

## BRIEF DESCRIPTION OF THE DRAWINGS

The foregoing and other features of the present disclosure will become more fully apparent from the following description and appended claims, taken in conjunction with the accompanying drawings. Understanding that these drawings depict only several embodiments in accordance with the disclosure and are, therefore, not to be considered limiting of its scope, the disclosure will be described with additional specificity and detail through use of the accompanying drawings.

FIG. **1** is a schematic of a mobile baggage dispatch system in accordance with an illustrative embodiment.

FIG. **2** is a flow diagram of a method of baggage delivery in accordance with an illustrative embodiment.

FIG. **3** is a diagram of a login interface of the delivery software in accordance with an illustrative embodiment.

FIG. **4** is a diagram of a menu interface of the delivery software in accordance with an illustrative embodiment.

FIG. **5** is a diagram of a select deliveries interface of the delivery software in accordance with an illustrative embodiment.

FIG. **6** is a diagram of the menu interface of FIG. **4** with pending deliveries of the delivery software in accordance with an illustrative embodiment.

FIG. **7** is a diagram of a pending deliveries interface of the delivery software in accordance with an illustrative embodiment.

FIG. **8** is a diagram of the menu interface of FIG. **4** with current deliveries of the delivery software in accordance with an illustrative embodiment.

FIG. **9** is a diagram of a current deliveries interface of the delivery software in accordance with an illustrative embodiment.

FIG. **10** is a diagram of an individual delivery interface of the delivery software in accordance with an illustrative embodiment.

FIG. **11** is a diagram of a duration cause interface of the delivery software in accordance with an illustrative embodiment.

FIG. **12** is a diagram of a signature interface of the delivery software in accordance with an illustrative embodiment.

FIG. **13** is a flow diagram of a method of passenger-side baggage delivery in accordance with an illustrative embodiment is shown

FIG. **14** is a diagram of a passenger interface of the passenger software in accordance with an illustrative embodiment.

## DETAILED DESCRIPTION OF THE ILLUSTRATIVE EMBODIMENTS

In the following detailed description, reference is made to the accompanying drawings, which form a part hereof. In the drawings, similar symbols typically identify similar components, unless context dictates otherwise. The illustrative embodiments described in the detailed description, drawings, and claims are not meant to be limiting. Other embodiments may be utilized, and other changes may be made, without departing from the spirit or scope of the subject matter presented here. It will be readily understood that the aspects of the present disclosure, as generally described herein, and illustrated in the figures, can be arranged, substituted, combined, and designed in a wide variety of different configurations, all of which are explicitly contemplated and make part of this disclosure.

The present disclosure is directed to a mobile baggage dispatch system, method, and computer-readable medium. Referring to FIG. **1**, a schematic of a mobile baggage dispatch system **100** in accordance with an illustrative embodiment is shown. The mobile baggage dispatch system

US 9,659,336 B2

3

100 can include a server **110**, a transportation server **130**, a deliverer computing device **140**, and a passenger computing device **150**. The server **110**, the transportation server **130**, the deliverer computing device **140**, and the passenger computing device **150** can be communicatively coupled via network **120**. The network **120** can be the Internet, an Ethernet, a Wi-Fi network, a wired or wireless phone network, a dedicated line, a wireless connection, or any other network.

The server **110** can be a personal computer or any other computer. A user can interface with the server **110** via a terminal or a computing device communicatively coupled to server **110**. For example, the server **110** can serve a webpage to the deliverer computing device **140** or the passenger computing device **150**, which enables a user to query information and submit commands. The webpage can be, for example, a hypertext markup language document. Alternatively, an application can be used to interface with the server **110**.

The server **110** can receive baggage information, transmit baggage information, manage bag drop offs, and log bag drop offs. The server **110** can be a personal computer, a circuit, a cell phone, a smart phone, a tablet, a personal data assistant, or any other computing device. The server **110** can include one or more of, a processor **111**, a memory **112**, server software **113**, a task database **117**, a records database **118**, a display **114**, a user interface **115**, and a transceiver **116**. In alternative embodiments, the server **110** may include fewer, additional, and/or different components. The memory **112**, which can be any type of permanent or removable computer memory known to those of skill in the art, can be a computer-readable storage medium. The memory **112** can be configured to store one or more of the server software **113**, an application configured to run the server software **113**, captured data, and/or other information and applications as known to those of skill in the art. The transceiver **116** of the server **110** can be used to receive and/or transmit information through a wired or wireless network as known to those of skill in the art. The transceiver **116**, which can include a receiver and/or a transmitter, can be a modem or other communication component known to those of skill in the art. The baggage information can be stored in the records database **118**. Information associated with the bag drop offs can be stored in the task database **117**.

The server software **113** can be configured to receive baggage information, transmit baggage information, manage bag drop offs, and log bag drop offs. For example, the server software **113** can maintain information associated with bags waiting for delivery and information associated with bags that have been delivered. In one embodiment, the server software **113** can include a computer program (for example, script query language (SQL), PHP, Python, html code, an applet, and/or a script) and/or an application configured to execute the program (for example, Microsoft™ Access, Oracle™ Database, Microsoft Internet Explorer™ or Google Chrome™). Alternatively, other programming languages and/or applications known to those of skill in the art can be used. In one embodiment, the server software **113** can be a dedicated standalone application. The processor **111**, which can be in electrical communication with each of the components of the server **110**, can be used to run the application and to execute the instructions of the server software **113**. Any type of computer processor(s) known to those of skill in the art may be used.

The transportation server **130** can provide baggage information to the server **110** and vice versa. For example, the baggage information can include information describing

4

bags that need to be delivered, bags that have been picked up from a terminal, and bags that have been delivered. The transportation server **130** can be associated with an airport, a rail terminal, a hotel, or any other organization or place that can be associated with baggage, missing baggage or packages. The transportation server **130** can be a personal computer, a circuit, a cell phone, a smart phone, a tablet, a personal data assistant, or any other computing device. The transportation server **130** can include one or more of, a processor **131**, a memory **132**, transportation server software **133**, a display **134**, a user interface **135**, and a transceiver **136**. In alternative embodiments, the transportation server **130** may include fewer, additional, and/or different components. The memory **132**, which can be any type of permanent or removable computer memory known to those of skill in the art, can be a computer-readable storage medium. The memory **132** can be configured to store one or more of the transportation server software **133**, an application configured to run the transportation server software **133**, captured data, and/or other information and applications as known to those of skill in the art. The transceiver **136** of the transportation server **130** can be used to receive and/or transmit information through a wired or wireless network as known to those of skill in the art. The transceiver **136**, which can include a receiver and/or a transmitter, can be a modem or other communication component known to those of skill in the art.

The transportation server software **133** can be configured to notify the server **110** of needed bag drop offs and receive indications of completed bag drop offs. For example, the transportation server software **133** can maintain information associated with bags waiting for delivery and information associated with bags that have been delivered. In one embodiment, the transportation server software **133** can include a computer program (for example, script query language (SQL), PHP, Python, html code, an applet, and/or a script) and/or an application configured to execute the program (for example, ARNIC MUSE™, Microsoft™ Access, Oracle™ Database, Microsoft Internet Explorer™ or Google Chrome™). Alternatively, other programming languages and/or applications known to those of skill in the art can be used. In one embodiment, the transportation server software **133** can be a dedicated standalone application. The processor **131**, which can be in electrical communication with each of the components of the transportation server **130**, can be used to run the application and to execute the instructions of the transportation server software **133**. Any type of computer processor(s) known to those of skill in the art may be used.

The deliverer computing device **140** can receive and transmit baggage information to enable delivery personnel. For example, the baggage information can include information describing bags that need to be picked up from a terminal, bags that need to be delivered, and a record of bags that have been delivered. The deliverer computing device **140** can be associated with a delivery person such as a subcontractor. The deliverer computing device **140** can be a cell phone, a smart phone, a tablet, a personal data assistant, a personal computer, a circuit, or any other computing device. The deliverer computing device **140** can include one or more of, a processor **141**, a memory **142**, transportation server software **143**, a display **144**, a user interface **145**, a transceiver **146**, a scanner **147**, and a global positioning system (GPS) device **148**. In alternative embodiments, the deliverer computing device **140** may include fewer, additional, and/or different components. The memory **142**, which can be any type of permanent or removable computer

US 9,659,336 B2

5

memory known to those of skill in the art, can be a computer-readable storage medium. The memory **142** can be configured to store one or more of the delivery software **143**, an application configured to run the delivery software **143**, captured data, and/or other information and applications as known to those of skill in the art. The transceiver **146** of the deliverer computing device **140** can be used to receive and/or transmit information through a wired or wireless network as known to those of skill in the art. The transceiver, which can include a receiver and/or a transmitter, can be a modem or other communication component known to those of skill in the art.

The delivery software **143** can be configured to notify the server **110** of completed bag drop offs and to receive bag drop off information from the server **110** and/or passenger computing device **150**. For example, the delivery software **143** can collect information associated with bags that a delivery person has picked up and information regarding the location of the deliverer computing device **140** at an indicated delivery time. In one embodiment, the delivery software **143** can include a computer program (for example, script query language (SQL), PHP, Python, html code, an applet, and/or a script) and/or an application configured to execute the program (for example, Microsoft™ Access, Oracle™ Database, Microsoft Internet Explorer™ or Google Chrome™). Alternatively, other programming languages and/or applications known to those of skill in the art can be used. In one embodiment, the delivery software **143** can be a dedicated standalone application. The processor **141**, which can be in electrical communication with each of the components of the deliverer computing device **140**, can be used to run the application and to execute the instructions of the delivery software **143**. Any type of computer processor(s) known to those of skill in the art may be used.

The passenger computing device **150** can receive and transmit baggage information to enable a passenger to interact remotely with delivery personnel. For example, the baggage information can include information describing bags that need to be picked up from a terminal, bags that need to be delivered, and a record of bags that have been delivered. The passenger computing device **150** can be associated with a passenger associated with lost baggage. The passenger computing device **150** can be a cell phone, a smart phone, a tablet, a personal data assistant, a personal computer, a circuit, or any other computing device. The passenger computing device **150** can include one or more of, a processor **151**, a memory **152**, passenger software **153**, a display **154**, a user interface **155**, and a transceiver **156**. In alternative embodiments, the passenger computing device **150** may include fewer, additional, and/or different components. The memory **152**, which can be any type of permanent or removable computer memory known to those of skill in the art, can be a computer-readable storage medium. The memory **152** can be configured to store one or more of the passenger server software **153**, an application configured to run the passenger software **153**, captured data, and/or other information and applications as known to those of skill in the art. The transceiver **156** of the passenger computing device **150** can be used to receive and/or transmit information through a wired or wireless network as known to those of skill in the art. The transceiver **156**, which can include a receiver and/or a transmitter, can be a modem or other communication component known to those of skill in the art.

The passenger software **153** can be configured to transmit and receive bag drop off information to the server **110** and/or deliverer computing device **140**. For example, the passenger software **153** can collect information associated with a bag

6

drop off and submit it to server and display information associated with a bag drop off such as a proposed delivery time. In one embodiment, the passenger software **153** can include a computer program (for example, script query language (SQL), PHP, Python, html code, an applet, and/or a script) and/or an application configured to execute the program (for example, Microsoft™ Access, Oracle™ Database, Microsoft Internet Explorer™ or Google Chrome™). Alternatively, other programming languages and/or applications known to those of skill in the art can be used. In one embodiment, the passenger software **153** can be a dedicated standalone application. The processor **151**, which can be in electrical communication with each of the components of the deliverer computing device **150**, can be used to run the application and to execute the instructions of the passenger software **153**. Any type of computer processor(s) known to those of skill in the art may be used.

Advantageously, the server **110**, the transportation server **130**, the deliverer computing device **140**, and the passenger computing device **150** can communicate baggage information amongst each other to increase the efficiency of missing baggage delivery, enhance passenger experience, and provide a record of baggage delivery.

Referring now to FIG. **2**, a flow diagram of a method of baggage delivery **200** in accordance with an illustrative embodiment is shown. Additional, fewer, or different operations may be performed depending on the particular implementation. The operations for baggage delivery **200** can be executed, for example, in least in part by a system for mobile baggage dispatch, such as the system described above.

In an operation **210**, a server can receive information associated with needed bag drop offs from a transportation server. For example, the transportation server can send a list of bags that need to be dropped off to passengers. The list can include bag information such as a proposed drop off address, a passenger name, passenger contact information, a bag description, a current bag location, delivery status, and a tracking code.

In an operation **215**, the server can transmit a pick up bags message to a deliverer computing device associated with a delivery person. The pick up bags message can include the proposed drop off address, the passenger name, the bag description, the current bag location, and the tracking code. The delivery person can proceed to the current bag location to obtain the bags that need to be dropped off.

In an operation **220**, the delivery person can obtain the bags that need to be dropped off. The delivery person can enter information into the deliverer computing device indicating that the bags that need to be dropped off are now in the possession of the delivery person. The deliverer computing device can include delivery software as described above. In one embodiment, the deliverer computing device can include a scanner to scan the tracking code of the bags picked up by the delivery person.

In an operation **225**, the delivery software can update the bag information and transmit the updated bag information to the server. The delivery software can update the bag information such as current bag location and delivery status. For example, the delivery status can be updated to "in transit." In another embodiment, the deliverer computing device can include an interface for the delivery person to indicate which bags he has picked up, as described below.

FIG. **3** is a diagram of a login interface **300** of the delivery software in accordance with an illustrative embodiment. The delivery person can enter a username in the username text box **310** and a password in the password text box **320** in order to gain access to the delivery software.

US 9,659,336 B2

7

FIG. 4 is a diagram of a menu interface 400 of the delivery software in accordance with an illustrative embodiment. The delivery person can select one of a current deliveries component 410, a pending deliveries component 420, a select deliveries component 430, and an email component 440, described further below. For example, the delivery person can select the select deliveries component 430. FIG. 4 shows that the select deliveries component 430 has information regarding 70 bags that need to be dropped off.

FIG. 5 is a diagram of a select deliveries interface 500 of the delivery software in accordance with an illustrative embodiment. The select deliveries interface 500 can include a display 510 with a list of bag drop offs 530. The list of bag drop offs 530 can be received from the server. The list of bag drop offs 530 can include information describing the bags that need to be dropped off such as the proposed drop off address, the passenger name, the bag description, the current bag location, and the tracking code. Each bag in the list of bag drop offs 530 can be associated with a selection field 520. The delivery person can check the selection field 520 for each bag in the list of bag drop offs 530 that he picks up. In FIG. 5, the first three bags of the list of bag drop offs 530 are selected. The list of bag drop offs 530 can also include zone information 530. For example, the delivery person may be assigned a certain zone or zones, such as "Zone A." The delivery person would pick up all bags labeled "Zone A." After the delivery person has selected the desired bag(s), he can select a claim button 540, which indicates his receipt of the selected bags from the list of bag drop offs 530. The claimed bag(s) the delivery person has selected can be classified as pending deliveries. The deliverer computing device can transmit information to the server describing the pending deliveries, i.e., the desired bag(s) the delivery person has selected and claimed. Alternatively, a dispatcher can assign bags for the delivery person to take. In one embodiment, the list of bag drop offs 530 can be limited to bags assigned by the dispatcher.

FIG. 6 is a diagram of the menu interface of FIG. 4 with pending deliveries 600 of the delivery software in accordance with an illustrative embodiment. After the delivery person has selected and claimed the desired bag(s), the pending deliveries component 420 can indicate the number of pending deliveries. FIG. 6 shows that there are three pending deliveries.

FIG. 7 is a diagram of a pending deliveries interface 700 of the delivery software in accordance with an illustrative embodiment. The pending deliveries interface 700 can include a list of pending bag drop offs 710 which can be all or some of the pending deliveries. The list of pending bag drop offs 710 can include information describing the bags that need to be dropped off such as the proposed drop off address, the passenger name, the bag description, the current bag location, and the tracking code. Each bag in the list of pending bag drop offs 710 can be associated with a selection field 720. The delivery person can check the selection field 720 for each bag in the list of pending bag drop offs 710 that he intends to presently deliver, i.e., the bags that are "out for delivery." Once the selection field 720 is checked, the delivery person submits the information by clicking a button 730. The bag(s) the delivery person has selected can be classified as current deliveries. The deliverer computing device can transmit information to the server describing the current deliveries.

Referring again to FIG. 2, in an operation 230, the delivery person can proceed to a drop off location associated with a bag he has selected and picked up. The delivery person can use the deliverer computing device to determine

8

where to take a bag and optimize his delivery route. FIG. 8 is a diagram of the menu interface of FIG. 4 with current deliveries 800 of the delivery software in accordance with an illustrative embodiment. After the delivery person has selected the bags that are "out for delivery" (operation 235 in FIG. 2) the current deliveries component 410 can indicate the number of bags out for delivery. FIG. 8 shows that there are three current deliveries.

FIG. 9 is a diagram of a current deliveries interface 900 of the delivery software in accordance with an illustrative embodiment. The current deliveries interface 900 can include a list of current bag drop offs 910 which can be all or some of the current deliveries. The list of current bag drop offs 910 can include information describing the bags that need to be dropped off such as the proposed drop off address, the passenger name, the bag description, the current bag location, and the tracking code. Each bag in the list of current bag drop offs 910 can be selected to provide further information. The list of current bag drop offs 910 can be ordered. For example, the bags can be ordered in terms of most efficient travel path, oldest in the queue, or a combination of both. Button 920 can be selected to edit an entry in the list of current bag drop offs 910. Button 930 can be selected to change the ordering of list of current bag drop offs 910.

Referring again to FIG. 2, in an operation 240, after the delivery person has delivered the baggage, the delivery person can indicate completion of the baggage with the deliverer computing device. For example, the delivery person can indicate that the baggage was delivered or have a passenger sign for the baggage. At the time of completion of the baggage delivery, in an operation 245, the bag information can be global position system (GPS) stamped, indicating the location of the deliverer computing device (and thus the baggage) at the time of delivery. At the time of completion of the baggage delivery, in an operation 250, the bag information can be time stamped. In an operation 255, the GPS stamp information, the time stamp information, and other bag information can be transmitted to the server. The other information can include, for example, a duration cause and an electronic signature.

FIG. 10 is a diagram of an individual delivery interface 1000 of the delivery software in accordance with an illustrative embodiment. The individual delivery interface 1000 can include an individual delivery description 1010, a delivered button 1020, an un-assign delivery button 1030, and an unable to deliver button 1040. The individual delivery description 1010 can include a display of the proposed drop off address, the passenger name, the passenger contact information, the bag description, the tracking code, and a map associated with the proposed drop off address. After the delivery person drops off the baggage, the delivery person can select the delivered button 1020 to GPS stamp the delivery, time stamp the delivery, and update the status of the delivery to "delivered." The deliverer computing device can transmit the GPS stamp, the time stamp, and the status update to the server. If the delivery person is unable to deliver the baggage, the delivery person can select the unable to deliver button 1040 to re-queue the baggage delivery for later. If the delivery person gives the baggage to another delivery person, the delivery person can select the un-assign delivery button 1030 to re-queue the baggage delivery so that the other delivery person can add the baggage to his pending deliveries.

FIG. 11 is a diagram of a duration cause interface 1100 of the delivery software in accordance with an illustrative embodiment. If baggage is not delivered within a predeter-

9

mined period, the delivery software can display the duration cause interface **1100** to prompt the delivery person to indicate the cause of the delay. If the delivery person had a vehicle problem or personal incident, he can select a driver issue button **1110**. If the delivery person had to process an inordinate amount of baggage, he can select a high volume button **1120**. If the delivery person picked up the baggage in the evening and delivered the next morning, he can select a late sweep/early delivery button **1130**.

FIG. **12** is a diagram of a signature interface **1200** of the delivery software in accordance with an illustrative embodiment. The signature interface **1200** can be used to record a passenger's acceptance of the baggage delivery. The signature interface **1200** can include a signature block **1210** and a submit button **1220**. The passenger can electronically sign the signature block **1210** and select the submit button **1220** to indicate acceptance of the baggage.

Referring now to FIG. **13**, a flow diagram of a method of passenger-side baggage delivery **1300** in accordance with an illustrative embodiment is shown. Additional, fewer, or different operations may be performed depending on the particular implementation. The operations for passenger-side baggage delivery **1300** can be executed, for example, in least in part by a system for mobile baggage dispatch, such as the system described above.

In an operation **1310**, a passenger can report missing baggage to a common carrier, such as an airline. The passenger can provide information such as a proposed drop off address, a passenger name, passenger contact information, and a bag description. Alternatively, the common carrier can identify a bag as unclaimed. A transportation server can receive bag information such as the proposed drop off address, the passenger name, the passenger contact information, and the bag description.

In an operation **1320**, after the bag is found, the transportation server can assign the bag the proposed drop off address, the passenger name, the passenger contact information, the bag description, a current bag location, delivery status, and a tracking code. The transportation server can send the bag information to a server.

In an operation **1330**, the server can create a passenger record and an interface for the passenger. The interface can enable the passenger to obtain and change information regarding a prospective delivery of his missing baggage. In an operation **1340**, the server can transmit delivery information to a passenger computing device. The server can also transmit delivery information to a deliverer computing device, as described above.

In an operation **1350**, the passenger computing device can display the delivery information. In one embodiment, the passenger can obtain information describing the delivery person such as a picture of the delivery person, a picture of the delivery person's vehicle, an estimated time of delivery, the proposed drop off address, the delivery status, and a map showing the current location of the baggage. The interface can be, for example, a webpage or an application such as an iPhone™ app. The interface can be accessed, for example, using a passenger computing device, as described above.

In an operation **1360**, the passenger can alter the delivery information. In an operation **1370**, the passenger computing device can transmit the changes to the delivery information to the server. The server can then transmit the changes to the deliverer computing device. The deliverer computing device can display a notification that changes to a baggage delivery have occurred.

In an operation **1380**, the server or deliverer computing device can change the delivery schedule of the delivery

10

person. The delivery person can adapt to the changes in the delivery information. For example, if the passenger changes a proposed delivery time using the passenger computing device, the delivery person can be informed of the desired changed via the deliverer computing device.

FIG. **14** is a diagram of a passenger interface **1400** of the passenger software in accordance with an illustrative embodiment. The passenger interface **1400** can be used to display delivery information and receive selections from a passenger. The passenger interface **1400** can include delivery information **1410**, driver information **1420**, a baggage map **1450**, baggage information **1460**, a hold button **1470**, and a waive signature button **1480**.

The delivery information **1410** can include a reference (serial) number, airline information, airport information, a passenger (customer) name, a passenger phone number, a passenger email address, a passenger delivery address, and a community access code. The delivery information **1410** can be received from a server. The delivery information **1410** can include an update button **1415**, for altering and updating the delivery information. For example, the passenger can change his passenger phone number and select the update button **1415** to transmit the change to the server.

The driver information **1420** can include a driver picture **1430**, a driver name **1435**, a driver email **1437**, and a driver vehicle picture **1440**. The driver information **1420** can be any information that can be used to identify the delivery person (driver). When a delivery person arrives at a passenger location to drop off baggage, the passenger can use the driver information **1420** to assure that the delivery person is who he represents himself to be.

The baggage map **1450** can display a current location of the passenger's baggage. Alternatively, the baggage map **1450** can display an approximate location of the passenger's baggage. A signpost **1455** can be used to mark the location of the passenger's baggage on the baggage map **1450**.

The baggage information **1460** can include a number of bags in the delivery, a delivery method, additional requests, a time of baggage recovery, a time of baggage assignment to a delivery person (driver), a latest delivery time, and a current status of the baggage. The baggage information **1460** can also include information about the type of baggage, such as a size, shape, and design of the baggage. The information can include a photo of the actual baggage or of a generic baggage of the same type. The baggage photo or description can be presented on the display along with other baggage information. The passenger interface **1400** can update the baggage information **1460** as a delivery person completes other deliveries.

The passenger can select the hold button **1470** to indicate that he would like to delay delivery until a later time. For example, if the passenger will not be home until 6:00 p.m., passenger can select the hold button **1470** to delay the delivery time until after 6:00 p.m. For example, the delivery time change can be transmitted to the server, which can then relay the change to the deliverer computing device. The server or deliverer computing device can reorder the deliveries to improve efficiency given the change to the delivery time.

The passenger can select the waive signature button **1480** to indicate that the delivery person does not need to obtain a passenger signature in order to complete the delivery, i.e., the delivery person can leave the bags at the door. When the passenger selects the waive signature button **1480**, a signature waiver can be transmitted to the server, which can then relay the signature waiver to the deliverer computing device.

US 9,659,336 B2

11

Advantageously, a passenger can control delivery parameter, such as the delivery time, and obtain information to assure that the delivery person is who he represents himself to be.

One or more flow diagrams may have been used herein. The use of flow diagrams is not meant to be limiting with respect to the order of operations performed. The herein described subject matter sometimes illustrates different components contained within, or connected with, different other components. It is to be understood that such depicted architectures are merely exemplary, and that in fact many other architectures can be implemented which achieve the same functionality. In a conceptual sense, any arrangement of components to achieve the same functionality is effectively "associated" such that the desired functionality is achieved. Hence, any two components herein combined to achieve a particular functionality can be seen as "associated with" each other such that the desired functionality is achieved, irrespective of architectures or intermedial components. Likewise, any two components so associated can also be viewed as being "operably connected", or "operably coupled", to each other to achieve the desired functionality, and any two components capable of being so associated can also be viewed as being "operably couplable", to each other to achieve the desired functionality. Specific examples of operably couplable include but are not limited to physically mateable and/or physically interacting components and/or wirelessly interactable and/or wirelessly interacting components and/or logically interacting and/or logically interactable components.

With respect to the use of substantially any plural and/or singular terms herein, those having skill in the art can translate from the plural to the singular and/or from the singular to the plural as is appropriate to the context and/or application. The various singular/plural permutations may be expressly set forth herein for sake of clarity.

It will be understood by those within the art that, in general, terms used herein, and especially in the appended claims (e.g., bodies of the appended claims) are generally intended as "open" terms (e.g., the term "including" should be interpreted as "including but not limited to," the term "having" should be interpreted as "having at least," the term "includes" should be interpreted as "includes but is not limited to," etc.). It will be further understood by those within the art that if a specific number of an introduced claim recitation is intended, such an intent will be explicitly recited in the claim, and in the absence of such recitation no such intent is present. For example, as an aid to understanding, the following appended claims may contain usage of the introductory phrases "at least one" and "one or more" to introduce claim recitations. However, the use of such phrases should not be construed to imply that the introduction of a claim recitation by the indefinite articles "a" or "an" limits any particular claim containing such introduced claim recitation to inventions containing only one such recitation, even when the same claim includes the introductory phrases "one or more" or "at least one" and indefinite articles such as "a" or "an" (e.g., "a" and/or "an" should typically be interpreted to mean "at least one" or "one or more"); the same holds true for the use of definite articles used to introduce claim recitations. In addition, even if a specific number of an introduced claim recitation is explicitly recited, those skilled in the art will recognize that such recitation should typically be interpreted to mean at least the recited number (e.g., the bare recitation of "two recitations," without other modifiers, typically means at least two recitations, or two or more recitations). Furthermore, in those

12

instances where a convention analogous to "at least one of A, B, and C, etc." is used, in general such a construction is intended in the sense one having skill in the art would understand the convention (e.g., "a system having at least one of A, B, and C" would include but not be limited to systems that have A alone, B alone, C alone, A and B together, A and C together, B and C together, and/or A, B, and C together, etc.). In those instances where a convention analogous to "at least one of A, B, or C, etc." is used, in general such a construction is intended in the sense one having skill in the art would understand the convention (e.g., "a system having at least one of A, B, or C" would include but not be limited to systems that have A alone, B alone, C alone, A and B together, A and C together, B and C together, and/or A, B, and C together, etc.). It will be further understood by those within the art that virtually any disjunctive word and/or phrase presenting two or more alternative terms, whether in the description, claims, or drawings, should be understood to contemplate the possibilities of including one of the terms, either of the terms, or both terms. For example, the phrase "A or B" will be understood to include the possibilities of "A" or "B" or "A and B."

The foregoing description of illustrative embodiments has been presented for purposes of illustration and of description. It is not intended to be exhaustive or limiting with respect to the precise form disclosed, and modifications and variations are possible in light of the above teachings or may be acquired from practice of the disclosed embodiments. It is intended that the scope of the invention be defined by the claims appended hereto and their equivalents.

What is claimed is:

1. An apparatus for dispatching baggage, comprising:

a server having a processor and a transceiver configured to transmit and receive communications to and from a passenger computing device associated with a passenger and a deliverer computing device associated with a delivery person wherein the passenger computing device includes a passenger interface to communicate with the server; and

the processor configured to:

receive, via the transceiver, after a piece of baggage has been transported to a destination, baggage information relating to the piece of baggage to be delivered to the passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination;

associate the baggage information with the delivery person, wherein the delivery person is associated with delivery person information;

transmit, via the transceiver, a pick up bags message to the deliverer computing device associated with the delivery person; and

transmit, via the transceiver, at least a portion of the baggage information and the delivery person information to the passenger computing device associated with the passenger;

receive, via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information wherein the passenger interface is updated with

US 9,659,336 B2

13

changes in the approximate location or the current location of the piece of baggage during transport;

relay, via the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and

reorder other deliveries associated with the deliverer computing device given the delivery change.

**2.** The apparatus of claim **1**, wherein the baggage information further comprises at least one of a picture of the delivery person, a picture of a vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, and a tracking code.

**3.** The apparatus of claim **1**, wherein the processor is further configured to receive, via the transceiver, updated information entered via the user interface of the passenger computing device.

**4.** The apparatus of claim **3**, wherein updated information comprises a selection to waive a signature using the passenger interface.

**5.** The apparatus of claim **3**, wherein the processor is further configured to transmit, via the transceiver, the updated information to the deliverer computing device.

**6.** The apparatus of claim **1**, wherein the processor is further configured to receive, via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp.

**7.** A method of dispatching baggage, comprising:

receiving, through a transceiver of a server and after a piece of baggage has been transported to a destination, baggage information relating to the piece of baggage to be delivered to a passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination;

associating, by the processor of the server, the baggage information with a delivery person, wherein the delivery person is associated with delivery person information;

transmitting, through the transceiver, a pick up bags message to a deliverer computing device associated with the delivery persona;

transmitting, through the transceiver, at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger;

receiving, through the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using a passenger interface until a delayed delivery time wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport;

relaying, through the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and

reordering, by the processor of the server, other deliveries associated with the deliverer computing device given the delivery change.

14

**8.** The method of claim **7**, wherein the baggage information further comprises at least one of a picture of the delivery person, a picture of a vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, and a tracking code.

**9.** The method of claim **7**, further comprising receiving, by the transceiver, updated information entered via the passenger interface of the passenger computing device.

**10.** The method of claim **9**, wherein updated information comprises a selection to waive a signature using the passenger interface.

**11.** The method of claim **9**, further comprising transmitting, via the transceiver, the updated information to the deliverer computing device.

**12.** The method of claim **7**, further comprising receiving, via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp.

**13.** A non-transitory, tangible computer-readable storage medium having instructions stored thereon that, if executed by a server processor, cause the server processor to perform operations comprising:

transmitting and receiving communications, by the server processor via a transceiver, to and from a passenger computing device associated with a passenger and a deliverer computing device associated with a delivery person wherein the passenger computing device includes a passenger interface to communicate with a server having the server processor;

receiving baggage information, by the server processor via the transceiver, after a piece of baggage has been transported to a destination, relating the piece of baggage to be delivered to a passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination;

associating, by the server processor, the baggage information with a delivery person, wherein the delivery person is associated with delivery person information;

transmitting, by the server processor via the transceiver, a pick up message to a deliverer computing device associated with the delivery person;

transmitting, by the server processor via the transceiver, at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger;

receiving, by the server processor via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport;

relaying, by the server processor via the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and

reordering, by the server processor, other deliveries associated with the deliverer computing device given the delivery change.

US 9,659,336 B2

15

**14**. The computer-readable storage medium of claim **13**, wherein the baggage information comprises at least one of a picture of the delivery person, a picture of a vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, and a tracking code.

**15**. The computer-readable storage medium of claim **13**, further comprising receiving, by the server processor via the transceiver, updated information from the passenger computing device.

**16**. The computer-readable storage medium of claim **15**, wherein updated information comprises a selection to waive a signature waiver by the passenger interface.

**17**. The computer-readable storage medium of claim **15**, further comprising transmitting, by the server processor via the transceiver, the updated information to the deliverer computing device.

**18**. The computer-readable storage medium of claim **13**, further comprising receiving, by the server processor via the

16

transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp.

**19**. The apparatus of claim **1**, wherein the piece of baggage is one of a plurality of pieces of baggage to be delivered to a plurality of passengers, and wherein the processor is further configured to determine a most efficient travel path for the delivery person.

**20**. The apparatus of claim **1**, wherein the piece of baggage is one of a plurality of pieces of baggage to be delivered to a plurality of passengers, and wherein the processor is further configured to order the plurality of pieces of baggage in a queue based on an amount of time for which each of the plurality of pieces of baggage is in the queue.

\* \* \* \* \*

# EXHIBIT B

FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

2017 JUL -6 PM 3: 40

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

BAGGAGE AIRLINE GUEST SERVICES, INC., a
Florida corporation,

                Plaintiff,

v.

ROADIE, INC., a Georgia corporation,

                Defendant.

Case No.: 6:17-CV-1253-ORL-18GJK

## COMPLAINT AND DEMAND FOR JURY TRIAL AND INJUNCTIVE RELIEF

       Plaintiff, Baggage Airline Guest Services, Inc. ("Bags"), a Florida corporation, sues

Roadie, Inc. ("Roadie"), a Georgia corporation, and states:

### NATURE OF ACTION

       1.     This is an action against Roadie for (I) patent infringement, pursuant to 35

U.S.C. § 271, and (II) violations of the Florida Deceptive and Unfair Trade Practices Act

("FDUTPA"), Fla. Stat. §§ 501.201–.213.

### JURISDICTION AND VENUE

       2.     This Court has jurisdiction under 28 U.S.C. § 1331, for a federal question

arising under the laws of the United States, which include the Patent Act, 35 U.S.C. §§ 1 *et*

*seq.*

       3.     This Court also has jurisdiction under 28 U.S.C. § 1332, for diversity

jurisdiction as: (1) this is an action for damages exceeding $75,000; (2) Bags is a Florida

corporation, with its principal place of business in Orlando, Florida; and (3) Roadie is a

Georgia corporation, with its principal place of business in Atlanta, Georgia.

4.       This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, for claims arising under the laws of the State of Florida with respect to Bags' FDUTPA claim.

5.       This Court has personal jurisdiction over Roadie pursuant to Florida's Long-Arm Statute, as Roadie is engaged in substantial and not isolated activity within Florida through its solicitation of Florida customers.

6.       Venue is proper in the Middle District of Florida because the harm more particularly described in this Complaint occurred in this District.

<u>**PARTIES**</u>

7.       Bags is a Florida corporation, duly organized under the laws of Florida, with its principal place of business at 6751 Forum Drive, Suite 200, Orlando, Florida 32821.

8.       Bags provides a variety of travel-related services, including luggage delivery services.

9.       Bags is the owner by assignment of U.S. Patent No. 9,659,336, for a mobile baggage dispatch system and method (the "'336 Patent"). The '336 Patent is vital to Bags' business model. Although the patent is currently assigned to an entity named "Bags, Inc.," this entity does not exist, and Bags is currently correcting the assignment. The original named inventor of the '336 Patent, Craig C. Mateer ("Mateer"), is the President of Bags.

10.     Roadie is a Georgia corporation, duly organized under the laws of Georgia, with its principal place of business at 225 Trowbridge Road, Atlanta, Georgia 30350.

11.     Roadie is also engaged in a variety of travel-related services, including luggage delivery services.

## BAGS AND THE DEVELOPMENT OF THE '336 PATENT

12.     Bags' business model uses cutting-edge software and mobile phone applications to help customers transport their luggage from one place to another, such as from their home to their destination hotel.

13.     Mateer's vast business experience in this field led him to develop the apparatus, method, and system covered by the '336 Patent.

14.     Mateer filed his patent application on April 10, 2012, and the U.S. Patent and Trademark Office duly granted his application on May 23, 2017.

15.     The '336 Patent covers an apparatus, method, and system for dispatching a passenger's baggage.

16.     For example, Claim 1 of the '336 Patent therefore discloses the following elements:

   a.  A central server that can communicate with a passenger through the passenger's mobile phone[1] and with a delivery person through the delivery person's mobile phone.

   b.  The server receives baggage information, transmits baggage information, manages bag drop offs, and logs bag drop offs.

   c.  The server associates the baggage information with a delivery person, who has a "profile" of delivery person information.

   d.  The server transmits a message to the delivery person's mobile phone when the baggage is ready to be picked up.

---

[1] The patent itself broadly describes any passenger computing device," such as a mobile phone, tablet, computer, etc.  For simplicity, this Complaint will use "mobile phone" synonymously with "computing device."

e. The server transmits the baggage information and the delivery person's profile to the passenger.

f. The server receives instructions from the passenger to delay delivery of the baggage and can transmit these instructions to the delivery person.

g. The server can reorder a given delivery person's pending orders given any such delays.

h. The passenger's mobile phone displays the passenger's airline name, airport name, and a baggage map, which tracks the location of the baggage in approximately real-time.

17. Claim 7 of the '336 Patent covers a method of dispatching baggage using a server in a method similar to Claim 1. Claims 8–12 are dependent claims that add features to the method.

18. Claim 13 of the '336 Patent covers a computer program, like a mobile phone application, implementing a similar method. Claims 14–18 are dependent claims that add features to the computer program.

19. Claims 19–20 augment the apparatus of Claim 1 by allowing the delivery person to deliver multiple pieces of baggage to multiple passengers.

**ROADIE'S INFRINGEMENT**

20. On information and belief, Roadie began business as a shipping company.

21. On information and belief, Roadie's mobile phone application (the Roadie App) interfaces with an apparatus that is identical or substantially similar to the apparatus described in the '336 Patent.

22.   On information and belief,

a.   Roadie's server communicates with both passengers and delivery people through the Roadie App.

b.   The Roadie App sends the server baggage information, transmits baggage information, manages bag drop offs, and logs bag drop offs.

c.   Each delivery person has their own "profile" visible on the passenger's mobile phone through the Roadie App.

d.   The server transmits a message through the Roadie App when the baggage is ready to be picked up.

e.   The server transmits the baggage information and the delivery person's profile to the passenger.

f.   The server receives instructions from the passenger to delay delivery of the baggage and can transmit these instructions to the delivery person.

g.   The server can reorder a given delivery person's pending orders given any such delays.

h.   The Roadie App can be configured to display the passenger's airline name, airport name, and a baggage map, which tracks the location of the baggage in approximately real-time.

23.   Roadie's website has a hyperlink marked "See how it works," which substantiates many of the above allegations.

24.     In addition to infringing the apparatus claims of the '336 Patent, Roadie's business model is identical to the method claims of the '336 Patent (Claims 7–12) for the above reasons.

### COUNT I—INFRINGEMENT OF THE '336 PATENT (35 U.S.C. § 271)

25.     Bags realleges paragraphs 1–24.

26.     The '336 Patent is valid and enforceable.

27.     Roadie has infringed and continues to infringe the '336 Patent, either literally or under the Doctrine of Equivalents, by operating a door-to-door baggage delivery service through a mobile phone application that is covered by the claims of the '336 Patent.

28.     On information and belief, Roadie has had knowledge and notice of the '336 Patent, as well as of its own infringement of the '336 Patent.

29.     Roadie has had knowledge and notice of the '336 Patent, as well as of its own infringement of the '336 Patent, since at least July 6, 2017, by virtue of the instant Complaint.

30.     Bags has been and continues to be damaged by Roadie's infringement of the '336 Patent.

31.     Roadie's infringement of the '336 Patent has been and continues to be willful.

32.     Roadie's infringement of the '336 Patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

WHEREFORE, Plaintiff Bags respectfully requests this Court render an order granting

Bags:

A.  compensatory damages in an amount to be determined at trial, but
considerably more than $75,000, equal to the greater of Bags' lost profits or a
reasonable royalty for Roadie's unlawful use of the '336 Patent;

B.  treble the award of compensatory damages;

C.  injunctive relief preventing Roadie from further infringing the '336 Patent;
and

D.  Bags' reasonable attorneys' fees.

## COUNT II—VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (Fla. Stat. §§ 501.201–.213)

33.  Bags realleges paragraphs 1-32.

34.  By infringing the '336 Patent, Roadie is engaged in deceptive,
unconscionable, or unfair acts or practices within the meaning of FDUTPA.

35.  By unlawfully using the apparatus and method described and protected by the
'336 Patent, Roadie is decreasing the market value of Bags' product by introducing unlawful
competition into the marketplace.

36.  Moreover, Roadie's business model could be substantially injurious to
consumers, who may be liable to Bags for damages under an indirect theory of patent
infringement.

37.  These acts have caused and are continuing to cause actual damages to Bags
including, but not limited to, the decreased market value of its product.

WHEREFORE, Bags respectfully requests this Court render an order granting Bags:

A.     Bags' actual damages in an amount to be determined at trial, but considerably more than $75,000, to compensate Bags for the actual decrease in market value of its product;

B.     injunctive relief preventing Roadie from continuing to unlawfully use Bags' patented business method;

C.     exemplary and punitive damages; and

D.     Bags' reasonable attorneys' fees.

Plaintiff demands a jury trial.

Respectfully submitted this 6th day of July, 2017.

<div style="margin-left:40%">

/s/ Mayanne Downs
Mayanne Downs
Florida Bar No.: 754900
Primary Email Address:
mayanne.downs@gray-robinson.com
Secondary Email Address:
kathy.savage@gray-robinson.com
Jason Zimmerman
Florida Bar No. 104392
Primary Email Address:
jason.zimmerman@gray-robinson.com
Secondary Email Address:
christine.persampiere@gray-robinson.com
Trace Jackson
Florida Bar No. 125693
Primary Email Address:
trace.jackson@gray-robinson.com
GrayRobinson, P.A.
301 East Pine Street, Suite 1400 (32801)
P.O. Box 3068
Orlando, Florida 32802
Telephone:  (407) 843-8880
Facsimile:  (407) 244-5690

</div>

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Baggage Airline Guest Services, Inc. | Roadie, Inc. |

**(b)** County of Residence of First Listed Plaintiff    Orange
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant     _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Mayanne Downs, Jason Zimmerman, Trace Jackson
GrayRobinson, P.A., 301 E. Pine St., Orlando, FL 32801 (407) 843-8880

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability    Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel &    ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander    Pharmaceutical Personal Injury | | ☒ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Product Liability | | ☒ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability    ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 340 Marine    Injury Product | | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 345 Marine Product    Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | Liability    **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | Product Liability    ☐ 380 Other Personal | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | ☐ 360 Other Personal    Property Damage | Leave Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | Injury    ☐ 385 Property Damage | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| | ☐ 362 Personal Injury -    Product Liability | ☐ 791 Employee Retirement | | |
| **REAL PROPERTY** | Medical Malpractice | Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | **CIVIL RIGHTS**    **PRISONER PETITIONS** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 440 Other Civil Rights    **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 441 Voting    ☐ 463 Alien Detainee | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 442 Employment    ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 245 Tort Product Liability | ☐ 443 Housing/ Accommodations    ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment    ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | ☐ 446 Amer. w/Disabilities - Other    **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education    ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
35 U.S.C. 271

Brief description of cause:
Patent infringement and FDUTPA

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE   7/6/2017    SIGNATURE OF ATTORNEY OF RECORD   *Trace Jackson*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| BAGGAGE AIRLINE GUEST SERVICES, INC., | |
| Plaintiff, | C.A. No. 6:17-cv-01253-GKS-GJK |
| v. | |
| ROADIE, INC., | |
| Defendant. | |

**ROADIE, INC.'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION, FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED, AND FOR IMPROPER VENUE**

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................1

II.    FACTUAL BACKGROUND.......................................................................1

III.   ARGUMENT ..............................................................................................3

      A.     Count I of the Complaint Should Be Dismissed For Lack of Subject
              Matter Jurisdiction ..............................................................................3

            1.     Legal Standard .......................................................................3

            2.     Baggage Lacks Standing to Assert a Patent Infringement Claim
                   of the '336 Patent ..................................................................4

      B.     Counts I and II of the Complaint Should Be Dismissed for Failure to
              State a Claim Upon Which Relief Can Be Granted.................................5

            1.     Legal Standard .......................................................................5

            2.     Baggage's Failure to Put Roadie On Notice of the Claims
                   Against It Warrants Dismissal of the Patent Infringement
                   Claim.......................................................................................6

            3.     Baggage's FDUTPA Claim is Preempted by Federal Patent
                   Law ........................................................................................8

      C.     The Complaint Should Be Dismissed for Improper Venue ...................10

            1.     Legal Standard .....................................................................10

            2.     The Complaint Should Be Dismissed Because Venue is Not
                   Proper In Florida .................................................................10

            3.     If the Court Does Not Dismiss the Complaint, the Case Should
                   Be Transferred to the District of Delaware.............................12

IV.   CONCLUSION........................................................................................13

## TABLE OF AUTHORITIES

### Cases

*Abraxis Biosciences, Inc. v. Navinta LLC,*
  625 F.3d 1359 (Fed. Cir. 2010) ............................................................................ 4

*Alps S., LLC v. Ohio Willow Wood Co.,*
  787 F.3d 1379 (Fed. Cir. 2015) ............................................................................ 4

*Asghari-Kamrani v. United Services Automobile Ass'n,*
  Civ. No. 2:15cv478,
  2016 WL 1253533 (E.D.Va. Mar. 22, 2016) ........................................................ 8

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ......................................................................................... 6

*Atlas IP LLC v. Exelon Corp.,*
  189 F. Supp. 3d 768 (N.D. Ill. 2016) .................................................................... 8

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................................................. 6

*Bender v. LG Elecs. U.S.A., Inc.,*
  No. 09-cv-02114,
  2010 WL 889541 (N.D. Cal. Mar. 11, 2010) ........................................................ 6

*Dow Chem. Co. v. Exxon Corp.,*
  139 F.3d 1470 (Fed. Cir. 1998) ............................................................................ 8

*Drone Techs, Inc. v. Parrot S.A.,*
  838 F.3d 1283 (Fed. Cir. 2016) ............................................................................ 4

*Fourco Glass Co. v. Transmirra Products Corp.,*
  353 U. S. 222 (1957) ...................................................................................... 11, 12

*Hako-Med USA, Inc. v. Axiom Worldwide, Inc.,*
  No. 806CV-1790T-27EAJ,
  2006 WL 3755328 (M.D. Fla. Nov. 15, 2006) ...................................................... 3

*Hunter Douglas, Inc. v. Harmonic Design, Inc.,*
  153 F.3d 1318 (Fed. Cir. 1998) ............................................................................ 9

*Keene Corp. v. United States,*
  508 U.S. 200 (1993) .............................................................................................. 4

*Lans v. Digital Equip. Corp.,*
  252 F.3d 1320 (Fed. Cir. 2001) ............................................................................ 4

*Lawrence v. Dunbar*,
    919 F.2d 1525 (11th Cir. 1990) ........................................................... 3

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    66 F. Supp. 3d 813 (E.D. Tex. 2014) ................................................ 11

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
    240 F.3d 1016 (Fed. Cir. 2001) ........................................................... 4

*Powell v. Home Depot U.S.A, Inc.*,
    No. 07-80435-CIV,
    2010 WL 375796 (S.D. Fla. Jan. 26, 2010) ....................................... 9

*Prima Tek II, LLC v. A–Roo Co.*,
    222 F.3d 1372 (Fed. Cir. 2000) ........................................................... 4

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
    427 F.3d 971 (Fed. Cir. 2005) ..................................................... 3, 4, 5

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1514, 197 L. Ed. 2d 816 (2017) ..................................... 10

*Tesseron, Ltd. v. Oce N.V.*,
    No. 610CV909ORL31GJK,
    2015 WL 12838169 (M.D. Fla. Sept. 24, 2015) ............................... 3

*Veto Pro Pac, LLC v. Custom Leathercraft Mfg. Co., Inc.*,
    No. 3:08-cv-302 (VLB),
    2009 WL 276369 (D. Conn. Feb. 5, 2009) ....................................... 9

*Ware v. Circuit City Stores, Inc.*,
    No. 05-cv-0156,
    2010 WL 767094 (N.D. Ga. Jan. 5, 2010) ....................................... 6

## Statutes

28 U.S.C. § 1391 .................................................................................... 12

28 U.S.C. § 1400(b) ...................................................................... 10, 11, 12

28 U.S.C. § 1406 .................................................................................... 12

35 U.S.C. § 271 ........................................................................................ 7

35 U.S.C. § 271(a) ................................................................................... 7

35 U.S.C. § 271(b) ................................................................................... 7

35 U.S.C. § 271(c) ................................................................................... 7

35 U.S.C. § 281 ........................................................................................ 4

Florida Deceptive and Unfair Trade Practices Act,
    Fla. Stat. §§ 501.201-.213 ........................................................ passim

### Rules

Federal Rule of Civil Procedure 12(b)(1) ......................................................................... 1, 3, 12

Federal Rule of Civil Procedure 12(b)(3) ....................................................................... 1, 10, 12

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 1, 3, 5, 12

## I.     INTRODUCTION

Defendant Roadie, Inc. ("Roadie"), by counsel, respectfully moves to dismiss Count I of the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), both Counts I and II of the Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and both Counts I and II of the Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) .

## II.    FACTUAL BACKGROUND

Plaintiff Baggage Airlines Guest Services, Inc. ("Baggage") filed its Complaint against Roadie, Inc., alleging, in Count I, infringement of U.S. Patent No. 9,659,336 ("the '336 patent") and, in Count II, violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201-.213 (Count II).  (D.I. 1).

Roadie is a Delaware corporation with its principal place of business located at 3565 Piedmont Road, NE, Atlanta, Georgia (the "Atlanta Office"). *See* Decl. of Charlie Farrahar ("Farrahar Decl."), ¶ 3. Roadie has 41 employees, all of whom reside in the state of Georgia and work in the Atlanta Office. *See* Farrahar Decl., ¶ 5.  Roadie's registered agent for service of process is National Registered Agents, Inc., whose address is 160 Greentree Dr., Suite 101, Dover, Delaware. *See* Farrahar Decl., ¶4. Roadie has no offices located in Florida, has no employees located in Florida and does not own or lease real estate in Florida. *See* Farrahar Decl.,  ¶¶ 6-8.

In paragraph 9 of the Complaint, in which Baggage refers to itself as "Bags," Baggage states that

Bags is the owner by assignment of U.S. Patent No. 9,659,336, for a mobile baggage dispatch system and method (the "'336 Patent"). The '336 patent is vital to Bags' business model. **Although the '336 Patent is currently assigned to an entity named "Bags, Inc.," this entity does not exist, and Bags is currently correcting the assignment.** The original named inventor of the '336 Patent, Craig C. Mateer ("Mateer"), is the President of Bags.

(D.I. 1, ¶ 9) (emphasis added).

In Count I of the Complaint, Baggage alleges that Roadie has infringed and continues to infringe the '336 patent. (*See* D.I., ¶ 27). The '336 patent contains 20 patent claims. However, Baggage does not specifically identify in the Complaint which of the 20 patent claims of the '336 patent it is asserting against Roadie.

In Count II of the Complaint, Baggage alleges that the purported infringement of the '336 patent is the sole factual basis for its claim of a violation of FDUTPA:

> 34. **By infringing the '336 Patent**, Roadie is engaged in deceptive, unconscionable, or unfair acts or practices within the meaning of FDUTPA.

> 35. **By unlawfully using the apparatus and method described and protected by the '336 Patent**, Roadie is decreasing the market value of Bags' product by introducing unlawful competition into the marketplace.

> 36. Moreover, Roadie's business model could be substantially injurious to consumers, who may be liable to Bags for damages **under an indirect theory of patent infringement**.

> 37. These acts have caused and are continuing to cause actual damages to Bags including, but not limited to, the decreased market value of its product.

(D.I. 1, ¶¶ 34-37) (emphasis added).

2

## III.    ARGUMENT

### A.    Count I of the Complaint Should Be Dismissed For Lack of Subject Matter Jurisdiction

Count I of the Complaint, which alleges patent infringement, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), as the Plaintiff, Baggage, lacks standing to assert infringement.

#### 1.    Legal Standard

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, No. 806CV-1790T-27EAJ, 2006 WL 3755328, at *3 (M.D. Fla. Nov. 15, 2006). In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Tesseron, Ltd. v. Oce N.V.*, No. 610CV909ORL31GJK, 2015 WL 12838169, at *2 (M.D. Fla. Sept. 24, 2015) ("Where the jurisdictional attack is based on the face of the pleadings, the court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion.") (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

"Standing to sue is a threshold requirement in every federal action." *Sicom Sys., Ltd. v. Agilent Techs., Inc.,* 427 F.3d 971, 975 (Fed. Cir. 2005). "Standing must be present at the time the suit is brought." *Id.* at 975-76. The Federal Circuit recognizes that "'if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional

defect cannot be cured' after the inception of the lawsuit." *Abraxis Biosciences, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010); *see also Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (noting "the longstanding principle that the jurisdiction of the Court depends upon the state of things at the time of the action brought"); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (affirming dismissal of complaint and denial of motion to amend pleadings to substitute assignee as plaintiff when plaintiff-inventor assigned the patent prior to filing the action).

"Before a court may exercise jurisdiction over a patent infringement action, it must be satisfied that, 'in addition to Article III standing, the plaintiff also possess[es] standing as defined by § 281 of the Patent Act.' " *Drone Techs, Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed. Cir. 2016) (quoting *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1382 (Fed. Cir. 2015)). Under 35 U.S.C. § 281, only a "patentee" has standing to bring suit for patent infringement. *Prima Tek II, LLC v. A–Roo Co.*, 222 F.3d 1372, 1376–77 (Fed. Cir. 2000). A patentee includes the party to whom the patent issued or successors in title to the patent. *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001). "The party bringing the action bears the burden of establishing that it has standing." *Sicom*, 427 F.3d at 976.

## 2. Baggage Lacks Standing to Assert a Patent Infringement Claim of the '336 Patent

By its own admission, Baggage lacks standing to bring this patent infringement case because it was not the assignee of the '336 patent, at least as of the time it commenced this action. Indeed, in its Complaint, Baggage expressly acknowledged that "the patent is

currently assigned to an entity named Bags, Inc." (D.I. 1, ¶ 9). Bags, Inc., however, is not a party to this action.

Moreover, Baggage admits that it is "currently correcting the assignment" – yet another admission that it did not possess sole ownership of the '336 patent at the time it instituted this action. Thus, Baggage's own statements to this Court fail to establish that it has standing to sue for patent infringement of the '336 patent. *Sicom*, 427 F.3d at 976 ("The party bringing the action bears the burden of establishing that it has standing."). Accordingly, Count I of the Complaint must be dismissed.

**B.     Counts I and II of the Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted**

Even if Baggage had standing to sue for patent infringement of the '336 patent, which it does not, Count I of the Complaint should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, as Baggage has not identified which of the 20 patent claims of the '336 patent it believes are infringed and has failed to provide sufficient notice as to how it believes these unidentified claims of the '336 patent are infringed.

Moreover, Count II of the Complaint, which alleges a violation of FDUTPA, also should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), as violations of FDUTPA that are predicated solely on the basis of patent infringement are preempted by federal patent law.

**1.     Legal Standard**

Under Federal Rules of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. *See e.g., Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007).  To survive a motion to dismiss, a complaint must

contain a sufficient factual matter, accepted as true, "to state a claim to relief that is plausible

on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at

570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 129 S. Ct. at 1953 (citing *Twombly*, 550 U.S. at 556). "A pleading that offers

'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will

not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

   In the patent infringement context, the *Twombly* and *Iqbal* standard requires, at

minimum, a specific identification of the products or services being accused of infringement,

and how those accused products or services infringe the patent-in-suit.  *See, e.g.*, *Bender v.

LG Elecs. U.S.A., Inc.*, No. 09-cv-02114, 2010 WL 889541, at *3 (N.D. Cal. Mar. 11, 2010)

(granting motion to dismiss because plaintiff only pointed to "broad categories of products"

and "[c]ommon sense requires more specific identification of the products in any given

product category that are allegedly infringing"); *Ware v. Circuit City Stores, Inc.,* No. 05-cv-

0156, 2010 WL 767094, at *2 (N.D. Ga. Jan. 5, 2010) (holding allegation that "apparatuses"

infringe "does not provide the minimal factual pleading to put defendants on notice of the

claims against them, which is what is required by Rule 8").

    **2. Baggage's Failure to Put Roadie On Notice of the Claims Against
It Warrants Dismissal of the Patent Infringement Claim**

   Count I of Baggage's Complaint broadly alleges patent infringement.  Indeed, the

entirety of the infringement allegation can be found in paragraph 27 of the Complaint:

> Roadie has infringed and continues to infringe the '336 patent,
> either literally or under the Doctrine of Equivalents, by
> operating a door-to-door baggage delivery service through a
> mobile phone application that is covered by the claims of the
> '336 patent.

(D.I. 1, ¶ 27).

There is no identification of even a single specific claim that is alleged to be infringed, nor is there any mention of whether infringement is direct under 35 U.S.C. § 271(a), or indirect under 35 U.S.C. §§ 271(b) or (c), nor is there any explanation as to how "operating a door-to-door baggage delivery service through a mobile phone application" satisfies the specific claim limitations that are present in the asserted claims.

Although preceding paragraphs of the Complaint provide a paraphrased description of claim 1 (*see* D.I. 1, ¶ 16) and a generalized description of Roadie's mobile phone application (see D.I. 1, ¶¶ 20-22), not once does Baggage specifically identify which of the twenty claims of the '336 patent it is accusing Roadie of infringing. Instead, Baggage resorts to vague and nondescript statements, such as "[i]n addition to infringing the apparatus claims of the '336 patent, Roadie's business model is identical to the method claims of the '336 Patent (Claims 7-12) for the above reasons."

Plaintiff's Complaint fails to meet the requirements for proper and fair pleadings and unduly prejudices Roadie by not identifying any specific claims in Count I, or any of the specific subdivisions of 35 U.S.C. § 271 (direct, contributory and/or induced infringement). Moreover, the Complaint fails to mention specific products and actors/infringers, and only vaguely refers to business models, servers and apps.

A number of district courts have held that the standard set forth in *Iqbal* and *Twombly* can be satisfied in patent cases only by alleging infringement on an element-by-element basis. For example, in *Atlas IP LLC v. Exelon Corp.*, 189 F. Supp. 3d 768 (N.D. Ill. 2016), the patentee had set forth a table specifically comparing the accused products to claim 1 of the patent-in-suit. Nevertheless, the case was dismissed because the Complaint failed to allege that certain claim elements were present in the accused products. *Id.* at 775-76. Similarly, in *Asghari-Kamrani v. United Services Automobile Ass'n*, Civ. No. 2:15cv478, 2016 WL 1253533 (E.D.Va. Mar. 22, 2016), the plaintiffs alleged that the defendant's web site infringed at least claims 1-13, 16-42, and 45-55, but merely discussed certain features of the web site. The court dismissed the complaint as insufficient, as "Plaintiffs must detail how each claim is infringed." *Id.* at *4.

Here, grounds for dismissal are abundant. There is no specific identification of which claims are believed to be infringed. There is no specific identification of the accused infringing activity, other than vague statements about "Roadie's business model." There is no recitation of <u>any claim language of any claim of the '336 patent anywhere in the Complaint</u>, let alone the requisite element-by-element comparison of the asserted claim to the accused product. Indeed, Baggage did not even bother to attach a copy of the '336 patent to the Complaint. Baggage's patent infringement claim must be dismissed.

### 3. Baggage's FDUTPA Claim is Preempted by Federal Patent Law

Federal patent law preempts a state law claim that "offer[s] patent-like protection to intellectual property inconsistent with the federal scheme." *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1475 (Fed. Cir. 1998). In evaluating whether a state statute provides "patent-

like protection," the court must engage in an ad hoc inquiry, focusing on the conduct, as pled

in the complaint, that forms that basis of the state law claim. *Powell v. Home Depot U.S.A,*

*Inc.*, No. 07-80435-CIV, 2010 WL 375796, at *3 (S.D. Fla. Jan. 26, 2010). "[T]o survive

preemption, [the plaintiff] must plead conduct in violation of [state law] that is separate and

independent from its patent law claim." *Veto Pro Pac, LLC v. Custom Leathercraft Mfg. Co.,*

*Inc.*, No. 3:08-cv-302 (VLB), 2009 WL 276369, *2 (D. Conn. Feb. 5, 2009). "If a plaintiff

bases its tort action on conduct that is protected or governed by federal patent law, then the

plaintiff may not invoke the state law remedy, which must be preempted for conflict with

federal patent law." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336

(Fed. Cir. 1998).

In the present case, Baggage asserts that the basis for its FDUTPA claim is as

follows:

> 34.   **By infringing the '336 Patent**, Roadie is engaged in deceptive, unconscionable, or unfair acts or practices within the meaning of FDUTPA.
>
> 35.   **By unlawfully using the apparatus and method described and protected by the '336 Patent**, Roadie is decreasing the market value of Bags' product by introducing unlawful competition into the marketplace.
>
> 36.   Moreover, Roadie's business model could be substantially injurious to consumers, who may be liable to Bags for damages **under an indirect theory of patent infringement**.
>
> 37.   These acts have caused and are continuing to cause actual damages to Bags including, but not limited to, the decreased market value of its product.

(D.I. 1, ¶¶ 34-37) (emphasis added).

Baggage has asserted violations under FDUTPA solely predicated on Roadie's alleged patent infringement. As its claim under FDUTPA is based exclusively on conduct governed by federal patent law, the doctrine of preemption precludes Baggage from asserting a violation under FDUTPA, and Count II should therefore be dismissed.

### C. The Complaint Should Be Dismissed for Improper Venue

Finally, the Complaint should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3), as Baggage has brought this case in an improper venue.

#### 1. Legal Standard

In patent infringement actions, venue is proper where 1) the defendant "resides" or 2) has committed acts of infringement <u>and</u> has a regular and established place of business. 28 U.S.C. § 1400(b). Under the first prong, a domestic corporation such as Roadie "resides" only in its state of incorporation. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1515, 197 L. Ed. 2d 816 (2017).

#### 2. The Complaint Should Be Dismissed Because Venue is Not Proper In Florida

Venue in patent cases is governed exclusively by Section 1400(b). *See id.* at 1521. Section 1400(b) provides that venue in patent cases is limited to: (1) the judicial district where a defendant resides, or (2) where the defendant has committed acts of infringement and has a regular and established place of business. Venue is not proper in this District under either prong.

First, venue is improper in this District because Roadie does not reside in Florida. "[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *Id.* at 1515. Roadie is not incorporated in the state of Florida, a fact

acknowledged by Baggage in the Complaint. (*See* D.I. 1, ¶ 10).[1] Roadie, therefore, resides in Delaware under Section 1400(b), and venue cannot be grounded in this District on that basis.

Second, venue is also improper in this District because Roadie does not have a regular and established place of business in Florida. *See* Farrahar Decl. at ¶¶ 3-8. Instead, Roadie's principal place of business is Atlanta, Georgia. *See* Farrahar Decl. at ¶ 3. In its Complaint, Baggage implicitly acknowledged that the second venue prong is not met by failing to include any allegations whatsoever that Roadie has a "regular and established place of business" in Florida. Indeed the only reference in the Complaint to a connection between Roadie and Florida is the allegation that this Court has personal jurisdiction over Roadie because "Roadie is engaged in substantial and not isolated activity within Florida through its solicitation of Florida customers." (D.I. 1, ¶ 5).

The solicitation of customers in Florida does not constitute a regular and established place of business; it means only that Roadie is doing business in Florida. And, as the Supreme Court held, the enactment of Section 1400(b) did not intend "to make corporations suable, in patent infringement cases, where they are merely 'doing business.'" *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U. S. 222, 226 (1957); *see also Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 813, 817-18& n.1 (E.D. Tex. 2014) (no regular and established place of business where defendant had no offices or employees in the

---

[1] Baggage incorrectly asserts that Roadie, Inc. is a Georgia Corporation. Roadie has no affiliation with the Roadie, Inc. incorporated in the state of Georgia.

district and did not own any property in the district).[2] Baggage's Complaint, therefore, fails to even allege that Roadie has a regular and established place of business in Florida.

Roadie is incorporated in Delaware and its only real connection to Florida is its solicitation of customers, which is entirely insufficient to demonstrate a regular and established place of business under *Fourco*. Thus, Baggage cannot establish that venue is proper in Florida; the Complaint should therefore be dismissed or transferred.

### 3. If the Court Does Not Dismiss the Complaint, the Case Should Be Transferred to the District of Delaware

Federal Rule of Civil Procedure 12(b)(3) contains the mechanism for objecting to improper venue, and 28 U.S.C. § 1406 provides the remedy. Specifically, Section 1406(a) provides that "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." As set forth in Sections III.A and III.B of this Motion, *supra*, Counts I and II of the Complaint clearly should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6). Accordingly, Roadie respectfully submits that this case should be dismissed for improper venue as well.

However, should the Court determine that the interest of justice dictates that this case should be transferred instead of dismissed, transfer to the United States District Court for the District of Delaware is proper. Venue is proper in Delaware because Roadie is incorporated in Delaware and therefore "resides" there under Section 1400(b), and the interest of justice

---

[2] Although Judge Bryson found that venue was appropriate under Section 1391(c) in *Loyalty Conversion*, that decision predates the Supreme Court's *TC Heartland* ruling and that portion of the decision is thus no longer good law.

favors transfer to that District because Roadie is filing, contemporaneously with the present

motion, a declaratory judgment action against Baggage and Bags, Inc., in the District of

Delaware, in which Roadie seeks a declaration of non-infringement, invalidity, and/or

unenforceability of the '336 patent, thereby disposing of the same issues presented in the

present action before this Court.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Roadie, Inc. respectfully requests that this Court

dismiss the Complaint for lack of subject matter jurisdiction, for failure to state a claim upon

which relief may be granted, and for improper venue.

Dated: August 3, 2017.

Respectfully submitted,

/s/ Steven E. Brust
Steven E. Brust
Florida Bar No. 830291
SMITH, GAMBRELL & RUSSELL LLP
50 N. Laura St., Suite 2600
Jacksonville, Florida  32202
Tel:  904-598-6100
Fax:  904-598-6300
Email:  sbrust@sgrlaw.com

Edward A. Pennington (*pro hac vice forthcoming*)
John P. Moy (*pro hac vice forthcoming*)
John P. Pennington (*pro hac vice forthcoming*)
SMITH, GAMBRELL & RUSSELL LLP
1055 Thomas Jefferson Street, NW, Suite 400
Washington, DC 20007
Telephone: (202) 263-4300
Facsimile: (202) 263-4329
epennington@sgrlaw.com
jmoy@sgrlaw.com
jpennington@sgrlaw.com
*Attorneys for Defendant*
*ROADIE, INC.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of August, 2017, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice

of electronic filing to the following:

Jason A. Zimmerman, Esq.
Mayanne Downs, Esq.
Trace H. Jackson, Esq.
GrayRobinson, PA
301 E. Pine Street, Suite 1400
Orlando, Florida 32802-3068

*/s/ Steven E. Brust*
Attorney

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

BAGGAGE AIRLINE GUEST SERVICES, INC., A
FLORIDA CORPORATION,

       Plaintiff,

          v.

ROADIE, INC., A GEORGIA CORPORATION.

       Defendants.

C.A. No. 6:17-cv-01253-GKS-GJK

**DECLARATION**

## DECLARATION OF CHARLIE FARRAHAR

I, Charlie Farrahar, do state as follows:

    1.    I am currently employed as the Chief Financial Officer for Roadie, Inc. ("Roadie") at its office in Atlanta Georgia.

    2.    I am over the age of twenty-one (21) and have personal knowledge of the statements as stated herein and could competently testify thereto if called as a witness herein.

    3.    Roadie is a Delaware corporation with its principal place of business located at 3565 Piedmont Road, NE, Atlanta, Georgia.

    4.    Roadie's registered agent for service of process is National Registered Agents, Inc., whose address is 160 Greentree Dr., Suite 101, Dover, DE.

    5.    Roadie currently has 41 employees, which are all reside in the state of Georgia and work in and/or from Roadie's office located in Atlanta, Georgia.

SGR/15930923.3

6.      Roadie has no offices or other physical locations in the State of Florida.

7.      Roadie has no employees located in the State of Florida.

8.      Roadie does not own or lease any real estate in the State of Florida.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 2, 2017.

_____
Mr. Charlie Farrahar

# EXHIBIT D

*1055 Thomas Jefferson Street, N.W.*

*Suite 400*

*Washington, D.C 20007*

*Tel: 202 263-4300*

*www.sgrlaw.com*

SMITH, GAMBRELL & RUSSELL, LLP

*Attorneys At Law*

*John P. Moy*

*Direct Tel:   (202) 263-4337*

*Direct Fax:  (202) 263-4329*

*jmoy@sgrlaw.com*

August 28, 2017

*VIA E-MAIL*

Jason A. Zimmerman
Gray Robinson LLP
301 East Pine Street, Suite 1400
Orlando, FL 32801

Re:     Baggage Airline Guest Services, Inc. v. Roadie, Inc.,
        Civil Action No. 6:17-cv-01253-RBD-GJK (M.D. Fla.)
        <u>Notice of Violation of Federal Rule of Civil Procedure 11(b)</u>

Dear Jason:

I write on behalf of Roadie, Inc. ("Roadie") in the above-referenced action brought by your client, Baggage Airline Guest Services, Inc. ("Baggage").

As you know, in its motion to dismiss the complaint, Roadie asserted that Baggage lacked standing to bring this action because Baggage did not own the patent-in-suit, U.S. Patent No. 9,659,336 ("the '336 patent") <u>at the time it commenced this action on July 6, 2017</u>. *See* D.I. 11 at 3-5.

"Standing to sue is a threshold requirement in every federal action." *Sicom Sys., Ltd. v. Agilent Techs., Inc.,* 427 F.3d 971, 975 (Fed. Cir. 2005). "The party bringing the action bears the burden of establishing that it has standing." *Sicom,* 427 F.3d at 976. "Before a court may exercise jurisdiction over a patent infringement action, it must be satisfied that, 'in addition to Article III standing, the plaintiff also possess[es] standing as defined by § 281 of the Patent Act.'" *Drone Techs, Inc. v. Parrot S.A.*, 838 F.3d 1283, 1292 (Fed. Cir. 2016) (quoting *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1382 (Fed. Cir. 2015)). Under 35 U.S.C. § 281, only a "patentee" has standing to bring suit for patent infringement. *Prima Tek II, LLC v. A-*



*Atlanta | Austin | Jacksonville | London | Munich | New York | Southampton | Washington, D.C.*

Jason A. Zimmerman
August 28, 2017
Page 2

*Roo Co.*, 222 F.3d 1372, 1376-77 (Fed. Cir. 2000).  A patentee includes the party to whom the patent issued or successors in title to the patent.  *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001).

It is well-settled law that a court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit.  *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (There is a "longstanding principle that the 'jurisdiction of the Court depends upon the state of things at the time of the action brought.'") (internal citations omitted); *Sicom*, 427 F.3d at 975-76 ("Standing must be present at the time the suit is brought.").  "Based upon this Supreme Court jurisprudence, we have held that in a patent infringement action, 'the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit' to assert standing." *Abraxis Biosciences, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (quoting *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309-310 (Fed. Cir. 2003)).

"'[I]f the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured' after the inception of the lawsuit." *Abraxis Biosciences, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (emphasis added) (quoting *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005)); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (affirming dismissal of complaint and denial of motion to amend pleadings to substitute assignee as plaintiff when plaintiff-inventor assigned the patent prior to filing the action).

It is abundantly clear that, at the time it instituted this lawsuit, Baggage lacked standing to assert a claim of patent infringement of the '336 patent.  By its own admission, Baggage did not possess title to the '336 patent on July 6, 2017; rather, title was held by a different corporation, Bags, Inc.  (D.I. 1, ¶ 9).  Moreover, Baggage failed to allege in the complaint that it held some other interest in the '336 patent as of July 6, 2017.  Thus, Baggage lacked both Article III standing as well as standing as a patentee under 35 U.S.C. § 281 at the time it initiated this lawsuit.

Yet, in its response to Roadie's motion to dismiss and corresponding motion to consolidate, Baggage ignores this glaring – and fatal – jurisdictional defect, and instead claims, in conclusory fashion, and only in the very last paragraph of its response, that "Bags has standing to bring suit as the owner of the '336 patent."  D.I. 20 at 11.  Yet, Baggage knows that this is not true.  In fact, in the same pleading, Baggage confirmed that it was not the patentee as of July 6, 2017, admitting that it later "acquired full ownership over [the '336 patent] and re-filed its Complaint" (D.I. 20 at 1) and that after it filed the Complaint in this action, it "has subsequently been assigned the '336 Patent by the previously dissolved entity Bags, Inc. pursuant to a Plan of Liquidation" (D.I. 20 at 2).  Indeed, the '336 patent assignment, which Baggage attached to its response, bears an execution date of August 24, 2017, a full seven weeks after it instituted this action.

Jason A. Zimmerman
August 28, 2017
Page 3

  Baggage's claim that it had standing to bring this suit as of July 6, 2017 is wholly unsupported in fact and in law.  Therefore, Baggage's response to Roadie's motion to dismiss – indeed, this entire lawsuit – stands in violation of Federal Rule of Civil Procedure Rule 11(b).

  Roadie's response to Baggage's motion to consolidate is due on September 14, 2017.  Therefore, Roadie demands that Baggage withdraw its response to Roadie's motion to dismiss and corresponding motion to consolidate and voluntarily dismiss its complaint in the above-referenced action immediately, and under no circumstances after September 13, 2017.  Moreover, because Baggage cannot consolidate the action it filed on August 24, 2017 (Civil Action No. 6:17-cv-01549) with an action that must be dismissed for lack of jurisdiction, the August 24, 2017 action must either be voluntarily dismissed or transferred to the District of Delaware to be consolidated with the declaratory judgment action filed by Roadie in that judicial District, pursuant to the first-to-file rule.

  If, by September 13, 2017, Baggage does not withdraw its response to Roadie's motion to dismiss and corresponding motion to consolidate, voluntarily dismiss its complaint in the above-referenced action, and either voluntarily dismiss its August 24, 2017 complaint or transfer the August 24, 2017 action to the District of Delaware, Roadie will move for sanctions, including an award of attorney's fees, pursuant to Federal Rule of Civil Procedure 11.

  We await your response.

      Sincerely,

      John P. Moy

cc:  All Counsel of Record

# EXHIBIT E

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BAGGAGE AIRLINE GUEST
SERVICES, INC.,

                Plaintiff,

v.                                  Case No. 6:17-cv-1253-Orl-37GJK

ROADIE, INC.,

                Defendant.

---

## **ORDER**

    This cause is before the Court on consideration of: (1) Roadie, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction, for Failure to State a Claim Upon Which Relief Can Be Granted, and for Improper Venue (Doc. 11); and (2) Baggage Airline Guest Services, Inc.'s Response to Roadie, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction, for Failure to State a Claim Upon Which Relief Can Be Granted, and for Improper Venue and Corresponding Motion to Consolidate (Doc. 20).

### **BACKGROUND**

    On **July 6, 2017**, Plaintiff Baggage Airline Guest Services, Inc. initiated this action against Defendant Roadie, Inc. (Doc. 1.) Plaintiff asserts claims under the Patent Act and the Florida Deceptive and Unfair Trade Practices Act ("**FDUTPA**"),[1] which are related to

---

[1] Plaintiff made no effort to counter Defendant's argument that the Court should dismiss the FDUTPA claim because it is "preempted by federal patent law." (*See* Doc. 20; *see also* Doc. 11, p. 10.) Accordingly, the Court finds that the FDUTPA claim is due to be dismissed.

U.S. Patent No. 9,659,336 ("**'336 Patent**"). (*Id.*) Defendant moved to dismiss the Complaint (Doc. 11 ("**MTD**")), and Plaintiff filed a response (Doc. 20 ("**Response**")). The matter is now ripe for adjudication.

## Discussion

Defendant moved to dismiss the Complaint on several grounds, including that Plaintiff lacked standing because it did not own the '336 Patent when it filed this action. (Doc. 11, pp. 6–10 ("**MTD**").) Under the Patent Act, only a *patentee* may bring a "civil action for infringement of his patent." *See* 35 U.S.C. § 281; *see also Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 777 (Fed. Cir. 1996) (noting that a plaintiff has standing only if it can establish that "it was the assignee of the [patent] at the time the suit was filed"). The word "patentee" is not limited to the person to whom the patent issued, but also includes "successors in title to the patentee." *See Alps S. v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1382 (Fed. Cir. 2015). "Transfers of title, otherwise known as assignments, are controlled by 35 U.S.C. § 261." *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed. Cir. 2007); *see* 35 U.S.C. § 261 ("Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing.").

The '336 Patent identifies Craig Mateer as inventor, and Bags, Inc. as assignee. (Doc. 11-1.) Plaintiff is not referenced on the face of the '336 Patent, and it admitted in its Complaint that on the date Plaintiff initiated this action, the '336 Patent was "assigned to an entity named 'Bags, Inc.,'" which "does not exist." (Doc. 9, ¶ 9 (alleging that Plaintiff was correcting the assignment).) On **August 24, 2017**—when Plaintiff filed its Response—it also filed a new action against Defendant for infringement of the '336 Patent—*Baggage*

*Airline Guest Services, Inc. v. Roadie, Inc.*, 6:17-cv-1549-Orl-37TBS ("**1549 Case**"). Unlike the Complaint in this action, the Complaint in the 1549 Case properly alleges that Plaintiff "is the owner by Assignment of the '336 Patent," and it provides a copy of an Assignment dated **August 24, 2017**. (Doc. 1-3 ("**Assignment**").) Plaintiff argues that because it corrected the Assignment the Court should deny the MTD and should consolidate this action with the 1549 Case. (*See* Doc. 20, p. 3 (asserting that, aside from deletion of the FDUTPA, this action is identical to the 1549 Case).) The law does not support Plaintiff's argument.

The Federal Circuit Court of Appeals has made clear that a plaintiff must be the patentee at the time it initiates an infringement action, and a subsequent assignment will not defeat a motion to dismiss for lack of patent standing. *See Alps S.*, 787 F.3d at 1384–85 (rejecting argument that the courts have "routinely permitted plaintiffs to cure" a standing defect); *Abraxis Biosciences, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (reversing district court's order giving post-suit assignments *nunc pro tunc* effect to "cure the defect in ownership as of the date of filing" of infringement complaint). Accordingly, the MTD is due to be granted as to Plaintiff's patent infringement claim. Further, because Plaintiff is pursuing its claims against Defendant in the 1549 Case, repleader in this action would be pointless.

<div align="center">

**CONCLUSION**

</div>

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Roadie, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction, for Failure to State a Claim Upon Which Relief Can Be Granted, and for

Improper Venue (Doc. 11) is **GRANTED**.

2.      Baggage Airline Guest Services, Inc.'s Complaint (Doc. 1) is **DISMISSED**.

3.      The Clerk of the Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Orlando, Florida, this 1st day of September, 2017.

ROY B. DALTON JR.
United States District Judge

Copies to:

Counsel of Record

-4-

# EXHIBIT F

*1055 Thomas Jefferson Street, N.W.*
*Suite 400*
*Washington, D.C 20007*
*Main: 202 263-4300*
*www.sgrlaw.com*

## SMITH, GAMBRELL & RUSSELL, LLP
*Attorneys at Law*

*John P. Pennington*
*Direct Tel:   (202) 263-4360*
*Direct Fax:   (202) 263-4329*
*jpennington@sgrlaw.com*


October 9, 2017


***BY E-MAIL***

Jason A. Zimmerman
Gray Robinson LLP
301 East Pine Street, Suite 1400
Orlando, FL 32801


Re:     Baggage Airline Guest Services, Inc. v. Roadie, Inc.,
        Civil Action No. 6:17-cv-01549-RBD-TBS (M.D. Fla.)
        Notice of Violation of Federal Rule of Civil Procedure 11(b)

Dear Jason:

        I write on behalf of Roadie, Inc. ("Roadie") in the above-referenced action brought by
your client, Baggage Airline Guest Services, Inc. ("Baggage").

        As you know, in its motion to dismiss the complaint filed on July 6, 2017, Roadie
asserted that the Middle District of Florida was not a proper venue for the action because
Roadie did not reside or have a regular and established place of business in Florida. In
response[1], despite the fact that Roadie does not have any physical locations in Florida, Baggage
relied on a four-factor test set forth by Judge Gilstrap in the Eastern District of Texas to argue
that Roadie has a regular and established place of business in Florida.

        Late last month, the United States Court of Appeals for The Federal Circuit (the
"CAFC") issued a writ of mandamus finding that Judge Gilstrap had abused his discretion when
he indicated that a "regular and established place of business" could exist in a district where a
company did not maintain a physical location. Specifically, the CAFC found that the district

---

[1] Baggage admitted that Roadie does not reside in Florida.



*Atlanta  |  Austin  |  Jacksonville  |  London  |  Munich  |  New York  |  Southampton  |  Washington, D.C.*

Jason A. Zimmerman
October 9, 2017
Page 2

court erred as a matter of law in holding that "'a fixed physical location in the district is not a prerequisite to proper venue.'" *In re Cray Inc.*, No. 2017-129, 2017 WL 4201535, at *5 (Fed. Cir. Sept. 21, 2017) (quoting Transfer Order, —— F.Supp.3d at ——, 2017 WL 2813896, at *11. The CAFC stated that "when determining venue, the first requirement is that there 'must be a physical place in the district.'" "The statute requires a 'place,' i.e., '[a] building or a part of a building set apart for any purpose' or 'quarters of any kind' from which business is conducted." *Id.* (internal citations omitted). Further, the CAFC clarified that the physical place must be "the place of the defendant."

The Middle District of Florida is not a proper venue for this case. Roadie does not maintain any physical locations in Florida and Baggage has not made any allegations to the contrary. The CAFC's recent opinion makes clear that Baggage's allegation that Roadie has a regular and established place of business is wholly unsupported in fact and law. Therefore, the allegations related to venue in the Complaint filed on August 24, 2017 are in violation of Federal Rule of Civil Procedure Rule 11(b). For the second time in the past two months, Baggage is forcing Roadie to expend significant resources in the form of time, effort, and attorney's fees to respond to Baggage's baseless claims. We demand, therefore, that Baggage immediately abandon its factually unsupported and frivolous litigation strategy by voluntarily dismissing or transferring the August 24, 2017 complaint to the District of Delaware to be consolidated with the declaratory judgment action filed by Roadie in that Judicial District, pursuant to the first-to-file rule.

If, by October 30, 2017, Baggage does not either voluntarily dismiss its August 24, 2017 complaint or transfer the August 24, 2017 action to the District of Delaware, Roadie will move for sanctions, including an award of attorney's fees, pursuant to Federal Rule of Civil Procedure 11.

We await your response.

Sincerely,

John P. Pennington

# EXHIBIT G

No. 2019-1511

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

BAGGAGE AIRLINE GUEST SERVICES, INC.,

*Plaintiff-Appellant*,

v.

ROADIE, INC.

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Delaware, No. 1:18-cv-707-RGA,
Judge Richard G. Andrews

_____

## APPELLEE'S MOTION TO STRIKE PORTIONS OF THE APPENDIX
## AND PORTIONS OF APPELLANT'S REPLY BRIEF

_____

Edward A. Pennington
John P. Moy
Smith, Gambrell & Russell, LLP
1055 Thomas Jefferson St., NW
Suite 400
Washington, DC 20005
(202) 263-4300

*Attorneys for Appellee*
Roadie, Inc.

FORM 9. Certificate of Interest

Form 9
Rev. 10/17

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Baggage Airline Guest Services, Inc. __ v. __ Roadie, Inc.

Case No. __19-1511__

### CERTIFICATE OF INTEREST

Counsel for the:
☐ (petitioner) ☐ (appellant) ☐ (respondent) ■ (appellee) ☐ (amicus) ☐ (name of party)

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| Roadie, Inc. | Roadie, Inc. | None |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court **(and who have not or will not enter an appearance in this case)** are:

Smith, Gambrell & Russell, LLP:  John P. Pennington, Darlene K. Tzou, Steven E. Brust

Young Conaway Stargatt & Taylor, LLP:  Pilar G. Kraman

**FORM 9. Certificate of Interest**

Form 9
Rev. 10/17

5.   The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b).  (The parties should attach continuation pages as necessary).
None.

2/25/2019
_____
Date

/s/ Edward A. Pennington
_____
Signature of counsel

Please Note: All questions must be answered

Edward A. Pennington
_____
Printed name of counsel

cc: _____

**Reset Fields**

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF CONTENTS ....................................................................... iii

TABLE OF AUTHORITIES ................................................................. iv

GROUNDS FOR THE MOTION ............................................................ 1

RELIEF SOUGHT ................................................................................ 2

ARGUMENT ....................................................................................... 2

     I.     BAGS' LAST-MINUTE INSERTION OF PRESENTATION
            SLIDES INTO THE APPENDIX IS PROHIBITED UNDER
            FEDERAL CIRCUIT RULE 30 .................................................. 2

     II.    BAGS' PRESENTATION SLIDES ARE NOT PART OF THE
            RECORD ON APPEAL AND THEREFORE MAY NOT BE
            INCLUDED IN THE APPENDIX ................................................ 7

     III.   SECTION I.C OF BAGS' REPLY BRIEF SHOULD BE STRICKEN
            FOR RELYING ON THE PRESENTATION SLIDES ................... 11

MOVANT'S STATEMENT OF CONSENT OR OPPOSITION TO THE
       MOTION ........................................................................................ 11

CONCLUSION ................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  582 F.3d 1288 (Fed. Cir. 2009) ..................................................................10

*Pandrol USA, LP v. Airboss Railway Prod., Inc.*,
  320 F.3d 1354 (Fed. Cir. 2003) ..................................................................10

*Sage Prods., Inc. v. Devon Indus., Inc.*,
  126 F.3d 1420 (Fed. Cir. 1997) ..................................................................10

*Whitserve, LLC v. Computer Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012) .......................................................................9

**Rules**

Federal Circuit Rule 30 ................................................................... passim

Federal Rule of Appellate Procedure 10 .............................................1, 8

Federal Rule of Appellate Procedure 30 ................................... 1, 3, 4, 7

Federal Rule of Civil Procedure 5 ..........................................................8

## GROUNDS FOR THE MOTION

Federal Circuit Rule 30 requires that the appellant, Baggage Airline Guest Services, Inc. ("Bags") designate materials for the appendix within 14 days of docketing of the appeal, or as otherwise agreed to by the parties, but in any event not so late as to delay the filing of appellant's opening brief. Bags inserted into the appendix 45 pages of presentation slides, marked as Appx1227-1271, on June 10, 2019, the day it filed its reply brief. Bags failed to timely designate these materials, and its insertion of these presentation slides into the appendix, which was done without the consent of the appellee, Roadie, Inc. ("Roadie"), and without leave of court, violates Federal Circuit Rule 30. Accordingly, Appx1227-1271 of the appendix should be stricken.

Federal Rules of Appellate Procedure 30(a)(1) and 10(a), and Federal Circuit Rule 30(a)(2)(A), also provide an independent ground for striking Bags' presentation slides from the appendix. These rules limit the materials that may be included in the appendix to specifically enumerated items and to materials that were part of the record on appeal. Because Bags' presentation slides are neither specifically permitted under the rules nor part of the record on appeal, they may not be included in the appendix.

Section I.C. of Bags' reply brief contains arguments that are premised on Bags' presentation slides and makes numerous citations to the presentation slides,

including extensive block quotes. Because the presentation slides should be stricken from the appendix, Section I.C of Bags' reply brief, which relies heavily on these presentation slides, should also be stricken.

## RELIEF SOUGHT

Roadie requests that the Court strike Appx1227-1271 from the appendix, and Section I.C, which appears on pages 14-19, from the reply brief.

## ARGUMENT

### I. BAGS' LAST-MINUTE INSERTION OF PRESENTATION SLIDES INTO THE APPENDIX IS PROHIBITED UNDER FEDERAL CIRCUIT RULE 30

Absent agreement between the parties, Federal Circuit Rule 30 requires that the appellant, Bags, designate materials for inclusion in the appendix within 14 days of docketing the appeal. Bags made its designation on March 11, 2019. Although this designation was not timely, having been made 33 days after docketing of the appeal, the materials designated by Bags at that time for inclusion in the appendix were proper.

Specifically, Bags designated the Order, Judgment, and Memorandum Opinion being appealed, the district court docket sheet, the '336 Patent, its prosecution history, the parties' briefs submitted in connection with Roadie's Motion for Judgment on the Pleadings, and the transcript of the December 4, 2018 hearing on the Motion. (Ex. A, March 11, 2019 e-mail from J. Gonzalez to E.

2

Pennington).  The inclusion of each of these items in the appendix is expressly

permitted under Federal Rule of Appellate Procedure 30(a)(1) and/or Federal

Circuit Rule 30(a)(2)(A).  Accordingly, Roadie did not have any counter-

designations.  (Ex. B, March 26, 2019 e-mail from J. Moy to W. Stein).

Bags served a physical compilation of the designated materials, pursuant to

Federal Circuit Rule 30(b)(4)(B), on April 5, 2019, and this physical compilation

appropriately contained just those materials that had been identified in Bags'

March 11, 2019 designation.

Briefing on the appeal began on April 8, 2019 with the filing of Bags'

opening appeal brief.  Roadie timely filed its response brief with this Court on May

20, 2019.  At no point did Bags inform Roadie or otherwise give any indication

that it wished to add additional materials to the appendix.  Instead, on June 10,

2019, Bags filed its reply brief, and in a section of that brief titled "The 'Additional

Limitations' Are Presented In Claim 7 And Were Included In Bags' 45-Slide

Powerpoint Presentation," which appears on pages 14-19, Bags made substantial

and repeated references to a 45-slide presentation that it brought to the December

4, 2018 oral argument on Roadie's Motion for Judgment on the Pleadings.  These

presentation slides, however, had not been identified in Bags' March 11, 2019

designation or at any other time prior to Bags' filing of its reply brief.  Just a few

hours after filing its reply brief, Bags filed a "joint" appendix with this Court that included these non-designated, undisclosed presentation slides.

Upon realizing that Bags had improperly filed non-designated material with the Court under the guise of a "joint" appendix, Roadie contacted Bags and demanded that Bags withdraw the improper joint appendix and submit an appendix that only included materials that had been previously designated and agreed to by the parties. (Ex. C, June 10, 2019 e-mail from J. Moy to W. Stein). Bags, however, refused, claiming that it had been advised by its appellate printing service that its last-minute additions to the "joint" appendix were "standard practice" and permitted under Federal Circuit Rule 30. (Ex. D, June 10, 2019 e-mail from W. Stein to J. Moy).

Federal Circuit Rule 30, however, clearly says otherwise. Rule 30(b)(2) states that, if the parties do not reach an agreement on the contents of the appendix, Bags, as the appellant, "must, within 14 days after docketing in an appeal from a court . . . , serve on the appellee or cross-appellant a designation of materials from which the appendix will be prepared." While Bags' designation did not come with 14 days of docketing, the contents of its March 11, 2019 designation were proper for inclusion in the appendix under Federal Rule of Appellate Procedure 30(a)(1) and Federal Circuit Rule 30(a)(2)(A).

Bags' June 10, 2019 addition of materials to the appendix, however, coming three months later, and well after briefing had begun, is entirely improper. While Bags claims that unilateral, last-minute additions to the joint appendix are "standard practice," Federal Circuit Rule 30(b)(5) expressly states that "[t]he time limits for designating, counter-designating, and compiling the table may be extended by agreement of the parties without seeking leave of the court, <u>as long as an extension of the time is not required for filing appellant's brief</u>." Because briefing had already begun, Bags would have had to include the presentation slides in a separate or supplemental appendix, which it cannot do absent leave of court. Fed. Cir. R. 30(f) ("Except as provided in Federal Circuit Rule 30(e) and (f), no party may file a separate or supplemental appendix without leave of the court.").

Bags never sought Roadie's agreement to the belated inclusion of Bags' presentation slides in the appendix, nor did Bags seek leave of this Court for permission to include them. Instead, Bags waited until <u>63 days</u> after the filing of its appellant's brief, and <u>91 days</u> after its original designation of appendix materials, to liberally reference the presentation slides in its June 10, 2019 reply brief and then quickly file the "joint" appendix containing the undisclosed slides with the Court that same day (a week before the appendix was due), all without any prior notice to Roadie or leave of court. And then, when alerted to its violation

of this Court's rules, Bags responded by claiming that its appellate printing service told them it was okay.

This attempt to circumvent this Court's rules is wholly unjustified. This is not a situation where Bags just learned of the existence of relevant material or had difficulty obtaining such material in advance of the designation deadline. To the contrary – Bags itself created the presentation slides in advance of the December 4, 2018 oral argument. But instead of including the presentation slides in its March 11, 2019 designation, Bags attempted to ambush Roadie by referencing the slides in its June 10, 2019 reply brief and including the slides in the "joint" appendix that it filed with this Court that same day, all without any prior notice to Roadie.

The prejudice resulting from Bags' behavior is clear. Because briefing on the appeal is over, Roadie is left with no opportunity to respond to the new arguments contained in Bags' reply brief, no opportunity to address the contents of the presentation slides in its own brief, and no opportunity to counter-designate other materials to refute Bags' new arguments. Accordingly, Bags' presentation slides, appearing in the appendix as Appx1227-1271, must be stricken.

## II.    BAGS' PRESENTATION SLIDES ARE NOT PART OF THE RECORD ON APPEAL AND THEREFORE MAY NOT BE INCLUDED IN THE APPENDIX

Even if Bags had timely designated its presentation slides, this material may

not be included in the appendix.  Federal Rule of Appellate Procedure 30(a)(1) and

Federal Circuit Rule 30(a)(2)(A) govern the contents of the appendix:

> The appellant must prepare and file an appendix to the briefs containing:
>
> (A) the relevant docket entries in the proceeding below;
>
> (B) the relevant portions of the pleadings, charge, findings, or opinion;
>
> (C) the judgment, order, or decision in question; and
>
> (D) other parts of the record to which the parties wish to direct the court's attention.

Fed. R. App. P. 30(a)(1).

In addition to the matters required by Federal Rule of Appellate Procedure

30(a)(1)(A),(B), and (C), the appendix must include:

> (i) the entire docket sheet from the proceedings below;
>
> (ii) in an appeal from a jury case, the judge's charge, the jury's verdict, and the jury's responses to interrogatories;
>
> (iii) in an appeal involving a patent, the patent in suit in its entirety. The patent in suit may also be included as an addendum to appellant's initial brief. Any other patents included in an appendix must be included in their entirety; and
>
> (iv) any nonprecedential opinion or order cited in accordance with Federal Circuit Rule 32.1(c).

Fed. Cir. R. 30(a)(2)(A).

The import of Federal Rule of Appellate Procedure 30(a)(1) and Federal

Circuit Rule 30(a)(2)(A) is that only relevant portions of the record below are

appropriately included in the appendix.  Federal Rule of Appellate Procedure 10(a)

states that the record on appeal is comprised of:

> (1) the original papers and exhibits filed in the district court;

> (2) the transcript of proceedings, if any; and

> (3) a certified copy of the docket entries prepared by the district clerk.

Fed. R. App. P. 10(a).

Presentation slides used by counsel at oral argument, however, do not fall

under any of these categories and are not part of the record.[1]  They are not filed in

the district court, nor are they formally served pursuant to Federal Rule of Civil

Procedure 5.  While courtesy copies of presentation slides are typically provided to

opposing counsel and the district judge at the time of oral argument, the receiving

party has little, if any, opportunity to respond or object to its contents, unless those

contents are actually raised by the presenting counsel at oral argument.

---

[1] Roadie anticipates that Bags will argue that the presentation slides are part of the
record on appeal because Roadie attached Bags' presentation slides as an exhibit to
its motion for attorney's fees pursuant to 35 U.S.C. § 285.  This argument,
however, has no merit.  Because Roadie's motion for attorney's fees was filed after
the district court had granted Roadie's motion for judgment on the pleadings, the
presentation slides in question are not part of the record on appeal.

In its reply brief, Bags acknowledges that the presentation slides it now attempts to rely on were not discussed at the December 4, 2018 oral argument, complaining that the district court gave it little time to go through all of its slides. (Reply Br. at 14). Of course, the district court was under no obligation to hold oral argument on Roadie's motion, nor was the district court required to permit Bags to go through each one of its forty-five presentation slides at oral argument. Had Bags actually discussed the substance of those slides in its opposition brief or at oral argument, there would be no need for Bags to include the slides in the appendix, as Bags could simply cite to its brief or the hearing transcript – both of which are part of the record on appeal.

Just as with the use of demonstrative exhibits in a jury trial, it is up to counsel to ensure that material that is present only in its presentation slides are actually presented to the judge on the record. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 32 n.16 (Fed. Cir. 2012) ("When parties rely on demonstratives to present evidence or mathematical calculations to the jury, it is their burden to assure that the record captures the substance of the data so presented. We can not guess at what the jury saw."). It is not the role of the district judge to parse through materials that were not formally presented to the court to consider potential arguments that were not contained in the party's pleadings; nor is it this Court's role to guess as to what materials outside the record

9

the district court might have considered. *Pandrol USA, LP v. Airboss Railway Prod., Inc.*, 320 F.3d 1354, 1356 (Fed. Cir. 2003) ("There is no onus on the district court to distill any possible argument which could have been made based on the materials before the court. Presenting such arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court."); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("If a litigant seeks to show error in a trial court's overlooking an argument, it must first present that argument to the trial court."); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) ("If a party fails to raise an argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court, we may deem that argument waived on appeal.").

Presentation slides should not be a vehicle for flouting the local rules. If Bags' presentation slides were to be treated as part of the record on appeal, this would effectively afford non-movants the opportunity to unilaterally submit a sur-reply brief, with no restrictions on its contents or length, at the time of oral argument, simply by characterizing its sur-reply brief as "presentation slides," a "visual aid," or a "demonstrative exhibit" – all without leave of court, in contravention of the district court's local rules. Simply put, a PowerPoint is not a pleading. Accordingly, Bags' attempt to inject its presentation slides into the appendix must be rejected; Appx1227-1271 must be stricken.

## III. SECTION I.C OF BAGS' REPLY BRIEF SHOULD BE STRICKEN FOR RELYING ON THE PRESENTATION SLIDES

As evident from its title – "The 'Additional Limitations' Are Presented In Claim 7 And Were Included In Bags' 45-Slide Powerpoint Presentation" – Section I.C of Bags' reply brief is premised on its argument that it had not waived certain arguments on appeal because these arguments were referenced in its presentation slides. *See generally* Reply Br. at 14-19. Because the presentation slides are not properly part of the appendix for the reasons stated above, and because Section I.C of Bags' reply brief contains repeated and lengthy quotes from, and citations to, the presentation slides at issue, Section I.C of Bags' reply brief must be stricken in its entirety.

## MOVANT'S STATEMENT OF CONSENT OR OPPOSITION TO THE MOTION

Pursuant to Federal Circuit Rule 27(a)(5), counsel for Roadie discussed the present motion with counsel for Bags. Bags opposes the motion and will file a response.

# CONCLUSION

For all the foregoing reasons, Roadie respectfully requests that the Court

strike Appx1227-1271 from the Joint Appendix and Section I.C from Bags' Reply

Brief.

Date: June 18, 2019

<div style="text-align:right">

*/s/ Edward A. Pennington*

Edward A. Pennington
John P. Moy
Smith, Gambrell & Russell, LLP
1055 Thomas Jefferson St., NW
Suite 400
Washington, DC 20005
(202) 263-4300

*Attorneys for Appellee*
Roadie, Inc.

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system, which will send notice of such filing to all registered users.

Date: June 18, 2019

*/s/ Edward A. Pennington*
Edward A. Pennington
John P. Moy
Smith, Gambrell & Russell, LLP
1055 Thomas Jefferson St., NW
Suite 400
Washington, DC 20005
(202) 263-4300

*Attorneys for Appellee*
Roadie, Inc.

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P.

    27(d)(2)(A) because this brief contains 2,531 words, excluding the parts of

    the brief exempted by Fed. Cir. R. 27(d).

2.  This brief complies with the typeface requirements of Fed. R. App. P.

    32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because

    this brief has been prepared in a proportionately spaced typeface using

    Microsoft Word 2016 in 14-point Times New Roman font.

Date: June 18, 2019

_/s/ Edward A. Pennington_
Edward A. Pennington
John P. Moy
Smith, Gambrell & Russell, LLP
1055 Thomas Jefferson St., NW
Suite 400
Washington, DC 20005
(202) 263-4300

_Attorneys for Appellee_
Roadie, Inc.

# EXHIBIT A

**Moy, John**

| | |
|---|---|
| **From:** | Jessica M. Gonzalez <Jessica.Gonzalez@gray-robinson.com> |
| **Sent:** | Monday, March 11, 2019 3:16 PM |
| **To:** | Pennington, Edward; Moy, John |
| **Cc:** | Stefan V. Stein, B.C.S; Cole Carlson; William V. Stein |
| **Subject:** | Baggage Airline Guest Services, Inc. v. Roadie, Inc. (19-1511) - Designation of Materials |
| **Attachments:** | 2019-03-11 Designation of Materials.PDF |

---

**CAUTION:** This email is from an external source. Do not click links or attachments unless it's from a verified sender.

---

Counsel – Please see the attached for service.

No. 19-1511

# United States Court of Appeals
# for the Federal Circuit

---

Baggage Airline Guest Services, Inc.,

*Plaintiff-Appellant*

v.

Roadie, Inc.,

*Defendant-Appellee*

---

**Appeal From The United States District Court
For The District of Delaware
In Case No. 1:18-cv-00707-RGA, Judge Richard G. Andrews**

---

**APPENDIX**

---

Stefan V. Stein
Cole Y. Carlson
GrayRobinson, P.A.
401 E. Jackson Street
Suite 2700
Tampa, FL 33602
(813) 273-5000

*Attorneys for
Plaintiff-Appellant*

## DESIGNATION OF MATERIALS

| # | DOCUMENT | PAGES |
|---|---|---|
| 1 | Order Granting Motion for Judgment on the Pleadings | |
| 2 | Judgment Invalidating U.S. Patent No. 9,659,336 | |
| 3 | Memorandum Opinion - Motion for Judgment on the Pleadings | |
| 4 | U.S. Patent No. 9,659,336 | |
| 5 | Baggage Airline Guest Services, Inc. v. Roadie, Inc. Docket Sheet | |
| 6 | Roadie's Notice of Motion and Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) | |
| 7 | Bags' Response to Roadie's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) | |
| 8 | Roadie's Reply in Support of Its Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) | |
| 9 | Minute Entry for Proceedings Held on December 4, 2018 | |
| 10 | Transcript of Motion for Judgment on the Pleadings Hearing on December 4, 2018 | |
| 11 | U.S. Patent No. 9,659,336 Prosecution History | |

## STATEMENT OF THE ISSUES

1.      Whether the district court erred in granting Roadie's motion for judgment on the pleadings under Rule 12(c) by concluding that every claim of the patent-in-suit was directed to unpatentable subject matter under 35 U.S.C. § 101.

2.      Whether the district court erred in granting Roadie's motion for judgment on the pleadings under Rule 12(c) and allowing the case to be terminated without considering the evidence presented by Bags that establishes there are at least material factual disputes underlying the 35 U.S.C. § 101 inquiry that could not be resolved on a motion for judgment on the pleadings.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on <u>March 11, 2019</u> a true and correct copy of the foregoing

was furnished via electronic mail to: Edward A. Pennington (epennington@sgrlaw.com) and

John P. Moy (jmoy@sgrlaw.com).


                                        <u>/s/ Stefan V. Stein</u>
                                        STEFAN V. STEIN


# 13358901 v1


3

# EXHIBIT B

## Moy, John

| | |
|---|---|
| **From:** | Moy, John |
| **Sent:** | Tuesday, March 26, 2019 3:43 PM |
| **To:** | William V. Stein; Pennington, Edward |
| **Cc:** | Stefan V. Stein, B.C.S; Cole Carlson; Jessica M. Gonzalez; Pennington, John; Tzou, Darlene |
| **Subject:** | RE: Baggage Airline Guest Services, Inc. v. Roadie, Inc. (19-1511) - Designation of Materials |

William,

We do not have a counter-designation of additional materials to be included in the appendix.  Thanks.

John

**John P. Moy**
*Counsel*

---

**p** | 202-263-4337
**f** | 202-263-4318
**e** | jmoy@sgrlaw.com
1055 Thomas Jefferson Street, NW | Suite 400 | Washington, DC 20007
www.sgrlaw.com | My Bio | vCard



---

**From:** William V. Stein <William.Stein@gray-robinson.com>
**Sent:** Tuesday, March 26, 2019 10:39 AM
**To:** Pennington, Edward <epennington@sgrlaw.com>; Moy, John <jmoy@sgrlaw.com>
**Cc:** Stefan V. Stein, B.C.S <Stefan.Stein@gray-robinson.com>; Cole Carlson <Cole.Carlson@gray-robinson.com>; Jessica M. Gonzalez <Jessica.Gonzalez@gray-robinson.com>
**Subject:** RE: Baggage Airline Guest Services, Inc. v. Roadie, Inc. (19-1511) - Designation of Materials

| **CAUTION:** This email is from an external source. Do not click links or attachments unless it's from a verified sender. |
|---|

Counsel,

Does Roadie have a counter designation of materials?

Thank you,
William

**William V. Stein | Associate**
**G R A Y | R O B I N S O N**

1

401 East Jackson | Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | vCard

**Facebook** | **LinkedIn** | **Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**From:** Jessica M. Gonzalez
**Sent:** Monday, March 11, 2019 3:16 PM
**To:** epennington@sgrlaw.com; jmoy@sgrlaw.com
**Cc:** Stefan V. Stein, B.C.S; Cole Carlson; William V. Stein
**Subject:** Baggage Airline Guest Services, Inc. v. Roadie, Inc. (19-1511) - Designation of Materials

Counsel – Please see the attached for service.

# EXHIBIT C

## Moy, John

| | |
|---|---|
| **From:** | Moy, John |
| **Sent:** | Monday, June 10, 2019 2:35 PM |
| **To:** | Stefan V. Stein, B.C.S; Cole Carlson; William V. Stein; Jessica M. Gonzalez |
| **Cc:** | Pennington, Edward; Pennington, John; Tzou, Darlene |
| **Subject:** | Bags v. Roadie, No. 2019-1511 |
| | |
| **Importance:** | High |

Counsel,

The "Joint Appendix" you filed with the Federal Circuit today is improper and <u>must be withdrawn immediately</u>. Specifically, Appx1227-1271 of the "joint appendix" you filed today had not been designated by either party for inclusion in the joint appendix, nor were those pages included in the physical compilation you served on us on April 5, 2019, pursuant to Federal Circuit Rule 30(b)(4)(B). We did not, and do not, consent to the inclusion of these additional pages in the joint appendix. Please withdraw the filing immediately; otherwise, we will be forced to inform the Court of your impropriety.

John


**John P. Moy**
*Counsel*

---

**p** | 202-263-4337
**f** | 202-263-4318
**e** | jmoy@sgrlaw.com
1055 Thomas Jefferson Street, NW | Suite 400 | Washington, DC 20007
www.sgrlaw.com | My Bio | vCard



---

# EXHIBIT D

# Moy, John

| | |
|---|---|
| **From:** | William V. Stein <William.Stein@gray-robinson.com> |
| **Sent:** | Monday, June 10, 2019 3:21 PM |
| **To:** | Moy, John |
| **Cc:** | Pennington, Edward; Pennington, John; Tzou, Darlene; Stefan V. Stein, B.C.S; Cole Carlson; Jessica M. Gonzalez |
| **Subject:** | RE: Bags v. Roadie, No. 2019-1511 |

---

> **CAUTION: This email is from an external source. Do not click links or attachments unless it's from a verified sender.**

---

John,

We have been advised, by Shelly Gannon of GibsonMoore Appellate Services, LLC, that adding to the Joint Appendix is standard practice and Rule 30 confirms that. Thus, we will not be withdrawing and amending the Joint Appendix.

Thank you,
William


**From:** Moy, John [mailto:jmoy@sgrlaw.com]
**Sent:** Monday, June 10, 2019 2:35 PM
**To:** Stefan V. Stein, B.C.S; Cole Carlson; William V. Stein; Jessica M. Gonzalez
**Cc:** Pennington, Edward; Pennington, John; Tzou, Darlene
**Subject:** Bags v. Roadie, No. 2019-1511
**Importance:** High

**This message originated outside of GrayRobinson.**

---

Counsel,

The "Joint Appendix" you filed with the Federal Circuit today is improper and <u>must be withdrawn immediately</u>.  Specifically, Appx1227-1271 of the "joint appendix" you filed today had not been designated by either party for inclusion in the joint appendix, nor were those pages included in the physical compilation you served on us on April 5, 2019, pursuant to Federal Circuit Rule 30(b)(4)(B).  We did not, and do not, consent to the inclusion of these additional pages in the joint appendix.  Please withdraw the filing immediately; otherwise, we will be forced to inform the Court of your impropriety.

John



**John P. Moy**
*Counsel*

1

**p** | 202-263-4337
**f** | 202-263-4318
**e** | jmoy@sgrlaw.com
1055 Thomas Jefferson Street, NW | Suite 400 | Washington, DC 20007
www.sgrlaw.com | My Bio | vCard



---

Confidentiality Notice
This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

**William V. Stein | Associate**
**G R A Y | R O B I N S O N**

401 East Jackson | Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | vCard

**Facebook | LinkedIn | Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

# EXHIBIT H

NOTE: This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————

**BAGGAGE AIRLINE GUEST SERVICES, INC.,**
*Plaintiff-Appellant*

**v.**

**ROADIE, INC.,**
*Defendant-Appellee*

———————————

2019-1511

———————————

Appeal from the United States District Court for the District of Delaware in No. 1:18-cv-00707-RGA, Judge Richard G. Andrews.

———————————

**ON MOTION**

———————————

Before BRYSON, *Circuit Judge*.

## O R D E R

Before the court is Roadie, Inc.'s motion to strike 45 pages of presentation slides from the appendix (Appx1227–1271) and Section I.C. of Baggage Airline Guest Services, Inc.'s ("Bags") reply brief, which contains arguments concerning the slides. Bags did not file a response.

After a hearing, the district court granted Roadie's motion for judgment on the pleadings, concluding that all the patent claims asserted by Bags were directed to unpatentable subject matter. In its opening brief, Bags argues, among other things, that the district court erred by overlooking several limitations that demonstrated technological improvement. In its responsive brief, Roadie argues that Bags failed to present argument regarding a number of those limitations to the district court. In its reply brief, Bags attempts to counter that argument in part by pointing to a 45-page presentation that it had prepared for the hearing but it "only briefly argued because the district court requested that each party take no longer than 15 minutes to argue its case." Reply Br. at 14.

Appellate courts routinely limit the record on appeal to materials submitted to the district court at the time the judgment on appeal was entered. *See Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077–78 (9th Cir. 1988) (collecting cases); *see also* Fed. R. App. P. 10(a) (limiting the record on appeal to the original papers and exhibits filed in the district court).[*] Here, Roadie states without contradiction from Bags that the slides were not included or discussed in substance in its opposition brief before the district court and "were not discussed at the December 4, 2018 oral argument." Mot. at 9. Thus, based on the information made available to the court, it appears that the slides were not part of the record and may not be included in the appendix or discussed in the reply brief.

Accordingly,

---

[*] It is thus of no significance that the slides were later attached as an exhibit to Roadie's motion for attorney fees because that motion was filed after entry of the judgment on appeal and attorney fees are not at issue in this appeal.

IT IS ORDERED THAT:

The motion is granted to the extent that the court strikes Bags' reply brief (ECF No. 16) and the joint appendix (ECF No. 17).  Bags may file a corrected reply brief and a corrected joint appendix without reference to the slides within 14 days of the date of filing of this order.

FOR THE COURT

July 16, 2019                    /s/ Peter R. Marksteiner
Date                             Peter R. Marksteiner
                                 Clerk of Court

s32

# EXHIBIT I

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————

**BAGGAGE AIRLINE GUEST SERVICES, INC.,**
*Plaintiff-Appellant*

**v.**

**ROADIE, INC.,**
*Defendant-Appellee*

———————————

2019-1511

———————————

Appeal from the United States District Court for the District of Delaware in No. 1:18-cv-00707-RGA, Judge Richard G. Andrews.

———————————

**JUDGMENT**

———————————

STEFAN V. STEIN, Gray Robinson, PA, Tampa, FL, argued for plaintiff-appellant. Also represented by COLE CARLSON.

EDWARD A. PENNINGTON, Smith, Gambrell & Russell, LLP, Washington, DC, argued for defendant-appellee. Also represented by JOHN P. MOY.

———————————

THIS CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

PER CURIAM (MOORE, SCHALL, and TARANTO, *Circuit Judges*).

**AFFIRMED. See Fed. Cir. R. 36.**

ENTERED BY ORDER OF THE COURT

November 5, 2019                    /s/ Peter R. Marksteiner
Date                               Peter R. Marksteiner
                                   Clerk of Court

# EXHIBIT J

# 2019-1511

### In The

# United States Court Of Appeals

## For The Federal Circuit

## BAGGAGE AIRLINE GUEST SERVICES, INC.,

*Plaintiff – Appellant,*

## v.

## ROADIE, INC.,

*Defendant – Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE CASE NO. 1:18-CV-00707-RGA

———————————

## BRIEF OF APPELLANT

———————————

**Stefan V. Stein**
**Cole Y. Carlson**
**GRAYROBINSON, P.A.**
**401 E. Jackson Street**
**Suite 2700**
**Tampa, FL 33602**
**(813) 273-5000**

*Counsel for Appellant*

*Gibson*MOORE APPELLATE SERVICES, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

FORM 9. Certificate of Interest

Form 9
Rev. 10/17

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Baggage Airline Guest Services, Inc. v. Roadie, Inc.

Case No. 19-1511

## CERTIFICATE OF INTEREST

Counsel for the:

☐ (petitioner) ■ (appellant) ☐ (respondent) ☐ (appellee) ☐ (amicus) ☐ (name of party)

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| Baggage Airline Guest Services, Inc. | Baggage Airline Guest Services, Inc. | SP Plus Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court **(and who have not or will not enter an appearance in this case)** are:

GRAYROBINSON, P.A.: Mayanne Downs, Trace Jackson  (no longer with the firm), William V. Stein, and Jason  Zimmerman.

SMITH, KATZENSTEIN & JENKINS, LLP: Neal C. Belgam and Eve H. Ormerod.

i

FORM 9. Certificate of Interest

Form 9
Rev. 10/17

5.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b).  (The parties should attach continuation pages as necessary).

None.

| 2/28/2019 | /s/ Stefan V. Stein |
|---|---|
| Date | Signature of counsel |
| Please Note: All questions must be answered | Stefan V. Stein |
| | Printed name of counsel |
| cc: _____ | |

Reset Fields

# **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ................................................................... v

STATEMENT OF RELATED CASES ................................................... vii

STATEMENT OF JURISDICTION ......................................................... 1

STATEMENT OF ISSUES ...................................................................... 1

STATEMENT OF THE CASE ................................................................. 2

STATEMENT OF THE FACTS ............................................................... 2

    I.     The Problem In The Art: No Efficient Way For Continuous Communication Between A Passenger And A Delivery Person. ......... 2

    II.    Bags' Solution: A System That Allows A Passenger To Coordinate Its Baggage Delivery By Communicating With A Delivery Person. ................................................................................... 3

    III.   The '336 Patent Was Examined Both Before And After *Alice* .......... 11

SUMMARY OF THE ARGUMENT ...................................................... 14

ARGUMENT ......................................................................................... 15

    I.     Standard Of Review ...................................................................... 15

    II.    Legal Standards ............................................................................. 16

    III.   The Judgment Should Be Reversed Because The Claims Are Patent-Eligible Under 35 U.S.C. § 101 ............................................. 17

        A.    The Claims Are Not "Directed To" The Abstract Idea Of Coordinating And Monitoring Baggage Delivery ................... 18

            i.     The District Court Oversimplified Claim 7 .................... 19

ii. The Invention Improves The Existing Technology........22

iii. Claim 7 Does Not Raise Pre-emption Concerns ...........30

B. Allowing A Passenger To Directly Communicate With A
Delivery Person Is An Inventive Concept ................................32

IV. The District Court Erred In Making Factual Findings At The
Pleading Stage .....................................................................................38

CONCLUSION.......................................................................................................39

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
    134 S. Ct. 2347 (2014)........................................................................... *passim*

*Allstate Prop. & Cas. Ins. Co. v. Squires*,
    667 F.3d 388 (3d Cir. 2012) ...........................................................16

*Ancora Technologies, Inc. v. HTC America, Inc.*,
    F.3d 1343 (Fed. Cir. 2018) ...................................................... 28, 29

*Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ................................... 33, 36, 37, 38

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ............................................. *passim*

*CLS Bank Int'l v. Alice Corp. Pty.*,
    717 F.3d 1269 (Fed. Cir. 2013) ....................................................19

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018) ....................................................17

*Data Engine Technologies LLC v. Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018) .......................................... 15, 16, 18

*Diamond v. Diehr*,
    101 S. Ct. 1048 (1981)...................................................... 19, 20, 30

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ............................................. *passim*

*GT Nexus, Inc. v. Inttra, Inc.*,
    2015 WL 6747142 (N.D. Cal. Nov. 5, 2015)................................29

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ....................................................37

*Internet Patents Corp. v. Active Network, Inc.*,
F.3d 1243 (Fed. Cir. 2015) .......................................................18

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
132 S. Ct. 1289 (2012)........................................................... 16, 32

*Rapid Litigation Management Ltd. v. CellzDirect, Inc.*,
F.3d 1042 (Fed. Cir. 2016) .......................................................31

*Thales Visionix Inc. v. United States*,
850 F.3d 1343 (Fed. Cir. 2017) ................................................31

*Visual Memory LLC v. NVIDIA Corporation*,
867 F.3d 1253 (Fed. Cir. 2017) ................................................27

**Statutes**

28 U.S.C. § 1295 .........................................................................1

28 U.S.C. § 1331 .........................................................................1

28 U.S.C. § 1338(a) ....................................................................1

35 U.S.C. § 101 ................................................................. *passim*

**Rules**

Fed. R. App. P. 4(a)(1)................................................................1

Fed. R. Civ. P. 12(c)........................................................ 1, 2, 16

## <u>STATEMENT OF RELATED CASES</u>

No appeal in or from this civil action was previously before this or any other appellate court. Appellant's counsel is unaware of any case pending in this or any other court that will directly affect or be affected by this Court's decision in the pending appeal.

## **STATEMENT OF JURISDICTION**

This appeal arises from a final decision of the U.S. District Court for the District of Delaware. The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). The district court entered its order dismissing this case under Fed. R. Civ. P. 12(c) and held all claims of the patent-in-suit invalid under 35 U.S.C. § 101 on January 7, 2019. (Appx15). Baggage Airline Guest Services, Inc. timely filed its notice of appeal on February 5, 2019, within the 30-day period set by Fed. R. App. P. 4(a)(1). (Appx45). Thus, this Court has jurisdiction under 28 U.S.C. § 1295.

## **STATEMENT OF ISSUES**

1.    Whether the district court erred in granting Roadie's motion for judgment on the pleadings under Rule 12(c) by concluding that every claim of the patent-in-suit was directed to unpatentable subject matter under 35 U.S.C. § 101.

2.    Whether the district court erred in granting Roadie's motion for judgment on the pleadings under Rule 12(c) and allowing the case to be terminated without considering the evidence presented by Bags that establishes there are at least material factual disputes underlying the 35 U.S.C. § 101 inquiry that could not be resolved on a motion for judgment on the pleadings.

## STATEMENT OF THE CASE

Baggage Airline Guest Services, Inc. ("Bags") filed a patent infringement action against Roadie, Inc. ("Roadie") on August 24, 2017, asserting U.S. Patent No. 9,659,336 ("the '336 Patent"). (Appx37). On February 6, 2018, Roadie filed a Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) for Lack of Patentable Subject Matter Under 35 U.S.C. § 101, or Alternatively, for Failure to State a Claim of Infringement ("Section 101 Motion"). (Appx520-571).

On December 4, 2018, the district court held oral arguments regarding Roadie's Section 101 Motion. (Appx1096-1124). The district court ultimately agreed with Roadie's position and entered judgment in favor of Roadie, thus invalidating the '336 Patent. (Appx14). Bags timely appealed to this Court. (Appx45).

## STATEMENT OF THE FACTS

I. **The Problem In The Art**: No Efficient Way For Continuous Communication Between A Passenger And A Delivery Person.

Since the introduction of the airline industry, the troubles associated with losing one's baggage are well-known and burdensome. (Appx28 at 1:6-32). In most cases, when an airline misplaced a passenger's baggage, the passenger would be without its personal belongings for several days. The passenger would report the baggage missing, then leave an address and phone number where the baggage could be returned. (Appx28 at 1:10-2). Once the airline located the baggage and was able

to make contact with the passenger, it could then begin its return to the passenger's chosen destination, often taking several days. (Appx28 at 1:16-8). The actual delivery of the baggage to the passenger was typically accomplished via a subcontractor, such as a taxi service. (Appx28 at 1:20-2). As such, the subcontractor would call the passenger to schedule the delivery. (Appx28 at 1:23-5). This approach had logistical drawbacks.

Oftentimes, the actual delivery would be at a time when the passenger was not at the listed destination; for instance, the passenger's home. The "typical subcontractor [would] drop the baggage off at the front door, ring the doorbell, and leave; where the baggage could then be stolen." (Appx28 at 1:27-8). Or worse, "the [subcontractor] could simply keep the baggage and merely report the baggage as delivered. Thus, improved systems and methods for coordinating and monitoring baggage delivery [were] needed." (Appx28 at 1:28-32).

## II.  <u>Bags' Solution</u>: A System That Allows A Passenger To Coordinate Its Baggage Delivery By Communicating With A Delivery Person.

Bags developed a complex, computer-driven communication system that provides a passenger with the ability to coordinate[1] the delivery of its baggage by

---

[1] The communication system includes associating baggage with a particular delivery person, transmitting a pickup bags order to the delivery person from a dispatch location, receiving a message from the passenger to hold delivery, changing a location of the delivery, updating the timing of the delivery, waiving a passenger signature requirement, and reordering the totality of baggage deliveries associated with the delivery person.

communicating with a delivery person. (Appx33-35 at 12:31-16:17). Allowing the passenger to communicate with the delivery person solves the problems associated with the prior art by preventing stolen baggage because the passenger is able to intercept and coordinate all, some or none of the delivery variables. (Appx32 at 10:51-60). Thus, the delivery person delivers the baggage directly to the passenger as opposed to leaving the baggage at a vacant address. (*Id.*)

In addition, Bags developed a system to identify delivery driver information to the awaiting passenger. (*Id.* at 10:25-32.) The driver information may include a driver name, driver picture, driver email, and driver vehicle picture. (*Id.* at 10:25-7.) The purpose of this system is to confirm the delivery driver's identity upon arrival. (*Id.* at 10:29-32.)

Shown in Figure 1 is the architecture allowing the passenger to communicate with the delivery person via the implementation of a server, network, passenger computing device, and deliverer computing device.



FIG. 1

(Appx19).

The server can receive baggage information, transmit baggage information, manage bag drop offs, and log bag drop offs. (Appx29 at 3:20-2). The server includes a transceiver that can be used to receive and/or transmit information through a wired or wireless network. (*Id*. at 3:36-9.) The server also includes a processor, which can be in electrical communication with each of the components of the server, and can be used to run the application and to execute the instructions of the server's software. (*Id*. at 3:59-63.)

The passenger computing device can be configured to transmit and receive information to the server and deliverer computing device. (Appx30 at 5:64-6). The server, the deliverer computing device, and the passenger computing device can

5

communicate baggage information amongst each other. (*Id.* at 6:18-21.) Thus, the passenger computing device can receive and transmit baggage information to enable a passenger to interact remotely with delivery personnel. (*Id.* at 5:35-7.) Each of these components are connected by a network, which can be the Internet, a Wi-Fi network, etc. (Appx29 at 3:6-8.)

This communications scheme is best represented in Claim 7[2], which reads as follows:

7. A method of dispatching baggage, comprising:

receiving, through a transceiver of a server and after a piece of baggage has been transported to a destination, baggage information relating to the piece of baggage to be delivered to a passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination;

associating, by the processor of the server, the baggage information with a delivery person, wherein the delivery person is associated with delivery person information;

transmitting, through the transceiver, a pick up bags message to a deliverer computing device associated with the delivery person;

transmitting, through the transceiver, at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger;

---

[2] The '336 Patent further includes independent claims 1 and 13, directed to an apparatus and a computer-readable storage medium, respectively. The district court reasoned that "the identified claims (Claims 1, 7, and 13) are substantially similar such that Claim 7 is the representative claim for the apparatus and computer-readable storage medium." (Appx2 at n.1).

receiving, through the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using a passenger interface until a delayed delivery time wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport;

relaying, through the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and

reordering, by the processor of the server, other deliveries associated with the deliverer computing device given the delivery change.

(Appx34 at 13:30-67).

A significant feature of the invention is allowing the passenger to communicate with the delivery person, thus Figure 13 represents a flow diagram from the perspective of the passenger.



FIG. 13

(Appx26).

This process begins when the passenger reports its missing baggage information to a common carrier, such as an airline. (Appx32 at 9:26-7).The passenger provides information such as a proposed drop off address, a passenger name, passenger contact information, and a bag description. (*Id*. at 9:27-9.) Once the baggage is found, a passenger record and interface is created and sent to the passenger. (*Id*. at 9:41-2.) The interface is what the server presents to the passenger computing device and is essentially, what the passenger views on its smartphone or personal computer. (Appx29 at 3:13-8). This interface can enable the passenger to obtain and change

8

information regarding a prospective delivery. (Appx32 at 9:42-4). The passenger computing device can transmit the changes to the delivery information to the server. (*Id.* at 59-62.) The server can then transmit the changes to the deliverer computing device. (*Id.* at 9:62-3.) The deliverer computing device can display a notification, that changes to the baggage delivery have occurred. (*Id.* at 9:63-5.)

This is essentially one embodiment of what the passenger can view on a smartphone or personal computer. (*Id.* at 10:6-8.) The interface can be used to display delivery information and receive selections from the passenger. (*Id.* at 10:8-11.) The passenger interface can include delivery information, baggage information, a hold button, and a waive signature button. (*Id.* at 10:11-4.) Importantly, the passenger may employ the "selection to hold delivery" by selecting a hold button to indicate that she would like to delay the delivery until a later time. For example, if the passenger will not be home until 6:00 p.m., the passenger can select the hold button to delay the delivery time until after 6:00 p.m. (*Id.* at 10:51-5.) The passenger computing device can also display the delivery information, which includes information describing the delivery person such as a picture of the delivery person, a picture of the delivery person's vehicle, an estimated time of delivery, the proposed drop off address, the delivery status, and a map showing the current location of the baggage. (*Id.* at 9:49-55.)

Figure 14 represents a diagram of the passenger interface.



FIG. 14

(Appx14).

The driver information (lower left) in Figure 14 can include a driver picture, a driver name, a driver email, and a driver vehicle picture. (*Id*. at 10:25-7.) The driver information can be any information that can be used to identify the delivery person. (*Id*. at 10:27-9.) When the delivery person arrives at the passenger's location to drop off the baggage, the passenger can use the driver information to assure that the delivery person is who he represents himself to be. (*Id*. at 10:29-32.)

The baggage map (lower right) in Figure 14 can display a current location of the passenger's baggage. (*Id.* at 10:33-4.) The baggage information (middle right) can include a number of bags in delivery, a delivery method, additional requests, a time of baggage recovery, a time of baggage assignment to the delivery person, a latest delivery time, and a current status of the baggage. (*Id.* at 10:38-42.) The passenger interface can update the baggage information as the delivery person completes other deliveries. (*Id.* at 10:48-50.) The passenger can also select the waive signature button (upper middle) to indicate that the delivery person does not need to obtain a passenger signature in order to complete the delivery, i.e., the delivery person can leave the bags at the door. (*Id.* at 10:61-4.) Most importantly, the invention allows the passenger to be able to control delivery parameters, such as the delivery time, and obtain information to assure that the delivery person is who he represents himself to be. (Appx33 at 11:1-4.)

## III.  The '336 Patent Was Examined Both Before And After *Alice*

In a November 26, 2013 non-final office action, an examiner rejected Claim 7 of the '336 Patent under § 101 as being directed to non-patentable subject matter. (Appx951-971). On February 25, 2015, Claim 7 was amended to comply with the examiner's rejection. (Appx936-945). Amended Claim 7 is reproduced below:

7.  (Currently Amended) A method of dispatching baggage, comprising:

11

> receiving, <u>through a transceiver of a server,</u> baggage information <u>relating to a piece of baggage to be delivered to</u> ~~associated with~~ a passenger;
>
> associating<u>, by a processor of the server,</u> the baggage information with a delivery person, wherein the delivery person is associated with delivery person information;
>
> <u>transmitting, through the transceiver a pick up bags message to a deliverer computing device associated with the delivery person;</u> and
>
> transmitting<u>, through the transceiver,</u> at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger.

(Appx938).

As seen from this amendment to Claim 7, multiple limitations were added to comply with the examiner's § 101 rejections. Specifically, the addition of the server, processor, transceiver, and pick up bags message. Then, on May 9, 2014, the examiner withdrew its § 101 rejection against Claim 7. (Appx908-921). The withdrawal is reproduced below:

> Applicant's arguments, see arguments/remarks, filed 2/25/14, with respect to the 35 U.S.C. 101 rejection have been fully considered and are persuasive. The 35 U.S.C. 101 of claims 7-12 has been withdrawn.

(Appx919).

Of note, the '336 Patent was subject to three separate non-final office actions and two separate final office actions, thus necessitating a request for continued examination ("RCE"). (Appx869-872). After filing the RCE, the examiner rejected claims 1-20 based on *Alice*. (Appx830-845). The rejection is reproduced below:

> Claim[s]1-20 is/are rejected under 35 U.S.C. 101 because the claimed invention is directed to non-statutory subject matter because

the claimed invention is not directed to patent eligible subject matter. Based upon consideration of all of the relevant factors with respect to the claim as a whole, claim(s) 1-20 is/are determined to be directed to an abstract idea. The rationale for this determination is explained below: Examples of abstract ideas include fundamental economic practices; certain methods of organizing human activities; an idea of itself, and; mathematical relationships/formulas. Claims 1-20 include certain methods of organizing human activities.

Further, no element or combination of elements in the claim[s] is sufficient to ensure that the claim[s] amounts to significantly more than the abstract idea itself, for example, by including: improvements to another technology or technical field; improvements to the functioning of the computer itself, or; meaningful limitations beyond generally linking the use of an abstract idea to a particular technological environment. Claims 1-20 do not amount to significantly more than the abstract idea itself since they require no more than a generic computer to perform generic computer functions (e.g. updating and storing data) that are well-understood, routine and conventional activities previously known to the industry. See *Alice Corporation Pty. Ltd. v. CLS Bank International*.

(Appx832-833).

On April 16, 2015, Claim 7 was then amended to add the limitation of "selection to hold delivery." (Appx778-793). That limitation of amended Claim 7 is reproduced below:

receiving, through the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using a passenger interface until a delayed delivery time;

(Appx781).

In addition to the amendment, Bags argued that:

[c]laim 7 is directed to a process which includes "an act, or a series of acts or steps" being performed by a server (machine) or processor of a server (machine). For at least this reason, claim 7 is directed to statutory

subject matter. Additionally, the processor of the server reorders the deliveries upon receiving a selection to hold delivery. Thus, the delivery order is reduced to a different state of order. Furthermore, **the passenger sends a 'selection' to hold delivery. This very selection is then transformed into a communication signal to the server which causes the server to relay a delivery change to a deliverer computing device** and **reorder the deliveries**. Such acts include transformation of a selection to cause deliveries to change. Thus, in view of the amendments . . . claim 7 is statutory subject matter.

(Appx787) (emphasis added).

On June 24, 2015, the examiner withdrew the § 101 rejection. (Appx727-746).

The withdrawal is reproduced below:

Applicant's arguments, see arguments/remarks, filed 4/16/15, with respect to the 35 USC 101 rejection have been fully considered and are persuasive. The 35 USC 101 rejection of claims 1-20 has been withdrawn.

(Appx744).

## SUMMARY OF THE ARGUMENT

Claim 7 of the '336 Patent is patent-eligible under both steps of the *Alice* analysis. The claim is directed to the coordination and monitoring of baggage delivery, with an emphasis on a passenger being able to communicate with a delivery person to coordinate and alter all, some or none of the delivery variables of its baggage. A claim that covers only a specific application of an abstract idea cannot be said to be "directed to" the idea itself. The cornerstone case, *Alice*, stands for the proposition that its main objective is to prevent pre-emption of abstract ideas. This means that when a claim leaves significant uses of the abstract idea in the public

domain, it must pass the first step in *Alice*. The claim here uses a specific configuration of computers coupled with specific coordination efforts between the delivery person and the passenger to increase the efficiency of baggage delivery.

The second step in the *Alice* analysis is satisfied for a similar reason. The claim covers a specific, unconventional solution to the problems associated with the prior art in the industry. The claim requires a communication scheme between the passenger and delivery person. No existing baggage delivery monitoring/coordinating system provided a communication channel between the passenger and delivery person using the communication scheme as described in the invention and claims. As such, baggage delivery was often sporadic and sent to vacant addresses, allowing the baggage to be stolen.

At a minimum, this Court should vacate and remand because an underlying material fact exists as the district court did not address whether one of ordinary skill in the art would determine that the '336 Patent was well-understood, routine, and conventional at its inception.

## ARGUMENT

### I. Standard Of Review

The Federal Circuit reviews a district court's judgment on the pleadings under regional circuit law. *Data Engine Technologies LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018). "The Third Circuit reviews the grant of judgment on the

pleadings *de novo*, 'accept[ing] all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw[ing] all reasonable inferences in favor of the non-moving party.'" (*Id.*) (quoting *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012)). "Patent eligibility can be determined on the pleadings under Rule 12(c) when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law." *Data Engine Tech.*, 906 F.3d at 1007. "Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).

## II.    Legal Standards

The patent act allows "any new useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" to be patent eligible. 35 U.S.C. § 101. Exceptions to this list include "[l]aws of nature, natural phenomena, and abstract ideas." *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347, 2354 (2014). The Supreme Court recognized that "'[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" (*Id.*) (quoting *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1293 (2012)). "Thus, an invention is not rendered ineligible for patent simply because it involves an abstract idea." *Alice*, 134 S. Ct. at 2354.

The Supreme Court formulated a two-step test for examining patent eligibility under § 101. (*Id.* at 2354.) It "must first [be] determine[d] whether the claims at issue are directed to a patent-ineligible concept," such as laws of nature, natural phenomena, and abstract ideas. (*Id.* at 2355.) If the claims are not directed to a patent-ineligible concept under *Alice* step 1, the claims satisfy § 101 and there is no need to proceed to step two. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). However, if the claims are found to be "directed to" a patent-ineligible concept, *Alice* step two must be considered. *Alice*, 134 S. Ct. at 2355. In step two, the issue is whether the claims include an "'inventive concept' −*i.e.,* an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." (*Id.*)

## III. The Judgment Should Be Reversed Because The Claims Are Patent-Eligible Under 35 U.S.C. § 101

The claims solve the traditional problems associated with delivering lost baggage to a passenger. The claims do not computerize the abstract idea of "coordinating and monitoring baggage delivery" as enunciated by the district court. Rather, the claimed invention provides a unique and particular communication scheme that allows a passenger to selectively dictate the delivery variables, thus allowing the passenger to be present or in control of when the baggage is actually delivered.

## A. The Claims Are Not "Directed To" The Abstract Idea Of Coordinating And Monitoring Baggage Delivery

The claim here necessarily passes the first step of the *Alice* analysis because it is not directed to the district court's all-encompassing abstract idea of coordinating and monitoring baggage delivery. To the contrary, the claim is directed to a technology-based solution that implements technical components in a non-conventional way and thus, forms an improvement on the existing technology and the existing method of baggage delivery. The first step in *Alice* determines whether the claim is "directed to" patent-ineligible concepts. *Data Engine Technologies*, 906 F.3d at 1007. Step one is

> a meaningful one, i.e., that a substantial class of claims are *not* directed to a patent-ineligible concept. The "directed to" inquiry, therefore, cannot simply ask whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon.

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).

"[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" (*Id.*) (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1243, 1346 (Fed. Cir. 2015)) (emphasis added).

### i.    *The District Court Oversimplified Claim 7*

The district court oversimplified Claim 7 in its § 101 analysis by finding it

was directed to "the abstract idea of coordinating and monitoring baggage delivery."

(Appx7). The district court stated as follows:

> Claim 7 of the '336 patent is the independent method claim of the
> patent. The method embodies the basic concept of coordinating and
> monitoring baggage delivery. <u>Coordinating and monitoring baggage</u>
> <u>delivery is a well-known method of organizing human activity</u>. The
> steps of the method can be summarized as follows: (1) receiving
> baggage information (Appx31 at 7:29-36), (2) assigning the baggage
> delivery to a delivery person (*Id.* at 7:37-43), (3) informing the
> passenger that the baggage is on its way and who is delivering it (I*d*. at
> 7:44-47), (4) receiving a request to delay delivery (*Id.* at 7:48-60), (5)
> informing the delivery person of the change (*Id.* at 7:62-64), and (6)
> reordering the delivery person's delivery schedule. (*Id.* at 7:65-67).

(Appx7) (emphasis added).

The court's simplistic approach ignores the core limitations of the claim. The

claim was improperly determined to be directed to the abstract idea of "coordination

and monitoring of baggage delivery" only because the court viewed it at a basic

level. *See CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1298 (Fed. Cir. 2013),

*aff'd* 134 S. Ct. 2347 (2014); *see also Diamond v. Diehr*, 101 S. Ct. 1048, 1058 n.12

(1981). The court failed to consider the additional limitations present in Claim 7

which are defined throughout the specification. Being careful to not oversimplify

claims is particularly important because if the abstraction is "carried to its extreme,

[it] makes all inventions unpatentable because all inventions can be reduced to

19

underlying principles of nature which, once known, make their implementation obvious." *Enfish*, 822 F.3d at 1327 (quoting *Diehr*, 101 S. Ct. 1048 at 1058 n.12).

A claim chart is shown below to demonstrate the district court's simplistic approach in summarizing Claim 7. The left column shows the district court's interpretation of each element of Claim 7, while the right column shows each element of Claim 7.

| The District Court's Interpretation | Claim 7 Plain Language |
|---|---|
| receiving baggage information | receiving, through a transceiver of a server and after a piece of baggage has been transported to a destination, baggage information relating to the piece of baggage to be delivered to a passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination; |
| assigning the baggage delivery to a delivery person | associating, by the processor of the server, the baggage information with a delivery person, wherein the delivery person is associated with delivery person information; |
| N/A | transmitting, through the transceiver, a pick up bags message to a deliverer computing device associated with the delivery person; |
| informing the passenger that the baggage is on its way and who is delivering it | transmitting, through the transceiver, at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger; |
| receiving a request to delay delivery | receiving, through the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using a passenger interface until a delayed delivery time wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an |

20

| | approximate location or current location of the piece of baggage associated with the travel information wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport; |
|---|---|
| informing the delivery person of the change | relaying, through the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and |
| reordering the delivery person's delivery schedule | reordering, by the processor of the server, other deliveries associated with the deliverer computing device given the delivery change. |

Based on the table above, it is rather easy to see how the court concluded that the "claims here do not cite a particular way of communicating information to coordinate and monitor baggage delivery" in light of its summarization of Claim 7. (Appx8). However, as shown in the claim chart, Claim 7 includes specific limitations that plainly demonstrate the complexity of the communication scheme.

Describing the claims at such a high level of abstraction and untethered from the actual language of the claims as informed by the specification ensures that the abstract idea exceptions to § 101 will encompass the rule, as frowned upon in *Enfish*. *See Enfish*, 822 F.3d at 1327. For example, the court's interpretation of "receiving a request to delay delivery" overlooks a large amount of limitations in its corresponding element of Claim 7. Shown below are those limitations (emboldened and underlined) not included in the court's interpretation:

> receiving, **through the transceiver**, from the **passenger computing device** a selection to hold delivery of the piece of baggage **using a passenger interface until a delayed delivery time wherein the**

**passenger interface displays travel information of the passenger
including at least one of an airline name and an airport name** and **a
baggage map configured to display on the passenger computing
device an approximate location or current location of the piece of
baggage associated with the travel information wherein the
passenger interface is updated with changes in the approximate
location or the current location of the piece of baggage during
transport**

(Appx34 at 13:48-60) (emphasis added).

The court's interpretation overlooks nine limitations, *in this single element alone*.
Of course, "receiving a request to delay delivery" appears to be simple, but the
addition of the nine overlooked limitations provides a highly specific way of the
overall goal of communicating information to coordinate and monitor baggage
delivery. As such, the court's entire opinion rests on a faulty view of what the claim
encompasses.

### ii.     The Invention Improves The Existing Technology

Evaluating whether the claims involve a technological improvement is a key
inquiry under step one of the *Alice* analysis. *Enfish*, 822 F.3d 1336. Here, the '336
specification teaches the invention improves computer functionality as well as the
delivery methods in the baggage delivery industry. Without any evidence to the
contrary, the improvements are:

Coordinating delivery time: Using the passenger interface on the passenger's
computing device, the passenger may employ the "selection to hold delivery" by
selecting a hold button to indicate that she would like to delay the delivery until a

later time. For example, if the passenger will not be home until 6:00 p.m., the passenger has the option to select the hold button to delay the delivery time until after 6:00 p.m. (Appx32 at 10:51-5.) This is represented in a snippet of Figure 14:



(Appx27).

This improvement is included as a limitation in Claim 7, elements 5 and 6, represented below, respectively:

> receiving, through the transceiver, from the passenger computing device a **selection to hold delivery** of the piece of baggage using a passenger interface until a delayed delivery time wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport
>
> relaying, through the transceiver, a delivery change to the deliverer computing device responsive to the **selection to hold delivery** of the piece of baggage using the passenger interface

(Appx34 at 13:48-64).

More specifically, the selection to hold delivery option enables the passenger to obtain and change information regarding its prospective delivery. (Appx32 at 9:42-4). The passenger computing device can transmit the changes to the delivery information to the server. (*Id.* at 9:59-62.) The server can then transmit the changes

23

to the deliverer computing device. (*Id*. at 9:62-3.) The deliverer computing device can display a notification, that changes to the baggage delivery have occurred. (*Id*. at 9:63-5.)

In conjunction with <u>delivery person information</u>: The delivery person information information in Figure 14 can include a driver picture, a driver name, a driver email, and a driver vehicle picture. (*Id*. at 10:25-7.) This is represented in a snippet of Figure 14:



(Appx27).

This improvement is included as a limitation in Claim 7, elements 2 and 4, represented below, respectively:

> associating, by the processor of the server, the baggage information with a delivery person, wherein the delivery person is associated with **delivery person information**

> transmitting, through the transceiver, at least a portion of the baggage information and the **delivery person information** to a passenger computing device associated with the passenger

(Appx34 at 13:37-40, 13:44-47).

This driver information can be any information that can be used to identify the delivery person. (Appx32 at 10:27-9). Thus, when the delivery person arrives at the passenger's location to drop off the baggage, the passenger can use the driver information to assure that the delivery person is who he represents himself to be. (*Id.* at 10:29-32.)

In conjunction with <u>reordering the deliveries</u>: After the passenger selects the hold delivery option, the delivery time change can be transmitted to the server, which can then relay the change to the deliverer computing device. (*Id.* at 10:55-7.) "The server or deliverer computing device can reorder the deliveries to improve efficiency given the change to the delivery time." (*Id.* at 10:57-60.) This is represented in a snippet of Figure 13.



(Appx26).

This improvement is included as a limitation in Claim 7, element 7, represented below:

>    **reordering**, by the processor of the server, other deliveries associated
>    with the deliverer computing device given the delivery change.

(Appx34 at 13:65-7).

In conjunction with the <u>delivery time stamp</u>: At the time of completion of

the baggage delivery, the bag information can be time stamped. (Appx31 at 8:36-

37). If the delivery person is unable to deliver the baggage, the delivery person can

select the unable to deliver button to re-queue the baggage delivery for later. (*Id.* at

8:57-60.) This is represented in the bottommost portion of Figure 10.



FIG. 10

(Appx24).

This improvement is included as a limitation in dependent claim 12, represented below:

> The method of claim 7, further comprising receiving, via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a **delivery time stamp**.

(Appx34 at 14:16-20).

In contrast to the specification and claim language, the district court concluded that the "method disclosed in the patent claims . . . merely takes the traditional method of baggage delivery and executes it using generic and non-specific hardware and software." (Appx9). The court supports its conclusion by citing to the specification, *only twice*. Specifically, the specification "recognizes that coordinating and monitoring baggage delivery is a conventional business practice." (*Id.*) And the "specification states that the invention relates to improved systems and methods for coordinating and monitoring baggage delivery." (*Id.*) Why the court did not cite to the complete specification is unknown; however, it should have been considered because it provides a detailed explanation of the improvements in the technology, including the additional limitations not cited by the court in its interpretation of Claim 7. Thus, the court did not properly analyze whether the claim improves technology of coordinating and monitoring baggage delivery. *See Visual Memory LLC v. NVIDIA Corporation*, 867 F.3d 1253, 1259-60 (Fed. Cir. 2017) ("the specification discusses the advantages offered by the technological improvement,"

therefore supporting the concept that the "claims here are directed to a technological improvement.")

These additional limitations are focused on improving the baggage delivery technology. *See Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1347 (Fed. Cir. 2018) ("[w]e have several times held claims to pass muster under *Alice* step one when sufficiently focused on . . . improvements."). In *Ancora*, the Court found "the claimed advance is a concrete assignment of specific functions among a computer's components to improve [the technology]." Here, the numerous limitations in Claim 7 provide a concrete assignment of specific functions, in contrast to the district court's findings. The court's findings did not properly consider the improvements to the technology because its summarization was too simple and did not account for the additional limitations.

The *Ancora* Court also noted that the prosecution history is relevant in considering whether these improvements have been the reasons for allowance. (*Id.* at 1349.) During prosecution and after the *Alice* decision, Bags amended Claim 7 to overcome a § 101 rejection. Specifically, Bags argued that:

> [c]laim 7 is directed to a process which includes "an act, or a series of acts or steps" being performed by a server (machine) or processor of a server (machine). For at least this reason, claim 7 is directed to statutory subject matter. Additionally, the processor of the server reorders the deliveries upon receiving a selection to hold delivery. Thus, the delivery order is reduced to a different state of order. Furthermore, **the passenger sends a 'selection' to hold delivery. This very selection is then transformed into a communication signal to the server which**

> **causes the server to relay a delivery change to a deliverer computing device** and **reorder the deliveries**. Such acts include transformation of a selection to cause deliveries to change. Thus, in view of the amendments . . . claim 7 is statutory subject matter.

(Appx787) (emphasis added).

Using the server, to receive the selection to hold delivery, and then to process and transmit the delivery change to the delivery person's computing device is a concrete assignment of specific functions among a computer's components to improve the technology, as similarly found by the *Ancora* court. Importantly, the court did not reference the multiple times § 101 was overcome at the USPTO.

The court supported its finding by citing to *GT Nexus, Inc. v. Inttra, Inc.*, wherein the patents-in-suit disclosed an online system and method for buyers and sellers of international container transportation services. 2015 WL 6747142 (N.D. Cal. Nov. 5, 2015), *aff'd*, 669 F. App'x 562 (Fed. Cir. 2016); (Appx8-9). The court reasoned that since the invention of the '336 Patent relates to methods for coordinating and monitoring baggage delivery, it is similar to that in *GT Nexus*, where the court found that the shipping of goods is a conventional business practice long prevalent in our system of commerce. (*Id.*) The court justified its comparison to *GT Nexus* by stating that the "patent claims merely replace the phone calls used to track down baggage, arrange for delivery, and have it delivered to the passenger's destination." (Appx9). This conclusion necessarily fails to consider the additional limitations included in Claim 7.

29

The claim is more similar to the facts in *Diehr*, which recited a computer-implemented process for curing rubber in which temperature measurements were continually fed into the computer. 101 S. Ct. 1048, 1057 (1981). The Supreme Court found that "one does not need a 'computer' to cure natural or synthetic rubber, but if the computer use incorporated in the process patent significantly lessens the possibility of 'overcuring' or 'undercuring,' the process as a whole does not thereby become unpatentable subject matter. (*Id.*) Here, however, the district court found the invention was not similar to that in *Diehr* because *Diehr* "involved an improvement to the underlying method in addition to implementing technology to achieve the claims." (Appx8).

Here, using computer-related technology in a specific configuration lessens the possibility of delivering baggage to a passenger at an inconvenient time and location as well as lessening the possibility of the baggage being stolen. Furthermore, if every limitation in the claim was considered, the court would likely have found that the configuration improves the delivery baggage industry by configuring computer components in a specific way to allow the passenger to communicate a "selection to hold delivery" to a delivery person.

### iii. *Claim 7 Does Not Raise Pre-emption Concerns*

Pre-emption is "the concern that drives" § 101 analysis. *Alice*, 134 S. Ct. at 2354. Pre-emption is defined that allowing an abstract concept to be patent-eligible,

30

would in effect, monopolize the abstract idea itself, thus preventing further advances within that art. (*Id.* at 2354.) Here, Bags argued that, *inter alia*, the claim limitation "selection to hold delivery" avoided pre-emption concerns. (Appx9). However, the district court dismissed the argument and found that "this term merely implements the abstract idea of contacting a delivery person to change the delivery time using the generic server." (*Id.*) The court then explained that the "claim limitation neither narrows the invention to avoid preemption nor makes it directed to a non-abstract idea." (*Id.*) The Supreme Court has "repeatedly emphasized [the] . . . concern that patent law not inhibit further discovery by improperly tying up the future use of these building block of human ingenuity." *Alice*, 134 S. Ct. at 2354.

The additional limitations do not claim these "building blocks" of human ingenuity, rather they "integrate the building blocks into something more," thus they "remain eligible for the monopoly granted under our patent laws." *Alice*, 134 S. Ct. at 2354; *see Thales Visionix Inc. v. United States*, 850 F.3d 1343 (Fed. Cir. 2017) ("the inventors . . . did not claim the natural law itself, but a particular application of the natural discovery to create a new and improved way of preserving liver cells for later use.") (citing *Rapid Litigation Management Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1045 (Fed. Cir. 2016)). The claim does not pre-empt all methods of coordinating and monitoring baggage delivery; it only concerns the specific

implementation recited. Future inventors would likely improve the baggage delivery industry, thus here, pre-emption is not a concern.

Thus, the district court's finding is in error because the entire claim must be considered in a pre-emption analysis. *Mayo*, 132 S. Ct. at 1297 (asking "do the patent claims" add enough to avoid pre-emption concerns). As representative Claim 7 includes numerous limitations, in addition to "selection to hold delivery," the district court was bound to consider them collectively, in contrast to its actual finding.

## B.     Allowing A Passenger To Directly Communicate With A Delivery Person Is An Inventive Concept

Even if the Court finds that the invention is "directed to" an abstract idea under *Alice* step one, the invention includes an inventive concept.

The claim may still be eligible for patent protection if it contains "some inventive concept in the application of the abstract idea." *Enfish*, 822 F.3d at 1336. "A claim that recites an abstract idea must include 'additional features' to ensure 'that the claim is more than a drafting effort designed to monopolize the abstract idea.'" *Alice*, 134 S. Ct at 2357 (quoting *Mayo*, 132 S. Ct. at 1297). This second step is "a search for an inventive concept" and considers "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (emphasis added).

Most importantly, step two "is satisfied when the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). As *Bascom* instructs:

> The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.

*Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

Claim 7 includes an inventive concept - allowing a passenger to communicate with a delivery person to more efficiently associate its baggage with a delivery person and monitor and coordinate the baggage delivery. The method of Claim 7 begins by a passenger reporting its missing baggage to a common carrier, such as an airline. (Appx32 at 9:26-7). The passenger can then provide information such as a proposed drop off address. (*Id.* at 9:27-9.) After a server locates the missing baggage, the baggage is assigned to the passenger. (*Id.* at 9:35-40.) The server then creates a passenger record and interface for the passenger, which enables the passenger to obtain and change information regarding a prospective delivery of its missing baggage. (*Id.* at 9:41-4.) The server then transmits this capability to a passenger computing device and a deliverer computing device. (*Id.* at 9:44-8.) This transmission allows the passenger and deliverer to in effect, connect with each other.

The passenger computing device then receives information relating to the deliverer, such as his picture, mobile number, picture of his delivery vehicle, etc. (*Id.* at 9:50-3.) Other information the passenger receives is estimated time of delivery, the proposed drop off address, the delivery status, and a map showing the current location of the baggage. (*Id.* at 9:53-5.) The passenger can then alter the delivery information accordingly, wherein the delivery changes are transmitted to the deliverer computing device to inform the deliverer of such changes. (*Id.* at 9:59-62.) The altered delivery information may be due to the passenger desiring a new delivery time, such that the passenger is able to receive the delivery in-person, as opposed to the delivery occurring at a vacant address. (*Id.* at 10:51-5.) The passenger may also select a waive signature option, allowing the baggage to be dropped off at the vacant address. (*Id.* at 10:61-4)

As discussed in the previous sections, the ordered combination of Claim 7's steps achieves real-world benefits, and improves computer functionality toward improving the baggage delivery industry. The benefits and improvements are the result of the claimed invention and provide more than "well-understood, routine, [and] conventional activities previously known to the industry." *Berkheimer*, 881 F.3d at 1368.

Yet, the district court's analysis of *Alice* step two is limited in scope to three findings. First, Bags asserted that, in addition to "selection to hold delivery," an

inventive concept of the '336 Patent is that delivery of the baggage is guaranteed. (Appx575, Appx580). The court found the "alleged inventive step [to not be] captured in the claims," (Appx11) and thus, "[could not] make the claims patent-eligible." (*Id*.). However, the court did not consider dependent claim 12[3], which reads as follows:

> 12.  The method of claim 7, further comprising receiving, via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a **delivery time stamp**.

(Appx34 at 14:16-20) (emphasis added).

This limitation requires a delivery time stamp. (*Id*.) The specification states that "after the delivery person has delivered the baggage . . . the bag information can be time stamped." (Appx31 at 8:26-41). Without the passenger selecting the waive signature option, the delivery can only be time stamped when the passenger receives the delivery in-person, thereby signing the delivery as completed, whereupon the delivery is then time stamped. Thus, claim 12 as well as the specification provides support for Bags' assertion that the delivery is necessarily guaranteed.

Second, Bags argued that the computing devices are configured in a "certain way such that baggage information is communicated 'amongst each other to increase

---

[3] This dependent claim must be considered because Bags "advanced meaningful arguments regarding limitations found only in the dependent claims." *Berkheimer*, 881 F.3d at 1365.

the efficiency of missing baggage delivery, enhance passenger experience, and provide a record of baggage delivery.'" (Appx580) (quoting Appx30 at 6:21-3). The court rejected that argument and found that "[r]eciting generic computer functions and the use of generic computer elements to achieve a more efficient way of 'coordinating and monitoring baggage delivery' . . . does not make the claims patent-eligible." (Appx12).

As shown in the claim chart, the computing devices are configured in a specific way to increase efficiency of missing baggage delivery. The district court's rationale does not provide an explanation as to why or how the computing devices are generic. Even if each of the computing devices are common in the computer industry, the <u>combination</u> of those devices is not well-understood, routine, or conventional within the baggage delivery industry as enunciated in *Bascom*. As detailed in the specification,

> a typical subcontractor will drop the baggage off at the front door, ring the doorbell, and leave; where the baggage could then be stolen . . . [t]hus, improved systems and methods for coordinating and monitoring baggage delivery are needed.

(Appx28 at 1:26-32).

The addition of the fifth element in Claim 7 solved this problem by allowing the passenger to communicate to the delivery driver a "selection to hold delivery." Since Bags has evidenced that the term "selection to hold delivery" was not well-understood, routine, or conventional, it necessitates the conclusion that the

36

configuration of the computer functions was not well-understood, routine, or conventional within the baggage delivery industry. *See Bascom*, 827 F.3d at 1350 ("Filtering content on the Internet was already a known concept, and the patent describes how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content.") <u>The addition of the inventive concept is only workable by having a new configuration of computer components, even if the configuration is compiled of well-understood, routine, or conventional computer components before the implementation of the inventive concept.</u>

Third, Bags argued that the limitations (1) "selection to hold delivery," (2) communicating that request to the deliverer computing device, and (3) reordering the scheduled deliveries provide an inventive concept and that a factual dispute exists as to whether it was well-understood, routine or conventional at the time of the patent. The court rejected those arguments and found "these additional claim limitations are themselves abstract, and 'a simple instruction to apply an abstract idea on a computer,' cannot satisfy the requirement of an 'inventive concept.'" (*Id.* at 11.) (quoting *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015)). As explained earlier, the court did not base its finding on the relevant evidence in the specification and claims. Rather, the court viewed the terms as an abstract concept without referencing its combination with the other elements in Claim 7. *See Alice*, 134 S. Ct. at 2355 ("the elements of each claim both

individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application.") Thus, a factual dispute remains as to whether the claim limitation was a well-understood, routine, or conventional activity previously known to the industry as enunciated in *Bascom*.

## IV. The District Court Erred In Making Factual Findings At The Pleading Stage

The district court held as a matter of law that the term "selection to hold delivery" "merely recites the well-known method of sending a request to hold delivery for a later time." (Appx12). However, "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer*, 881 F.3d at 1368.

Here, Bags argued that the prosecution history indicates that there is a dispute as to whether the "selection to hold delivery" claim limitation was well-known, routine or conventional. (Appx577). The prosecution history distinguished this limitation because the prior art did not teach or suggest a passenger interface that allows a selection to provide a selection to hold delivery or a server to relay that delivery change related to the selection. (Appx790). The district court therefore erred because the record indicates that a significant factual dispute exists as to whether the claim limitation "selection to hold delivery" was well-understood, routine or conventional at the time of the invention.

38

Thus, at a minimum, this district court's judgment should be vacated and remanded to allow this fact question to be developed at a more proper stage of the litigation.

## <u>CONCLUSION</u>

For the reasons above, the Court should reverse or vacate and remand the invalidity judgment.

/s/ Stefan V. Stein
Stefan V. Stein
Cole Y. Carlson
GRAYROBINSON, P.A.
401 E. Jackson Street
Suite 2700
Tampa, FL 33602
(813) 273-5000

*Counsel for Appellant*

# **ADDENDUM**

# TABLE OF CONTENTS
## Addendum

Page:

**Memorandum Opinion**
    **filed January 7, 2019.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **Appx1**

**Order**
    **filed January 7, 2019.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **Appx14**

**Judgment**
    **filed January 7, 2019.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **Appx15**

**U.S. Patent No. 9,569,336**
    **dated May 23, 2017.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **Appx16**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BAGGAGE AIRLINE GUEST SERVICES, INC., | |
| Plaintiff; | Civil Action No. 18-707-RGA |
| v. | |
| ROADIE, INC., | |
| Defendant. | |

<u>MEMORANDUM OPINION</u>

Neal Belgam and Eve H. Ormerod, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, DE; Stefan V. Stein (argued), Mayanne Downs, Jason Zimmerman, and Cole Carlson, GRAY ROBINSON P.A., Orlando, FL, attorneys for Plaintiff.

Pilar G. Kraman, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Edward A. Pennington, John P. Moy (argued), John P. Pennington, and Darlene K Tzou, SMITH, GAMBRELL & RUSSELL LLP, Washington, DC, attorneys for Defendant.

January 7, 2019

*[signature]*

**ANDREWS, U.S. DISTRICT JUDGE:**

Currently pending before the Court is Defendant's Motion for Judgment on the

Pleadings. (D.I. 39). The parties have fully briefed the issues. (D.I. 39, 46, 107). The Court

heard oral argument on December 4, 2018. (D.I. 109). After considering the parties' briefing

and arguments, the Court GRANTS Defendant's Motion for judgment on the pleadings.

## I.    BACKGROUND

Plaintiff Baggage Airlines Guest Services, Inc. filed suit on August 24, 2017 against

Defendant Roadie, Inc. in the United States District Court for the Middle District of Florida.

(D.I. 1). Plaintiff's Complaint alleges that Defendant infringes U.S. Patent No. 9,659,336 ("the

'336 patent") both directly and indirectly by inducing or contributing to infringement by others.

(D.I. 1 ¶ 26). On May 9, 2018, the Florida court transferred the case to this Court. (D.I. 67).

The '336 patent "relates to an apparatus, method and system for dispatching baggage."

('336 patent, Abstract). The '336 patent has three independent claims: claim 1 is an apparatus

claim, claim 7 is a method claim, and claim 13 is "directed to a computer-readable storage

medium containing instructions for dispatching baggage." (D.I. 39 at 8). The language of these

claims is substantially similar. Claim 7 is representative[1] and reads as follows:

> 7. A method of dispatching baggage, comprising:
>
> receiving, through a transceiver of a server and after a piece of baggage has been
> transported to a destination, baggage information relating to the piece of baggage

---

[1] Plaintiff did not object in its answering brief to Defendant's assertion that Claim 7 was representative. At oral argument, Plaintiff stated that it did not "necessarily agree that Claim 7 is representative," but "all of [its] arguments apply equally to [claims] 1, 7, and 13." (D.I. 109 at 17:24-18:2). "Courts may treat a claim as representative . . . [where] the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Here, Plaintiff neither objected nor presented any argument that claim 1 or claim 13 has any "distinctive significance." The Court finds that the identified claims (Claim 1, 7, and 13) are substantially similar such that Claim 7 is the representative claim for the apparatus and computer-readable storage medium claims.

to be delivered to a passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination;

associating, by the processor of the server, the baggage information with a delivery person, wherein the delivery person is associated with delivery person information;

transmitting, through the transceiver, a pick up bags message to a deliverer computing device associated with the delivery persona;

transmitting, through the transceiver, at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger;

receiving, through the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using a passenger interface until a delayed delivery time wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport;

relaying, through the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and

reordering, by the processor of the server, other deliveries associated with the deliverer computing device given the delivery change.

('336 patent, cl. 7). On February 6, 2018, Defendant filed a Motion for Judgment on the Pleadings under Rule 12(c) for lack of patentable subject matter under 35 U.S.C. § 101 or, in the alternative, for failure to state a claim of infringement. (D.I. 39).

## II.    LEGAL STANDARD

### A.  Rule 12(c)

A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss when the Rule 12(c) motion alleges that the plaintiff failed to state a claim upon which relief can be granted. *See Turbe v. Gov't of the Virgin Islands*, 938 F.2d

2

427, 428 (3d Cir. 1991); *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). The court must

accept the factual allegations in the complaint and take them in the light most favorable to the non-

moving party. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S.

403, 406 (2002). "When there are well-ple[d] factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft

v. Iqbal*, 556 U.S. 662, 679 (2009). The court must "draw on its judicial experience and common

sense" to make the determination. *See id.* In ruling on a motion for judgment on the pleadings,

the court is generally limited to the pleadings. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251,

257 (3d Cir. 2004). The court may, however, consider documents incorporated into the pleadings

and those that are in the public record. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,

998 F.2d 1192, 1196 (3d Cir. 1993).

### B. 35 U.S.C. § 101

Section 101 of the Patent Act defines patent-eligible subject matter. It provides:

"Whoever invents or discovers any new and useful process, machine, manufacture, or

composition of matter, or any new and useful improvement thereof, may obtain a patent therefor,

subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court

has recognized an implicit exception for three categories of subject matter not eligible for

patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS

Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to protect the "basic

tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs.,

Inc.*, 132 S. Ct. 1289, 1293 (2012). "[A] process is not unpatentable simply because it contains a

law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical

formula to a known structure or process may well be deserving of patent protection." *Id.* at

3

1293–94 (cleaned up).  In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'"  *Id.* at 1294 (emphasis omitted).

The Supreme Court recently reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  *Alice*, 134 S. Ct. at 2355.  First, the court must determine whether the claims are drawn to a patent-ineligible concept.  *Id.*  If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Id.* (alteration in original).  "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]."  *Id.* at 2357.  Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment."  *Id.* at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)).  Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Id.*  For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law," and "is a matter of both claim construction and statutory construction."  *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010).  "Claim construction is a question of law . . . ."  *In re Nuijten*, 500 F.3d 1346, 1352 (Fed. Cir. 2007).  At

*Alice* step two, however, "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).

The Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks omitted).

## III.    DISCUSSION

### A.  Abstract Idea

"First, we determine whether the claims at issue are directed to [an abstract idea]." *Alice*, 134 S. Ct. at 2355. "The 'abstract ideas' category embodies 'the longstanding rule that an idea of itself is not patentable.'" *Id.* (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The Supreme Court has recognized, however, that "fundamental economic practice[s]," *Bilski*, 561 U.S. at 611, "method[s] of organizing human activity," *Alice*, 134 S. Ct. at 2356, and mathematical algorithms, *Benson*, 409 U.S. at 64, are abstract ideas. In navigating the parameters of such categories, courts have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. "[S]ome improvements in computer-related technology when appropriately claimed are undoubtedly not abstract." *Id.* at 1335. "[I]n determining whether the claims are directed to an abstract idea, we must be careful to avoid

5

oversimplifying the claims because '[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (alterations in original) (quoting *Alice*, 134 S. Ct. at 2354).

Defendant asserts that the independent claims of the '336 patent are directed to the abstract idea of "coordinating and monitoring baggage delivery." (D.I. 39 at 12). Plaintiff responds that the claims are a "technology-based solution that implements technical components in a non-conventional way." (D.I. 46 at 8-9). For the following reasons, I find that the claims of the '336 patent are directed to the abstract idea of "coordinating and monitoring baggage delivery."

Claim 7 of the '336 patent is the independent method claim of the patent. The method embodies the basic concept of coordinating and monitoring baggage delivery. Coordinating and monitoring baggage delivery is a well-known method of organizing human activity. The steps of the method can be summarized as follows: (1) receiving baggage information ('336 patent col 7:29-36), (2) assigning the baggage to a delivery person (*id.* col. 7:37-43), (3) informing the passenger that the baggage is on its way and who is delivering it (*id.* col. 7:44-47), (4) receiving a request to delay delivery (*id.* col. 7:48-60), (5) informing the delivery person of the change (*id.* col. 7:62-64), and (6) reordering the delivery person's delivery schedule. (*Id.* col. 7:65-67). These are basic steps of coordinating and monitoring delivery, a well-known method of organizing human activity.

Plaintiff argues the '336 patent claims are "directed to a 'new and useful technique' for performing a particular task" and therefore cannot be directed to an abstract idea. (D.I. 46 at 7). To support this assertion, Plaintiff points to several cases where the court held the patent claims

"improved an existing technological process" and were therefore non-abstract. *Alice*, 134 S. Ct. at 2358 (discussing the claims in *Diehr*); *Diamond v. Diehr*, 450 U.S. 175 (1981) (finding method for calculating optimal cure time for rubber patent-eligible); *Thales Visionix Inc. v. United States*, 850 F.3d 1343 (Fed. Cir. 2017) (finding claims using sensors to more efficiently track an object on a moving platform patent-eligible). However, these cases each involved an improvement to the underlying method in addition to implementing technology to achieve the claims. At oral argument, Plaintiff pointed to *Genedics, LLC v. Meta Co.*, 2018 WL 3991474 (D. Del. Aug. 21, 2018) as a case representing the proper way to conduct the § 101 inquiry. (D.I. 109 at 21:16-24). In *Genedics*, the court declined to determine whether claims reciting a method of manipulating an image through a three-dimensional user interface were directed to the abstract idea of "human manipulation of three-dimensional objects." *Id.* at *8. The court there, however, found that the claims "do seem to make a point to refer to what looks, on its face, to be a *particular* way of using sensors to determine a user's touch point and/or sense interaction with 3-D objects." *Id.* at *7. In contrast, the claims here do not cite a particular way of communicating information to coordinate and monitor baggage delivery.[2]

Rather, the claims of the '336 patent are far more similar to those in *GT Nexus, Inc. v. Inttra, Inc.* where the patents-in-suit disclosed an online system and method for buyers and sellers of international container transportation services. 2015 WL 6747142 (N.D. Cal. Nov. 5, 2015), *aff'd*, 669 F. App'x 562 (Fed. Cir. 2016) (per curiam). There, the court found that "the shipping of goods is a conventional business practice 'long prevalent in our system of

---

[2] Further, the technologies differ greatly between *Genedics* and the claims here. The technology in *Genedics* appears directed to improvement in computer technology for holographic user interface display systems. 2018 WL 3991471, at *8. Here, as the patent clearly states, the goal is not improvement in computer technology, but improvement in baggage delivery. ('336 patent col. 1:30-32).

commerce.'" *Id.* at \*5 (quoting *Alice*, 134 S. Ct. at 2350). The patent claims also "describe[d] user and carrier computers connected to a 'common carrier system,' itself comprised of servers and databases" with non-specific hardware. *GT Nexus*, 2015 WL 6747142 at \*5. Here, the specification recognizes that coordinating and monitoring baggage delivery is a conventional business practice. ('336 patent col 1:10-30). The specification states that the invention relates to "improved systems and methods for coordinating and monitoring baggage delivery." (*Id.* col. 1:30-32). The method disclosed in the patent claims, however, merely takes the traditional method of baggage delivery and executes it using generic and non-specific hardware and software. (*Id.* col. 3:6-19, 3:24-42, 3:50-64, 4:6-16, 5:41-51). Moreover, the use of generic and non-specific hardware to communicate information between different computing devices to coordinate a task, like in *GT Nexus*, is not sufficient to make the patent claims directed to a non-abstract idea. The patent claims merely replace the phone calls used to track down baggage, arrange for delivery, and have it delivered to the passenger's destination. (D.I. 109 at 18:9-13).

At oral argument, Plaintiff also asserted that the claims were specific and limited enough to avoid *Alice*'s concern of preemption. Plaintiff specifically pointed to the inclusion of the "selection to hold delivery" claim limitation as avoiding preemption and directed to a non-abstract idea as an improvement upon the prior art. Plaintiff and Defendant dispute the construction of the term "selection to hold delivery" as used in the claims. (D.I. 66-1 at 2). For the purposes of this motion, I will adopt Plaintiff's proposed construction: "sending a communication to the deliverer via the server to change the delivery time." (*Id.*). Even using this construction, however, this term merely implements the abstract idea of contacting a delivery person to change the delivery time using the generic server. This claim limitation neither narrows the invention to avoid preemption nor makes it directed to a non-abstract idea.

8

**Appx9**

Therefore, the Court determines that the claims of the '336 patent are directed to the abstract idea of "coordinating and monitoring baggage delivery."

## B. Inventive Concept

The determination that a patent is directed to an abstract idea "does not render the subject matter ineligible." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). Having decided that the '336 patent claims are directed to an abstract idea, the Court must next "determine whether the claims do significantly more than simply describe the abstract method." *Ultramercial*, 772 F.3d at 715. Since "a known idea, or one that is routine and conventional, is not inventive in patent terms," this analysis "favors inquiries analogous to those undertaken for determination of patentable invention." *Internet Patents*, 790 F.3d at 1346. Indeed, the Federal Circuit has noted that the two stages of the *Alice* two-step inquiry "are plainly related" and "involve overlapping scrutiny of the content of the claims . . . ." *Elec. Power Grp.*, 830 F.3d at 1353. Furthermore, neither "[a] simple instruction to apply an abstract idea on a computer," nor "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" satisfies the requirement of an "inventive concept." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015); *see also Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter.").

Plaintiff argues that the '336 contains several inventive concepts which make the claims patent-eligible. (D.I. 46 at 9). Defendant asserts that there is no inventive concept that saves the patent because the claims solely recite the use of conventional and generic computer elements to

9

implement the claims. (D.I. 39 at 17-18). For the following reasons, I find that the '336 patent does not contain an inventive concept.

**First**, Plaintiff points to the specification's statement that an advantage of the invention is that delivery of the baggage is guaranteed as an inventive concept. (D.I. 46 at 5, 9). Defendants note that delivery of baggage is not a requirement of the claims. (D.I. 107 at 10). Defendants are correct. The claims at no point require delivery of the baggage to occur, much less that the delivery is guaranteed by the claimed method. ('336 patent cl. 1, 7, 13). While the specification does discuss this improvement, the focus of the § 101 inquiry is the claims. *See Berkheimer*, 881 F.3d at 1369 ("The improvements in the specification, to the *extent they are captured in the claims*, create a factual dispute regarding whether the invention described well-understood, routine, and conventional activities."). As this alleged inventive concept is not captured in the claims, it cannot make the claims patent-eligible.

**Second**, Plaintiff argues that the configuration of the computing devices "in a certain way such that baggage information is communicated 'amongst each other to increase the efficiency of missing baggage delivery, enhance passenger experience, and provide a record of baggage delivery'" satisfies the inventive concept requirement. (D.I. 46 at 9 (quoting '336 patent col. 6:21-23)). This is contrary to law. As the Federal Circuit has recognized repeatedly, "[i]nstructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible." *Intellectual Ventures I*, 792 F.3d at 1368 (Fed. Cir. 2015); *Bancorp,* 687 F.3d at 1278 (appending generic computer components does not "salvage an otherwise patent-ineligible process"). Like in *GT Nexus*, Claim 7 "recites generic computer components, i.e., 'servers' and [transceivers,] which are configured to perform 'purely conventional' computer functions, i.e., to 'receive,' []

10

**Appx11**

and 'transmit' information." 2015 WL 6747142, at *7. Reciting generic computer functions and the use of generic computer elements to achieve a more efficient way of "coordinating and monitoring baggage delivery" therefore does not make the claims patent-eligible.

      **Finally**, Plaintiff points to the final three claim limitations requiring receipt of a "selection to hold delivery," communicating that request to the deliverer computing device, and reordering the scheduled deliveries as providing an inventive concept. (D.I. 46 at 6). However, "[a]dding routine additional steps . . . does not transform an otherwise abstract idea into patent-eligible subject matter." *Ultramercial*, 772 F.3d at 716. Plaintiff argues that the prosecution history indicates that there is a dispute as to whether the "selection to hold" claim limitation was well-known, routine or conventional. (D.I. 46 at 6). The prosecution history distinguished this limitation because the prior art did not "teach or suggest a *passenger interface* that allows a selection to provide 'a selection to hold delivery' or a server to "relay . . . a delivery change related to the selection." (D.I. 46, Ex. A at 4/16/15 Office Action Response at 13). Even taking this in the light most favorable to Plaintiff, as I am required to do, this does not indicate that the "selection to hold" claim limitation was unconventional. "Sending a communication to the deliverer via the server to change the delivery time" merely recites the well-known method of "sending a request to hold delivery for a later time" but on a generic computer device: the server. Nor is there anything in the patent to support an inference that these limitations are more than the well-understood, routine, or conventional idea of requesting an alternate delivery time using generic computer technology. Moreover, as discussed above, these additional claim limitations are themselves abstract, and "[a] simple instruction to apply an abstract idea on a computer," cannot satisfy the requirement of an "inventive concept." *Intellectual Ventures I*, 792 F.3d at

**Appx12**

1367. Thus, viewed separately or as an ordered combination, the claim elements do not recite an inventive concept, and cannot transform the abstract idea into a patent-eligible application.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Judgment on the Pleadings.[3]  An accompanying order will be entered.

---

[3] Because I have found that the '336 patent claims are directed to ineligible subject matter, I decline to consider whether the Complaint fails to state a claim of infringement.

12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BAGGAGE AIRLINES GUEST SERVICES,
INC.,

        Plaintiff,

    v.

ROADIE, INC.,

        Defendant.

Civil Action No. 18-707-RGA

<u>ORDER</u>

For the reasons set forth in the accompanying Memorandum Opinion, IT IS HEREBY

ORDERED that Defendant's Motion for Judgment on the Pleadings (D.I. 39) is **GRANTED**.

Entered this _7_ day of January, 2019.

_____
United States District Judge

**Appx14**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BAGGAGE AIRLINES GUEST SERVICES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 18-707-RGA |
| | : | |
| ROADIE, INC., | : | |
| | : | |
| Defendant. | : | |

## JUDGMENT

For reasons set forth in the Court's Memorandum Opinion and Order dated

January 7, 2019 (D.I. 115; D.I. 116);

IT IS ORDERED AND ADJUDGED that judgment be and is hereby entered in favor of

Defendant and against Plaintiff.


_____
United States District Judge


Dated: 1/7/2019

_____
(By) Deputy Clerk


**Appx15**



US009659336B2

(12) **United States Patent**

Mateer

(10) Patent No.: **US 9,659,336 B2**

(45) Date of Patent: **May 23, 2017**

(54) **MOBILE BAGGAGE DISPATCH SYSTEM AND METHOD**

(75) Inventor: **Craig Mateer**, Orlando, FL (US)

(73) Assignee: **BAGS, INC.**, Orlando, FL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **13/443,640**

(22) Filed: **Apr. 10, 2012**

(65) **Prior Publication Data**

US 2013/0268454 A1    Oct. 10, 2013

(51) **Int. Cl.**
    *G06Q 50/28*    (2012.01)
    *G06Q 10/08*    (2012.01)

(52) **U.S. Cl.**
    CPC ............ *G06Q 50/28* (2013.01); *G06Q 10/08* (2013.01); *G06Q 10/083* (2013.01)

(58) **Field of Classification Search**
    CPC ................................. G06Q 10/0833
    USPC ........ 705/333, 26.62; 340/539.13; 455/422.1
    See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,711,994 A | 12/1987 | Greenberg |
| 4,984,156 A | 1/1991 | Mekata |
| 5,322,473 A | 6/1994 | Hofstra et al. |
| 5,401,944 A | 3/1995 | Bravman et al. |
| 5,793,639 A | 8/1998 | Yamazaki |
| 5,835,376 A | 11/1998 | Smith et al. |
| 5,866,888 A * | 2/1999 | Bravman et al. ............ 235/375 |
| 5,914,671 A | 6/1999 | Tuttle |

| | | |
|---|---|---|
| 6,044,353 A | 3/2000 | Pugliese, III |
| 6,119,096 A | 9/2000 | Mann et al. |
| 6,127,917 A | 10/2000 | Tuttle |
| 6,430,496 B1 | 8/2002 | Smith et al. |
| 6,509,829 B1 | 1/2003 | Tuttle |
| 6,512,964 B1 | 1/2003 | Quackenbush et al. |
| 6,542,081 B2 | 4/2003 | Torch |
| 6,544,173 B2 | 4/2003 | West et al. |
| 6,544,174 B2 | 4/2003 | West et al. |
| 6,594,547 B2 | 7/2003 | Manabe et al. |
| 6,616,606 B1 | 9/2003 | Petersen et al. |
| 6,662,078 B1 | 12/2003 | Hardgrave et al. |
| 6,694,248 B2 | 2/2004 | Smith et al. |
| 6,696,954 B2 | 2/2004 | Chung |
| 6,703,935 B1 | 3/2004 | Chung et al. |
| 6,711,463 B2 | 3/2004 | Tozuka et al. |
| 6,720,874 B2 | 4/2004 | Fufido et al. |
| 6,807,458 B2 | 10/2004 | Quackenbush et al. |
| 6,816,762 B2 | 11/2004 | Hensey et al. |
| 6,845,293 B1 * | 1/2005 | Ananda ........................ 700/226 |

(Continued)

OTHER PUBLICATIONS

Airportbags Plus News Archives, "Welcome to Plus", Sep. 12, 2012 (17 pages).

(Continued)

*Primary Examiner* — Akiba Allen

(74) *Attorney, Agent, or Firm* — Terry M. Sanks, Esq.; Beusse Wolter Sanks & Maire, PLLC

(57) **ABSTRACT**

The disclosure relates to an apparatus, method and system for dispatching baggage. The apparatus includes a processor configured to receive baggage information associated with a passenger; associate the baggage information with a delivery person, where the delivery person is associated with delivery person information; and transmit at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger.

**20 Claims, 9 Drawing Sheets**



US 9,659,336 B2

Page 2

## (56) References Cited

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,870,477 B2 | 3/2005 | Gruteser et al. | |
| 6,892,066 B2 | 5/2005 | Detweiler et al. | |
| 6,943,688 B2 | 9/2005 | Chung et al. | |
| 6,960,715 B2 | 11/2005 | Riopelle | |
| 6,988,989 B2 | 1/2006 | Weiner et al. | |
| 6,990,491 B2 | 1/2006 | Dutta et al. | |
| 7,027,773 B1 | 4/2006 | McMillin | |
| 7,030,732 B2 | 4/2006 | Tuttle | |
| 7,040,541 B2 | 5/2006 | Swartz et al. | |
| 7,044,371 B2 * | 5/2006 | Dove et al. | 235/384 |
| 7,079,921 B2 | 7/2006 | Quackenbush et al. | |
| 7,096,089 B2 | 8/2006 | Quackenbush et al. | |
| 7,113,864 B2 | 9/2006 | Smith et al. | |
| 7,117,121 B2 | 10/2006 | Brinton et al. | |
| 7,149,533 B2 | 12/2006 | Laird et al. | |
| 7,221,928 B2 | 5/2007 | Laird et al. | |
| 7,319,321 B2 | 1/2008 | Murray et al. | |
| 7,327,262 B2 | 2/2008 | Motteram et al. | |
| 7,327,268 B2 | 2/2008 | Gruteser et al. | |
| 7,343,243 B2 | 3/2008 | Smith et al. | |
| 7,376,623 B2 | 5/2008 | Dutta et al. | |
| 7,378,975 B1 | 5/2008 | Smith et al. | |
| 7,390,299 B2 | 6/2008 | Weiner et al. | |
| 7,403,844 B2 | 7/2008 | Chopcinski et al. | |
| 7,439,694 B2 | 10/2008 | Atlas et al. | |
| 7,447,562 B2 | 11/2008 | Quackenbush et al. | |
| 7,477,153 B2 | 1/2009 | Laird et al. | |
| 7,480,622 B2 | 1/2009 | Dutta et al. | |
| 7,488,294 B2 | 2/2009 | Torch | |
| 7,523,385 B2 | 4/2009 | Nguyen et al. | |
| 7,570,151 B2 | 8/2009 | Tuttle | |
| 7,573,257 B2 | 8/2009 | Li et al. | |
| 7,599,847 B2 | 10/2009 | Block et al. | |
| 7,653,394 B2 | 1/2010 | McMillin | |
| 7,658,247 B2 | 2/2010 | Carter | |
| 7,840,427 B2 | 11/2010 | O'Sullivan | |
| 7,890,358 B2 | 2/2011 | Dutta et al. | |
| 7,978,066 B2 | 7/2011 | Lim et al. | |
| 8,046,160 B2 | 10/2011 | Carter et al. | |
| 8,571,902 B1 | 10/2013 | Chung | |
| 2001/0034623 A1 | 10/2001 | Chung | |
| 2002/0095318 A1 | 7/2002 | Parry | |
| 2003/0055689 A1 | 3/2003 | Block et al. | |
| 2003/0061085 A1 | 3/2003 | Lanigan, Sr. | |
| 2003/0189094 A1 | 10/2003 | Trabitz | |
| 2004/0035928 A1 | 2/2004 | Anderson | |
| 2004/0056779 A1 | 3/2004 | Rast | |
| 2004/0066273 A1 | 4/2004 | Cortina et al. | |
| 2004/0117278 A1 | 6/2004 | Dutta et al. | |
| 2004/0181570 A1 * | 9/2004 | Kaneko | 709/200 |
| 2004/0220845 A1 * | 11/2004 | Malapitan | 705/8 |
| 2004/0250076 A1 | 12/2004 | Kung | |
| 2005/0083171 A1 | 4/2005 | Hamilton | |
| 2005/0096946 A1 | 5/2005 | Janakiraman et al. | |
| 2005/0159838 A1 | 7/2005 | Quackenbush et al. | |
| 2005/0197848 A1 | 9/2005 | Chou et al. | |
| 2005/0212657 A1 | 9/2005 | Simon | |
| 2005/0251430 A1 | 11/2005 | Jindel | |
| 2005/0258231 A1 | 11/2005 | Wiater | |
| 2005/0269404 A1 | 12/2005 | Landwirth et al. | |
| 2006/0026871 A1 | 2/2006 | Alexander et al. | |
| 2006/0032417 A1 | 2/2006 | Raheman | |
| 2006/0145852 A1 | 7/2006 | McElhannon et al. | |
| 2006/0197523 A1 | 9/2006 | Palecki et al. | |
| 2006/0235739 A1 * | 10/2006 | Levis et al. | 705/9 |
| 2006/0249320 A1 | 11/2006 | Carter et al. | |
| 2006/0271552 A1 | 11/2006 | McChesney et al. | |
| 2007/0038476 A1 | 2/2007 | Sternlicht | |
| 2007/0176730 A1 | 8/2007 | Raheman | |
| 2007/0203765 A1 * | 8/2007 | Schoen et al. | 705/6 |
| 2007/0273611 A1 | 11/2007 | Torch | |
| 2007/0290848 A1 | 12/2007 | Tuttle | |
| 2007/0290849 A1 | 12/2007 | Tuttle | |
| 2007/0290879 A1 | 12/2007 | Tuttle | |
| 2008/0041282 A1 | 2/2008 | Goschy et al. | |
| 2008/0046298 A1 | 2/2008 | Ben-Yehuda et al. | |
| 2008/0070771 A1 * | 3/2008 | Campbell, Jr. | 493/186 |
| 2008/0228562 A1 | 9/2008 | Smith et al. | |
| 2009/0066476 A1 | 3/2009 | Raheman | |
| 2009/0115572 A1 * | 5/2009 | Valbh et al. | 340/7.58 |
| 2009/0164261 A1 | 6/2009 | Mateer | |
| 2010/0156606 A1 | 6/2010 | Gold | |
| 2010/0205105 A1 * | 8/2010 | Robertson et al. | 705/334 |
| 2010/0223245 A1 | 9/2010 | Vermilye | |
| 2010/0318783 A1 | 12/2010 | Raj et al. | |
| 2012/0030133 A1 | 2/2012 | Rademaker | |

### OTHER PUBLICATIONS

Cisco Systems, White Paper, "Wi-Fi Based Real-Time Location Tracking: Solutions and Technology," 2006, (6 pages).

Concourse Communications Group, LLC, "The WiFi-enabled Airport," 2004, (4 pages).

Cox, John, "RFID, Radio Location Service Use Soaring at Hospitals," PC World website, Aug. 20, 2008 (printed Oct. 12, 2012), http://www.pcworld.com/article/150075/rfid__in__hospitals.html, (3 pages).

IBSS Press Release, "IBSS and Prospect Airport Services' PDS Express Improves Efficiency While Increasing the Customer Satisfaction of Airline Travelers in Detroit Metropolitan Airport: Greatly Improved Passenger Service Is Enjoyed by 'Special Needs' Travelers Being Serviced Each Day. First Year's Success in Detroit Leads to Multi-Site Expansion," (printed Oct. 12, 2012), http://www.ibss.net/cgi-bin/news/20050308, (2 pages).

IBSS Press Release, "IBSS and Prospect Airport Services' PDS Express Selected by America West Airlines for Las Vegas, McCarran International Airport: The Nation's Second Largest Low-Cost Carriers 'Special Needs' Travelers to Enjoy Improved Passenger Service Via Synapse™-Based System," (printed Oct. 12, 2012), http://www.ibss.net/cgi-bin/news?20050719, (1 page).

IBSS Press Release, "IBSS Introduces SynTrack™ Mobile Dispatch and Transport for Healthcare. Showcased at AHRMM Technology Conference, System Empowers Hospitals to Increase Efficiency and Patient Throughput While Improving the Quality of Patient Care," (printed Oct. 12, 2012), http://www.ibss.net/cgi-bin/news?200603211, (2 pages).

USAToday.com, "Las Vegas airport offering free Wi-Fi Internet Connections," Posted Jan. 4, 2005 (printed Oct. 12, 2012), http://usatoday30.usatoday.com/tech/wireless/data/2005-01-04-vegas-wifi__x.htm, (2 pages).

International Search Report and Written Opinion issued in Application No. PCT/US13/35765 mailed Aug. 26, 2013 (6 pages).

Driscoll, Louise, "Remote Check-in-driving NewTrends," Jun. 2009.

Taylor, "Hotel Min-Bars Provide Instant Room Service," Sep. 20, 1987 Los Angeles Times.

Weisel, "How Secure is Your Hotel Safe," Mar. 1999 Travel and Leisure Magazine.

Trip Advisor, McCaran Airport Hotel Check-in Service (MGM) Jun. 28, 2008.

Business Wire, "National Airlines Introduces National Flight Centers and Adds a Third New York, JFK Flight," May 6, 1999.

Certifed Airline Passenger Services, "CAPS of Las Vegas Selects Unisys to Move Check-in Out of the Airport," Business Wire, Inc., Jun. 28, 2000.

Certified Airline Passenger Services, "Facsimile" Oct. 16, 2003.

Gibson, Stan, "Cleared for takeoff: National Airlines Outsources IT for Lean and Mean Flight Operations Fueled by Web Techology," Company Business and Marketing, PC Week, No. 20, vol. 16, p. 87, May 17, 1999.

Gould, Lark Ellen, "Raising the Stakes," Travel Agent, No. 10, vol. 294, p. 100, Apr. 12, 1999.

Smith, Hubble, "Airline Passenger Service Has Lofty Expansion Goals," Las Vegas Review Journal, Jun. 22, 2001.

Golf Bag Shipping, "Golf Bag Shipping Delivers Your Golf Clubs" Aug. 2000.

LA Times, "News, Tips & Bargains; A Seamless Takeoff—From Your Room," Part L, p. 3, Sunday Home Edition, Oct. 10, 1999.

**US 9,659,336 B2**

Page 3

(56)        **References Cited**

OTHER PUBLICATIONS

PR Newswire, "America West Offers Baggage Check-In Service at
Imperial Palace," Jun. 21, 1999.
Purnell et al., Design and Development Airport Security Systems
and Related Applications, Baggage Direct, Apr. 24, 2001.
Florida Department of Transportation, "Scope of Services for Off-
Line Baggage Processing," Dec. 9, 2002.
Velotta, Richard N., "CAPS Outlines Growth Plans at Conference,"
Las Vegas Sun, Jun. 27, 2001.
Scientific and Technical Information Center, Case Study: Dublin
Airport, Airports International, Apr. 2001, C. 34, N. 3, p. 26.

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6

Appx22



FIG. 7



FIG. 8

Appx23



FIG. 9



FIG. 10



FIG. 11



FIG. 12

Case 1:18-cv-00783-RGA Document 14 Filed 04/08/2019 Page 181 of 531 PageID #: 3264



FIG. 13



FIG. 14

US 9,659,336 B2

**1**

# MOBILE BAGGAGE DISPATCH SYSTEM AND METHOD

## BACKGROUND

The present disclosure relates generally to the field of baggage management. In particular, the present disclosure relates to a system and a method of coordinating and monitoring baggage delivery.

When baggage is lost during an airline flight, a passenger usually reports the bag missing and leaves an address and phone number where the baggage can be dropped off. The passenger continues to his destination, for example, to a hotel, his home, or a resort, without his baggage. The airline or airport then commences a search for the baggage, for example, by parsing unclaimed baggage in the system. After the baggage is located by the airline or airport, the airline can then deliver the baggage to the passenger. It can be a number of days before baggage is located and forwarded to the correct destination. Typically, the baggage is actually delivered to the passenger by a sub-contractor, such as a taxi service.

Often, the sub-contractor will call the passenger at the address at the drop-off location, to determine if the passenger is home, and to let the passenger know that the baggage will be dropped off. A typical sub-contractor will drop the baggage off at the front door, ring the doorbell, and leave; where the baggage could then be stolen. Further, the sub-contractor could simply keep the baggage and merely report the baggage as delivered. Thus, improved systems and methods for coordinating and monitoring baggage delivery are needed.

## SUMMARY

One embodiment relates to an apparatus for dispatching baggage. The apparatus includes a processor configured to receive baggage information associated with a passenger; associate the baggage information with a delivery person, where the delivery person is associated with delivery person information; and transmit at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger.

Another embodiment relates to a method of dispatching baggage including receiving baggage information associated with a passenger; associating the baggage information with a delivery person, wherein the delivery person is associated with delivery person information; and transmitting at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger.

Another embodiment relates to a non-transitory computer-readable storage medium having instructions stored thereon that, if executed by a computing device, cause the computing device to perform operations including receiving baggage information associated with a passenger; associating the baggage information with a delivery person, wherein the delivery person is associated with delivery person information; and transmitting at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger.

## BRIEF DESCRIPTION OF THE DRAWINGS

The foregoing and other features of the present disclosure will become more fully apparent from the following description and appended claims, taken in conjunction with the accompanying drawings. Understanding that these drawings depict only several embodiments in accordance with the disclosure and are, therefore, not to be considered limiting of its scope, the disclosure will be described with additional specificity and detail through use of the accompanying drawings.

FIG. 1 is a schematic of a mobile baggage dispatch system in accordance with an illustrative embodiment.

FIG. 2 is a flow diagram of a method of baggage delivery in accordance with an illustrative embodiment.

FIG. 3 is a diagram of a login interface of the delivery software in accordance with an illustrative embodiment.

FIG. 4 is a diagram of a menu interface of the delivery software in accordance with an illustrative embodiment.

FIG. 5 is a diagram of a select deliveries interface of the delivery software in accordance with an illustrative embodiment.

FIG. 6 is a diagram of the menu interface of FIG. 4 with pending deliveries of the delivery software in accordance with an illustrative embodiment.

FIG. 7 is a diagram of a pending deliveries interface of the delivery software in accordance with an illustrative embodiment.

FIG. 8 is a diagram of the menu interface of FIG. 4 with current deliveries of the delivery software in accordance with an illustrative embodiment.

FIG. 9 is a diagram of a current deliveries interface of the delivery software in accordance with an illustrative embodiment.

FIG. 10 is a diagram of an individual delivery interface of the delivery software in accordance with an illustrative embodiment.

FIG. 11 is a diagram of a duration cause interface of the delivery software in accordance with an illustrative embodiment.

FIG. 12 is a diagram of a signature interface of the delivery software in accordance with an illustrative embodiment.

FIG. 13 is a flow diagram of a method of passenger-side baggage delivery in accordance with an illustrative embodiment is shown

FIG. 14 is a diagram of a passenger interface of the passenger software in accordance with an illustrative embodiment.

## DETAILED DESCRIPTION OF THE ILLUSTRATIVE EMBODIMENTS

In the following detailed description, reference is made to the accompanying drawings, which form a part hereof. In the drawings, similar symbols typically identify similar components, unless context dictates otherwise. The illustrative embodiments described in the detailed description, drawings, and claims are not meant to be limiting. Other embodiments may be utilized, and other changes may be made, without departing from the spirit or scope of the subject matter presented here. It will be readily understood that the aspects of the present disclosure, as generally described herein, and illustrated in the figures, can be arranged, substituted, combined, and designed in a wide variety of different configurations, all of which are explicitly contemplated and make part of this disclosure.

The present disclosure is directed to a mobile baggage dispatch system, method, and computer-readable medium. Referring to FIG. 1, a schematic of a mobile baggage dispatch system 100 in accordance with an illustrative embodiment is shown. The mobile baggage dispatch system

US 9,659,336 B2

3

100 can include a server **110**, a transportation server **130**, a deliverer computing device **140**, and a passenger computing device **150**. The server **110**, the transportation server **130**, the deliverer computing device **140**, and the passenger computing device **150** can be communicatively coupled via network **120**. The network **120** can be the Internet, an Ethernet, a Wi-Fi network, a wired or wireless phone network, a dedicated line, a wireless connection, or any other network.

The server **110** can be a personal computer or any other computer. A user can interface with the server **110** via a terminal or a computing device communicatively coupled to server **110**. For example, the server **110** can serve a webpage to the deliverer computing device **140** or the passenger computing device **150**, which enables a user to query information and submit commands. The webpage can be, for example, a hypertext markup language document. Alternatively, an application can be used to interface with the server **110**.

The server **110** can receive baggage information, transmit baggage information, manage bag drop offs, and log bag drop offs. The server **110** can be a personal computer, a circuit, a cell phone, a smart phone, a tablet, a personal data assistant, or any other computing device. The server **110** can include one or more of, a processor **111**, a memory **112**, server software **113**, a task database **117**, a records database **118**, a display **114**, a user interface **115**, and a transceiver **116**. In alternative embodiments, the server **110** may include fewer, additional, and/or different components. The memory **112**, which can be any type of permanent or removable computer memory known to those of skill in the art, can be a computer-readable storage medium. The memory **112** can be configured to store one or more of the server software **113**, an application configured to run the server software **113**, captured data, and/or other information and applications as known to those of skill in the art. The transceiver **116** of the server **110** can be used to receive and/or transmit information through a wired or wireless network as known to those of skill in the art. The transceiver **116**, which can include a receiver and/or a transmitter, can be a modem or other communication component known to those of skill in the art. The baggage information can be stored in the records database **118**. Information associated with the bag drop offs can be stored in the task database **117**.

The server software **113** can be configured to receive baggage information, transmit baggage information, manage bag drop offs, and log bag drop offs. For example, the server software **113** can maintain information associated with bags waiting for delivery and information associated with bags that have been delivered. In one embodiment, the server software **113** can include a computer program (for example, script query language (SQL), PHP, Python, html code, an applet, and/or a script) and/or an application configured to execute the program (for example, Microsoft™ Access, Oracle™ Database, Microsoft Internet Explorer™ or Google Chrome™). Alternatively, other programming languages and/or applications known to those of skill in the art can be used. In one embodiment, the server software **113** can be a dedicated standalone application. The processor **111**, which can be in electrical communication with each of the components of the server **110**, can be used to run the application and to execute the instructions of the server software **113**. Any type of computer processor(s) known to those of skill in the art may be used.

The transportation server **130** can provide baggage information to the server **110** and vice versa. For example, the baggage information can include information describing

4

bags that need to be delivered, bags that have been picked up from a terminal, and bags that have been delivered. The transportation server **130** can be associated with an airport, a rail terminal, a hotel, or any other organization or place that can be associated with baggage, missing baggage or packages. The transportation server **130** can be a personal computer, a circuit, a cell phone, a smart phone, a tablet, a personal data assistant, or any other computing device. The transportation server **130** can include one or more of, a processor **131**, a memory **132**, transportation server software **133**, a display **134**, a user interface **135**, and a transceiver **136**. In alternative embodiments, the transportation server **130** may include fewer, additional, and/or different components. The memory **132**, which can be any type of permanent or removable computer memory known to those of skill in the art, can be a computer-readable storage medium. The memory **132** can be configured to store one or more of the transportation server software **133**, an application configured to run the transportation server software **133**, captured data, and/or other information and applications as known to those of skill in the art. The transceiver **136** of the transportation server **130** can be used to receive and/or transmit information through a wired or wireless network as known to those of skill in the art. The transceiver **136**, which can include a receiver and/or a transmitter, can be a modem or other communication component known to those of skill in the art.

The transportation server software **133** can be configured to notify the server **110** of needed bag drop offs and receive indications of completed bag drop offs. For example, the transportation server software **133** can maintain information associated with bags waiting for delivery and information associated with bags that have been delivered. In one embodiment, the transportation server software **133** can include a computer program (for example, script query language (SQL), PHP, Python, html code, an applet, and/or a script) and/or an application configured to execute the program (for example, ARNIC MUSE™, Microsoft™ Access, Oracle™ Database, Microsoft Internet Explorer™ or Google Chrome™). Alternatively, other programming languages and/or applications known to those of skill in the art can be used. In one embodiment, the transportation server software **133** can be a dedicated standalone application. The processor **131**, which can be in electrical communication with each of the components of the transportation server **130**, can be used to run the application and to execute the instructions of the transportation server software **133**. Any type of computer processor(s) known to those of skill in the art may be used.

The deliverer computing device **140** can receive and transmit baggage information to enable delivery personnel. For example, the baggage information can include information describing bags that need to be picked up from a terminal, bags that need to be delivered, and a record of bags that have been delivered. The deliverer computing device **140** can be associated with a delivery person such as a subcontractor. The deliverer computing device **140** can be a cell phone, a smart phone, a tablet, a personal data assistant, a personal computer, a circuit, or any other computing device. The deliverer computing device **140** can include one or more of, a processor **141**, a memory **142**, transportation server software **143**, a display **144**, a user interface **145**, a transceiver **146**, a scanner **147**, and a global positioning system (GPS) device **148**. In alternative embodiments, the deliverer computing device **140** may include fewer, additional, and/or different components. The memory **142**, which can be any type of permanent or removable computer

US 9,659,336 B2

5

memory known to those of skill in the art, can be a computer-readable storage medium. The memory 142 can be configured to store one or more of the delivery software 143, an application configured to run the delivery software 143, captured data, and/or other information and applications as known to those of skill in the art. The transceiver 146 of the deliverer computing device 140 can be used to receive and/or transmit information through a wired or wireless network as known to those of skill in the art. The transceiver, which can include a receiver and/or a transmitter, can be a modem or other communication component known to those of skill in the art.

The delivery software 143 can be configured to notify the server 110 of completed bag drop offs and to receive bag drop off information from the server 110 and/or passenger computing device 150. For example, the delivery software 143 can collect information associated with bags that a delivery person has picked up and information regarding the location of the deliverer computing device 140 at an indicated delivery time. In one embodiment, the delivery software 143 can include a computer program (for example, script query language (SQL), PHP, Python, html code, an applet, and/or a script) or an application configured to execute the program (for example, Microsoft™ Access, Oracle™ Database, Microsoft Internet Explorer™ or Google Chrome™). Alternatively, other programming languages and/or applications known to those of skill in the art can be used. In one embodiment, the delivery software 143 can be a dedicated standalone application. The processor 141, which can be in electrical communication with each of the components of the deliverer computing device 140, can be used to run the application and to execute the instructions of the delivery software 143. Any type of computer processor(s) known to those of skill in the art may be used.

The passenger computing device 150 can receive and transmit baggage information to enable a passenger to interact remotely with delivery personnel. For example, the baggage information can include information describing bags that need to be picked up from a terminal, bags that need to be delivered, and a record of bags that have been delivered. The passenger computing device 150 can be associated with a passenger associated with lost baggage. The passenger computing device 150 can be a cell phone, a smart phone, a tablet, a personal data assistant, a personal computer, a circuit, or any other computing device. The passenger computing device 150 can include one or more of, a processor 151, a memory 152, passenger software 153, a display 154, a user interface 155, and a transceiver 156. In alternative embodiments, the passenger computing device 150 may include fewer, additional, and/or different components. The memory 152, which can be any type of permanent or removable computer memory known to those of skill in the art, can be a computer-readable storage medium. The memory 152 can be configured to store one or more of the passenger server software 153, an application configured to run the passenger software 153, captured data, and/or other information and applications as known to those of skill in the art. The transceiver 156 of the passenger computing device 150 can be used to receive and/or transmit information through a wired or wireless network as known to those of skill in the art. The transceiver 156, which can include a receiver and/or a transmitter, can be a modem or other communication component known to those of skill in the art.

The passenger software 153 can be configured to transmit and receive bag drop off information to the server 110 and/or deliverer computing device 140. For example, the passenger software 153 can collect information associated with a bag

6

drop off and submit it to server and display information associated with a bag drop off such as a proposed delivery time. In one embodiment, the passenger software 153 can include a computer program (for example, script query language (SQL), PHP, Python, html code, an applet, and/or a script) and/or an application configured to execute the program (for example, Microsoft™ Access, Oracle™ Database, Microsoft Internet Explorer™ or Google Chrome™). Alternatively, other programming languages and/or applications known to those of skill in the art can be used. In one embodiment, the passenger software 153 can be a dedicated standalone application. The processor 151, which can be in electrical communication with each of the components of the deliverer computing device 150, can be used to run the application and to execute the instructions of the passenger software 153. Any type of computer processor(s) known to those of skill in the art may be used.

Advantageously, the server 110, the transportation server 130, the deliverer computing device 140, and the passenger computing device 150 can communicate baggage information amongst each other to increase the efficiency of missing baggage delivery, enhance passenger experience, and provide a record of baggage delivery.

Referring now to FIG. 2, a flow diagram of a method of baggage delivery 200 in accordance with an illustrative embodiment is shown. Additional, fewer, or different operations may be performed depending on the particular implementation. The operations for baggage delivery 200 can be executed, for example, in least in part by a system for mobile baggage dispatch, such as the system described above.

In an operation 210, a server can receive information associated with needed bag drop offs from a transportation server. For example, the transportation server can send a list of bags that need to be dropped off to passengers. The list can include bag information such as a proposed drop off address, a passenger name, passenger contact information, a bag description, a current bag location, delivery status, and a tracking code.

In an operation 215, the server can transmit a pick up bags message to a deliverer computing device associated with a delivery person. The pick up bags message can include the proposed drop off address, the passenger name, the bag description, the current bag location, and the tracking code. The delivery person can proceed to the current bag location to obtain the bags that need to be dropped off.

In an operation 220, the delivery person can obtain the bags that need to be dropped off. The delivery person can enter information into the deliverer computing device indicating that the bags that need to be dropped off are now in the possession of the delivery person. The deliverer computing device can include delivery software as described above. In one embodiment, the deliverer computing device can include a scanner to scan the tracking code of the bags picked up by the delivery person.

In an operation 225, the delivery software can update the bag information and transmit the updated bag information to the server. The delivery software can update the bag information such as current bag location and delivery status. For example, the delivery status can be updated to "in transit." In another embodiment, the deliverer computing device can include an interface for the delivery person to indicate which bags he has picked up, as described below.

FIG. 3 is a diagram of a login interface 300 of the delivery software in accordance with an illustrative embodiment. The delivery person can enter a username in the username text box 310 and a password in the password text box 320 in order to gain access to the delivery software.

US 9,659,336 B2

7

FIG. 4 is a diagram of a menu interface 400 of the delivery software in accordance with an illustrative embodiment. The delivery person can select one of a current deliveries component 410, a pending deliveries component 420, a select deliveries component 430, and an email component 440, described further below. For example, the delivery person can select the select deliveries component 430. FIG. 4 shows that the select deliveries component 430 has information regarding 70 bags that need to be dropped off.

FIG. 5 is a diagram of a select deliveries interface 500 of the delivery software in accordance with an illustrative embodiment. The select deliveries interface 500 can include a display 510 with a list of bag drop offs 530. The list of bag drop offs 530 can be received from the server. The list of bag drop offs 530 can include information describing the bags that need to be dropped off such as the proposed drop off address, the passenger name, the bag description, the current bag location, and the tracking code. Each bag in the list of bag drop offs 530 can be associated with a selection field 520. The delivery person can check the selection field 520 for each bag in the list of bag drop offs 530 that he picks up. In FIG. 5, the first three bags of the list of bag drop offs 530 are selected. The list of bag drop offs 530 can also include zone information 530. For example, the delivery person may be assigned a certain zone or zones, such as "Zone A." The delivery person would pick up all bags labeled "Zone A." After the delivery person has selected the desired bag(s), he can select a claim button 540, which indicates his receipt of the selected bags from the list of bag drop offs 530. The claimed bag(s) the delivery person has selected can be classified as pending deliveries. The deliverer computing device can transmit information to the server describing the pending deliveries, i.e., the desired bag(s) the delivery person has selected and claimed. Alternatively, a dispatcher can assign bags for the delivery person to take. In one embodiment, the list of bag drop offs 530 can be limited to bags assigned by the dispatcher.

FIG. 6 is a diagram of the menu interface of FIG. 4 with pending deliveries 600 of the delivery software in accordance with an illustrative embodiment. After the delivery person has selected and claimed the desired bag(s), the pending deliveries component 420 can indicate the number of pending deliveries. FIG. 6 shows that there are three pending deliveries.

FIG. 7 is a diagram of a pending deliveries interface 700 of the delivery software in accordance with an illustrative embodiment. The pending deliveries interface 700 can include a list of pending bag drop offs 710 which can be all or some of the pending deliveries. The list of pending bag drop offs 710 can include information describing the bags that need to be dropped off such as the proposed drop off address, the passenger name, the bag description, the current bag location, and the tracking code. Each bag in the list of pending bag drop offs 710 can be associated with a selection field 720. The delivery person can check the selection field 720 for each bag in the list of pending bag drop offs 710 that he intends to presently deliver, i.e., the bags that are "out for delivery." Once the selection field 720 is checked, the delivery person submits the information by clicking a button 730. The bag(s) the delivery person has selected can be classified as current deliveries. The deliverer computing device can transmit information to the server describing the current deliveries.

Referring again to FIG. 2, in an operation 230, the delivery person can proceed to a drop off location associated with a bag he has selected and picked up. The delivery person can use the deliverer computing device to determine

8

where to take a bag and optimize his delivery route. FIG. 8 is a diagram of the menu interface of FIG. 4 with current deliveries 800 of the delivery software in accordance with an illustrative embodiment. After the delivery person has selected the bags that are "out for delivery" (operation 235 in FIG. 2) the current deliveries component 410 can indicate the number of bags out for delivery. FIG. 8 shows that there are three current deliveries.

FIG. 9 is a diagram of a current deliveries interface 900 of the delivery software in accordance with an illustrative embodiment. The current deliveries interface 900 can include a list of current bag drop offs 910 which can be all or some of the current deliveries. The list of current bag drop offs 910 can include information describing the bags that need to be dropped off such as the proposed drop off address, the passenger name, the bag description, the current bag location, and the tracking code. Each bag in the list of current bag drop offs 910 can be selected to provide further information. The list of current bag drop offs 910 can be ordered. For example, the bags can be ordered in terms of most efficient travel path, oldest in the queue, or a combination of both. Button 920 can be selected to edit an entry in the list of current bag drop offs 910. Button 930 can be selected to change the ordering of list of current bag drop offs 910.

Referring again to FIG. 2, in an operation 240, after the delivery person has delivered the baggage, the delivery person can indicate completion of the baggage with the deliverer computing device. For example, the delivery person can indicate that the baggage was delivered or have a passenger sign for the baggage. At the time of completion of the baggage delivery, in an operation 245, the bag information can be global position system (GPS) stamped, indicating the location of the deliverer computing device (and thus the baggage) at the time of delivery. At the time of completion of the baggage delivery, in an operation 250, the bag information can be time stamped. In an operation 255, the GPS stamp information, the time stamp information, and other bag information can be transmitted to the server. The other information can include, for example, a duration cause and an electronic signature.

FIG. 10 is a diagram of an individual delivery interface 1000 of the delivery software in accordance with an illustrative embodiment. The individual delivery interface 1000 can include an individual delivery description 1010, a delivered button 1020, an un-assign delivery button 1030, and an unable to deliver button 1040. The individual delivery description 1010 can include a display of the proposed drop off address, the passenger name, the passenger contact information, the bag description, the tracking code, and a map associated with the proposed drop off address. After the delivery person drops off the baggage, the delivery person can select the delivered button 1020 to GPS stamp the delivery, time stamp the delivery, and update the status of the delivery to "delivered." The deliverer computing device can transmit the GPS stamp, the time stamp, and the status update to the server. If the delivery person is unable to deliver the baggage, the delivery person can select the unable to deliver button 1040 to re-queue the baggage delivery for later. If the delivery person gives the baggage to another delivery person, the delivery person can select the un-assign delivery button 1030 to re-queue the baggage delivery so that the other delivery person can add the baggage to his pending deliveries.

FIG. 11 is a diagram of a duration cause interface 1100 of the delivery software in accordance with an illustrative embodiment. If baggage is not delivered within a predeter-

US 9,659,336 B2

9                                                                                         10

mined period, the delivery software can display the duration cause interface **1100** to prompt the delivery person to indicate the cause of the delay. If the delivery person had a vehicle problem or personal incident, he can select a driver issue button **1110**. If the delivery person had to process an inordinate amount of baggage, he can select a high volume button **1120**. If the delivery person picked up the baggage in the evening and delivered the next morning, he can select a late sweep/early delivery button **1130**.

FIG. **12** is a diagram of a signature interface **1200** of the delivery software in accordance with an illustrative embodiment. The signature interface **1200** can be used to record a passenger's acceptance of the baggage delivery. The signature interface **1200** can include a signature block **1210** and a submit button **1220**. The passenger can electronically sign the signature block **1210** and select the submit button **1220** to indicate acceptance of the baggage.

Referring now to FIG. **13**, a flow diagram of a method of passenger-side baggage delivery **1300** in accordance with an illustrative embodiment is shown. Additional, fewer, or different operations may be performed depending on the particular implementation. The operations for passenger-side baggage delivery **1300** can be executed, for example, in least in part by a system for mobile baggage dispatch, such as the system described above.

In an operation **1310**, a passenger can report missing baggage to a common carrier, such as an airline. The passenger can provide information such as a proposed drop off address, a passenger name, passenger contact information, and a bag description. Alternatively, the common carrier can identify a bag as unclaimed. A transportation server can receive bag information such as the proposed drop off address, the passenger name, the passenger contact information, and the bag description.

In an operation **1320**, after the bag is found, the transportation server can assign the bag the proposed drop off address, the passenger name, the passenger contact information, the bag description, a current bag location, delivery status, and a tracking code. The transportation server can send the bag information to a server.

In an operation **1330**, the server can create a passenger record and an interface for the passenger. The interface can enable the passenger to obtain and change information regarding a prospective delivery of his missing baggage. In an operation **1340**, the server can transmit delivery information to a passenger computing device. The server can also transmit delivery information to a deliverer computing device, as described above.

In an operation **1350**, the passenger computing device can display the delivery information. In one embodiment, the passenger can obtain information describing the delivery person such as a picture of the delivery person, a picture of the delivery person's vehicle, an estimated time of delivery, the proposed drop off address, the delivery status, and a map showing the current location of the baggage. The interface can be, for example, a webpage or an application such as an iPhone™ app. The interface can be accessed, for example, using a passenger computing device, as described above.

In an operation **1360**, the passenger can alter the delivery information. In an operation **1370**, the passenger computing device can transmit the changes to the delivery information to the server. The server can then transmit the changes to the deliverer computing device. The deliverer computing device can display a notification that changes to a baggage delivery have occurred.

In an operation **1380**, the server or deliverer computing device can change the delivery schedule of the delivery person. The delivery person can adapt to the changes in the delivery information. For example, if the passenger changes a proposed delivery time using the passenger computing device, the delivery person can be informed of the desired changed via the deliverer computing device.

FIG. **14** is a diagram of a passenger interface **1400** of the passenger software in accordance with an illustrative embodiment. The passenger interface **1400** can be used to display delivery information and receive selections from a passenger. The passenger interface **1400** can include delivery information **1410**, driver information **1420**, a baggage map **1450**, baggage information **1460**, a hold button **1470**, and a waive signature button **1480**.

The delivery information **1410** can include a reference (serial) number, airline information, airport information, a passenger (customer) name, a passenger phone number, a passenger email address, a passenger delivery address, and a community access code. The delivery information **1410** can be received from a server. The delivery information **1410** can include an update button **1415**, for altering and updating the delivery information. For example, the passenger can change his passenger phone number and select the update button **1415** to transmit the change to the server.

The driver information **1420** can include a driver picture **1430**, a driver name **1435**, a driver email **1437**, and a driver vehicle picture **1440**. The driver information **1420** can be any information that can be used to identify the delivery person (driver). When a delivery person arrives at a passenger location to drop off baggage, the passenger can use the driver information **1420** to assure that the delivery person is who he represents himself to be.

The baggage map **1450** can display a current location of the passenger's baggage. Alternatively, the baggage map **1450** can display an approximate location of the passenger's baggage. A signpost **1455** can be used to mark the location of the passenger's baggage on the baggage map **1450**.

The baggage information **1460** can include a number of bags in the delivery, a delivery method, additional requests, a time of baggage recovery, a time of baggage assignment to a delivery person (driver), a latest delivery time, and a current status of the baggage. The baggage information **1460** can also include information about the type of baggage, such as a size, shape, and design of the baggage. The information can include a photo of the actual baggage or of a generic baggage of the same type. The baggage photo or description can be presented on the display along with other baggage information. The passenger interface **1400** can update the baggage information **1460** as a delivery person completes other deliveries.

The passenger can select the hold button **1470** to indicate that he would like to delay delivery until a later time. For example, if the passenger will not be home until 6:00 p.m., passenger can select the hold button **1470** to delay the delivery time until after 6:00 p.m. For example, the delivery time change can be transmitted to the server, which can then relay the change to the deliverer computing device. The server or deliverer computing device can reorder the deliveries to improve efficiency given the change to the delivery time.

The passenger can select the waive signature button **1480** to indicate that the delivery person does not need to obtain a passenger signature in order to complete the delivery, i.e., the delivery person can leave the bags at the door. When the passenger selects the waive signature button **1480**, a signature waiver can be transmitted to the server, which can then relay the signature waiver to the deliverer computing device.

US 9,659,336 B2

11

Advantageously, a passenger can control delivery parameter, such as the delivery time, and obtain information to assure that the delivery person is who he represents himself to be.

One or more flow diagrams may have been used herein. The use of flow diagrams is not meant to be limiting with respect to the order of operations performed. The herein described subject matter sometimes illustrates different components contained within, or connected with, different other components. It is to be understood that such depicted architectures are merely exemplary, and that in fact many other architectures can be implemented which achieve the same functionality. In a conceptual sense, any arrangement of components to achieve the same functionality is effectively "associated" such that the desired functionality is achieved. Hence, any two components herein combined to achieve a particular functionality can be seen as "associated with" each other such that the desired functionality is achieved, irrespective of architectures or intermedial components. Likewise, any two components so associated can also be viewed as being "operably connected", or "operably coupled", to each other to achieve the desired functionality, and any two components capable of being so associated can also be viewed as being "operably couplable", to each other to achieve the desired functionality. Specific examples of operably couplable include but are not limited to physically mateable and/or physically interacting components and/or wirelessly interactable and/or wirelessly interacting components and/or logically interacting and/or logically interactable components.

With respect to the use of substantially any plural and/or singular terms herein, those having skill in the art can translate from the plural to the singular and/or from the singular to the plural as is appropriate to the context and/or application. The various singular/plural permutations may be expressly set forth herein for sake of clarity.

It will be understood by those within the art that, in general, terms used herein, and especially in the appended claims (e.g., bodies of the appended claims) are generally intended as "open" terms (e.g., the term "including" should be interpreted as "including but not limited to," the term "having" should be interpreted as "having at least," the term "includes" should be interpreted as "includes but is not limited to," etc.). It will be further understood by those within the art that if a specific number of an introduced claim recitation is intended, such an intent will be explicitly recited in the claim, and in the absence of such recitation no such intent is present. For example, as an aid to understanding, the following appended claims may contain usage of the introductory phrases "at least one" and "one or more" to introduce claim recitations. However, the use of such phrases should not be construed to imply that the introduction of a claim recitation by the indefinite articles "a" or "an" limits any particular claim containing such introduced claim recitation to inventions containing only one such recitation, even when the same claim includes the introductory phrases "one or more" or "at least one" and indefinite articles such as "a" or "an" (e.g., "a" and/or "an" should typically be interpreted to mean "at least one" or "one or more"); the same holds true for the use of definite articles used to introduce claim recitations. In addition, even if a specific number of an introduced claim recitation is explicitly recited, those skilled in the art will recognize that such recitation should typically be interpreted to mean at least the recited number (e.g., the bare recitation of "two recitations," without other modifiers, typically means at least two recitations, or two or more recitations). Furthermore, in those

12

instances where a convention analogous to "at least one of A, B, and C, etc." is used, in general such a construction is intended in the sense one having skill in the art would understand the convention (e.g., "a system having at least one of A, B, and C" would include but not be limited to systems that have A alone, B alone, C alone, A and B together, A and C together, B and C together, and/or A, B, and C together, etc.). In those instances where a convention analogous to "at least one of A, B, or C, etc." is used, in general such a construction is intended in the sense one having skill in the art would understand the convention (e.g., "a system having at least one of A, B, or C" would include but not be limited to systems that have A alone, B alone, C alone, A and B together, A and C together, B and C together, and/or A, B, and C together, etc.). It will be further understood by those within the art that virtually any disjunctive word and/or phrase presenting two or more alternative terms, whether in the description, claims, or drawings, should be understood to contemplate the possibilities of including one of the terms, either of the terms, or both terms. For example, the phrase "A or B" will be understood to include the possibilities of "A" or "B" or "A and B."

The foregoing description of illustrative embodiments has been presented for purposes of illustration and of description. It is not intended to be exhaustive or limiting with respect to the precise form disclosed, and modifications and variations are possible in light of the above teachings or may be acquired from practice of the disclosed embodiments. It is intended that the scope of the invention be defined by the claims appended hereto and their equivalents.

What is claimed is:

1. An apparatus for dispatching baggage, comprising:
a server having a processor and a transceiver configured to transmit and receive communications to and from a passenger computing device associated with a passenger and a deliverer computing device associated with a delivery person wherein the passenger computing device includes a passenger interface to communicate with the server; and
the processor configured to:
receive, via the transceiver, after a piece of baggage has been transported to a destination, baggage information relating to the piece of baggage to be delivered to the passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination;
associate the baggage information with the delivery person, wherein the delivery person is associated with delivery person information;
transmit, via the transceiver, a pick up bags message to the deliverer computing device associated with the delivery person; and
transmit, via the transceiver, at least a portion of the baggage information and the delivery person information to the passenger computing device associated with the passenger;
receive, via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information wherein the passenger interface is updated with

US 9,659,336 B2

**13**

changes in the approximate location or the current location of the piece of baggage during transport;

relay, via the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and

reorder other deliveries associated with the deliverer computing device given the delivery change.

**2.** The apparatus of claim **1**, wherein the baggage information further comprises at least one of a picture of a delivery person, a picture of a vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, and a tracking code.

**3.** The apparatus of claim **1**, wherein the processor is further configured to receive, via the transceiver, updated information entered via the user interface of the passenger computing device.

**4.** The apparatus of claim **3**, wherein updated information comprises a selection to waive a signature using the passenger interface.

**5.** The apparatus of claim **3**, wherein the processor is further configured to transmit, via the transceiver, the updated information to the deliverer computing device.

**6.** The apparatus of claim **1**, wherein the processor is further configured to receive, via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp.

**7.** A method of dispatching baggage, comprising:

receiving, through a transceiver of a server and after a piece of baggage has been transported to a destination, baggage information relating to the piece of baggage to be delivered to a passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination;

associating, by the processor of the server, the baggage information with a delivery person, wherein the delivery person is associated with delivery person information;

transmitting, through the transceiver, a pick up bags message to a deliverer computing device associated with the delivery persona;

transmitting, through the transceiver, at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger;

receiving, through the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using a passenger interface until a delayed delivery time wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport;

relaying, through the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and

reordering, by the processor of the server, other deliveries associated with the deliverer computing device given the delivery change.

**14**

**8.** The method of claim **7**, wherein the baggage information further comprises at least one of a picture of the delivery person, a picture of a vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, and a tracking code.

**9.** The method of claim **7**, further comprising receiving, by the transceiver, updated information entered via the passenger interface of the passenger computing device.

**10.** The method of claim **9**, wherein updated information comprises a selection to waive a signature using the passenger interface.

**11.** The method of claim **9**, further comprising transmitting, via the transceiver, the updated information to the deliverer computing device.

**12.** The method of claim **7**, further comprising receiving, via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp.

**13.** A non-transitory, tangible computer-readable storage medium having instructions stored thereon that, if executed by a server processor, cause the server processor to perform operations comprising:

transmitting and receiving communications, by the server processor via a transceiver, to and from a passenger computing device associated with a passenger and a deliverer computing device associated with a delivery person wherein the passenger computing device includes a passenger interface to communicate with a server having the server processor;

receiving baggage information, by the server processor via the transceiver, after a piece of baggage has been transported to a destination, relating the piece of baggage to be delivered to a passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination;

associating, by the server processor, the baggage information with a delivery person, wherein the delivery person is associated with delivery person information;

transmitting, by the server processor via the transceiver, a pick up message to a deliverer computing device associated with the delivery person;

transmitting, by the server processor via the transceiver, at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger;

receiving, by the server processor via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport;

relaying, by the server processor via the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and

reordering, by the server processor, other deliveries associated with the deliverer computing device given the delivery change.

US 9,659,336 B2

15

**14**. The computer-readable storage medium of claim **13**, wherein the baggage information comprises at least one of a picture of the delivery person, a picture of a vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, and a tracking code.

**15**. The computer-readable storage medium of claim **13**, further comprising receiving, by the server processor via the transceiver, updated information from the passenger computing device.

**16**. The computer-readable storage medium of claim **15**, wherein updated information comprises a selection to waive a signature waiver by the passenger interface.

**17**. The computer-readable storage medium of claim **15**, further comprising transmitting, by the server processor via the transceiver, the updated information to the deliverer computing device.

**18**. The computer-readable storage medium of claim **13**, further comprising receiving, by the server processor via the

16

transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp.

**19**. The apparatus of claim **1**, wherein the piece of baggage is one of a plurality of pieces of baggage to be delivered to a plurality of passengers, and wherein the processor is further configured to determine a most efficient travel path for the delivery person.

**20**. The apparatus of claim **1**, wherein the piece of baggage is one of a plurality of pieces of baggage to be delivered to a plurality of passengers, and wherein the processor is further configured to order the plurality of pieces of baggage in a queue based on an amount of time for which each of the plurality of pieces of baggage is in the queue.

\* \* \* \* \*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on April 8, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

Dated:  April 8, 2019                     Respectfully submitted,

                                          /s/ Stefan V. Stein
                                          Stefan V. Stein
                                          Cole Y. Carlson
                                          GRAYROBINSON, P.A.
                                          401 E. Jackson Street
                                          Suite 2700
                                          Tampa, FL 33602
                                          (813) 273-5000

                                          *Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. Cir. R. 32(a) because:

    this brief contains <u>8,433</u> words, excluding the parts of the brief exempted by exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

Dated: April 8, 2019                    Respectfully submitted,

                                        <u>/s/ Stefan V. Stein</u>
                                        Stefan V. Stein
                                        Cole Y. Carlson
                                        GRAYROBINSON, P.A.
                                        401 E. Jackson Street
                                        Suite 2700
                                        Tampa, FL 33602
                                        (813) 273-5000

                                        *Counsel for Appellant*

# EXHIBIT K

AMENDMENT UNDER 37 CFR 1.111
APPLICATION NO. 13/443,640

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                              Confirmation No.: 6531

Craig Mateer                                       Examiner: Allen, Akiba Kanelle

Application No.: 13/443,640                         Group Art Unit: 3628

Filed: April 10, 2012                              Docket No.: 12496-005

For:   MOBILE BAGGAGE DISPATCH SYSTEM AND METHOD

## AMENDMENT UNDER 37 C.F.R. 1.111

**Mail Stop Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Commissioner:

        In response to the Office Action dated January 16, 2015 and the Supplemental Office
Action dated April 2, 2013, issued in the above-identified application, and having a period of
response to and including April 16, 2015, Applicant submits the following amendments and
remarks.

        Please proceed to the following page.

AMENDMENT UNDER 37 CFR 1.111
APPLICATION NO. 13/443,640

Amendments to the Claims:

1.      (Currently amended)  An apparatus for dispatching baggage, comprising:

a server having a processor and a transceiver configured to transmit and receive communications to and from a passenger computing device associated with a passenger and a deliverer computing device associated with a delivery person wherein the passenger computing device includes a passenger interface to communicate with the server; and

[[a]]the processor configured to:

receive, via the transceiver, after a piece of baggage has been transported to a destination, baggage information relating to the piece of baggage to be delivered to [[a]] the passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination;

associate the baggage information with [[a]] the delivery person, wherein the delivery person is associated with delivery person information;

transmit, via the transceiver, a pick up bags message to [[a]] the deliverer computing device associated with the delivery person; and

transmit, via the transceiver, at least a portion of the baggage information and the delivery person information to [[a]] the passenger computing device associated with the passenger;

receive, via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time; and

relay, via the transceiver, a delivery change related to the selection to the deliverer computing device wherein the server or deliverer computing device being configured to reorder other deliveries associated with the deliverer computing device given the delivery change.

2.      (Previously presented)  The apparatus of claim 1, wherein the baggage information further comprises at least one of a picture of the delivery person, a picture of a vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, and a tracking code.

3.      (Currently amended)  The apparatus of claim 1, wherein the processor is further configured to receive, via the transceiver, updated information [[from]] entered via the user interface of the passenger computing device.

4.      (Currently amended)  The apparatus of claim 3, wherein updated information comprises at least one of a hold and a selection to waive a signature waiver using the passenger interface; and

the passenger interface includes a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage.

5.      (Currently amended)  The apparatus of claim 3, wherein the processor is further configured to transmit, via the transceiver, the updated information to the deliverer computing device.

6.      (Currently amended)  The apparatus of claim 1, wherein the processor is further configured to receive, via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp.

7.      (Currently amended) A method of dispatching baggage, comprising:

receiving, through a transceiver of a server and after a piece of baggage has been transported to a destination, baggage information relating to the piece of baggage to be delivered to a passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination;

associating, by the processor of the server, the baggage information with a delivery person, wherein the delivery person is associated with delivery person information;

transmitting, through the transceiver, a pick up bags message to a deliverer computing device associated with the delivery persona; [[and]]

transmitting, through the transceiver, at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger;

receiving, through the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using a passenger interface until a delayed delivery time;

relaying, through the transceiver, a delivery change related to the selection to the deliverer computing device; and

recording, by the processor of the server, other deliveries associated with the deliverer computing device given the delivery change.

8.      (Previously presented)  The method of claim 7, wherein the baggage information further comprises at least one of a picture of the delivery person, a picture of a vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, and a tracking code.

9.      (Currently amended)  The method of claim 7, further comprising receiving, by the transceiver, updated information [[from]] entered via the passenger interface of the passenger computing device.

10.     (Currently amended) The method of claim 9, wherein updated information comprises at least one of a hold and a selection to waive a signature waiver using the passenger interface; and

the passenger interface includes a baggage map configured to display an approximate location or current location of the piece of baggage.

11.     (Currently amended)  The method of claim 9, further comprising transmitting, via the transceiver, the updated information to a deliverer computing device.

4

12.    (Currently amended)  The method of claim 7, further comprising receiving, via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp.

13.    (Currently amended) A non-transitory, tangible computer-readable storage medium having instructions stored thereon that, if executed by a server processor computing device, cause the server processor  computing device to perform operations comprising:

transmitting and receiving communications, by the server processor via a transceiver, to and from a passenger computing device associated with a passenger and a deliverer computing device associated with a delivery person wherein the passenger computing device includes a passenger interface to communicate with a server having the server processor;

receiving baggage information, by the server processor via the transceiver, after a piece of baggage has been transported to a destination, relating the piece of baggage to be delivered to a passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination;

associating, by the server processor, the baggage information with a delivery person, wherein the delivery person is associated with delivery person information;

transmitting, by the server processor via the transceiver, a pick up message to a deliverer computing device associated with the delivery person; [[and]]

transmitting, by the server processor via the transceiver, at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger;

receiving, by the server processor via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time;

relaying, by the server processor via the transceiver, a delivery change related to the selection to the deliverer computing device; and

reordering, by the server processor, other deliveries associated with the deliverer computing device given the delivery change.

5

14.     (Previously presented)  The computer-readable storage medium of claim 13, wherein the baggage information comprises at least one of a picture of the delivery person, a picture of a vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, and a tracking code.

15.     (Currently amended)  The computer-readable storage medium of claim 13, further comprising receiving, by the server processor via the transceiver, updated information from the passenger computing device.

16.     (Currently amended)  The computer-readable storage medium of claim 15, wherein updated information comprises at least one of a hold and a selection to waive a signature waiver by the passenger interface.

17.     (Currently amended)  The computer-readable storage medium of claim 15, further comprising transmitting, by the server processor via the transceiver, the updated information to [[a]] the deliverer computing device.

18.     (Currently amended)  The computer-readable storage medium of claim 13, further comprising receiving, by the server processor via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp.

19.     (Previously presented)  The apparatus of claim 1, wherein the piece of baggage is one of a plurality of pieces of baggage to be delivered to a plurality of passengers, and wherein the processor is further configured to determine a most efficient travel path for the delivery person.

20.     (Currently amended)  The apparatus of claim 1, wherein the piece of baggage is one of a plurality of pieces of baggage to be delivered to a plurality of passengers, and wherein the processor is further configured to order the plurality of pieces of baggage in a queue based on an amount of time for which each of the plurality of pieces of baggage is in the queue.

## REMARKS

The foregoing amendments and the remarks below are submitted in response to the Office Action (OA) dated January 16, 2015.  Claim 1, 3-7, 9-13, 15-18 and 20 have been amended as described in more detail below.  No new matter has been added as a result of these amendments.  Reconsideration of the rejections and allowance of the pending claims are respectfully requested at least in view of said amendments and remarks.  Claims 1-20 are presented for examination.

Support for the amendments may be found in FIGS. 13 and 14 and related text in corresponding paragraphs [0029] and [0050-0063] identified in the publication associated with the instant application.

Response to Section 101 Rejection

Claims 1-20 stand rejected under 35 U.S.C. §101 as the claimed invention is directed to non-statutory subject matter because the claimed invention is not directed to patent eligible subject matter.

With the amendments made, this rejection is now moot.

Claims 1-6 and 19-20

Claim 1, as amended, recites:

An apparatus for dispatching baggage, comprising:

a server having a processor and a transceiver configured to transmit and receive communications to and from a passenger computing device associated with a passenger and a deliverer computing device associated with a delivery person wherein the passenger computing device includes a passenger interface to communicate with the server, and …

receive, via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time; and

relay, via the transceiver, a delivery change related to the selection to the deliverer computing device wherein the server or deliverer computing device being configured to reorder other deliveries associated with the deliverer computing device given the delivery change. (Emphasis added).

**MPEP §2106** provides that "… the four categories of invention: … ii. Machine – a concrete thing, consisting of parts, or of certain devices and combination of devices. *Burr v. Duryee,* 68 U.S. (1 Wall.) 531, 570, 17 L. Ed. 650 (1863). This includes every mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result, *Corning v. Burden,* 56 U.S. 252, 267, 14 L. Ed. 683 (1854).

Here, amended claim 1 includes a server (machine) with a processor (machine) and a transceiver (machine). These machines perform various functions such as transmitting, receiving, associating, and relaying, to name a few functions, in order to deliver baggage (produce a certain result). In view of the amendments and the foregoing remarks, claim 1 is statutory subject matter. Hence, the rejection under 35 U.S.C. §101 of independent claim 1 should be withdrawn. Thus, dependent claims 2-6, 19 and 20 are statutory, as well, and the rejection under 35 U.S.C. §101 of those claims should be withdrawn.

These dependent claims include statutory subject matter as well. Thus, these individual claims are statutory and the rejections under 35 U.S.C. §101 of those dependent claims should be withdrawn.

<u>Claims 7-12</u>

Regarding claim 7, **MPEP §2106** also provides that "… the four categories of invention: … i. Process – an act, or a series of acts or steps. See *Gottschalk v. Benson,* 409 U.S. 63, 70, 175 USPQ 673, 676 (1972) ("A process is a mode of treatment of certain materials <u>to produce a given result</u>. It is an *act,* or a *series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing*" (emphasis added) (quoting *Cochrane v. Deener,* 94 U.S. 780, 788, 24 L. Ed. 139, 1877 Dec. Comm'r Pat. 242 (1876))); *NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d 1282, 1316, 75 USPQ2d 1763, 1791 (Fed. Cir. 2005) ("[A] process is a series of acts" (quoting *Minton v. Natl. Ass'n. of Securities Dealers, 336 F.3d 1373,* 336 F.3d 1373, 1378, 67 USPQ2d 1614, 1681 (Fed. Cir. 2003))). See also **35 U.S.C. 100(b)**; *Bilski v. Kappos,* 561 U.S. ___, 130 S. Ct. 3218, 95 USPQ2d 1001 (2010).

Amended claim 7 recites:

> <u>receiving, through the transceiver,</u> from the passenger computing device <u>a selection to hold delivery</u> of the piece of baggage using a passenger interface until a delayed delivery time;

relaying, through the transceiver, a delivery change related to the selection to the deliverer computing device; and

recording, by the processor of the server, other deliveries associated with the deliverer computing device given the delivery change. (Emphasis added)

Claim 7 is directed to a process which includes "an act, or a series of acts or steps" being performed by a server (machine) or processor of the server (machine). For at least this reason, claim 7 is directed to statutory subject matter. Additionally, the processor of the server reorders the deliveries upon receiving a selection of a hold delivery. Thus, the delivery order is reduced to a different state of order. Furthermore, the passenger sends a "selection" to hold delivery. This very selection is then transformed into a communication signal to the server which causes the server to relay a delivery change to a deliverer computing device and reorder the deliveries. Such acts include transformation of a selection to cause deliveries to change. Thus, in view of the amendments and foregoing remarks, claim 7 is statutory subject matter. Hence, the rejection under 35 U.S.C. §101 of independent claim 7 should be withdrawn. Thus, the dependent claims 7-12 are statutory, as well, and the rejection under 35 U.S.C. §101 of those claims should be withdrawn.

These dependent claims include statutory subject matter as well. Thus, these individual claims are statutory and the rejections under 35 U.S.C. §101 of those dependent claims should be withdrawn.

Claims 13-18

Regarding claim 13, as the Examiner is aware, **MPEP §2106** provides that ... a claim to a non-transitory, tangible computer readable storage medium *per se* that possesses structural limitations under the broadest reasonable interpretation standard to qualify as a manufacture would be patent-eligible subject matter. Adding additional claim limitations to the medium, such as executable instructions or stored data, to such a statutory eligible claim would not render the medium non-statutory, so long as the claim as a whole has a real world use and the medium does not cover substantially all practical uses of a judicial exception. The claim as a whole remains a tangible embodiment and qualifies as a manufacture. (Emphasis added).

10

Amended claim 13 recites:

... non-transitory, tangible computer-readable storage medium having instructions stored thereon that, if executed by a server processor, cause the server processor to perform operations comprising:

transmitting and receiving communications, by the server processor via a transceiver, to and from a passenger computing device associated with a passenger and a deliverer computing device associated with a delivery person wherein the passenger computing device includes a passenger interface to communicate with a server having the server processor...

receiving, by the server processor via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time;

relaying, by the server processor via the transceiver, a delivery change related to the selection to the deliverer computing device; and

reordering, by the server processor, other deliveries associated with the deliverer computing device given the delivery change. (Emphasis added).

Claim 13 recites non-transitory, tangible computer readable storage medium which is considered to possess structural limitations under the broadest reasonable interpretation standard to qualify as a manufacture and would be patent-eligible subject matter, as provided for in MPEP 2106. (Emphasis added). Additionally, as a whole, the claim is directed to acts for the delivery of baggage (real world use) under the control of a server configured to also communicate (transmit and receive) with a passenger computing device and a deliverer computing device. Thus, in view of the amendments and foregoing remarks, claim 13 is statutory subject matter. Hence, the rejection under 35 U.S.C. §101 of independent claim 13 should be withdrawn. Thus, dependent claims 14-18 are statutory, as well, and the rejection under 35 U.S.C. §101 of those claims should be withdrawn.

Support for "tangible" is within the purview of Applicant's invention and does not add new matter. Specifically, in paragraph [0029] corresponding to the publication of the instant application, the memory is described as "permanent or removable computer memory." Hence, if it is "removable" a person's hands can touch the memory so that it can be removed.

11

AMENDMENT UNDER 37 CFR 1.111
APPLICATION NO. 13/443,640

Additionally, "permanent" computer memory is tangible so that it is packaged with the server at the time of manufacture.

Response to 35 U.S.C. §103 Rejections

Claims 1-18 stand rejected under 35 U.S.C. §103(a) as being unpatentable over Bravman et al. (US 5866888; hereinafter Bravman) and further in view of Ananda (US 6845293).

Applicant observes that numbered paragraph 7 of the OA identifies claims 1-18 as being rejected under 35 U.S.C. §103(a) as being unpatentable over Bravman in view of Ananda. However, paragraph 8 of the OA rejects claims 4, 10 and 16 under Bravman, Ananda and further in view of Robertson et al. (US 20100205105; hereinafter Robertson). Thus, the rejections of claims 4, 10 and 16 are unclear.

Applicant called the Examiner for a correction and a new OA was reissued. However, the reissued OA is still unclear and did not reset the period of response to allow the Applicant to call the Examiner again for clarification. Thus, Applicant will attempt to address the rejections as best possible.

Claims 1-6

Claim 1, as amended, recites among other things:

… receive, via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time; and

relay, via the transceiver, a delivery change related to the selection to the deliverer computing device wherein the server or deliverer computing device being configured to reorder other deliveries associated with the deliverer computing device given the delivery change. (Emphasis added).

Bravman, Ananda or the combination of Bravman and Ananda fail to teach or suggest the above emphasized claim limitations among other things. Specifically, neither Bravman nor Ananda teaches or suggests a selection to hold delivery of the piece of baggage using the passenger interface, as recited in claim 1 by Applicant. Furthermore, neither Bravman nor Ananda teaches or suggests relay… a delivery change related to the selection to the deliverer computing device, as recited in claim 1 by Applicant.

12

Bravman discloses a system that uses a two-dimensional bar code to identify a traveler's luggage, permitting the luggage to be tracked and, if desired delivered to the traveler's ultimate destination.  (See Bravman, Abstract.)  However, Bravman does not teach or suggest a passenger interface that allows a selection to provide "a selection to hold delivery" or a server to "relay … a delivery change related to the selection," as claimed by Applicant.

Ananda discloses a baggage transport system for handling passenger baggage for transport.  (See Ananda, Abstract.)  Ananda allows a baggage collection facility that is separate from the departure and arrival facility to collect the baggage and deliver the baggage for passengers.  However, Ananda does not teach or suggest a passenger interface that allows a selection to provide "a selection to hold delivery" or a server to "relay … a delivery change related to the selection," as claimed by Applicant.  Therefore, the combination of Bravman and Ananda cannot teach or suggest the above emphasized claim language.

In view of the forgoing remarks and amendments, the rejection of claim 1 under 35 U.S.C. §103(a) as being unpatentable over Bravman and Ananda should be withdrawn.

Dependent claims 2-6 depend directly or indirectly from allowable claim 1.  Hence, dependent claims 2-6 are allowable by virtue of their dependency on allowable independent claim 1.  Additionally, the independent claims include patentably distinct subject matter as well. Hence, Applicant does not acquiesce any of the rejections.

For example, claim 4 recites:

wherein updated information comprises a selection to waive a signature using the passenger interface; and

the passenger interface includes a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage. (Emphasis added).

Bravman, Ananda or the combination of Bravman and Ananda fail to teach or suggest the above emphasized claim limitations of claim 4.  Specifically, neither Bravman nor Ananda teaches a passenger interface that includes "a selection to waive a signature" or that the interface includes a "baggage map," as claimed by Applicant.

In view of the forgoing remarks and amendments, the rejection of claim 4 under 35 U.S.C. §103(a) as being unpatentable over Bravman and Ananda should be withdrawn.

13

AMENDMENT UNDER 37 CFR 1.111
APPLICATION NO. 13/443,640

Independent claims 7 and 13 include similar limitations as claim 1. Hence, the remarks set forth above in relation to claim 1 equally apply. Thus, the rejection of independent claims 7 and 13 under 35 U.S.C. §103(a) as being unpatentable over Bravman and Ananda should be withdrawn.

Dependent claims 7-12 and 15-18 depend directly or indirectly from allowable claims 7 and 13, respectively. Hence, dependent claims 7-12 and 15-18 are allowable by virtue of their dependency on allowable independent claims 7 and 13. Additionally, the independent claims include patentably distinct subject matter as well. Hence, Applicant does not acquiesce any of the rejections.

Claims 4, 10 and 16

Claims 4, 10 and 16 stand rejected under 35 U.S.C. §103(a) as being unpatentable over Bravman and further in view of Ananda and further in view of Robertson).

Applicant respectfully submits that these claims are patentable and respectfully request the Examiner to withdraw the Section 103 rejection.

The OA recognizes that the combination of Bravman and Ananda fails to disclose that the updated information comprises at least one of a hold or a signature waiver. Claims 4, 10 and 16 have been amended and the "on hold" has been incorporated into independent claims 1, 7 and 13, respectively. As set forth in the OA, Robertson discloses "a periodic batch process whereby the system checks for travel reservations that have been put on hold for too long without confirmation" (see OA, body of paragraph 8). In Robertson, the passenger interface is not provided with an ability to make a selection to put on hold the delivery. Furthermore, Robertson does not perform the act of relaying a delivery change related to the selection.

Hence, neither Bravman, Ananda, Robertson nor the combination of Bravman, Ananda and Robertson teaches or suggests a selection to hold delivery of the piece of baggage using the passenger interface, as recited in claim 1 by Applicant; or relay … a delivery change related to the selection to the deliverer computing device, as recited in claim 1 by Applicant. Hence, each and every claim limitation in claims 4, 10 or 16 are not taught or suggested by the combination of Bravman, Ananda and Robertson.

14

Claims 4, 10 and 16 have been amended to include additional patentable features not taught by Bravman, Ananda and Robertson, such as a selection to waive a signature.

In view of the traversal provided above with respect to the §103 rejections above, these §103 rejections are rendered moot. Hence, for the reasons stated above and on their own merits, claims 4, 10 and 18 are patentable.

Claim 19

Claim 19 stands rejected under 35 U.S.C. §103(a) as being unpatentable over Bravman and further in view of Ananda and further in view of Kaneko (US 20040181570). Applicant respectfully submits that these claims are patentable and respectfully request the Examiner to withdraw the Section 103 rejection.

Specifically, the OA recognizes that the combination of Bravman and Ananda does not teach that the processor is further configured to determine a most efficient travel path for the delivery person. Thus, the OA alleges that Kaneko teaches this deficiency. However, Kaneko fails to teach or suggest a selection to hold delivery of the piece of baggage using the passenger interface, as recited in claim 1 by Applicant. Hence, the combination of Bravman, Ananda and Kaneko does not teach each and every claim limitation.

In view of the traversal provided above with respect to the §103 rejections above, this §103 rejection is rendered moot. Hence, for the reasons stated above and on its own merit, claim 19 is patentable.

Claim 20

Claim 20 stands rejected under 35 U.S.C. §103(a) as being unpatentable over Bravman and further in view of Ananda and further in view of Campbell (US 20080070771). Applicant respectfully submits that these claims are patentable and respectfully request the Examiner to withdraw the Section 103 rejection.

Specifically, the OA recognizes that the combination of Bravman and Ananda does not teach that the processor is further configured to order the plurality of pieces of baggage in a queue based on an amount of time for each of the plurality of pieces of baggage in the queue. Thus, the OA alleges that Campbell teaches this deficiency. However, Campbell fails to teach or

suggest <u>a selection to hold delivery of the piece of baggage using the passenger interface</u>, as recited in claim 1 by Applicant.  Hence, the combination of Bravman, Ananda and Campbell does not teach each and every claim limitation.

In view of the traversal provided above with respect to the §103 rejections above, this §103 rejection is rendered moot.  Hence, for the reasons stated above and on its own merit, claim 20 is patentable.

<u>Conclusion</u>

For at least the foregoing reasons, it is respectfully submitted that any objections and/or rejections set forth in the outstanding Office Action are inapplicable to the present claims. Applicant respectfully requests allowance of the pending claims.

Respectfully submitted,

Dated: 4/16/15

Lisa D. Velez
Reg. No.: 39,572
Beusse Wolter Sanks & Maire, P.A.
390 North Orange Avenue, Suite 2500
Orlando, FL 32801
Telephone: (407) 926-7727
Facsimile: (407) 926-7720
lvelez@iplawfl.com

# EXHIBIT L

# 2019-1511

In The

# United States Court Of Appeals
## For The Federal Circuit

## BAGGAGE AIRLINE GUEST SERVICES, INC.,

*Plaintiff – Appellant,*

v.

## ROADIE, INC.,

*Defendant – Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE CASE NO. 1:18-CV-00707-RGA

---

## REPLY BRIEF OF APPELLANT

---

Stefan V. Stein
Cole Y. Carlson
GRAYROBINSON, P.A.
401 E. Jackson Street
Suite 2700
Tampa, FL 33602
(813) 273-5000

*Counsel for Appellant*

GIBSONMOORE APPELLATE SERVICES, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................1

ARGUMENT ...................................................................................1

I.      THE CLAIMS AT ISSUE ARE PATENT ELIGIBLE .......................1

      A.     The Claims At Issue Are Not "Directed To" Abstract Idea Of   Coordinating And Monitoring Baggage Delivery .............2

            1.     The Claims Improve The Existing Technology ...............2

            2.     The Claims Do Not Raise Pre-emption Concerns ...........7

      B.     The Claims Contain Multiple Inventive Concepts ....................8

      C.     The "Additional Limitations" Are Presented In Claim 7 And Were Included In Bags' 45-Slide Powerpoint Presentation ..............................................................................14

      D.     Roadie's "Scenario" Does Not Include All Of The Limitations As In Claim 7 .......................................................19

      E.     Allowing A Passenger To Directly Communicate With A Delivery Person Is An Inventive Concept ................................25

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................27

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# <u>TABLE OF AUTHORITIES</u>

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
 838 F.3d 1253 (Fed. Cir. 2016) ............................................................. 11, 12

*Alice Corp. Pty. Ltd. v. CLS Bank International,*
 134 S. Ct. 2347 (2014)....................................................................................2, 7

*Berkheimer v. HP Inc.,*
 881 F.3d 1360 (Fed. Cir. 2018) ...................................................................10

*CyberSource Corp. v. Retail Decisions, Inc.,*
 654 F.3d 1366 (Fed. Cir. 2011) ...................................................................24

*Enfish, LLC v. Microsoft Corp.,*
 822 F.3d 1327 (Fed. Cir. 2016) .....................................................................2

*Fresenius USA, Inc. v. Baxter Int'l, Inc.,*
 582 F.3d 1288 (Fed. Cir. 2009) ............................................................. 18, 19

*GT Nexus, Inc. v. Inttra, Inc.,*
 2015 WL 6747142 (N.D. Cal. Nov. 5, 2015)................................................6

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
 792 F.3d 1363 (Fed. Cir. 2015) ....................................................... 23, 24, 25

*MacroPoint, LLC v. FourKites, Inc.,*
 No. 1:15-cv-1002, 2015 WL 6870118 (D. Ohio Nov. 6, 2015) ....................7

*Pandrol USA, LP v. Airboss Railway Prod., Inc.,*
 320 F.3d 1354 (Fed. Cir. 2003) ...................................................................16

*Redline Detection, LLC v. Star Envirotech, Inc.,*
 811 F.3d 435 (Fed. Cir. 2015) .....................................................................18

*Sage Prods., Inc. v. Devon Indust., Inc.,*
 126 F.3d 1420 (Fed. Cir. 1997) ............................................................. 17, 18

*Singleton v. Wulff,*
       428 U.S. 106 (1976)......................................................................................17

*Wireless Media Innovations, LLC v. Maher Terminals, LLC,*
       No. 14-cv-7004, 2015 WL 1810378 (D.N.J. Apr. 20, 2015) ..........................6

**Statutes**

35 U.S.C. § 101 ............................................................................. *passim*

## INTRODUCTION

Bags demonstrated in its opening brief that the district court erred in concluding the asserted Claim 7 of the '336 Patent was patent ineligible under 35 U.S.C. § 101. And, as explained below, the district court oversimplified Claim 7 without proper regard to each of Claim 7's limitations as well as the specification of the '336 Patent.

## ARGUMENT

## I.    THE CLAIMS AT ISSUE ARE PATENT ELIGIBLE

The claims at issue are patent eligible because they improve computer functionality as well as the delivery methods in the baggage delivery industry.

The primary issue of this § 101 dispute is whether the claimed invention is directed to an improvement in computer functionality or the baggage delivery industry as opposed to being an abstract idea for which computers are invoked merely as a tool.

As shown in Bags' Opening Appeal Brief, the district court oversimplified what the claimed invention is "directed to" and conducted a brief *Alice* analysis based on its oversimplification while disregarding how the '336 specification informs the claim language and demonstrates that the claims improve the baggage delivery industry.

Roadie has similarly oversimplified its analysis by concluding that "coordinating and monitoring baggage delivery" is an abstract idea without properly referring to the '336 specification as well as the limitations of Claim 7.

Essentially, the method claim limitations have not been properly analyzed as informed by the specification and how the claim achieves the benefits and advantages of the invention.

## A. The Claims At Issue Are Not "Directed To" Abstract Idea Of Coordinating And Monitoring Baggage Delivery

Contrary to Roadie's repeated assertions, Claim 7 is not "directed to" the abstract idea of coordinating and monitoring baggage delivery. Resp. Br. at 7. Likewise, the district court erred in determining that claim 7 is directed to "the basic concept of coordinating and monitoring baggage delivery." (Appx7). Such abstractions ignore the recited claim limitations that achieve numerous improvements to computer functionality and baggage delivery industry.

### 1. The Claims Improve The Existing Technology

Evaluating whether the claims involve a technological improvement is a key inquiry under step one of the *Alice* analysis. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016).

Without any evidence to the contrary, the improvements are:

Coordinating delivery time: Using the passenger interface on the passenger's computing device, the passenger may employ the "selection to hold delivery" by

2

selecting a hold button to indicate that she would like to delay the delivery until a later time. For example, if the passenger will not be home until 6:00 p.m., the passenger has the option to select the hold button to delay the delivery time until after 6:00 p.m. (Appx32 at 10:51-5).

More specifically, the selection to hold delivery option enables the passenger to obtain and change information regarding its prospective delivery. (Appx32 at 9:42-4). The passenger computing device can transmit the changes to the delivery information to the server. (Appx32 at 9:59-62). The server can then transmit the changes to the deliverer computing device. (Appx32 at 9:62-3). The deliverer computing device can display a notification, that changes to the baggage delivery have occurred. (Appx32 at 9:63-5).

In conjunction with <u>delivery person information</u>: The delivery person information can include a driver picture, a driver name, a driver email, and a driver vehicle picture. (Appx32 at 10:25-7).

This driver information can be any information that can be used to identify the delivery person. (Appx32 at 10:27-9). Thus, when the delivery person arrives at the passenger's location to drop off the baggage, the passenger can use the driver information to assure that the delivery person is who he represents himself to be. (Appx32 at 10:29-32).

In conjunction with <u>reordering the deliveries</u>: After the passenger selects the hold delivery option, the delivery time change can be transmitted to the server, which can then relay the change to the deliverer computing device. (Appx32 at 10:55-7). "The server or deliverer computing device can reorder the deliveries to improve efficiency given the change to the delivery time." (Appx32 at 10:57-60).

In conjunction with the <u>delivery time stamp</u>: At the time of completion of the baggage delivery, the bag information can be time stamped. (Appx31 at 8:36-37). If the delivery person is unable to deliver the baggage, the delivery person can select the unable to deliver button to re-queue the baggage delivery for later. (Appx31 at 8:57-60).

Using the server, to receive the selection to hold delivery and then to process and transmit the delivery change to the delivery person's computing device, is a concrete assignment of specific functions among a computer's components to improve the technology of the baggage delivery industry.

In contrast, Roadie's response brief only addresses these limitations by summarily concluding that "each of these purported improvements contained in the additional limitations - 'coordinating delivery time,' 'delivery person information,' reordering the deliveries,' and 'delivery time stamp' - is simply an aspect of coordinating and monitoring baggage delivery." Resp. Br. at 17. Like the district court's opinion, Roadie does not address these claim limitations as construed based

on the specification as an ordered combination nor how they achieve the benefits and advantages of the invention.

The entirety of the background section in the '336 specification details the improvements the invention comprises. Specifically,

> Since the introduction of the airline industry, the troubles associated with losing one's baggage are well-known and burdensome. In most cases, when an airline misplaced a passenger's baggage, the passenger would be without its personal belongings for several days. The passenger would report the baggage missing, then leave an address and phone number where the baggage could be returned. Once the airline located the baggage and was able to make contact with the passenger, it could then begin its return to the passenger's chosen destination, often taking several days. The actual delivery of the baggage to the passenger was typically accomplished via a subcontractor, such as a taxi service. As such, the subcontractor would call the passenger to schedule the delivery. This approach had logistical drawbacks.

> Oftentimes, the actual delivery would be at a time when the passenger was not at the listed destination; for instance, the passenger's home. The 'typical subcontractor [would] drop the baggage off at the front door, ring the doorbell, and leave; where the baggage could then be stolen.' Or worse, 'the [subcontractor] could simply keep the baggage and merely report the baggage as delivered. Thus, improved systems and methods for coordinating and monitoring baggage delivery [were] needed.'

Opening Br. at 2-3.

Here, using computer-related technology in a specific configuration lessens the possibility of delivering baggage to a passenger at an inconvenient time and location as well as lessening the possibility of the baggage being stolen. Furthermore, if every limitation in the claim was considered, the court would likely

have found that the configuration improves the delivery baggage industry by configuring computer components in a specific way to allow the passenger to communicate a "selection to hold delivery" to a delivery person.

Roadie then argues that "Bags also fails to distinguish a trio of cases involving tracking and monitoring shipments." Resp. Br. at 18. In its opening brief, Bags distinguished the first case cited, namely

> *GT Nexus, Inc. v. Inttra, Inc.*, wherein the patents-in-suit disclosed an online system and method for buyers and sellers of international container transportation services. 2015 WL 6747142 (N.D. Cal. Nov. 5, 2015), *aff'd*, 669 F. App'x 562 (Fed. Cir. 2016); (Appx8-9). The court reasoned that since the invention of the '336 Patent relates to methods for coordinating and monitoring baggage delivery, it is similar to that in *GT Nexus*, where the court found that the shipping of goods is a conventional business practice long prevalent in our system of commerce. (*Id.*) The court justified its comparison to *GT Nexus* by stating that the "patent claims merely replace the phone calls used to track down baggage, arrange for delivery, and have it delivered to the passenger's destination." (Appx9). This conclusion necessarily fails to consider the additional limitations included in Claim 7.

Opening Br. at 30.

The second case referenced by Roadie, *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, No. 14-cv-7004, 2015 WL 1810378 (D.N.J. Apr. 20, 2015) included claims directed to an abstract idea of monitoring and recording shipping container movement. (*Id.* at 408.) Roadie presents this case without any meaningful discussion as to how it is relevant to Claim 7 of the '336 Patent. Nonetheless, the claims in *Wireless Media Innovations, LLC* are distinguishable because they are

basic. Specifically, the claims provide for a container to be placed into a reserved location, whereupon it is checked for compliance and recorded as such. Here, Claim 7 provides more than locating and placing a piece of baggage and then recording it. Claim 7 allows a passenger to communicate with a delivery person such that her baggage delivery is more controlled and monitored.

Roadie then cites to *MacroPoint, LLC v. FourKites, Inc.*, No. 1:15-cv-1002, 2015 WL 6870118 (D. Ohio Nov. 6, 2015) for the proposition that the "patent-in-suit was directed to the process of tracking freight, including monitoring, locating, and communicating regarding the location of the freight. Notably, the claims in *MacroPoint, LLC* do not provide the customer with control over the delivery; the claims only allow the customer to monitor the delivery.

### 2. The Claims Do Not Raise Pre-emption Concerns

Pre-emption is "the concern that drives" § 101 analysis. *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347, 2354 (2014). Pre-emption is defined that allowing an abstract concept to be patent-eligible, would in effect, monopolize the abstract idea itself, thus preventing further advances within that art. (*Id.*) The Supreme Court has "repeatedly emphasized [the] . . . concern that patent law not inhibit further discovery by improperly tying up the future use of these building block of human ingenuity." (*Id.*)

7

Roadie advances little to no support for its argument that "it is difficult to envision how one could advance the field of baggage delivery without being able to utilize basic functions such as changing delivery time, offering a delivery time stamp, providing delivery person information, and reordering deliveries." Resp. Br. at 19. These additional limitations provide a substantial update to the baggage delivery industry by allowing the passenger to communicate with the delivery person such that the delivery of her baggage is more controlled and monitored. Furthermore, Claim 7 is highly detailed and specific such that the additional limitations do not claim the "building blocks" of human ingenuity as enunciated in *Alice*, rather they "integrate the building blocks into something more," thus they "remain eligible for the monopoly granted under our patent laws." (*Id.*)

The claim does not pre-empt all methods of coordinating and monitoring baggage delivery; it only concerns the specific implementation recited. Future inventors would likely improve the baggage delivery industry such that pre-emption is not a concern. In short, Roadie dismisses such additional limitations and urges this Court to do the same.

## B. The Claims Contain Multiple Inventive Concepts

In Bags' opening brief, it was shown that even if the claims were "directed to" an abstract idea, the claims contain inventive concepts. Specifically, the claims allow a passenger to communicate with a delivery person to more efficiently

associate its baggage with a delivery person and monitor and coordinate the baggage delivery. Opening Br. at 34. Additionally, Bags represented that "the ordered combination of Claim 7's steps achieves real-world benefits, and improves computer functionality toward improving the baggage delivery industry." (*Id.* at 35.)

Claim 7's inventive concept includes a passenger reporting its missing baggage to a common carrier, such as an airline. (Appx32 at 9:26-7). The passenger can then provide information such as a proposed drop off address. (Appx32 at 9:27-9.) After a server locates the missing baggage, the baggage is assigned to the passenger. (Appx32 at 9:35-40.) The server then creates a passenger record and interface for the passenger, which enables the passenger to obtain and change information regarding a prospective delivery of its missing baggage. (Appx32 at 9:41-4.) The server then transmits this capability to a passenger computing device and a deliverer computing device. (Appx32 at 9:44-8.) This transmission allows the passenger and deliverer to in effect, connect with each other. The passenger computing device then receives information relating to the deliverer, such as his picture, mobile number, picture of his delivery vehicle, etc. (Appx32 at 9:50-3.) Other information the passenger receives is estimated time of delivery, the proposed drop off address, the delivery status, and a map showing the current location of the baggage. (Appx32 at 9:53-5.) The passenger can then alter the delivery information accordingly, wherein the delivery changes are transmitted to the deliverer computing

device to inform the deliverer of such changes. (Appx32 at 9:59-62). The altered delivery information may be due to the passenger desiring a new delivery time, such that the passenger is able to receive the delivery in-person, as opposed to the delivery occurring at a vacant address. (Appx32 at 10:51-5). The passenger may also select a waive signature option, allowing the baggage to be dropped off at the vacant address. (Appx32 at 10:61-4).

Roadie argues that "[g]uaranteed delivery of baggage is not an inventive concept of the '336 Patent claims" and that Bags waived this argument by not presenting it to the district court. Resp. Br. at 20-1. During the § 101 hearing, Bags argued that in addition to "selection to hold delivery," an inventive concept of the '336 Patent is that delivery of the baggage is guaranteed. (Appx575, Appx580). The court found the "alleged inventive step [to not be] captured in the claims," (Appx11) and thus, "[could not] make the claims patent-eligible." (Appx11). However, the court did not consider dependent claim 12[1], which reads as follows:

> 12. The method of claim 7, further comprising receiving, via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a **delivery time stamp**.

(Appx34 at 14:16-20) (emphasis added).

---

[1] This dependent claim must be considered because Bags "advanced meaningful arguments regarding limitations found only in the dependent claims." *Berkheimer* 881 F.3d at 1365.

This limitation requires a delivery time stamp. (Appx34 at 14:16-20). The specification states that "after the delivery person has delivered the baggage . . . the bag information can be time stamped." (Appx31 at 8:26-41). Without the passenger selecting the waive signature option, the delivery can only be time stamped when the passenger receives the delivery in-person, thereby signing the delivery as completed, whereupon the delivery is then time stamped. Thus, claim 12 as well as the specification provides support for Bags' assertion that the delivery is necessarily guaranteed.

Roadie argues about Bags asserting Claim 12 by citing to *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1264 n.4 (Fed. Cir. 2016) for the proposition that "Bags has waived any patent eligibility argument that is predicated on patent claims that it did not raise before the district court because Bags "acquiesced to the district court's treatment of claim 7 as representative of all claims of the '336 patent" as well as that "[a]t no point did Bags present or even suggest that claim 12 - or any other claims of the '336 patent - supported its 'guaranteed delivery' inventive concept argument."

In *Affinity Labs of Tex., LLC*, the Court found that in addition to conceding that a certain claim was representative, the plaintiff did not present "any meaningful argument for the distinctive significance of any claim limitations other than those included" in the representative claim. *Affinity Labs of Tex., LLC*, 838 F.3d 1253 at 1256 n.1.

Here, representing that Bags did not present any argument relating to the fact that an inventive concept of the '336 Patent includes that the delivery of the baggage is guaranteed, is misleading and untrue. Bags argued this position in its response to Roadie's § 101 motion. *See* Appx576 ("[a]s explained in the '336 Patent, one of the main issues to be solved was guaranteeing the delivery of the baggage to the passenger."). Thus, Roadie has been well-informed of Bags position regarding the guaranteeing the delivery of the baggage since March 6, 2018.

Furthermore, in light of the specification, the purpose of the '336 Patent is to increase the efficiency at which a lost baggage is delivered to a passenger by allowing the passenger to monitor, change, and control its baggage delivery. Thus, the passenger's control allows the passenger to be more readily able to receive the baggage delivery, thus facilitating the guaranteeing of the delivery of the baggage.

Roadie then argues that Bags conceded that the inventive concept "selection to hold delivery" had been practiced well before the invention of the '336 Patent. This is also misleading and untrue. Roadie points to sections of the § 101 hearing transcript to purportedly support its argument; however, Bags never conceded that the term "selection to hold delivery" was practiced before the invention of the '336 Patent. In fact, Bags expressly rejected this argument by stating:

> THE COURT: So you're telling me that in the old days, you couldn't call up the airline and say, I won't be home on this day; deliver my bags the next day?

12

MR. STEIN: I think you could make a phone call to the airline and try to get that done. Okay. I can tell you from experience that that doesn't work.

THE COURT: Well, no. No. No. But that's the point of like when computers, it seems to me are not an invention is when you rely on the efficiency of computers to do some process, but without the human mistakes. And so, you know, the idea that you would try to get the bags delivered when somebody was there to receive them, that's not a new idea.

It may be that computers may get it more likely that that will be accomplished, but you know, that's the same thing with intermediated settlement and all the other kinds of things that are done on computers is computers have certain capabilities that human beings don't have, even companies don't have. And so when the computer takes advantage of the computer thing that it's a machine and gets things right the humans don't, that's not patentable.

Right?

MR. STEIN: <u>Well, we think it is, Your Honor, because the claim language which defines the scope of protection. Okay. There's no evidence in the record, particularly for this motion, that the claimed elements directed to the selection of all discovery [sic] was common, was not inventive.</u>

(Appx1119-1120 at 24:7-25:9) (emphasis added).

Thus, Mr. Stein argued that the claim limitation "selection to hold delivery" was inventive.

### C. The "Additional Limitations" Are Presented In Claim 7 And Were Included In Bags' 45-Slide Powerpoint Presentation

Roadie argues that the additional limitations[2] had not been presented to the district court in any capacity and thus, are waived on appeal. However, Roadie has failed to consider that Bags prepared a 45-slide Powerpoint presentation to be used during the § 101 hearing before the district court and Roadie *even attached the presentation to its § 285 motion*. (Appx1227-1271). That presentation was only briefly argued because the district court requested that each party take no longer than 15 minutes to argue its case. (Appx1098 at 15-16) and enunciated the following:

> MR. STEIN: Maybe I can move this computer over here where I can control it because we have a lot more slides than 15 minutes.

> THE COURT: Well, you don't have to go through them all.

> MR. STEIN: I know, but --

However, in that presentation, Bags argued that the purpose of the '336 Patent is that the "server, in combination with a deliverer computing device and passenger computing device, 'communicate baggage information amongst each other to *increase the efficiency of missing baggage delivery, enhance passenger experience, and provide a record of baggage delivery*.'" (Appx1264-1266) (emphasis added). Each of the additional limitations are present in these three italicized purposes.

---

[2] These additional limitations include (1) coordinating delivery time by receiving a selection to hold delivery, (2) delivery person information, (3) reordering deliveries, and (4) a delivery time stamp. *See* Resp. Br. at 14.

14

First, increasing the efficiency of missing baggage delivery is accomplished

by:

> receiving . . . baggage information relating to the piece of baggage to be delivered to a passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination
>
> receiving . . . from the passenger computing device a selection to hold delivery . . . until a delayed delivery time
>
> relaying . . . a <u>delivery change</u> to the deliverer computing device responsive to the <u>selection to hold delivery</u>.

(Appx1264) (emphasis added).

Second, enhancing passenger experience is accomplished by:

> transmitting . . . at least a portion of the baggage information and <u>delivery person information</u> to a passenger computing device associated with the passenger
>
> the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport.

(Appx1265) (emphasis added).

Third, providing a record of baggage delivery is accomplished by:

> receiving . . . delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a <u>delivery time stamp</u>.

(Appx1266) (emphasis added).

15

Each of the above quoted passaged show the additional limitations within the claims of the '336 Patent.

Roadie then cites to several cases to support its position that these additional limitation arguments should not be considered by this Court because they haven't been argued before, yet each of Roadie's cited cases is readily distinguishable from the facts present here. First, Roadie cites to *Pandrol USA, LP v. Airboss Railway Prod., Inc.*, 320 F.3d 1354, 1366 (Fed. Cir. 2003) for the proposition that

> [t]here is no onus on the district court to distill any possible argument which could be made based on the materials before the court. Presenting such arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court.

(*Id.*)

In *Pandrol USA, LP*, the plaintiffs submitted a motion for summary judgment requesting the court to enter judgment of infringement against the defendants and in favor of the plaintiffs on claim 3 of the patent-in-suit. (*Id.*) The Court held that the individual defendants and Airboss were obligated to oppose the motion with their arguments as to the secondary defendants' non-liability for infringement. As such, defendants' failure to raise such arguments in response to the motion for summary judgement resulted in the arguments being waived.

Here, Roadie is not arguing that Bags failed to include an affirmative defense in response to its § 101 motion, rather Roadie is arguing that Bags did not include its

validity arguments within Bags' response to Roadie's § 101 motion. In Bags' response to Roadie's § 101 motion, Bags argued that the "<u>combination of pieces described in the '336 Patent</u> has never been used before in the baggage dispatch art." (Appx576) (emphasis added). Thus, Bags' argued that each of the limitations of Claim 7 form the whole of the validity of the '336 Patent. Furthermore, in responding to Roadie's § 101 motion, Bags represented that the '336 Patent is valid and thus, each of the claims are necessarily included, in their entirety, in the validity arguments.

Roadie then cites to *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) for the proposition that "it is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." (*Id.*) However, the Supreme Court in *Singleton* then went on to state that the "matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. We announce no general rule." (*Id.*) Now, even if this Court finds that Bags' 45-slide Powerpoint presentation, along with its response to Roadie's § 101 motion, and the plain language of Claim 7, were not sufficient to support the arguments Bags presented in its opening appeal brief regarding the additional limitations in the '336 Patent, it is this Court's ultimate discretion to consider the arguments.

Roadie then cites to *Sage Prods., Inc. v. Devon Indust., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) for the proposition that "this court does not 'review' that which

was not presented to the district court." (*Id.*) In *Sage Prods., Inc.*, Sage argued on appeal that the claim limitation "elongated slot" was to be construed in a different manner than what the district court construed it to be. (*Id.*) The Court found that Sage "present[ed] this court with new infringement arguments, raised for the first time on appeal." (*Id.*) Here, Bags has not presented new constructions of claim terms, rather Bags only argues that the untouched claim terms simply refer to the purpose of the '336 Patent. Thus, *Sage Prods., Inc.* is an inapposite case that should not be considered relevant.

Roadie then cites to *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) for the proposition that "[i]f a party fails to raise an argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court, we may deem that argument waived on appeal." (*Id.*) In *Fresenius USA, Inc.*, Baxter argued that the patent-in-suit was not invalid as anticipated because the alleged prior art lacked two of the required claim limitations. The Court found that "the new anticipation argument Baxter presents on appeal includes factual assertions regarding the information contained in the [prior art's] manual." (*Id.*) Thus, the Court held that "Baxter did not properly present its argument regarding the . . . anticipation verdict to the district court, and thus, Baxter has waived that argument." (*Id.*) *See also Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 450 (Fed. Cir. 2015) (Redline argued during a PTAB proceeding that the PTAB did not

apply the correct person of ordinary skill in the art standard. Then on appeal, Redline argued "for the application of a different PHOSITA standard.").

Here, Bags is not arguing a new theory of law regarding the validity of the '336 Patent, rather Bags is simply pointing out each and every claim limitation was presented to the district court through the inclusion of the prosecution history, Bags' response to Roadie's § 101 motion, and Bags' 45-slide Powerpoint presentation. Thus, *Fresenius USA, Inc.* and *Redline Detections, LLC* are inapposite cases that should not be considered relevant.

### D. Roadie's "Scenario" Does Not Include All Of The Limitations As In Claim 7

Roadie's scenario is as follows:

> Indeed, consider the following example: Paula takes a flight to the Philadelphia airport to visit her friend in Wilmington, but her checked baggage does not make it on her flight. Steve is the manager of the airline's lost baggage department, and Dave is one of Steve's baggage delivery couriers. The following human activity mirrors the basic functions claimed in claim 7, the independent method claim of the '336 patent, where Steve represents the server, Paula and her cell phone represent the passenger and passenger computing device, respectively, and Dave and his cell phone represent[] the delivery person and deliverer computing device, respectively.

Resp. Br. at 27.

Roadie then compares this scenario to the claim limitations in Claim 7. However, many of the limitations in Claim 7, which have been emboldened and underlined, are not present within the scenario, as shown below:

19

| Claim 7 Plain Language | Roadie's Scenario |
|---|---|
| receiving, through a transceiver of a server and after a piece of baggage has been transported to a destination, **baggage information** relating to the piece of baggage to be delivered to a passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination; | After Paula's delayed luggage finally arrives at Philadelphia airport, Steve calls Paula's cell phone, and Paula instructs Steve to have Paula's baggage delivered to the address of her friend's apartment in Wilmington. |
| associating, by the processor of the server, the **baggage information** with a delivery person, wherein the delivery person is associated with **delivery person information**; | Steve determines that Dave should be the delivery courier assigned to deliver Paula's baggage to the Wilmington address. |
| transmitting, through the transceiver, a pick up bags message to a deliverer computing device associated with the delivery person; | Steve calls Dave on his cell phone and instructs him to come to the Philadelphia airport to pick up Paula's baggage. |
| transmitting, through the transceiver, at least a portion of the **baggage information** and the **delivery person information** to a passenger computing device associated with the passenger; | Steve calls Paula and informs her that the person who will be delivering her baggage to the Wilmington address is named Dave. |
| receiving, through the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using a passenger interface until a delayed delivery time | Paula, on her cell phone, instructs Steve not to deliver her baggage until after 8:00 pm because she and her friend are out to dinner. |
| wherein the passenger interface displays **travel information** of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information wherein the passenger interface is updated with changes in the approximate location or the current | Steve informs Paula that the current location of her baggage is the Philadelphia airport. |

20

| | |
|---|---|
| location of the piece of baggage during transport; | |
| relaying, through the transceiver, a **delivery change** to the deliverer computing device responsive to the **selection to hold delivery** of the piece of baggage using the passenger interface; and | Steve calls Dave's cell phone to tell Dave that Paul's baggage should not be delivered until after 8:00 pm. |
| **reordering**, by the processor of the server, other deliveries associated with the deliverer computing device given the **delivery change**. | Because Paula requested that her baggage be delivered after 8:00 pm, Steve instructs Dave to complete other pending baggage deliveries before delivering Paula's luggage. |

As shown above, Roadie's scenario does not include (1) baggage information, (2) delivery person information, (3) travel information, (4) a selection to hold delivery, and (5) reordering the delivery given the delivery change, a/k/a every additional limitation.

First, Roadie's scenario does not include the baggage information limitation. Specifically, in the scenario, Paula instructs Steve to deliver her baggage to her friend's address in Wilmington. How Steve is supposed to locate Paula's baggage tossed within the numerous other lost baggage, based on that statement, seems entirely impossible because proper baggage information, as in Claim 7, can include a number of bags in delivery, a delivery method, additional requests, a time of baggage recovery, a time of baggage assignment to the delivery person, a latest delivery time, and a current status of the baggage. (Appx32 at 10:38-42.)

Second, Roadie's scenario does not include providing the passenger with the delivery person's identifying information. The delivery person information information can include a driver picture, a driver name, a driver email, and a driver vehicle picture. (Appx32 at 10:25-7). A significant purpose of the '336 Patent is to provide the passenger with the identifying information of the delivery person such that when the delivery person arrives at the passenger's location to drop off the baggage, the passenger can use the driver information to assure that the delivery person is who he represents himself to be. (Appx32 at 10:29-32).

Third, Roadie's scenario does not provide the passenger with her travel information. The travel information may include an airline name, airport name, and baggage map configured to display on the passenger computing device an approximate location or current location of her baggage. Quite clearly, having numerous phone calls would not allow the passenger to properly monitor the travel trajectory of her baggage.

Fourth, Roadie's scenario does not provide the passenger with the option of changing its baggage delivery. Notably, Roadie argues that "Steve calls Dave's cell phone to tell Dave that Paul's baggage should not be delivered until after 8:00 pm" which is apparently supposed to be equivalent to a passenger selecting a hold delivery option informing the driver to delivery at a different time and/or address. What if Dave or Steve do not answer their phones? What if Steve informs Dave of the incorrect time

22

or address? What if Paula changes her delivery time and/or address multiple times? It appears the problems associated with Roadie's scenario would be amplified with these questions. This is exactly what Bags argued during the § 101 hearing:

> THE COURT: So you're telling me that in the old days, you couldn't call up the airline and say, I won't be home on this day; deliver my bags the next day?

> MR. STEIN: I think you could make a phone call to the airline and try to get that done. Okay. I can tell you from experience that that doesn't work.

Fifth, Roadie's scenario does not provide the ability to reorder other deliveries given the passenger's delivery change. For instance, if Paula requests her baggage to be delivered at a later time or different address, can Steve effectively change the other deliveries in the queue? What if multiple passenger each select different delivery times or address? Will Steve be able to effectively coordinate with Dave?

It appears that each of the above additional limitations increases the efficiency at which baggage is delivered such that it extends substantially beyond using generic computer components in a generic way.

Roadie argues in support of its scenario by citing to *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) for the proposition that "[i]nstructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make

an abstract idea patent-eligible." (*Id.*) In *Intellectual Ventures I LLC*, the claim at issue was as follows:

> 5. A method comprising:
>
> storing, in a database, a profile keyed to a user identity and containing one or more user-selected categories to track transactions associated with said user identity, wherein individual user-selected categories include a user pre-set limit; and
>
> causing communication, over a communication medium and to a receiving device, of transaction summary data in the database for at least one of the one or more user-selected categories, said transaction summary data containing said at least one user-selected category's user pre-set limit.

(*Id.* at 1367.)

There, the Court noted that the claim contains no inventive concept because the "recited elements, e.g., a database, a user profile . . . and a communication medium, are all generic computer elements." (*Id.* at 1368.) The Court held that the budgeting calculations in claim 5 "are unpatentable because they 'could still be made using a pencil and paper' with a simple notification device . . . even in real time as expenditures were being made." (*Id.*) (citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011)).

Here, Claim 7 of the '336 Patent includes operations that cannot be made using a pencil or paper or telephone system. Claim 7 allows a passenger to control and monitor its baggage delivery with a performance that exceeds any such equivalent using a telephone system. Furthermore, claim 5 in *Intellectual Ventures I*

24

*LLC* would likely pre-empt the field of budgeting calculation because the claim is simple and includes no limitations that set it apart from the abstract idea itself. In contrast it has been shown here that pre-emption is not an issue for Claim 7 of the '336 Patent because it is narrowly-defined such that future inventors would likely be able to obtain patents on technologies that improve the baggage delivery industry.

### E.     Allowing A Passenger To Directly Communicate With A Delivery Person Is An Inventive Concept

Roadie begins its argument by stating that "Bags makes the absurd argument - for the first time in its appeal brief - that the inventive concept of claim 7 is allowing a passenger to directly communicate with a delivery person." Resp. Br. at 30. Allowing a passenger to directly communicate with a delivery person is an inventive concept of the '336 Patent, as embodied in Claim 7 and disclosed throughout the specification.

Roadie then argues that "Bags has no basis for making this frivolous assertion" because "it is plainly false." (*Id.*) Roadie supports its position by stating that "[a]ll of the communications taking place between the computing devices recited in claim 7 of the '336 Patent <u>must involve the server</u>. There is absolutely no disclosure of communications between the passenger (or passenger computing device) and the delivery person (or deliverer computing device) in claim 7." (*Id.* at 31-2.) This is misleading and false.

The selection to hold delivery option in Claim 7 enables the passenger to obtain and change information regarding its prospective delivery. (Appx32 at 9:42-4). The

passenger computing device can transmit the changes to the delivery information to the server. (Appx32 at 9:59-62). The server can then transmit the changes to the deliverer computing device. (Appx32 at 9:62-3). The deliverer computing device can display a notification, that changes to the baggage delivery have occurred. (Appx32 at 9:63-5). This is the broad view of the disclosure that shows how the passenger is able to communicate with the delivery person. Of course, since the communications are enabled by using an application on a smartphone, those communications must travel through the central server of the application. However, when the passenger sends a selection to hold delivery, that change is immediately relayed to the deliverer computing device. Roadie cannot assert that Bags' position is frivolous because it is plainly untrue.

Roadie then argues that the "delivery change received by the deliverer computing device is not the same as the selection to hold delivery sent by the passenger computing device." Resp. Br. at 32. Roadie supports its argument by referencing the prosecution history of the '336 Patent. Specifically, in overcoming a § 101 rejection, Bags argued that

> the passenger sends a 'selection' to hold delivery. This very selection is then transformed into a communication signal to the server which causes the server to relay a delivery change to a deliverer computing device and reorder the deliveries. Such acts include transformation of a selection to cause deliveries to change.

As represented above, whether or not the selection to hold delivery is transformed into a delivery change is irrelevant to the fact that the passenger is able to communicate

directly with the deliverer. The selection to hold delivery may be considered to be x while the delivery change is y, but the action that is completed is that the delivery has been changed, which begins with the passenger and ends with the delivery person.

Roadie then argues that "Bags' 'communication between passenger and delivery person' argument appears for the first time in Bags' appeal brief." Resp. Br. at 34. This is misleading and untrue. As shown above, the purpose of the including the last two limitations of Claim 7 are directed to allowing a passenger to communicate with a delivery person to initiate a delivery change. That limitation is within the claim that Roadie seeks to invalidate. How Roadie now argues that Bags cannot argue the untouched claim limitations is without precedent and furthermore, Bags presented this argument to the district court during the § 101 hearing.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons above, the Court should reverse or vacate and remand the invalidity judgment.

<div align="right">

/s/ Stefan Stein
Stefan V. Stein
Cole Carlson
GrayRobinson, P.A.
401 E Jackson St #2700
Tampa, FL 33602
Telephone: (813) 273-5000
stefan.stein@gray-robinson.com
cole.carlson@gray-robinson.com
*Attorneys for Appellant*
*Baggage Airline Guest Services, Inc.*

</div>

Date: June 10, 2019

27

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that, on June 10, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

Dated: June 10, 2019          Respectfully submitted,

<u>/s/ Stefan V. Stein</u>
Stefan V. Stein
Cole Y. Carlson
GRAYROBINSON, P.A.
401 E. Jackson Street
Suite 2700
Tampa, FL 33602
(813) 273-5000

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. Cir. R. 32(a) because:

    this brief contains <u>6,652</u> words, excluding the parts of the brief exempted by exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

Dated:  June 10, 2019                    Respectfully submitted,

                                         <u>/s/ Stefan V. Stein          </u>
                                         Stefan V. Stein
                                         Cole Y. Carlson
                                         GRAYROBINSON, P.A.
                                         401 E. Jackson Street
                                         Suite 2700
                                         Tampa, FL 33602
                                         (813) 273-5000

                                         *Counsel for Appellant*

# EXHIBIT M

## Moy, John

| | |
|---|---|
| **From:** | Moy, John |
| **Sent:** | Monday, June 10, 2019 2:35 PM |
| **To:** | Stefan V. Stein, B.C.S; Cole Carlson; William V. Stein; Jessica M. Gonzalez |
| **Cc:** | Pennington, Edward; Pennington, John; Tzou, Darlene |
| **Subject:** | Bags v. Roadie, No. 2019-1511 |

**Importance:**        High


Counsel,

The "Joint Appendix" you filed with the Federal Circuit today is improper and <u>must be withdrawn</u> <u>immediately</u>.  Specifically, Appx1227-1271 of the "joint appendix" you filed today had not been designated by either party for inclusion in the joint appendix, nor were those pages included in the physical compilation you served on us on April 5, 2019, pursuant to Federal Circuit Rule 30(b)(4)(B).  We did not, and do not, consent to the inclusion of these additional pages in the joint appendix.  Please withdraw the filing immediately; otherwise, we will be forced to inform the Court of your impropriety.

John



**John P. Moy**
*Counsel*

---

**p** | 202-263-4337
**f** | 202-263-4318
**e** | jmoy@sgrlaw.com
1055 Thomas Jefferson Street, NW | Suite 400 | Washington, DC 20007
www.sgrlaw.com  |  My Bio  |  vCard



---

1

# EXHIBIT N

**Moy, John**

---

| | |
|---|---|
| **From:** | William V. Stein <William.Stein@gray-robinson.com> |
| **Sent:** | Monday, June 10, 2019 3:21 PM |
| **To:** | Moy, John |
| **Cc:** | Pennington, Edward; Pennington, John; Tzou, Darlene; Stefan V. Stein, B.C.S; Cole Carlson; Jessica M. Gonzalez |
| **Subject:** | RE: Bags v. Roadie, No. 2019-1511 |

---

> **CAUTION: This email is from an external source. Do not click links or attachments unless it's from a verified sender.**

John,

We have been advised, by Shelly Gannon of GibsonMoore Appellate Services, LLC, that adding to the Joint Appendix is standard practice and Rule 30 confirms that. Thus, we will not be withdrawing and amending the Joint Appendix.

Thank you,
William

**From:** Moy, John [mailto:jmoy@sgrlaw.com]
**Sent:** Monday, June 10, 2019 2:35 PM
**To:** Stefan V. Stein, B.C.S; Cole Carlson; William V. Stein; Jessica M. Gonzalez
**Cc:** Pennington, Edward; Pennington, John; Tzou, Darlene
**Subject:** Bags v. Roadie, No. 2019-1511
**Importance:** High

**This message originated outside of GrayRobinson.**

---

Counsel,

The "Joint Appendix" you filed with the Federal Circuit today is improper and <u>must be withdrawn immediately</u>. Specifically, Appx1227-1271 of the "joint appendix" you filed today had not been designated by either party for inclusion in the joint appendix, nor were those pages included in the physical compilation you served on us on April 5, 2019, pursuant to Federal Circuit Rule 30(b)(4)(B). We did not, and do not, consent to the inclusion of these additional pages in the joint appendix. Please withdraw the filing immediately; otherwise, we will be forced to inform the Court of your impropriety.

John

**John P. Moy**
*Counsel*

**p** | 202-263-4337
**f** | 202-263-4318
**e** | jmoy@sgrlaw.com
1055 Thomas Jefferson Street, NW | Suite 400 | Washington, DC 20007
www.sgrlaw.com  |  My Bio  |  vCard



Confidentiality Notice
This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

**William V. Stein | Associate**
**G R A Y** | **R O B I N S O N**

401 East Jackson | Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | vCard

**Facebook** | **LinkedIn** | **Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

# EXHIBIT O

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BAGGAGE AIRLINE GUEST
SERVICES, INC.,

       Plaintiff,

v.                                 CASE No: 6:17-cv-1549-RBD-TBS

ROADIE, INC.,

       Defendant.

_____/

### PLAINTIFF'S INITIAL INFRINGEMENT CONTENTIONS CONCERNING U.S. PATENT NO. 9,659,336

    Plaintiff, Baggage Airline Guess Services, Inc. ("Bags"), hereby provides its infringement contentions as required under the Case Management Scheduling Order dated December 29, 2017 (Dkt. 29).

    Defendant, Roadie, Inc. ("Roadie"), infringes the patent-in-suit, U.S. Patent No. 9,659,336 ("the '336 Patent") by making, using, selling, and offering for sale the following products: the Roadie App, available on the iTunes store at https://itunes.apple.com/us/app/roadie-app/id943490654?mt=8 and available on the Google Play store at https://play.google.com/store/apps/details?id=com.roadie.android.app (the "Accused Product").

    The following claim chart sets forth exemplary descriptions of the Accused Product and its various components for purposes of illustrating Roadie's infringement of the asserted claims of each patent.

Unless otherwise specifically set forth herein, the provided contentions demonstrate literal infringement of each element of the asserted claims of the patents-in-suit. To the extent that Roadie alleges that a claim element is not present in the Accused Product, Bags contends that the Accused Product also meets each claim element under the doctrine of equivalents. More specifically, as determined from Bags' investigation and analysis of the Accused Product, there are no more than insubstantial differences between the elements of the application recited in the asserted claims of the '336 patent and the corresponding elements and features of the Accused Product. In each instance, the elements and features of the Accused Product are all found in claims 1-20 of the '336 Patent, and/or perform substantially the same function in substantially the same way to achieve substantially the same result as the corresponding elements and features of the asserted claims.

Plaintiff reserves the right to supplement and/or amend its infringement contentions, where warranted, by further information obtained during discovery or further analysis.

U.S. Patent No. 9,659,336

| | |
|---|---|
| 1. An apparatus for dispatching baggage, comprising: | Roadie explains that delivery of goods with the Accused Product "is a delivery or shipment" for "basically anything that needs to go from here to there." www.roadie.com (last visited Jan. 29, 2018). On information and belief, this includes baggage.<br><br> |
| a server having a processor and a transceiver configured to transmit and receive communications to and from a passenger computing device associated with a passenger and a deliverer computing device associated with a delivery person | On information and belief, the Accused Product involves the use of a server having a processor and a transceiver configured to transmit and receive communications to and from a passenger computing device.<br><br>As shown in the screenshots below, the Accused Product is providing information and communications to a passenger regarding the delivery of the goods to the passenger's computing device. The user can also communicate and transmit information; for example, using the "Rate the Driver" button would result in information being transmitted from the passenger computing |

3

device to Roadie's servers. Similarly, the deliverer has their own options to communicate with the server.



| | |
|---|---|
| wherein the passenger computing device includes a passenger interface to communicate with the server; and | As shown in the screenshots below, the passenger can communicate with the server by rating the driver, updating the delivery location, or ask for help. |

4



| | |
|---|---|
| the processor configured to: receive, via the transceiver, after a piece of baggage has been transported to a destination, baggage information relating to the piece of baggage to be delivered to the passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination; | As shown in the screenshot below, the baggage was transported to one destination and then the passenger sent information about the baggage to be delivered to the passenger at a different destination including the drop off address and the size of the baggage. |



| associate the baggage information with the delivery person, wherein the delivery person is associated with delivery person information; | As shown in the screenshot below, baggage information is associated with the delivery person who has information associated with them. Further, the delivery can only be completed when the delivery person enters a code associated with the transaction, further associating the delivery person with the baggage information. |
|---|---|



| | |
|---|---|
| transmit, via the transceiver, a pick up bags message to the deliverer computing device associated with the delivery person; and | As shown in the screenshot below, once a delivery is requested, it is available for all deliverers to accept or decline. The Accused Device also provides information about available deliveries to its deliverers. |





| | |
|---|---|
| transmit, via the transceiver, at least a portion of the baggage information and the delivery person information to the passenger computing device associated with the passenger; | As shown in the screenshots below, a portion of the baggage information and delivery person information is transmitted to the passenger computing device. On information and belief, this transmission is achieved using the transceiver. |





| | |
|---|---|
| receive, via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time | On information and belief, a passenger can choose to hold delivery of the baggage until a delayed delivery time. As shown below, the passenger can contact the deliverer, using the Accused Device and Roadie's servers, to change the delivery location. It is just as likely that a user will request a delay in delivery. |



| | |
|---|---|
| wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information | Travel information is displayed on the passenger computing device and, on information and belief, can include airline and airport information. The screenshots below confirm the use of a baggage map configured to display an approximate or currently location of the baggage associated with the travel information. |





| | |
|---|---|
| wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport; | As shown in the screenshot below, the location of the baggage is updated and tracked during delivery with the approximate or current location of the piece of baggage while in transport. |

|  |  |  |
| relay, via the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and | As shown in the screenshot below, delivery changes are relayed to the deliverer computing device. On information and belief, these delivery changes can be responsive to the selection to hold delivery. |  |



| reorder other deliveries associated with the deliverer computing device given the delivery change. | On information and belief, deliveries can be reordered using the Accused Device. For example, in the screenshot below, the address for delivery was changed. On information and belief, the passenger can set their delivery address based on this delivery change and reorder the delivery. |
|---|---|



| 2. The apparatus of claim 1, wherein the baggage information further comprises at least one of a picture of the delivery person, a picture of a vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, | As shown in the screenshots below, the baggage information includes a pictures of a delivery person, the delivery person's name, the passenger's name, the vehicle description, a bag description, the current location of the bag, delivery status, and tracking. |
|---|---|

and a tracking code.









| 3. The apparatus of claim 1, wherein the processor is further configured to receive, via the transceiver, updated information entered via the user interface of the passenger computing device. | As shown in the screenshot below, the processor, on information and belief, receives, via the transceiver, updated information entered via the user interface of the passenger computing device; in this instance to communicate with the deliverer. |
|---|---|



| 4. The apparatus of claim 3, wherein updated information comprises a selection to waive a signature using the passenger interface. | As stated in the video found at https://www.youtube.com/watch?v=wu7wCtLywto, "not all gigs require delivery signature." Therefore, there must be an option whether or not to require a signature, satisfying the elements of this claim. |
|---|---|
| 5. The apparatus of claim 3, wherein the processor is further configured to transmit, via the transceiver, the updated information to the deliverer computing device. | As shown in the screenshot below, the updated information is transmitted to the deliverer using, on information and belief, the processor via the transceiver. |



| 6. The apparatus of claim 1, wherein the processor is further configured to receive, via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp. | As shown in the screenshots below, the delivery information includes a delivery time stamp and deliverer computing device location. |





| | |
|---|---|
| 7. A method of dispatching baggage, comprising: | Roadie explains that delivery of goods with the Accused Product "is a delivery or shipment" for "basically anything that needs to go from here to there." www.roadie.com (last visited Jan. 29, 2018). On information and belief, this includes baggage. |

25



| | |
|---|---|
| receiving, through a transceiver of a server and after a piece of baggage has been transported to a destination, baggage information relating to the piece of baggage to be delivered to a passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination; | On information and belief, the Accused Product involves the use of a server having a transceiver.<br><br>As shown in the screenshot below, the baggage was transported to one destination and then the passenger sent information about the baggage to be delivered to the passenger at a different destination including the drop off address and the size of the baggage. |



| | |
|---|---|
| associating, by the processor of the server, the baggage information with a delivery person, wherein the delivery person is associated with delivery person information; | As shown in the screenshot below, baggage information is associated with the delivery person who has information associated with them. Further, the delivery can only be completed when the delivery person enters a code associated with the transaction, further associating the delivery person with the baggage information. |



| transmitting, through the transceiver, a pick up bags message to a deliverer computing device associated with the delivery person; | As shown in the screenshot below, once a delivery is requested, it is available for all deliverers to accept or decline. The Accused Device also provides information about available deliveries to its deliverers. |
|---|---|





| | |
|---|---|
| transmitting, through the transceiver, at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger; | As shown in the screenshots below, a portion of the baggage information and delivery person information is transmitted to the passenger computing device. On information and belief, this transmission is achieved using the transceiver. |





| | |
|---|---|
| receiving, through the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using a passenger interface until a delayed delivery time wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate | On information and belief, a passenger can choose to hold delivery of the baggage until a delayed delivery time. As shown below, the passenger can contact the deliverer, using the Accused Device and Roadie's servers, to change the delivery location. It is just as likely that a user will request a delay in delivery. |

location or current location of the piece of baggage associated with the travel information wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport;



Travel information is displayed on the passenger computing device and, on information and belief, can include airline and airport information. The screenshots below confirm the use of a baggage map configured to display an approximate or currently location of the baggage associated with the travel information.

33





| | |
|---|---|
| relaying, through the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and | As shown in the screenshot below, delivery changes are relayed to the deliverer computing device. On information and belief, these delivery changes can be responsive to the selection to hold delivery. |



| | |
|---|---|
| reordering, by the processor of the server, other deliveries associated with the deliverer computing device given the delivery change. | On information and belief, deliveries can be reordered using the Accused Device. For example, in the screenshot below, the address for delivery was changed. On information and belief, the passenger can set their delivery address based on this delivery change and reorder the delivery. |



| 8. The method of claim 7, wherein the baggage information further comprises at least one of a picture of the delivery person, a picture of a vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, | As shown in the screenshots below, the baggage information includes a pictures of a delivery person, the delivery person's name, the passenger's name, a bag description, the current location of the bag, delivery status, and tracking. |
|---|---|

and a tracking code.









| | |
|---|---|
| 9. The method of claim 7, further comprising receiving, by the transceiver, updated information entered via the passenger interface of the passenger computing device. | As shown in the screenshot below, the processor, on information and belief, receives, via the transceiver, updated information entered via the user interface of the passenger computing device; in this instance to communicate with the deliverer. |



| | |
|---|---|
| 10. The method of claim 9, wherein updated information comprises a selection to waive a signature using the passenger interface. | As stated in the video found at https://www.youtube.com/watch?v=wu7wCtLywto, "not all gigs require delivery signature." Therefore, there must be an option whether or not to require a signature, satisfying the elements of this claim. |
| 11. The method of claim 9, further comprising transmitting, via the transceiver, the updated information to the deliverer computing device. | As shown in the screenshot below, the updated information is transmitted to the deliverer using, on information and belief, the processor via the transceiver. |



| | |
|---|---|
| 12. The method of claim 7, further comprising receiving, via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp. | s shown in the screenshots below, the delivery information includes a delivery time stamp and deliverer computing device location. |





| 13. A non-transitory, tangible computer-readable storage medium having instructions stored thereon that, if executed by a server processor, cause the server processor to perform operations comprising: | On information and belief, the Accused Product is a non-transitory, tangible computer-readable storage medium having instructions stored thereon that, if executed by a server processor, cause the server processor to perform operations. |
|---|---|
| transmitting and receiving communications, by the server processor via a transceiver, to and from a passenger computing device associated with a passenger and a deliverer computing device associated with a delivery person wherein the passenger computing device includes a passenger interface to communicate with a server having the server | On information and belief, the Accused Product involves the use of a server having a server processor and a transceiver configured to transmit and receive communications to and from a passenger computing device.<br><br>As shown in the screenshots below, the Accused Product is providing information and communications to a passenger regarding the delivery of the goods to the passenger's computing device. The user can also communicate and transmit information; for example, using the "Rate the Driver" button would result in information being transmitted from the passenger computing device to Roadie's servers. Similarly, the deliverer has their own options to communicate with the server. |

| | |
|---|---|
| processor; |  |
| receiving baggage information, by the server processor via the transceiver, after a piece of baggage has been transported to a destination, relating the piece of baggage to be delivered to a passenger, the baggage information including a drop off | As shown in the screenshot below, the baggage was transported to one destination and then the passenger sent information about the baggage to be delivered to the passenger at a different destination including the drop off address and the size of the baggage. |

| | |
|---|---|
| address, wherein the passenger is at a location different than the destination; |  |
| associating, by the server processor, the baggage information with a delivery | As shown in the screenshot below, baggage information is associated with the delivery person who has information associated with them. Further, the delivery can only be completed when the |

| | |
|---|---|
| person, wherein the delivery person is associated with delivery person information; | delivery person enters a code associated with the transaction, further associating the delivery person with the baggage information.  |
| transmitting, by the server processor via the transceiver, a pick up message to a deliverer computing device associated with the delivery person; | As shown in the screenshot below, once a delivery is requested, it is available for all deliverers to accept or decline. The Accused Device also provides information about available deliveries to its deliverers. |





| | |
|---|---|
| transmitting, by the server processor via the transceiver, at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger; | As shown in the screenshots below, a portion of the baggage information and delivery person information is transmitted to the passenger computing device. On information and belief, this transmission is achieved using the transceiver. |





| | |
|---|---|
| receiving, by the server processor via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time | On information and belief, a passenger can choose to hold delivery of the baggage until a delayed delivery time. As shown below, the passenger can contact the deliverer, using the Accused Device and Roadie's servers, to change the delivery location. It is just as likely that a user will request a delay in delivery. |



| | |
|---|---|
| wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information | Travel information is displayed on the passenger computing device and, on information and belief, can include airline and airport information. The screenshots below confirm the use of a baggage map configured to display an approximate or currently location of the baggage associated with the travel information. |





| | |
|---|---|
| wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport; | Travel information is displayed on the passenger computing device and, on information and belief, can include airline and airport information. The screenshots below confirm the use of a baggage map configured to display an approximate or currently location of the baggage associated with the travel information. |





| | |
|---|---|
| relaying, by the server processor via the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and | As shown in the screenshot below, the location of the baggage is updated and tracked during delivery with the approximate or current location of the piece of baggage while in transport. |



| | |
|---|---|
| reordering, by the server processor, other deliveries associated with the deliverer computing device given the delivery change. | On information and belief, deliveries can be reordered using the Accused Device. For example, in the screenshot below, the address for delivery was changed. On information and belief, the passenger can set their delivery address based on this delivery change and reorder the delivery. |



| | |
|---|---|
| 14. The computer-readable storage medium of claim 13, wherein the baggage information comprises at least one of a picture of the delivery person, a picture of a vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, | As shown in the screenshots below, the baggage information includes a pictures of a delivery person, the delivery person's name, the passenger's name, a bag description, the current location of the bag, delivery status, and tracking. |

and a tracking code.









| | |
|---|---|
| 15. The computer-readable storage medium of claim 13, further comprising receiving, by the server processor via the transceiver, updated information from the passenger computing device. | As shown in the screenshot below, the processor, on information and belief, receives, via the transceiver, updated information entered via the user interface of the passenger computing device; in this instance to communicate with the deliverer. |



| 16. The computer-readable storage medium of claim 15, wherein updated information comprises a selection to waive a signature waiver by the passenger interface. | As stated in the video found at https://www.youtube.com/watch?v=wu7wCtLywto, "not all gigs require delivery signature." Therefore, there must be an option whether or not to require a signature, satisfying the elements of this claim. |
| --- | --- |
| 17. The computer-readable storage medium of claim 15, further comprising transmitting, by the server processor via the transceiver, the updated information to the deliverer computing device. | As shown in the screenshot below, the updated information is transmitted to the deliverer using, on information and belief, the processor via the transceiver. |



| | |
|---|---|
| 18. The computer-readable storage medium of claim 13, further comprising receiving, by the server processor via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp. | As shown in the screenshots below, the delivery information includes a delivery time stamp and deliverer computing device location. |





| 19. The apparatus of claim 1, wherein the piece of baggage is one of a plurality of pieces of baggage to be delivered to a plurality of passengers, and wherein the processor is further configured to determine a most efficient travel path for the delivery person. | Roadie's support center explicitly states that deliverers can handle more than one delivery at a time. *See* https://support.roadie.com/hc/en-us/articles/210699123-Can-I-deliver-multiple-Gigs-at-the-same-time-<br><br>On information and belief, the Accused Product provides turn-by-turn directions in an efficient travel path to the delivery person. *See* https://www.youtube.com/watch?v=zYty-XPYcO0 |
|---|---|
| 20. The apparatus of claim 1, wherein the piece of baggage is one of a plurality of pieces of baggage to be delivered to a plurality of passengers, and wherein the processor is further configured to order the plurality of pieces of baggage in a queue based on an amount of time for which each of | Roadie's support center explicitly states that deliverers can handle more than one delivery at a time. *See* https://support.roadie.com/hc/en-us/articles/210699123-Can-I-deliver-multiple-Gigs-at-the-same-time-<br><br>On information and belief, the Accused Product provides turn-by-turn directions in an efficient travel path to the delivery person and queues the delivery of those deliveries based on time spent in the queue. *See* https://www.youtube.com/watch?v=zYty-XPYcO0 |

| the plurality of pieces of baggage is in the queue. | |
|---|---|

Dated: January 31, 2018

*/s/ Stefan V. Stein*
Stefan V. Stein
Florida Bar No. 300527
Primary Email Address:
stefan.stein@gray-robinson.com
Mayanne Downs
Florida Bar No. 754900
Primary Email Address:
mayanne.downs@gray-robinson.com
Jason Zimmerman
Florida Bar No. 104392
Primary Email Address:
jason.zimmerman@gray-robinson.com
Cole Carlson
Florida Bar No. 112863
Primary Email Address:
cole.carlson@gray-robinson.com
William Stein
Florida Bar No. 1004226
Primary Email Address:
william.stein@gray-robinson.com
GrayRobinson, P.A.
301 East Pine Street, Suite 1400
P.O. Box 3068
Orlando, Florida 32802
Telephone: (407) 843-8880
Facsimile:   (407) 244-5690

*Attorneys for Plaintiff*
*Baggage Airline Guest Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 31, 2018 a true and correct copy of the foregoing

has been furnished via electronic mail to all counsel of record.

<u>*/s/ Stefan V. Stein*</u>
ATTORNEY

\232415\15 - # 11909394 v4

69

# EXHIBIT P

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| BAGGAGE AIRLINE GUEST SERVICES, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ROADIE, INC.,<br><br>　　　　　Defendant. | C.A. No. 18-707-RGA |

### ROADIE'S SECOND SUPPLEMENTAL RESPONSES TO PLAINTIFF BAGGAGE AIRLINE GUEST SERVICES INC.'S FIRST SET OF INTERROGATORIES

　　　　Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Roadie, Inc. ("Roadie") hereby objects and responds to Plaintiff Baggage Airline Guest Services, Inc.'s ("Baggage") First Set of Interrogatories as follows:

### OBJECTIONS TO DEFINITIONS

　　　　Roadie asserts the following objections to the definitions in Baggage's First Set of Interrogatories.

　　　　1.　　　Roadie objects to the definition of "All documents" as overbroad and unduly burdensome due to requiring "every document that can be located, discovered or obtained."

　　　　2.　　　Roadie objects to the definition of "Plaintiff" or "Bags" as vague, ambiguous and irrelevant on the ground that it incorporates the undefined terms "predecessors" and "successors-in-interest."

1

3.      Roadie objects to the definition of "Defendant" as vague, ambiguous and irrelevant on the ground that it incorporates the undefined terms "predecessors" and "successors-in-interest."

4.      Roadie objects to the definition of "identify," "identification," or "identity" to the extent that it requests the "identity of each individual who organized, initialed, signed, authored, prepared or received (and if the same was done on behalf of any person, the identity of each such person), or is in any way referred to in the document or electronic data." This request is overly broad and unduly burdensome by requiring Roadie to determine every instance that a document has been shared and the burden of tracking down and explaining the history of every document greatly outweighs the benefit.

## SPECIFIC OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe the functionality of the Roadie App and identify all supporting documents. A full description will include how Roadie Users use the application as well as the steps performed internally when a request is processed through the application.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 1**

Roadie objects to this Interrogatory on the ground that its request for an identification of "all supporting documents" is unduly burdensome and irrelevant because it includes documents that relate to functions of the Roadie App that are not at issue in this litigation. Roadie further objects to this Interrogatory on the ground that it is rendered vague and ambiguous through its incorporation of the undefined terms "use," "steps," "performed

2

internally," "request," and "processed." Roadie further objects to this Interrogatory on the ground that it is compound and constitutes more than one interrogatory.

Roadie further objects to this Interrogatory as unduly burdensome, unreasonable and expensive on the ground that Roadie has filed a motion to transfer and a motion to dismiss this litigation that are likely to resolve this case without the need for discovery. Roadie further objects to this Interrogatory on the ground that it requests confidential information, which Roadie will not provide until a stipulated protective order has been entered by the Court. Roadie further objects to this Interrogatory on the ground that the burden of deriving or ascertaining the answer will be substantially the same for either party. After entry of a mutually agreeable protective order, and production of certain confidential documents subject to that order, Roadie will supplement this response to identify documents under F.R.C.P. 33(d) that may be reviewed to identify information responsive to the relevant portion of this Interrogatory – namely, functions of the Roadie App that are at issue in this litigation.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1

Pursuant to Federal Rule of Civil Procedure 33(d), Roadie identifies the following responsive documents from which the answer to this Interrogatory can be obtained: ROADIE_0000262 – ROADIE_0000506; ROADIE_0000512 – ROADIE_0000533. Discovery is ongoing and Roadie reserves the right to supplement this response as appropriate.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1**:

The Roadie App is the software app that is used to interface with the Roadie delivery service. There are two categories of Roadie App users: Senders and Drivers. The Roadie App provides different functionality depending on whether the user of the Roadie App is acting as a Sender or a Driver.

Senders:

Senders are the Roadie App users who submit a request to have an item delivered from one location to another. This delivery request is called a "Gig."

To submit a Gig, the Sender first taps the "Send Something" button on the Roadie App to create a new Gig.

On the first screen, titled "New Gig," the Sender then takes a picture of the item to be delivered, enters a name for the Gig, and enters the value of the item to be delivered. The Sender then indicates the size of the item to be delivered.

On the next screen, titled "Pickup," the Sender then provides the address of the pickup location where the Driver is to pick up the item to be delivered and identifies who will be meeting the Driver at the pickup location. The Sender may optionally indicate a preferred time for the Driver to arrive at the pickup location.

On the following screen, titled "Delivery," the Sender then provides the address of the delivery location and identifies the recipient of the delivery – either "Someone Else", if the Sender is not also the recipient of the item, or "Me," if the Sender will be at the delivery location to receive the item. If the recipient is "Someone Else," the Sender must provide the name and mobile phone number of the person who will be receiving the delivery. The

4

Sender can also select an option to require a signature from the person receiving the delivery as a delivery confirmation.  The Sender also provides the date and time by which the Driver needs to deliver the item.

On the final screen, titled "Final Details," the Sender can provide additional delivery details and also offer to cover additional expenses that the Driver may incur, such as tolls or parking fees.

Once all the above Gig details have been entered, the Roadie App transmits the Gig details to a server or servers operated by Roadie.  The server(s) calculate a price for the Gig and transmits that information back to the Roadie App.  The Roadie App then displays, on its "Gig Details" screen, the price for the Gig and a summary of the Gig Details.  When the Sender selects the "Post this Gig" selection, the Gig is "posted" by the server and becomes available for Drivers to offer to make the delivery.

Drivers submit offers to make the delivery and the Server assigns the Gig to a Driver. The Sender's Roadie App displays a waiting screen until a Driver indicates that he is on his way to the pickup location, at which time the Roadie App displays a "Pickup in Progress" screen.  Once the item is picked up by the Driver, the Sender's Roadie App displays a "Delivery in Progress" screen.  When the item is delivered, the Sender's Roadie App displays a "Delivered" screen that contains the time of delivery and a photo taken by the Driver of the item at the time of delivery.

The Sender can contact the Driver by tapping "Contact Driver" on the Sender's Roadie App.  The Sender is given the option to send a text to the Driver or to call the Driver. If the Sender selects the "text" option, the Sender's text messaging app on the Sender's

smartphone is launched.  The Sender can then compose a text message from scratch that can be sent directly from the Sender to the Driver.  If the Sender selects the "call" option, the Sender's phone app on the Sender's smartphone is launched to enable the Sender to have a telephone call with the Driver.  Neither text messages nor telephone calls placed in this manner pass through any of Roadie's servers.

Drivers:

Drivers are the Roadie App users who offer to deliver the items posted as Gigs.  To offer on a Gig, the user opens the Roadie App and sees a geographic map with markers indicating the pickup location of available Gigs within the area depicted on the map. Markers on the map show the location of the pickup location of the Gig, the total driving distance of the Gig and the general direction of the delivery location.

When the potential Driver taps the marker to see more information on the Gig, the Roadie App displays the Gig Card associated with the marker.  The Gig card displays where the Gig is heading, when it needs to be delivered, size, and how much the potential Driver will be paid for delivering this Gig.  When the potential Driver taps the Gig card, the App displays all the Gig details, including the item description and picture of the item, when it needs to be delivered by, and the size of the item.  The potential Driver can ask a question of the Sender for more information by pressing the "Ask a question" button, which then displays a field where the potential Sender can type a question that will be transmitted to the Sender.  The potential Driver can also offer to drive the Gig for the stated amount by tapping "Offer." This Offer is transmitted to Roadie's server(s) and the Driver receives a push

notification from the Roadie App that informs the Driver if they were selected to perform the Gig.

The Roadie App then displays the Gig that the Driver has now been selected to handle.  When the Driver is on the way to the pickup location to pick up the item to be delivered, the Driver taps the "Start Gig" button on the Roadie App.  The occurrence of this event is transmitted to the Roadie server(s) so that the Sender can be notified that the Gig has been started.  The Driver can receive driving directions by tapping the address bar in the Roadie App.  The Roadie App also displays the name and mobile phone number of the person that the Driver is to meet at the pickup location.

When the Driver arrives at the pickup location, the Driver taps the "I'm at the Pickup Location" button on the Roadie App to check in.  The occurrence of this event is transmitted to the Roadie server(s) so that the Sender can be notified that the Driver has arrived at the pickup location.

The Driver is next prompted to take a photo of the item to be delivered for the Sender.  Once the photo has been taken, the Driver taps the "Complete Pickup" button on the Roadie App.

When the Driver arrives at the delivery location, the Driver taps the "I'm at the Delivery Location" button to check in.  If the Sender selected the signature confirmation option for this Gig, the "Sign for Delivery" button must be selected to allow for the recipient to input his/her signature.  The Driver must take a delivery photo as confirmation that the delivery was made.  To do this, the Driver taps the "Delivery Photo" button to take a photo of the item at the delivery location.  The Driver then taps the "Complete My Gig" button as the

7

last step of the Gig.  This information is transmitted to the Roadie server(s) so that the Sender

can be notified that the Gig has been completed.

Passengers:

      As stated above, there are two categories of users of the Roadie App – Senders and

Drivers.  Thus, in the context of delayed baggage delivery, the passenger whose baggage was

delayed is not, and cannot be, a user of the Roadie App.  The Sender of the Gig in the context

of delayed baggage is the airline that lost the baggage.  The passenger is not, and cannot be, a

party to this Gig.

      In addition, there is no option for the passenger (or even the Sender) to make a

selection in the Roadie App to hold the delivery of the item in a Gig, where that selection is

transmitted through a Roadie server.  The Sender does have the ability to place a telephone

call or send a text message to the Driver, but these communications are made directly

between the Sender and the Driver.

      Moreover, the Roadie App does not require that a Driver handling multiple Gigs

complete those Gigs in a particular order.  Accordingly, the Roadie App does not reorder the

Gigs to be delivered by a Driver, and certainly not in response to a selection by a passenger

to hold the delivery of delayed baggage.

                                      As to objections:

Dated: July 30, 2018

                                      */s/ Darlene K. Tzou*
                                      Pilar G. Kraman (No. 5199)
                                      YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                      Rodney Square
                                        1000 N. King Street

Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com

Edward A. Pennington (*pro hac vice*)
John P. Moy (*pro hac vice*)
John P. Pennington (*pro hac vice*)
Darlene K. Tzou (*pro hac vice*)
SMITH, GAMBRELL & RUSSELL LLP
1055 Thomas Jefferson Street, NW, Suite 400
Washington, DC 20007
Telephone: (202) 263-4300
Facsimile: (202) 263-4329
Email:  epennington@sgrlaw.com
Email:  jmoy@sgrlaw.com
Email:  jpennington@sgrlaw.com
Email:  dtzou@sgrlaw.com

*Attorneys for Defendant*
*ROADIE, INC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and

foregoing document has been served on July 30, 2018, to all counsel of record by electronic

mail.

*/s/ Darlene K. Tzou*
Darlene K. Tzou

9

# EXHIBIT Q

*1055 Thomas Jefferson Street, N.W.*

*Suite 400*

*Washington, D.C 20007*

*Tel: 202 263-4300*

*www.sgrlaw.com*

## SMITH, GAMBRELL & RUSSELL, LLP

*Attorneys At Law*

*John P. Moy*

*Direct Tel:   (202) 263-4337*

*Direct Fax:  (202) 263-4329*

*jmoy@sgrlaw.com*

March 19, 2018

*VIA E-MAIL*

Jason A. Zimmerman
GrayRobinson, P.A.
301 East Pine Street
Suite 1400
Post Office Box 3068 (32802-3068)
Orlando, Florida 32801
e-mail: jason.zimmerman@gray-robinson.com


Re:    *Baggage Airline Guest Services, Inc. v. Roadie, Inc.*,
         Civil Action No. 6:17-cv-1549-Orl-37TBS

Dear Jason:

         I write regarding Baggage's untenable infringement position in the above-referenced litigation.

         Putting aside for the moment the severe invalidity and unenforceability infirmities that afflict the '336 patent, it is clear from Baggage's infringement contentions that Baggage had no business bringing this case.  Baggage's infringement contentions identify the Roadie App as the sole Accused Product in this case.  (Plaintiff's Infringement Contentions at 1).  The infringement contentions are premised on an August 24, 2017 delivery of a package, using the Roadie App, that was initiated by Baggage's lead trial counsel, Mr. Stefan V. Stein, from your firm's Tampa offices to Mr. Stein's next-door neighbor's residence in Tampa.  These contentions show that Baggage knew of the fatal infirmities in its case at least as of that August 24, 2017 date, yet Baggage and its counsel nevertheless instituted the present infringement action against Roadie that very day, in contravention of Federal Rule of Civil Procedure 11.

         As we articulated in our non-infringement contentions, which we served on you last Thursday, March 15, 2018, the accused Roadie App does not practice even a single claim limitation, let alone any complete claim, of the '336 patent.  The most obvious deficiency



*Atlanta | Austin | Jacksonville | London | Los Angeles | Munich | New York | Southampton | Washington, D.C.*

Jason A. Zimmerman
March 19, 2018
Page 2

pertains to the "selection to hold delivery" claim limitation, which is present in every independent claim of the '336 patent and therefore serves as a limitation in every claim of the '336 patent.

Independent claim 1 recites, in pertinent part:

> receive, via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time

('336 patent, claim 1).

Claims 7 and 13, the two other independent claims of the '336 patent, recite similar language:

> receiving, through the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using a passenger interface until a delayed delivery time

('336 patent, claim 7).

> receiving, by the server processor via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time

('336 patent, claim 13).

Thus, every claim of the '336 patent requires "<u>receiving . . . from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time</u>."

Baggage's infringement contentions, however, are devoid of any evidence that this actually takes place in the accused Roadie App. Instead, Baggage states the following as "evidence" that this claim limitation is met:

> On information and belief, a passenger can choose to hold delivery of the baggage until a delayed delivery time. As shown below, the passenger can contact the deliverer, using the Accused Device and Roadie's servers, to change the delivery location. It is just as likely that a user will request a delay in delivery.

Jason A. Zimmerman
March 19, 2018
Page 3



(Plaintiff's Infringement Contentions at 11-12, 32-33, 52-53).

At least three fatal flaws are glaringly evident in Baggage's contention.

*First*, it is axiomatic that a showing of infringement requires evidence that <u>each and every claim limitation</u> is present in the accused device.  *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985) ("It is . . . well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element . . . in the accused device.").  "[T]he failure to meet a single limitation is sufficient to negate infringement of the claim."  *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

Yet, Baggage fails to provide any evidence that Roadie practices this claim limitation. Instead, Baggage inexplicably provides a screenshot showing that Mr. Stein, the sender of the package, sent an iMessage/text message to the Roadie delivery driver requesting that the package be delivered to the front door of his next door neighbor's house at 7303 Pelican Island Drive instead of his own residence at 7301 Pelican Island Drive.  Baggage fails to provide any explanation whatsoever as to how sending a text message by the package sender to a delivery driver to request a change in the delivery location is relevant to the '336 patent claim limitation requiring a <u>passenger</u> to make a selection to <u>hold delivery</u> of his or her <u>baggage</u> until a <u>delayed delivery time</u> through a <u>passenger interface</u> on a <u>passenger computing device</u>.

Jason A. Zimmerman
March 19, 2018
Page 4

*Second*, Baggage identifies only the Roadie App as the product accused of infringement. (Plaintiff's Infringement Contentions at 1). Yet, the screenshot depicted in Baggage's contention is not of the Roadie App, but of the Apple iMessage messaging app. Thus, not only is Baggage's statement that "the passenger can contact the deliverer, using the Accused Device and Roadie's servers, to change the delivery location," entirely irrelevant to the claim limitation requiring a selection to hold delivery of baggage, it is also demonstrably false. Not surprisingly, the reason that Baggage cannot show a screenshot from the Roadie App depicting a selection to hold delivery is clear – the accused Roadie App does not have this functionality.

*Third*, the screenshot depicted in Baggage's infringement contentions is taken from the computing device of the sender – Mr. Stein. It is not from the passenger computing device, nor is it a depiction of the passenger computing interface – both of which are required in the claim language.

We also caution you that, should Baggage try to argue that a request by the sender to change the delivery location of a package is equivalent to a request by the passenger to hold delivery of baggage until a delayed delivery time, such an argument – besides being absurd on its face – is also barred by the doctrine of prosecution history estoppel. The applicant of the '336 patent added this claim limitation in an April 16, 2015 Amendment in order to overcome a Section 103 rejection. ('336 Prosecution History, April 16, 2015 Amendment at 1, 4, 5, 12, 14). Because this claim amendment was clearly made for reasons related to patentability, under the doctrine of prosecution history estoppel, Baggage is presumptively barred from asserting infringement by equivalents. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 536 U.S. 722, 739-41 (2002).

Beyond completely failing to articulate the specific details that would establish infringement of any claim of the '336 patent, Baggage's infringement contentions suffer from a more fundamental problem. The supposed evidence of infringement consists of a delivery set up by your colleague, Mr. Stein, where Mr. Stein used the Roadie App on August 24, 2017 to deliver a box from GrayRobinson's Tampa offices on East Jackson Street to Mr. Stein's next-door neighbor's residence at 7303 Pelican Island Drive in Tampa:

Jason A. Zimmerman
March 19, 2018
Page 5



The '336 patent, however, is limited to the delivery of baggage to a passenger. Baggage is precluded under the doctrine of prosecution disclaimer from claiming that the scope of the claims of the '336 patent covers the delivery of packages.

During prosecution of the '336 patent, the patent applicant distinguished prior art references from the claims of the '336 patent by arguing that the prior art references pertained to the delivery of packages and not the delivery of baggage to a passenger.

Specifically, in a December 28, 2015 Amendment, the patent applicant addressed a rejection by the patent examiner based on U.S. Patent App. Pub. No. 2006/0235739 to Levis. The patent applicant argued that Levis failed to disclose certain claim limitations of the '336 patent because Levis was directed to the delivery of packages and not the delivery of delayed baggage:

> Levis fails to disclose a baggage map of a location of a piece of baggage on the passenger computing device. Levis is directed to delivery of packages according to a "guaranteed service commitment time," such as offered by United Parcel Service of America, Inc. While Levis mentions "baggage," it has nothing to do with passengers and the delivery of their baggage after departing an airline or airport.

Applicant's invention displays on a passenger interface the baggage map, passenger information and the travel information to allow a passenger to monitor

Jason A. Zimmerman
March 19, 2018
Page 6

the delivery of baggage.   This feature can be particularly helpful when the baggage was lost during travel.   Levis has nothing to do with packages described as "... after a piece of baggage [which] has been transported to a destination," as recited in claim 1.   Levis is directed to the scheduling of pickup and delivery of packages from residencies or businesses.   These packages are not the same as packages which are claimed as "after a piece of baggage [which] has been transported to a destination."   In Levis, there is no display of packages which are "after ... transported to a destination."   Thus, Levis does not and cannot address displaying a baggage map to a passenger on a passenger computing device and has no need for a baggage map on a passenger computing device in the manner as claimed.

('336 Prosecution History, Dec. 28, 2015 Amendment at 9) (emphasis added).

By arguing that Levis did not serve as an invalidating prior art reference because it was directed to the "delivery of packages" and therefore "ha[d] nothing to do with passengers and the delivery of their baggage after departing an airline or an airport," Plaintiff is estopped under the doctrine of prosecution disclaimer from arguing that the claims of the '336 patent, which are directed to the delivery of baggage, are broad enough to encompass the delivery of packages. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.").

The patent applicant made similar arguments with respect to another prior art reference, U.S. Patent App. Pub. No. 2004/0181570 to Kaneko, titled "Home Delivery Box and Home Delivery Baggage Collecting/Delivering System and Method Therefor."  Kaneko had been cited by the patent examiner as a reference in a rejection under 35 U.S.C. § 103.   The patent applicant twice during prosecution distinguished Kaneko simply by stating that Kaneko was directed to package delivery and therefore did not disclose claim limitations pertaining to the receipt of baggage information relating to a piece of baggage:

Kaneko relates to an electronically accessed package delivery and receiving box. Kaneko, abstract.  Kaneko does not relate to "receiv[ing] baggage information relating to a piece of baggage to be delivered to a passenger, the baggage information including a drop off address," as recited in Claim 1.

('336 Prosecution History, June 25, 2014 Amendment at 8).

Jason A. Zimmerman
March 19, 2018
Page 7

Kaneko relates to an electronically accessed package delivery and receiving box.
Kaneko, abstract.   Kaneko does not relate to "receiv[ing], after a piece of
baggage has been transported to a destination, baggage information relating to
the piece of baggage to be delivered to a passenger, the baggage information
including a drop off address, wherein the passenger is at a location different that
the destination," as set forth in Claim 1.

('336 Prosecution History, November 10, 2014 Amendment at 8).

Based on the foregoing, it is abundantly clear that the '336 patent cannot be applied to
the delivery of packages.  Yet, your supposed evidence of infringement consists of just that –
delivery of a package.

Indeed, had Baggage actually conducted a proper infringement analysis, it would have
easily learned that when the Roadie system is used to deliver lost or delayed baggage to a
passenger, there is no "passenger computing device," as that term is used in the '336 patent.
The passenger, as the recipient of a Roadie delivery, cannot and does not use the Roadie App.
In fact, the only way that a passenger can make any changes to the delivery of his or her lost
baggage is by calling a telephone number to speak to a customer service representative.
Notably, even if delivery of a package fell within the scope of the '336 patent claim language,
there is zero evidence in Baggage's infringement contentions that Mr. Stein's next-door
neighbor – the recipient of the package delivery – had anything to do with the delivery, let alone
used the Roadie App on his own device to request that the delivery be held until a delayed
delivery time.

Yet, instead of engaging in any credible, good-faith analysis or investigation to
determine how Roadie baggage delivery actually worked, Baggage instead had its lead trial
counsel use the Roadie App to deliver a box from his office to his next-door neighbor's home,
and ignored clear evidence of non-infringement in recklessly instituting the present action.

This, of course, leads to another problem for Baggage.  Because Baggage's purported
evidence of infringement comes from Mr. Stein, Mr. Stein, and any individuals who assisted
him in generating "evidence" of infringement, are now necessary fact witnesses in this case.
Accordingly, Mr. Stein, and any attorneys who assisted him, are therefore subject to
disqualification as trial counsel under Florida Rule of Professional Conduct 4-3.7.  Moreover,
any documents and communications of Mr. Stein regarding Roadie's supposed infringement of
the '336 patent would no longer be subject to any attorney-client privilege or work product
doctrine and are discoverable.

Simply put, this case should never have been brought.  Under *Octane Fitness, LLC v.
ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), the court may deem a case exceptional
under 35 U.S.C. § 285 based on the "substantive strength of a party's litigating position
(considering both the governing law and the facts of the case) or the unreasonable manner in
which the case was litigated."  *Octane Fitness*, 134 S. Ct. at 1756.  Given the weakness in

Jason A. Zimmerman
March 19, 2018
Page 8

Baggage's infringement case, Baggage's failure to conduct a good-faith, pre-filing investigation into infringement, and the potential inadmissibility of Baggage's infringement evidence, Roadie is very confident that the Court will ultimately rule in its favor and, under *Octane Fitness* and its progeny, declare the case exceptional and award Roadie its costs and fees.  *See Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1307 (Fed. Cir. 2017) (affirming district court's exceptional case determination, based in part on plaintiff's failure to perform a diligent pre-suit investigation of its claims); *Homeland Housewares LLC v. Sorensen Research & Dev. Tr.*, 581 F. App'x 877 (Fed. Cir. 2014) (patentee's failure of proof of its own admissible evidence of infringement supported an exceptional case finding); *Thermolife Int'l, LLC v. Myogenix Corp.*, No. 13cv651 JLS (MDD), 2017 WL 1235766 (S.D. Cal. Apr. 4, 2017) (failure to conduct reasonable pre-filing investigation is sufficient basis for exceptional case finding and fee award); *Tech. Props., Ltd. v. Canon Inc.*, No. C 14-3640 CW, slip. op. at 4 (N.D. Cal. Jan. 26, 2017) (granting attorney's fees based on plaintiff's "exceptionally weak" infringement position); *Lugus IP, LLC v. Volvo Car. Corp.*, No. 12-2906 (JEI/JS), 2015 WL 1399175, at *5 (D.N.J. Mar. 26, 2015) (awarding fees because the plaintiff's infringement theory clearly contradicted a "basic fact" about how the defendants' product operated); *Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. 2015) (awarding fees where plaintiff relied on "flawed, nonsensical, and baseless arguments[ ] which lacked factual support"); *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1116 (C.D. Cal. Jan. 6, 2015) (awarding fees because the plaintiff "never articulated an infringement theory against the [defendant's products]"); *Home Gambling Network, Inc. v. Piche*, No. 2:05-cv-610-DAE, 2014 WL 2170600, at *6 (D. Nev. May 22, 2014) (grant of attorney's fees where "Plaintiffs should have known that no cause of action for patent infringement could lie."); *Kilopass Tech. Inc. v. Sidense Corp.*, No. C10-02066 SI, 2014 WL 3956703, at *14 (N.D. Cal. Aug. 12, 2014) (court held that plaintiff's "objectively baseless" infringement allegations warranted granting attorney's fees to defendant); *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. 11-1175-RGA, 2014 WL 4675002, at *3 (D. Del. Sept. 12, 2014) (pursuit of "frivolous lawsuit" warranted an exceptional case finding); *Classen Immunotherapies, Inc. v. Biogen Idec*, No. WDQ-04-2607, 2014 WL 2069653 (D. Md. May 14, 2014) (court cited the defendant's warnings to the plaintiff that it was not infringing as a basis for the granting of attorney's fees).

Given the frivolous nature of this case, Roadie demands that it be made whole – which can only happen if, at minimum, Baggage drops this case with prejudice and reimburses Roadie for its legal expenses.  If Baggage is interested in terminating the litigation on those terms, then Roadie proposes that the parties jointly move to stay the litigation while the details of such a settlement agreement can be worked out.  Not only would a stay of the litigation limit the potential exposure that Baggage faces in a fee-shifting award, it also would potentially postpone an adverse Court ruling on the pending Rule 12(c) motion.

However, if Baggage decides to ignore this opportunity to save face and extricate itself from this unwinnable situation, and instead maintain this meritless action, be advised that Roadie will move the Court for summary judgment of non-infringement for at least the above reasons, and when it prevails, Roadie will move for sanctions and fees, and this letter and

Jason A. Zimmerman
March 19, 2018
Page 9


Baggage's refusal to drop this action will be featured exhibits in such a motion for sanctions and fees.

We urge you to convey to your client the gravity of its predicament, and the significant exposure it faces to an adverse fee-shifting award.  Roadie has already incurred significant expenses in defending against this baseless action.  With claim construction beginning less than two weeks away, those expenses (and Baggage's exposure to a fee reversal award) only escalate.  Accordingly, we ask that you let us know no later than close of business Wednesday, March 21, 2018, whether Baggage will agree to dismiss the litigation with prejudice and reimburse Roadie for its legal expenses.

Sincerely,

John P. Moy

# EXHIBIT R

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BAGGAGE AIRLINE GUEST SERVICES, INC., | ) ) ) |
| Plaintiff, | ) ) C.A. No. 18-707-RGA |
| v. | ) ) ) |
| ROADIE, INC., | ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S AMENDED INFRINGEMENT CONTENTIONS CONCERNING U.S.
PATENT NO. 9,659,336**

Plaintiff, Baggage Airline Guess Services, Inc. ("Bags"), hereby provides its amended infringement contentions.

Defendant, Roadie, Inc. ("Roadie"), infringes the patent-in-suit, U.S. Patent No. 9,659,336 ("the '336 Patent") by making, using, selling, and offering for sale the following products: the Roadie App, available on the iTunes store at https://itunes.apple.com/us/app/roadie-app/id943490654?mt=8 and available on the Google Play store at https://play.google.com/store/apps/details?id=com.roadie.android.app (the "Accused Product").

The following claim chart sets forth exemplary descriptions of the Accused Product and its various components for purposes of illustrating Roadie's infringement of the asserted claims of each patent.

Unless otherwise specifically set forth herein, the provided contentions demonstrate literal infringement of each element of the asserted claims of the patents-in-suit. To the extent that Roadie alleges that a claim element is not present in the Accused Product, Bags contends

that the Accused Product also meets each claim element under the doctrine of equivalents. More specifically, as determined from Bags' investigation and analysis of the Accused Product, there are no more than insubstantial differences between the elements of the application recited in the asserted claims of the '336 patent and the corresponding elements and features of the Accused Product. In each instance, the elements and features of the Accused Product are all found in claims 1-20 of the '336 Patent, and/or perform substantially the same function in substantially the same way to achieve substantially the same result as the corresponding elements and features of the asserted claims.

Plaintiff reserves the right to supplement and/or amend its infringement contentions, where warranted, by further information obtained during discovery or further analysis.

U.S. Patent No. 9,659,336

| 1. An apparatus for dispatching baggage, comprising: | Roadie explains that delivery of goods with the Accused Product "is a delivery or shipment" for "basically anything that needs to go from here to there." www.roadie.com (last visited Jan. 29, 2018). On information and belief, this includes baggage.  Furthermore, not only does Roadie deliver baggage, it also advertises a suitcase service (see bottommost picture below). |





| | |
|---|---|
| a server having a processor and a transceiver configured to transmit and receive communications to and from a passenger computing device associated with a passenger and a deliverer computing device associated with a delivery person | On information and belief, the Accused Product involves the use of a server having a processor and a transceiver configured to transmit and receive communications to and from a passenger computing device.<br><br>As shown in the screenshots below, the Accused Product is providing information and communications to a passenger regarding the delivery of the goods to the passenger's computing device. The user can also communicate and transmit information; for example, using the "Rate the Driver" button would result in information being transmitted from the passenger computing device to Roadie's servers. Similarly, the deliverer has their own options to communicate with the server.<br><br>Furthermore, the passenger must select the "contact driver" button to communicate with the driver. Thus, the passenger's selection prompts the server to process the request in order for the "text" and "call" options to be presented.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the |

passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.





Furthermore, Roadie's application programming interface ("API") shows the interplay among the server, driver and passenger. For instance, there is a "Sample Request" and a "Sample Response" listed within the API. That is, a request is sent, on information and belief, to the server, wherein a response, on information and belief, is generated and sent to the passenger. For example, a request to transport baggage from the Orlando International Airport is sent, wherein the processor receives the request, via the transceiver, and outputs the response, via the transceiver, to the driver. Accordingly, within the API are inputs for information such as description of the item, the pickup location, contact information, delivery location, etc.

In addition, the sample request and response present labels for "Origin Location", "Origin Contact", "Destination Location" and "Destination Contact" for the purpose, on information and belief, to designate between two different contacts and/or locations. That is, the server requires the two sets of information because it is the tool that processes the request and sends the response to the driver.

**Sample Request:**

```
PATCH /v1/shipments/152040 HTTP/1.1
Content-Type: application/json
Authorization: Bearer ...

{
  "reference_id" : "ABCDEFG12345",
  "items" : [
    {
      "description" : "Item description",
      "reference_id" : null,
      "length" : 1.0,
      "width" : 1.0,
      "height" : 1.0,
      "weight" : 1.0,
      "value" : 20.00,
      "quantity" : 1
    }
  ],
  "pickup_location" : {
    "address" : {
      "name" : "Origin Location",
      "street1" : "123 Main Street",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30305"
    },
    "contact" : {
      "name" : "Origin Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "delivery_location" : {
    "address" : {
      "name" : "Destination Location",
      "street1" : "456 Central Ave.",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30308"
    },
    "contact" : {
      "name" : "Destination Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "pickup_after" : "2017-12-26T06:00:00-06:00",
  "deliver_between" : {
    "start" : "2017-12-26T06:00:00-06:00",
    "end" : "2017-12-26T20:00:00-06:00"
  },
  "options" : {
    "signature_required" : true
  }
```

**Sample Response:**

```
{
  "id" : 152040,
  "reference_id" : "ABCDEFG12345",
  "state" : "scheduled",
  "items" : [
    {
      "description" : "Item description",
      "reference_id" : null,
      "length" : 1.0,
      "width" : 1.0,
      "height" : 1.0,
      "weight" : 1.0,
      "value" : 20.00,
      "quantity" : 1
    }
  ],
  "pickup_location" : {
    "address" : {
      "name" : "Origin Location",
      "street1" : "123 Main Street",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30305"
    },
    "contact" : {
      "name" : "Origin Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "delivery_location" : {
    "address" : {
      "name" : "Destination Location",
      "street1" : "456 Central Ave.",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30308"
    },
    "contact" : {
      "name" : "Destination Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "pickup_after" : "2017-12-26T06:00:00-06:00",
  "deliver_between" : {
    "start" : "2017-12-26T06:00:00-06:00",
    "end" : "2017-12-26T20:00:00-06:00"
  },
  "options" : {
    "signature_required" : true
  },
  "tracking_number" : "RETH#KW354W3H438",
  "created_at" : "2017-12-25T06:00:00-06:00",
  "updated_at" : "2017-12-25T06:00:00-06:00"
}
```

Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are

exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver. On information and belief, these commands or updates may be accomplished via either a passenger computing device or deliverer computing device.



| | wherein the passenger computing device includes a passenger interface to communicate with the server; and | As shown in the screenshots below, the passenger can communicate with the server by rating the driver, updating the delivery location, or ask for help. As such, |



Furthermore, the passenger can either chose to text or call the driver,

whereby the request, on information and belief, is sent to the server where it is processed and then transmitted.



Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver. On information and belief, these commands or updates may be accomplished via either a passenger computing device or deliverer computing device.



| | the processor configured to: receive, via the transceiver, after a piece of baggage has been transported to a destination, baggage information relating to the piece of baggage to be delivered to the passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination; | As shown in the screenshot below, the baggage was transported to one destination and then the passenger sent information about the baggage to be delivered to the passenger at a different destination including the drop off address and the size of the baggage.<br><br>Furthermore, during a second simulation (deliverer Fabian F.) of the Accused Product's capabilities, it was found that baggage or luggage could in fact be the delivered object.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |







Furthermore, Roadie's API shows the interplay among the server, driver and passenger. For instance, there is a "Sample Request" and a "Sample Response" listed within the API. That is, a request is sent, on information and belief, to the server, wherein a response, on information and belief, is generated and sent to the passenger. For example, a request to transport baggage from the Orlando International Airport is sent, wherein the processor receives the request, via the transceiver, and outputs the response, via the transceiver, to the driver. Accordingly, within the API are inputs for information such as description of the item, the pickup location, contact information, delivery location, etc.

Also, the sample response and sample request present labels for "Origin Location", "Origin Contact", "Destination Location" and "Destination Contact" for the purpose, on information and belief, to designate between two different contacts and/or locations. That is, the server requires the two sets of information because it is the tool that processes the request and sends the response to the driver.

**Sample Request:**

```
PATCH /v1/shipments/152040 HTTP/1.1
Content-Type: application/json
Authorization: Bearer ...

{
  "reference_id" : "ABCDEFG12345",
  "items" : [
    {
      "description" : "Item description",
      "reference_id" : null,
      "length" : 1.0,
      "width" : 1.0,
      "height" : 1.0,
      "weight" : 1.0,
      "value" : 20.00,
      "quantity" : 1
    }
  ],
  "pickup_location" : {
    "address" : {
      "name" : "Origin Location",
      "street1" : "123 Main Street",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30305"
    },
    "contact" : {
      "name" : "Origin Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "delivery_location" : {
    "address" : {
      "name" : "Destination Location",
      "street1" : "456 Central Ave.",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30308"
    },
    "contact" : {
      "name" : "Destination Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "pickup_after" : "2017-12-26T06:00:00-06:00",
  "deliver_between" : {
    "start" : "2017-12-26T06:00:00-06:00",
    "end" : "2017-12-26T20:00:00-06:00"
  },
  "options" : {
    "signature_required" : true
  }
```

Sample Response:

```
{
    "id" : 152040,
    "reference_id" : "ABCDEFG12345",
    "state" : "scheduled",
    "items" : [
        {
            "description" : "Item description",
            "reference_id" : null,
            "length" : 1.0,
            "width" : 1.0,
            "height" : 1.0,
            "weight" : 1.0,
            "value" : 20.00,
            "quantity" : 1
        }
    ],
    "pickup_location" : {
        "address" : {
            "name" : "Origin Location",
            "street1" : "123 Main Street",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30305"
        },
        "contact" : {
            "name" : "Origin Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "delivery_location" : {
        "address" : {
            "name" : "Destination Location",
            "street1" : "456 Central Ave.",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30308"
        },
        "contact" : {
            "name" : "Destination Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "pickup_after" : "2017-12-26T06:00:00-06:00",
    "deliver_between" : {
        "start" : "2017-12-26T06:00:00-06:00",
        "end" : "2017-12-26T20:00:00-06:00"
    },
    "options" : {
        "signature_required" : true
    },
    "tracking_number" : "RETH0KW354W3H438",
    "created_at" : "2017-12-25T06:00:00-06:00",
    "updated_at" : "2017-12-25T06:00:00-06:00"
}
```

| associate the baggage information with the delivery person, wherein the delivery person is associated with delivery person information; | As shown in the screenshot below, baggage information is associated with the delivery person who has information associated with them. Further, the delivery can only be completed when the delivery person enters a code associated with the transaction, further associating the delivery person with the baggage information. |
|---|---|





| | |
|---|---|
| transmit, via the transceiver, a pick up bags message to the deliverer computing device associated with the delivery person; and | As shown in the screenshot below, once a delivery is requested, it is available for all deliverers to accept or decline. The Accused Device also provides information about available deliveries to its deliverers.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |







Furthermore, Roadie's API shows the interplay among the server, driver and passenger. For instance, there is a "Sample Request" and a "Sample Response" listed within the API. That is, a request is sent, on information and belief, to the server, wherein a response, on information and belief, is generated and sent to the passenger. For example, a request to transport baggage from the Orlando International Airport is sent, wherein the processor receives the request, via the transceiver, and outputs the response, via the transceiver, to the driver. Accordingly, within the API are inputs for information such as description of the item, the pickup location, contact information, delivery location, etc.

Also, the sample request and sample response present labels for "Origin Location", "Origin Contact", "Destination Location" and "Destination Contact" for the purpose, on information and belief, to designate between two different contacts and/or locations. That is, the server requires the two sets of information because it is the tool that processes the request and sends the response to the driver.

**Sample Request:**

```
PATCH /v1/shipments/152040 HTTP/1.1
Content-Type: application/json
Authorization: Bearer ...

{
  "reference_id" : "ABCDEFG12345",
  "items" : [
    {
      "description" : "Item description",
      "reference_id" : null,
      "length" : 1.0,
      "width" : 1.0,
      "height" : 1.0,
      "weight" : 1.0,
      "value" : 20.00,
      "quantity" : 1
    }
  ],
  "pickup_location" : {
    "address" : {
      "name" : "Origin Location",
      "street1" : "123 Main Street",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30305"
    },
    "contact" : {
      "name" : "Origin Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "delivery_location" : {
    "address" : {
      "name" : "Destination Location",
      "street1" : "456 Central Ave.",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30308"
    },
    "contact" : {
      "name" : "Destination Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "pickup_after" : "2017-12-26T06:00:00-06:00",
  "deliver_between" : {
    "start" : "2017-12-26T06:00:00-06:00",
    "end" : "2017-12-26T20:00:00-06:00"
  },
  "options" : {
    "signature_required" : true
  }
}
```

Sample Response:

```
{
    "id" : 152040,
    "reference_id" : "ABCDEFG12345",
    "state" : "scheduled",
    "items" : [
        {
            "description" : "Item description",
            "reference_id" : null,
            "length" : 1.0,
            "width" : 1.0,
            "height" : 1.0,
            "weight" : 1.0,
            "value" : 20.00,
            "quantity" : 1
        }
    ],
    "pickup_location" : {
        "address" : {
            "name" : "Origin Location",
            "street1" : "123 Main Street",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30305"
        },
        "contact" : {
            "name" : "Origin Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "delivery_location" : {
        "address" : {
            "name" : "Destination Location",
            "street1" : "456 Central Ave.",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30308"
        },
        "contact" : {
            "name" : "Destination Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "pickup_after" : "2017-12-26T06:00:00-06:00",
    "deliver_between" : {
        "start" : "2017-12-26T06:00:00-06:00",
        "end" : "2017-12-26T20:00:00-06:00"
    },
    "options" : {
        "signature_required" : true
    },
    "tracking_number" : "RETH0KW354W3H438",
    "created_at" : "2017-12-25T06:00:00-06:00",
    "updated_at" : "2017-12-25T06:00:00-06:00"
}
```

| | |
|---|---|
| transmit, via the transceiver, at least a portion of the baggage information and the delivery person information to the passenger computing device associated with the passenger; | As shown in the screenshots below, a portion of the baggage information and delivery person information is transmitted to the passenger computing device. On information and belief, this transmission is achieved using the transceiver.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.<br><br> |





| | |
|---|---|
| receive, via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time | On information and belief, a passenger can choose to hold delivery of the baggage until a delayed delivery time. As shown below, the passenger can contact the deliverer, using the Accused Device and Roadie's servers, to change the delivery location. It is just as likely that a user will request a delay in delivery.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |





Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver. On information and belief, these commands or updates may be accomplished via either a passenger computing device or deliverer computing device. Thus, when a passenger decides to hold delivery until a later time, on information and belief, the passenger inputs the selection into the passenger computing device, which then updates the shipment.



| wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information | Travel information is displayed on the passenger computing device and, on information and belief, can include airline and airport information. The screenshots below confirm the use of a baggage map configured to display an approximate or currently location of the baggage associated with the travel information.  |
| --- | --- |





| | |
|---|---|
| wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport; | As shown in the screenshot below, the location of the baggage is updated and tracked during delivery with the approximate or current location of the piece of baggage while in transport. |



Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver.



| | As shown in the screenshot below, delivery changes are relayed to the deliverer computing device. On information and belief, these delivery changes can be responsive to the selection to hold delivery. |
|---|---|
| relay, via the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and | Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |





Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver. On information and belief, these commands or updates may be accomplished via either a passenger computing device or deliverer computing device. Thus, when a passenger decides to hold delivery until a later time, on information and belief, the passenger inputs the selection into the passenger computing device, which then updates the shipment.



| reorder other deliveries associated with the deliverer computing device given the delivery change. | On information and belief, deliveries can be reordered using the Accused Device. For example, in the screenshot below, the address for delivery was changed. On information and belief, the passenger can set their delivery address based on this delivery change and reorder the delivery. |
| --- | --- |





| 2. The apparatus of claim 1, wherein the baggage information further comprises at least one of a picture of the delivery person, a picture of a | As shown in the screenshots below, the baggage information includes one or more pictures of a delivery person, the delivery person's name, the passenger's name, the vehicle description, a bag description, the current location of the bag, delivery status, and tracking.

Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between |
|---|---|

vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, and a tracking code.

the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.













Furthermore, Roadie's API shows the interplay among the server, driver and passenger. For instance, there is a "Sample Request" and a "Sample Response" listed within the API. That is, a request is sent, on information and belief, to the server, wherein a response, on information and belief, is generated and sent to the passenger. For example, a request to transport baggage from the Orlando International Airport is sent, wherein the processor receives the request, via the transceiver, and outputs the response, via the transceiver, to the driver. Accordingly, within the API are inputs for information such as description of the item, the pickup location, contact information, delivery location, etc.

Also, the sample request and sample response present labels for "Origin Location", "Origin Contact", "Destination Location" and "Destination Contact" for the purpose, on information and belief, to designate between two different contacts and/or locations. That is, the server requires the two sets of information because it is the tool that processes the request and sends the response to the driver.

## Sample Request:

```
PATCH /v1/shipments/152040 HTTP/1.1
Content-Type: application/json
Authorization: Bearer ...

{
  "reference_id" : "ABCDEFG12345",
  "items" : [
    {
      "description" : "Item description",
      "reference_id" : null,
      "length" : 1.0,
      "width" : 1.0,
      "height" : 1.0,
      "weight" : 1.0,
      "value" : 20.00,
      "quantity" : 1
    }
  ],
  "pickup_location" : {
    "address" : {
      "name" : "Origin Location",
      "street1" : "123 Main Street",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30305"
    },
    "contact" : {
      "name" : "Origin Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "delivery_location" : {
    "address" : {
      "name" : "Destination Location",
      "street1" : "456 Central Ave.",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30308"
    },
    "contact" : {
      "name" : "Destination Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "pickup_after" : "2017-12-26T06:00:00-06:00",
  "deliver_between" : {
    "start" : "2017-12-26T06:00:00-06:00",
    "end" : "2017-12-26T20:00:00-06:00"
  },
  "options" : {
    "signature_required" : true
  }
```

Sample Response:

```
{
   "id" : 152040,
   "reference_id" : "ABCDEFG12345",
   "state" : "scheduled",
   "items" : [
      {
         "description" : "Item description",
         "reference_id" : null,
         "length" : 1.0,
         "width" : 1.0,
         "height" : 1.0,
         "weight" : 1.0,
         "value" : 20.00,
         "quantity" : 1
      }
   ],
   "pickup_location" : {
      "address" : {
         "name" : "Origin Location",
         "street1" : "123 Main Street",
         "street2" : null,
         "city" : "Atlanta",
         "state" : "GA",
         "zip" : "30305"
      },
      "contact" : {
         "name" : "Origin Contact",
         "phone" : "4049999999"
      },
      "notes" : null
   },
   "delivery_location" : {
      "address" : {
         "name" : "Destination Location",
         "street1" : "456 Central Ave.",
         "street2" : null,
         "city" : "Atlanta",
         "state" : "GA",
         "zip" : "30308"
      },
      "contact" : {
         "name" : "Destination Contact",
         "phone" : "4049999999"
      },
      "notes" : null
   },
   "pickup_after" : "2017-12-26T06:00:00-06:00",
   "deliver_between" : {
      "start" : "2017-12-26T06:00:00-06:00",
      "end" : "2017-12-26T20:00:00-06:00"
   },
   "options" : {
      "signature_required" : true
   },
   "tracking_number" : "RETH0KW354W3H438",
   "created_at" : "2017-12-25T06:00:00-06:00",
   "updated_at" : "2017-12-26T06:00:00-06:00"
```

| | |
|---|---|
| 3. The apparatus of claim 1, | As shown in the screenshot below, the processor, on information and belief, receives, via the transceiver, updated information entered via the user |

| | |
|---|---|
| wherein the processor is further configured to receive, via the transceiver, updated information entered via the user interface of the passenger computing device. | interface of the passenger computing device; in this instance to communicate with the deliverer.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.<br><br> |



Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver.



| 4. The apparatus of claim 3, wherein updated information comprises a selection to waive a signature using the passenger interface. | As stated in the video found at https://www.youtube.com/watch?v=wu7wCtLywto, "not all gigs require delivery signature." Therefore, there must be an option whether or not to require a signature, satisfying the elements of this claim. |
| | Furthermore, shown below is a screenshot of the Accused Product showing a selection to waive the signature upon delivery. |



| | |
|---|---|
| 5. The apparatus of claim 3, wherein the processor is further configured to transmit, via the transceiver, the updated information to the deliverer computing device. | As shown in the screenshot below, the updated information is transmitted to the deliverer using, on information and belief, the processor via the transceiver.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |





Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver.



| 6. The apparatus of claim 1, wherein the processor is further configured to receive, via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp. | As shown in the screenshots below, the delivery information includes a delivery time stamp and deliverer computing device location.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |







| 7. A method of dispatching baggage, comprising: | Roadie explains that delivery of goods with the Accused Product "is a delivery or shipment" for "basically anything that needs to go from here to there." www.roadie.com (last visited Jan. 29, 2018). On information and belief, this includes baggage.<br><br> |
|---|---|



Furthermore, not only does Roadie deliver baggage, it also advertises the suitcase service (see bottommost picture below).



| receiving, through a transceiver of a server and after a | On information and belief, the Accused Product involves the use of a server having a transceiver.

As shown in the screenshot below, the baggage was transported to one |

| piece of baggage has been transported to a destination, baggage information relating to the piece of baggage to be delivered to a passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination; | destination and then the passenger sent information about the baggage to be delivered to the passenger at a different destination including the drop off address and the size of the baggage.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.<br><br> |



| associating, by the processor of the server, the baggage information with a delivery person, wherein the delivery person is associated with delivery person information; | As shown in the screenshot below, baggage information is associated with the delivery person who has information associated with them. Further, the delivery can only be completed when the delivery person enters a code associated with the transaction, further associating the delivery person with the baggage information.

Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |





| | |
|---|---|
| transmitting, through the transceiver, a pick up bags message to a deliverer computing device associated with the delivery person; | As shown in the screenshot below, once a delivery is requested, it is available for all deliverers to accept or decline. The Accused Device also provides information about available deliveries to its deliverers.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |







Furthermore, Roadie's API shows the interplay among the server, driver and passenger. For instance, there is a "Sample Request" and a "Sample Response" listed within the API. That is, a request is sent, on information and belief, to the server, wherein a response, on information and belief, is generated and sent to the passenger. For example, a request to transport baggage from the Orlando International Airport is sent, wherein the processor receives the request, via the transceiver, and outputs the response, via the transceiver, to the driver. Accordingly, within the API are inputs for information such as description of the item, the pickup location, contact information, delivery location, etc.

Also, the sample request and sample response present labels for "Origin Location", "Origin Contact", "Destination Location" and "Destination Contact" for the purpose, on information and belief, to designate between two different contacts and/or locations. That is, the server requires the two sets of information because it is the tool that processes the request and sends the response to the driver.

## Sample Request:

```
PATCH /v1/shipments/152040 HTTP/1.1
Content-Type: application/json
Authorization: Bearer ...

{
  "reference_id" : "ABCDEFG12345",
  "items" : [
    {
      "description" : "Item description",
      "reference_id" : null,
      "length" : 1.0,
      "width" : 1.0,
      "height" : 1.0,
      "weight" : 1.0,
      "value" : 20.00,
      "quantity" : 1
    }
  ],
  "pickup_location" : {
    "address" : {
      "name" : "Origin Location",
      "street1" : "123 Main Street",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30305"
    },
    "contact" : {
      "name" : "Origin Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "delivery_location" : {
    "address" : {
      "name" : "Destination Location",
      "street1" : "456 Central Ave.",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30308"
    },
    "contact" : {
      "name" : "Destination Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "pickup_after" : "2017-12-26T06:00:00-06:00",
  "deliver_between" : {
    "start" : "2017-12-26T06:00:00-06:00",
    "end" : "2017-12-26T20:00:00-06:00"
  },
  "options" : {
    "signature_required" : true
  }
```

Sample Response:

```json
{
    "id" : 152040,
    "reference_id" : "ABCDEFG12345",
    "state" : "scheduled",
    "items" : [
        {
            "description" : "Item description",
            "reference_id" : null,
            "length" : 1.0,
            "width" : 1.0,
            "height" : 1.0,
            "weight" : 1.0,
            "value" : 20.00,
            "quantity" : 1
        }
    ],
    "pickup_location" : {
        "address" : {
            "name" : "Origin Location",
            "street1" : "123 Main Street",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30305"
        },
        "contact" : {
            "name" : "Origin Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "delivery_location" : {
        "address" : {
            "name" : "Destination Location",
            "street1" : "456 Central Ave.",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30308"
        },
        "contact" : {
            "name" : "Destination Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "pickup_after" : "2017-12-26T06:00:00-06:00",
    "deliver_between" : {
        "start" : "2017-12-26T06:00:00-06:00",
        "end" : "2017-12-26T20:00:00-06:00"
    },
    "options" : {
        "signature_required" : true
    },
    "tracking_number" : "RETHNKW354W3H438",
    "created_at" : "2017-12-25T06:00:00-06:00",
    "updated_at" : "2017-12-26T06:00:00-06:00"
```

| transmitting, through the | As shown in the screenshots below, a portion of the baggage information and delivery person information is transmitted to the passenger computing |

| | |
|---|---|
| transceiver, at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger; | device. On information and belief, this transmission is achieved using the transceiver.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.<br><br> |







receiving, through the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using a passenger interface until a delayed delivery

On information and belief, a passenger can choose to hold delivery of the baggage until a delayed delivery time. As shown below, the passenger can contact the deliverer, using the Accused Device and Roadie's servers, to change the delivery location. It is just as likely that a user will request a delay in delivery.

Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's

time wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport;

server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.





Travel information is displayed on the passenger computing device and, on information and belief, can include airline and airport information. The screenshots below confirm the use of a baggage map configured to display an approximate or currently location of the baggage associated with the travel information.





Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver. On information and belief, these commands or updates may be accomplished via either a passenger computing device or deliverer computing device. As such, when a passenger decides to hold delivery until a later time, on information and belief, the passenger inputs the selection into the passenger computing device, which then updates the shipment. Thus, the deliverer computing device is notified of the change in shipment time.



| relaying, through the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and | As shown in the screenshot below, delivery changes are relayed to the deliverer computing device. On information and belief, these delivery changes can be responsive to the selection to hold delivery.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |





Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver. On information and belief, these commands or updates may be accomplished via either a passenger computing device or deliverer computing device. As such,

| | |
|---|---|
| | when a passenger decides to hold delivery until a later time, on information and belief, the passenger inputs the selection into the passenger computing device, which then updates the shipment. Thus, the deliverer computing device is notified of the change in shipment time.<br><br> |
| reordering, by the processor of the server, other deliveries associated with the deliverer computing device given the delivery change. | On information and belief, deliveries can be reordered using the Accused Device. For example, in the screenshot below, the address for delivery was changed. On information and belief, the passenger can set their delivery address based on this delivery change and reorder the delivery.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |





| 8. The method of claim 7, wherein the baggage information further comprises at least one of a picture of the | As shown in the screenshots below, the baggage information includes one or more pictures of a delivery person, the delivery person's name, the passenger's name, a bag description, the current location of the bag, delivery status, and tracking. |
|---|---|

delivery person, a picture of a vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, and a tracking code.













| | |
|---|---|
| 9. The method of claim 7, further comprising receiving, by the transceiver, updated information entered via the passenger interface of the passenger computing device. | As shown in the screenshot below, the processor, on information and belief, receives, via the transceiver, updated information entered via the user interface of the passenger computing device; in this instance to communicate with the deliverer.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |





Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver.



| 10. The method of claim 9, wherein updated information comprises a selection to waive a signature using the passenger interface. | As stated in the video found at https://www.youtube.com/watch?v=wu7wCtLywto, "not all gigs require delivery signature." Therefore, there must be an option whether or not to require a signature, satisfying the elements of this claim.<br><br>Furthermore, shown below is a screenshot of the Accused Product showing a selection to waive the signature upon delivery. |



| | |
|---|---|
| 11. The method of claim 9, further comprising transmitting, via the transceiver, the updated information to the deliverer computing device. | As shown in the screenshot below, the updated information is transmitted to the deliverer using, on information and belief, the processor via the transceiver.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |





Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver.



| 12. The method of claim 7, further comprising receiving, via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp. | As shown in the screenshots below, the delivery information includes a delivery time stamp and deliverer computing device location.

Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |







| | |
|---|---|
| 13. A non-transitory, tangible computer-readable storage medium having instructions stored thereon that, if executed by a server processor, cause the server processor to perform operations | On information and belief, the Accused Product is a non-transitory, tangible computer-readable storage medium having instructions stored thereon that, if executed by a server processor, cause the server processor to perform operations.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |

| comprising: | |
|---|---|
| transmitting and receiving communications, by the server processor via a transceiver, to and from a passenger computing device associated with a passenger and a deliverer computing device associated with a delivery person wherein the passenger computing device includes a passenger interface to communicate with a server having the server processor; | On information and belief, the Accused Product involves the use of a server having a server processor and a transceiver configured to transmit and receive communications to and from a passenger computing device.<br><br>As shown in the screenshots below, the Accused Product is providing information and communications to a passenger regarding the delivery of the goods to the passenger's computing device. The user can also communicate and transmit information; for example, using the "Rate the Driver" button would result in information being transmitted from the passenger computing device to Roadie's servers. Similarly, the deliverer has their own options to communicate with the server.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.<br><br> |



Furthermore, Roadie's API shows the interplay among the server, driver and passenger. For instance, there is a "Sample Request" and a "Sample Response" listed within the API. That is, a request is sent, on information and belief, to the server, wherein a response, on information and belief, is generated and sent to the passenger. For example, a request to transport baggage from the Orlando International Airport is sent, wherein the processor receives the request, via the transceiver, and outputs the response, via the transceiver, to the driver. Accordingly, within the API are inputs for information such as description of the item, the pickup location, contact information, delivery location, etc.

|  | Also, the sample request and sample request present labels for "Origin Location", "Origin Contact", "Destination Location" and "Destination Contact" for the purpose, on information and belief, to designate between two different contacts and/or locations. That is, the server requires the two sets of information because it is the tool that processes the request and sends the response to the driver. |
|---|---|

**Sample Request:**

```
PATCH /v1/shipments/152040 HTTP/1.1
Content-Type: application/json
Authorization: Bearer ...

{
  "reference_id" : "ABCDEFG12345",
  "items" : [
    {
      "description" : "Item description",
      "reference_id" : null,
      "length" : 1.0,
      "width" : 1.0,
      "height" : 1.0,
      "weight" : 1.0,
      "value" : 20.00,
      "quantity" : 1
    }
  ],
  "pickup_location" : {
    "address" : {
      "name" : "Origin Location",
      "street1" : "123 Main Street",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30305"
    },
    "contact" : {
      "name" : "Origin Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "delivery_location" : {
    "address" : {
      "name" : "Destination Location",
      "street1" : "456 Central Ave.",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30308"
    },
    "contact" : {
      "name" : "Destination Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "pickup_after" : "2017-12-26T06:00:00-06:00",
  "deliver_between" : {
    "start" : "2017-12-26T06:00:00-06:00",
    "end" : "2017-12-26T20:00:00-06:00"
  },
  "options" : {
    "signature_required" : true
  }
```

**Sample Response:**

```
{
    "id" : 152040,
    "reference_id" : "ABCDEFG12345",
    "state" : "scheduled",
    "items" : [
        {
            "description" : "Item description",
            "reference_id" : null,
            "length" : 1.0,
            "width" : 1.0,
            "height" : 1.0,
            "weight" : 1.0,
            "value" : 20.00,
            "quantity" : 1
        }
    ],
    "pickup_location" : {
        "address" : {
            "name" : "Origin Location",
            "street1" : "123 Main Street",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30305"
        },
        "contact" : {
            "name" : "Origin Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "delivery_location" : {
        "address" : {
            "name" : "Destination Location",
            "street1" : "456 Central Ave.",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30308"
        },
        "contact" : {
            "name" : "Destination Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "pickup_after" : "2017-12-26T06:00:00-06:00",
    "deliver_between" : {
        "start" : "2017-12-26T06:00:00-06:00",
        "end" : "2017-12-26T20:00:00-06:00"
    },
    "options" : {
        "signature_required" : true
    },
    "tracking_number" : "RETHWKW354W3H438",
    "created_at" : "2017-12-25T06:00:00-06:00",
    "updated_at" : "2017-12-25T06:00:00-06:00"
}
```

| receiving | As shown in the screenshot below, the baggage was transported to one |
|---|---|

baggage information, by the server processor via the transceiver, after a piece of baggage has been transported to a destination, relating the piece of baggage to be delivered to a passenger, the baggage information including a drop off address, wherein the passenger is at a location different than the destination;

destination and then the passenger sent information about the baggage to be delivered to the passenger at a different destination including the drop off address and the size of the baggage.

Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.





|  | Furthermore, Roadie's API shows the interplay among the server, driver and passenger. For instance, there is a "Sample Request" and a "Sample Response" listed within the API. That is, a request is sent, on information and belief, to the server, wherein a response, on information and belief, is generated and sent to the passenger. For example, a request to transport baggage from the Orlando International Airport is sent, wherein the processor receives the request, via the transceiver, and outputs the response, via the transceiver, to the driver. Accordingly, within the API are inputs for information such as description of the item, the pickup location, contact information, delivery location, etc.<br><br>Also, the sample request and sample response present labels for "Origin Location", "Origin Contact", "Destination Location" and "Destination Contact" for the purpose, on information and belief, to designate between two different contacts and/or locations. That is, the server requires the two sets of information because it is the tool that processes the request and sends the response to the driver. |

**Sample Request:**

```
PATCH /v1/shipments/152040 HTTP/1.1
Content-Type: application/json
Authorization: Bearer ...

{
  "reference_id" : "ABCDEFG12345",
  "items" : [
    {
      "description" : "Item description",
      "reference_id" : null,
      "length" : 1.0,
      "width" : 1.0,
      "height" : 1.0,
      "weight" : 1.0,
      "value" : 20.00,
      "quantity" : 1
    }
  ],
  "pickup_location" : {
    "address" : {
      "name" : "Origin Location",
      "street1" : "123 Main Street",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30305"
    },
    "contact" : {
      "name" : "Origin Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "delivery_location" : {
    "address" : {
      "name" : "Destination Location",
      "street1" : "456 Central Ave.",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30308"
    },
    "contact" : {
      "name" : "Destination Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "pickup_after" : "2017-12-26T06:00:00-06:00",
  "deliver_between" : {
    "start" : "2017-12-26T06:00:00-06:00",
    "end" : "2017-12-26T20:00:00-06:00"
  },
  "options" : {
    "signature_required" : true
  }
}
```

Sample Response:

```
{
  "id" : 152040,
  "reference_id" : "ABCDEFG12345",
  "state" : "scheduled",
  "items" : [
    {
      "description" : "Item description",
      "reference_id" : null,
      "length" : 1.0,
      "width" : 1.0,
      "height" : 1.0,
      "weight" : 1.0,
      "value" : 20.00,
      "quantity" : 1
    }
  ],
  "pickup_location" : {
    "address" : {
      "name" : "Origin Location",
      "street1" : "123 Main Street",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30305"
    },
    "contact" : {
      "name" : "Origin Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "delivery_location" : {
    "address" : {
      "name" : "Destination Location",
      "street1" : "456 Central Ave.",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30308"
    },
    "contact" : {
      "name" : "Destination Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "pickup_after" : "2017-12-26T06:00:00-06:00",
  "deliver_between" : {
    "start" : "2017-12-26T06:00:00-06:00",
    "end" : "2017-12-26T20:00:00-06:00"
  },
  "options" : {
    "signature_required" : true
  },
  "tracking_number" : "RETH0KW354W3H438",
  "created_at" : "2017-12-25T06:00:00-06:00",
  "updated_at" : "2017-12-26T06:00:00-06:00"
```

| associating, by the server | As shown in the screenshot below, baggage information is associated with the delivery person who has information associated with them. Further, the |

| processor, the baggage information with a delivery person, wherein the delivery person is associated with delivery person information; | delivery can only be completed when the delivery person enters a code associated with the transaction, further associating the delivery person with the baggage information.<br><br> |



| | |
|---|---|
| transmitting, by the server processor via the transceiver, a pick up message to a deliverer computing device associated with the delivery person; | As shown in the screenshot below, once a delivery is requested, it is available for all deliverers to accept or decline. The Accused Device also provides information about available deliveries to its deliverers.

Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |







Furthermore, Roadie's API shows the interplay among the server, driver and passenger. For instance, there is a "Sample Request" and a "Sample Response" listed within the API. That is, a request is sent, on information and belief, to the server, wherein a response, on information and belief, is generated and sent to the passenger. For example, a request to transport baggage from the Orlando International Airport is sent, wherein the processor receives the request, via the transceiver, and outputs the response, via the transceiver, to the driver. Accordingly, within the API are inputs for information such as description of the item, the pickup location, contact information, delivery location, etc.

Also, the sample request and sample response present labels for "Origin Location", "Origin Contact", "Destination Location" and "Destination Contact" for the purpose, on information and belief, to designate between two different contacts and/or locations. That is, the server requires the two sets of information because it is the tool that processes the request and sends the response to the driver.

**Sample Request:**

```
PATCH /v1/shipments/152040 HTTP/1.1
Content-Type: application/json
Authorization: Bearer ...

{
  "reference_id" : "ABCDEFG12345",
  "items" : [
    {
      "description" : "Item description",
      "reference_id" : null,
      "length" : 1.0,
      "width" : 1.0,
      "height" : 1.0,
      "weight" : 1.0,
      "value" : 20.00,
      "quantity" : 1
    }
  ],
  "pickup_location" : {
    "address" : {
      "name" : "Origin Location",
      "street1" : "123 Main Street",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30305"
    },
    "contact" : {
      "name" : "Origin Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "delivery_location" : {
    "address" : {
      "name" : "Destination Location",
      "street1" : "456 Central Ave.",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30308"
    },
    "contact" : {
      "name" : "Destination Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "pickup_after" : "2017-12-26T06:00:00-06:00",
  "deliver_between" : {
    "start" : "2017-12-26T06:00:00-06:00",
    "end" : "2017-12-26T20:00:00-06:00"
  },
  "options" : {
    "signature_required" : true
  }
```

Sample Response:

```
{
    "id" : 152040,
    "reference_id" : "ABCDEFG12345",
    "state" : "scheduled",
    "items" : [
        {
            "description" : "Item description",
            "reference_id" : null,
            "length" : 1.0,
            "width" : 1.0,
            "height" : 1.0,
            "weight" : 1.0,
            "value" : 20.00,
            "quantity" : 1
        }
    ],
    "pickup_location" : {
        "address" : {
            "name" : "Origin Location",
            "street1" : "123 Main Street",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30305"
        },
        "contact" : {
            "name" : "Origin Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "delivery_location" : {
        "address" : {
            "name" : "Destination Location",
            "street1" : "456 Central Ave.",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30308"
        },
        "contact" : {
            "name" : "Destination Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "pickup_after" : "2017-12-26T06:00:00-06:00",
    "deliver_between" : {
        "start" : "2017-12-26T06:00:00-06:00",
        "end" : "2017-12-26T20:00:00-06:00"
    },
    "options" : {
        "signature_required" : true
    },
    "tracking_number" : "RETH0KW354W3H438",
    "created_at" : "2017-12-25T06:00:00-06:00",
    "updated_at" : "2017-12-26T06:00:00-06:00"
```

| | |
|---|---|
| transmitting, by the server | As shown in the screenshots below, a portion of the baggage information and delivery person information is transmitted to the passenger computing |

processor via the transceiver, at least a portion of the baggage information and the delivery person information to a passenger computing device associated with the passenger;

device. On information and belief, this transmission is achieved using the transceiver.

Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.







Furthermore, Roadie's API shows the interplay among the server, driver and passenger. For instance, there is a "Sample Request" and a "Sample Response" listed within the API. That is, a request is sent, on information and belief, to the server, wherein a response, on information and belief, is generated and sent to the passenger. For example, a request to transport baggage from the Orlando International Airport is sent, wherein the processor receives the request, via the transceiver, and outputs the response, via the transceiver, to the driver. Accordingly, within the API are inputs for information such as description of the item, the pickup location, contact information, delivery location, etc.

Also, the sample request and sample response present labels for "Origin Location", "Origin Contact", "Destination Location" and "Destination Contact" for the purpose, on information and belief, to designate between two different contacts and/or locations. That is, the server requires the two sets of information because it is the tool that processes the request and sends the response to the driver.

## Sample Request:

```
PATCH /v1/shipments/152040 HTTP/1.1
Content-Type: application/json
Authorization: Bearer ...

{
  "reference_id" : "ABCDEFG12345",
  "items" : [
    {
      "description" : "Item description",
      "reference_id" : null,
      "length" : 1.0,
      "width" : 1.0,
      "height" : 1.0,
      "weight" : 1.0,
      "value" : 20.00,
      "quantity" : 1
    }
  ],
  "pickup_location" : {
    "address" : {
      "name" : "Origin Location",
      "street1" : "123 Main Street",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30305"
    },
    "contact" : {
      "name" : "Origin Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "delivery_location" : {
    "address" : {
      "name" : "Destination Location",
      "street1" : "456 Central Ave.",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30308"
    },
    "contact" : {
      "name" : "Destination Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "pickup_after" : "2017-12-26T06:00:00-06:00",
  "deliver_between" : {
    "start" : "2017-12-26T06:00:00-06:00",
    "end" : "2017-12-26T20:00:00-06:00"
  },
  "options" : {
    "signature_required" : true
  }
}
```

Sample Response:

```
{
    "id" : 152040,
    "reference_id" : "ABCDEFG12345",
    "state" : "scheduled",
    "items" : [
        {
            "description" : "Item description",
            "reference_id" : null,
            "length" : 1.0,
            "width" : 1.0,
            "height" : 1.0,
            "weight" : 1.0,
            "value" : 20.00,
            "quantity" : 1
        }
    ],
    "pickup_location" : {
        "address" : {
            "name" : "Origin Location",
            "street1" : "123 Main Street",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30305"
        },
        "contact" : {
            "name" : "Origin Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "delivery_location" : {
        "address" : {
            "name" : "Destination Location",
            "street1" : "456 Central Ave.",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30308"
        },
        "contact" : {
            "name" : "Destination Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "pickup_after" : "2017-12-26T06:00:00-06:00",
    "deliver_between" : {
        "start" : "2017-12-26T06:00:00-06:00",
        "end" : "2017-12-26T20:00:00-06:00"
    },
    "options" : {
        "signature_required" : true
    },
    "tracking_number" : "RETHNKW354W3H438",
    "created_at" : "2017-12-25T06:00:00-06:00",
    "updated_at" : "2017-12-25T06:00:00-06:00"
```

Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the

| | passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the deliverer's mobile number. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |
|---|---|
| receiving, by the server processor via the transceiver, from the passenger computing device a selection to hold delivery of the piece of baggage using the passenger interface until a delayed delivery time | On information and belief, a passenger can choose to hold delivery of the baggage until a delayed delivery time. As shown below, the passenger can contact the deliverer, using the Accused Device and Roadie's servers, to change the delivery location. It is just as likely that a user will request a delay in delivery.<br><br> |



Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.

Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which

|  | includes the server with accompanying processor and transceiver. On information and belief, these commands or updates may be accomplished via either a passenger computing device or deliverer computing device.<br><br> |
|---|---|
| wherein the passenger interface displays travel information of the passenger including at least one of an airline name and an airport name and a baggage map configured to display on the passenger computing device an approximate location or current location of the piece of baggage associated with the travel information | Travel information is displayed on the passenger computing device and, on information and belief, can include airline and airport information. The screenshots below confirm the use of a baggage map configured to display an approximate or currently location of the baggage associated with the travel information. |





| wherein the passenger interface is updated with changes in the approximate location or the current location of the piece of baggage during transport; | Travel information is displayed on the passenger computing device and, on information and belief, can include airline and airport information. The screenshots below confirm the use of a baggage map configured to display an approximate or currently location of the baggage associated with the travel information. |
|---|---|





Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver.



| relaying, by the | As shown in the screenshot below, the location of the baggage is updated |

| | |
|---|---|
| server processor via the transceiver, a delivery change to the deliverer computing device responsive to the selection to hold delivery of the piece of baggage using the passenger interface; and | and tracked during delivery with the approximate or current location of the piece of baggage while in transport.<br><br><br><br>Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver. On information and belief, these commands or updates may be accomplished via either a passenger computing device or deliverer computing device. As such, when a passenger decides to hold delivery until a later time, on information and belief, the passenger inputs the selection into the passenger computing device, which then updates the shipment. Thus, the deliverer computing device is notified of the change in shipment time. |





Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.

| reordering, by the server processor, | On information and belief, deliveries can be reordered using the Accused Device. For example, in the screenshot below, the address for delivery was |
| --- | --- |

| other deliveries associated with the deliverer computing device given the delivery change. | changed. On information and belief, the passenger can set their delivery address based on this delivery change and reorder the delivery.  |



Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.

| 14.        The computer- | As shown in the screenshots below, the baggage information includes one or more  pictures  of  a  delivery  person,  the  delivery  person's  name,  the |
| --- | --- |

readable storage medium of claim 13, wherein the baggage information comprises at least one of a picture of the delivery person, a picture of a vehicle of the delivery person, a name of the delivery person, a passenger name, passenger contact information, a bag description, a current bag location, a delivery status, and a tracking code.

passenger's name, a bag description, the current location of the bag, delivery status and tracking.











Furthermore, Roadie's API shows the interplay among the server, driver and passenger. For instance, there is a "Sample Request" and a "Sample Response" listed within the API. That is, a request is sent, on information and belief, to the server, wherein a response, on information and belief, is generated and sent to the passenger. For example, a request to transport baggage from the Orlando International Airport is sent, wherein the processor receives the request, via the transceiver, and outputs the response, via the transceiver, to the driver. Accordingly, within the API are inputs for information such as description of the item, the pickup location, contact information, delivery location, etc.

Also, the sample request and sample response present labels for "Origin Location", "Origin Contact", "Destination Location" and "Destination Contact" for the purpose, on information and belief, to designate between two different contacts and/or locations. That is, the server requires the two sets of information because it is the tool that processes the request and sends the response to the driver.

**Sample Request:**

```
PATCH /v1/shipments/152040 HTTP/1.1
Content-Type: application/json
Authorization: Bearer ...

{
    "reference_id" : "ABCDEFG12345",
    "items" : [
        {
            "description" : "Item description",
            "reference_id" : null,
            "length" : 1.0,
            "width" : 1.0,
            "height" : 1.0,
            "weight" : 1.0,
            "value" : 20.00,
            "quantity" : 1
        }
    ],
    "pickup_location" : {
        "address" : {
            "name" : "Origin Location",
            "street1" : "123 Main Street",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30305"
        },
        "contact" : {
            "name" : "Origin Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "delivery_location" : {
        "address" : {
            "name" : "Destination Location",
            "street1" : "456 Central Ave.",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30308"
        },
        "contact" : {
            "name" : "Destination Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "pickup_after" : "2017-12-26T06:00:00-06:00",
    "deliver_between" : {
        "start" : "2017-12-26T06:00:00-06:00",
        "end" : "2017-12-26T20:00:00-06:00"
    },
    "options" : {
        "signature_required" : true
    }
}
```

Sample Response:

```
{
    "id" : 152040,
    "reference_id" : "ABCDEFG12345",
    "state" : "scheduled",
    "items" : [
        {
            "description" : "Item description",
            "reference_id" : null,
            "length" : 1.0,
            "width" : 1.0,
            "height" : 1.0,
            "weight" : 1.0,
            "value" : 20.00,
            "quantity" : 1
        }
    ],
    "pickup_location" : {
        "address" : {
            "name" : "Origin Location",
            "street1" : "123 Main Street",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30305"
        },
        "contact" : {
            "name" : "Origin Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "delivery_location" : {
        "address" : {
            "name" : "Destination Location",
            "street1" : "456 Central Ave.",
            "street2" : null,
            "city" : "Atlanta",
            "state" : "GA",
            "zip" : "30308"
        },
        "contact" : {
            "name" : "Destination Contact",
            "phone" : "4049999999"
        },
        "notes" : null
    },
    "pickup_after" : "2017-12-26T06:00:00-06:00",
    "deliver_between" : {
        "start" : "2017-12-26T06:00:00-06:00",
        "end" : "2017-12-26T20:00:00-06:00"
    },
    "options" : {
        "signature_required" : true
    },
    "tracking_number" : "RETHWKW354W3H438",
    "created_at" : "2017-12-25T06:00:00-06:00",
    "updated_at" : "2017-12-25T06:00:00-06:00"
```

| | |
|---|---|
| 15. The computer- | As shown in the screenshot below, the processor, on information and belief, receives, via the transceiver, updated information entered via the user |

| | |
|---|---|
| readable storage medium of claim 13, further comprising receiving, by the server processor via the transceiver, updated information from the passenger computing device. | interface of the passenger computing device; in this instance to communicate with the deliverer.<br><br> |



Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.

Furthermore, Roadie's API shows the interplay among the server, driver and passenger. For instance, there is a "Sample Request" and a "Sample Response" listed within the API. That is, a request is sent, on information and belief, to the server, wherein a response, on information and belief, is generated and sent to the passenger. For example, a request to transport

baggage from the Orlando International Airport is sent, wherein the processor receives the request, via the transceiver, and outputs the response, via the transceiver, to the driver. Accordingly, within the API are inputs for information such as description of the item, the pickup location, contact information, delivery location, etc.

Also, the sample request and sample response present labels for "Origin Location", "Origin Contact", "Destination Location" and "Destination Contact" for the purpose, on information and belief, to designate between two different contacts and/or locations. That is, the server requires the two sets of information because it is the tool that processes the request and sends the response to the driver.

Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver.



**Sample Request:**

```
PATCH /v1/shipments/152040 HTTP/1.1
Content-Type: application/json
Authorization: Bearer ...

{
  "reference_id" : "ABCDEFG12345",
  "items" : [
    {
      "description" : "Item description",
      "reference_id" : null,
      "length" : 1.0,
      "width" : 1.0,
      "height" : 1.0,
      "weight" : 1.0,
      "value" : 20.00,
      "quantity" : 1
    }
  ],
  "pickup_location" : {
    "address" : {
      "name" : "Origin Location",
      "street1" : "123 Main Street",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30305"
    },
    "contact" : {
      "name" : "Origin Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "delivery_location" : {
    "address" : {
      "name" : "Destination Location",
      "street1" : "456 Central Ave.",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30308"
    },
    "contact" : {
      "name" : "Destination Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "pickup_after" : "2017-12-26T06:00:00-06:00",
  "deliver_between" : {
    "start" : "2017-12-26T06:00:00-06:00",
    "end" : "2017-12-26T20:00:00-06:00"
  },
  "options" : {
    "signature_required" : true
  }
}
```

Sample Response:

```
{
  "id" : 152040,
  "reference_id" : "ABCDEFG12345",
  "state" : "scheduled",
  "items" : [
    {
      "description" : "Item description",
      "reference_id" : null,
      "length" : 1.0,
      "width" : 1.0,
      "height" : 1.0,
      "weight" : 1.0,
      "value" : 20.00,
      "quantity" : 1
    }
  ],
  "pickup_location" : {
    "address" : {
      "name" : "Origin Location",
      "street1" : "123 Main Street",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30305"
    },
    "contact" : {
      "name" : "Origin Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "delivery_location" : {
    "address" : {
      "name" : "Destination Location",
      "street1" : "456 Central Ave.",
      "street2" : null,
      "city" : "Atlanta",
      "state" : "GA",
      "zip" : "30308"
    },
    "contact" : {
      "name" : "Destination Contact",
      "phone" : "4049999999"
    },
    "notes" : null
  },
  "pickup_after" : "2017-12-26T06:00:00-06:00",
  "deliver_between" : {
    "start" : "2017-12-26T06:00:00-06:00",
    "end" : "2017-12-26T20:00:00-06:00"
  },
  "options" : {
    "signature_required" : true
  },
  "tracking_number" : "RETH0KW354W3H438",
  "created_at" : "2017-12-25T06:00:00-06:00",
  "updated_at" : "2017-12-26T06:00:00-06:00"
}
```

| 16.      The computer- | As    stated    in    the    video    found    at https://www.youtube.com/watch?v=wu7wCtLywto, "not  all  gigs  require |
|---|---|

| readable storage medium of claim 15, wherein updated information comprises a selection to waive a signature waiver by the passenger interface. | delivery signature." Therefore, there must be an option whether or not to require a signature, satisfying the elements of this claim.<br><br>Furthermore, shown below is a screenshot of the Accused Product showing a selection to waive the signature upon delivery.<br><br> |
|---|---|
| 17.         The computer-readable storage medium of claim 15, further comprising transmitting, by the server processor via the transceiver, the updated information to | As shown in the screenshot below, the updated information is transmitted to the deliverer using, on information and belief, the processor via the transceiver. |

the       deliverer
computing
device.





Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver.

Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver.



| 18.       The computer-readable storage medium of claim 13, further comprising receiving, by the server processor via the transceiver, delivery information from the deliverer computing device, wherein the delivery information comprises at least one of a deliverer computing device location and a delivery time stamp. | As shown in the screenshots below, the delivery information includes a delivery time stamp and deliverer computing device location.<br><br>Furthermore, on information and belief, the mobile number associated with the deliverer may in fact be provided by the Accused Product. When the passenger contacts the deliverer via the Accused Product, the dialogue is between the passenger's mobile number and the mobile number provided by the Accused Product to the deliverer. As such, each message sent between the passenger and deliverer may in fact pass within the Accused Product's server. Thus, each input that is exchanged among the Accused Product, deliverer and/or passenger may be (1) received by the processor via the transceiver and (2) transmitted by the processor via the transceiver. |







Furthermore, the Accused Product provides the option to "Update a Shipment" as shown below. On information and belief, these updates are exchanged among the server, deliverer and passenger via the API, which includes the server with accompanying processor and transceiver. On information and belief, the server processor may receive updates via the deliverer computing device, which may include a delivery time stamp as well as an accurate location of the deliverer while en route.



| 19. The apparatus of claim 1, wherein the piece of baggage is one of a plurality of pieces of baggage to be delivered to a plurality of passengers, and wherein the processor is further configured to determine a most efficient travel path for the delivery person. | Roadie's support center explicitly states that deliverers can handle more than one delivery at a time.  *See* https://support.roadie.com/hc/en-us/articles/210699123-Can-I-deliver-multiple-Gigs-at-the-same-time-<br><br>On information and belief, the Accused Product provides turn-by-turn directions in an efficient travel path to the delivery person. *See* https://www.youtube.com/watch?v=zYty-XPYcO0 |
|---|---|
| 20. The apparatus of claim 1, wherein the piece of baggage is one of a plurality of pieces of baggage to be delivered to a plurality of passengers, and wherein the processor is further | Roadie's support center explicitly states that deliverers can handle more than one delivery at a time.  *See* https://support.roadie.com/hc/en-us/articles/210699123-Can-I-deliver-multiple-Gigs-at-the-same-time-<br><br>On information and belief, the Accused Product provides turn-by-turn directions in an efficient travel path to the delivery person and queues the delivery of those deliveries based on time spent in the queue. *See* https://www.youtube.com/watch?v=zYty-XPYcO0 |

| | |
|---|---|
| configured to order the plurality of pieces of baggage in a queue based on an amount of time for which each of the plurality of pieces of baggage is in the queue. | |

Dated: June 8, 2018

*/s/ Stefan V. Stein*

Stefan V. Stein
Florida Bar No. 300527 (admitted *pro hac vice*)
Primary Email Address:
stefan.stein@gray-robinson.com
Cole Carlson
Florida Bar No. 112863 (admitted *pro hac vice*)
Primary Email Address:
cole.carlson@gray-robinson.com
William Stein
Florida Bar No. 1004226 (admitted *pro hac vice*)
Primary Email Address:
william.stein@gray-robinson.com
GrayRobinson, P.A.
301 East Pine Street, Suite 1400
P.O. Box 3068
Orlando, Florida 32802
Telephone: (407) 843-8880
Facsimile:   (407) 244-5690

SMITH, KATZENSTEIN, & JENKINS LLP
Neal Belgam (No. 2721)
Eve H. Ormerod (No. 5369)
1000 West Street, Suite 1501
Wilmington, DE 19801
302-652-8400
nbelgam@skjlaw.com
eormerod@skjlaw.com

*Attorneys for Plaintiff*
*Baggage Airline Guest Services, Inc.*

# EXHIBIT S

| | |
|---|---|
| **From:** | Cole Carlson |
| **To:** | Pennington, John |
| **Cc:** | Pennington, Edward; Tzou, Darlene; Pilar Kraman (pkraman@ycst.com); Eve H. Ormerod (eho@skjlaw.com); Neal C. Belgam (NCB@skjlaw.com); Stefan V. Stein, B.C.S; Jessica M. Gonzalez; William V. Stein; Moy, John; Jay M. Layfield |
| **Subject:** | Bags v Roadie - Meet and Confer 9/24/18 |
| **Date:** | Tuesday, September 25, 2018 9:41:54 AM |

---

**CAUTION: This email is from an external source. Do not click links or attachments unless it's from a verified sender.**

---

John,

Thank you for taking the time for the meet and confer yesterday. Below is a summary of the meeting:

Bags:

- We will delete the documents within the bates range 2161-2169. We will inform our IT person today.

- We will provide the Confidentiality Statement of our chosen expert witness to review Roadie's source code per the Protective Order shortly. Can you confirm the location of this source code? Is it in your office or in Atlanta, GA?

Roadie:

- You confirmed that the produced documents to Request Nos. 1-15, 18-23 and 25-35 are complete.

- You will confirm that most of the discussions, strategy sessions, etc. were "white board" discussions, in that the dialogues were never transcribed into a written format to produce a document or tangible item.

- You will determine Christopher Bridge's (a/k/a Ludacris) position within Roadie in response to Request No. 24.

- Regarding the screenshot of Roadie's FAQ page and in response to Request Nos. 16 and 17, you will determine whether any documents or communications exist that show the technical concept of that screenshot.

If any of the above is in incorrect, please let us know.

Thank you,
Cole

**Cole Carlson | Associate Attorney**
**G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | Bio | vCard

**Facebook** | **LinkedIn** | **Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

# EXHIBIT T

| | |
|---|---|
| **From:** | Pennington, John |
| **To:** | Stefan V. Stein, B.C.S.; Moy, John; Jason A. Zimmerman |
| **Cc:** | Jessica M. Gonzalez; Brock Magruder; Mayanne Downs; William V. Stein; Cole Carlson; Pennington, Edward; Brust, Steve; Tzou, Darlene |
| **Subject:** | RE: Baggage v. Roadie |
| **Date:** | Thursday, March 29, 2018 3:05:44 PM |
| **Attachments:** | 2018.03.29 - First Set of Requests for Production of Documents to Plaint....pdf<br>2018.03.29 - First Set of Interrogatories to Plaintiff Baggage (18167070....pdf |

Counsel,

Defendant's First Set of Interrogatories and First Set of Requests for Production of Documents are attached.

As explained in our most recent letter under Fed. R. Civ. P. 11, the weakness of Plaintiff's infringement contentions makes clear that your client never had a basis for alleging infringement of the '336 Patent by Roadie. It was our hope that after receiving Roadie's non-infringement contentions and our Rule 11 letter, your client would recognize the necessity of dropping its case immediately – we are disappointed that, 10 days later, we are still waiting to receive a substantive response.

To date, we have tried to limit the expenditure of fees in defending this meritless action, but, with critical deadlines approaching, we will spare expense no further in pursuing discovery to support our defenses. This will include, at a minimum, written discovery to Baggage, depositions of Baggage's employees, depositions of the inventor and prosecuting attorney, a deposition of Mr. Stein concerning the information identified in Baggage's infringement contentions, and subpoenas for documents and testimony to Baggage's customers. We did not want to go this route – it is expensive and time consuming – but since Baggage is forcing our hand, we will move forward and hold Baggage responsible for our fees when we prevail.

If this letter appears to be written in a tone of condescension, please be sure that it is not; the tone is exasperation. We implore you to end this case – it is bad faith litigation and every day that it proceeds will drastically increase the price that your client will pay at the end of the line.

Sincerely,
John Pennington




**JOHN P. PENNINGTON | Attorney at Law**

202-263-4360 *phone*
202-263-4329 *fax*
*www.sgrlaw.com*
*jpennington@sgrlaw.com*

1055 Thomas Jefferson Street, N.W.
Suite 400
Washington, D.C. 20007

 SMITH, GAMBRELL & RUSSELL, LLP

**From:** Stefan V. Stein, B.C.S [mailto:Stefan.Stein@gray-robinson.com]
**Sent:** Thursday, March 22, 2018 9:34 AM
**To:** Moy, John; Jason A. Zimmerman
**Cc:** Jessica M. Gonzalez; Brock Magruder; Mayanne Downs; William V. Stein; Cole Carlson; Pennington, Edward; Brust, Steve; Pennington, John; Tzou, Darlene
**Subject:** RE: Baggage v. Roadie

> **CAUTION: This email is from an external source. Do not click links or attachments unless it's from a verified sender.**

Your self-imposed deadline of less than 48 hours to respond to your 9 page letter and dismissing the case, demonstrates that you were not really expecting any meaningful review or analysis of your allegations; rather, it appears that you had written the letter to merely serve as an attachment to your threatened motion.

Nevertheless, Bags is taking your letter under consideration and will respond in due course.

**Stefan V. Stein, B.C.S | Shareholder**
**Florida Bar Board Certified in Intellectual Property Law, Business Litigation and Civil Trial**
**G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145 | **D:** 813-273-5078
E-mail | Website | Bio | vCard

**Facebook** | **LinkedIn** | **Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**From:** Moy, John <jmoy@sgrlaw.com>
**Sent:** Monday, March 19, 2018 3:12 PM
**To:** Jason A. Zimmerman <Jason.Zimmerman@gray-robinson.com>
**Cc:** Stefan V. Stein, B.C.S <Stefan.Stein@gray-robinson.com>; Jessica M. Gonzalez <Jessica.Gonzalez@gray-robinson.com>; Brock Magruder <Brock.Magruder@gray-robinson.com>; Mayanne Downs <Mayanne.Downs@gray-robinson.com>; William V. Stein <William.Stein@gray-robinson.com>; Cole Carlson <Cole.Carlson@gray-robinson.com>; Pennington, Edward <epennington@sgrlaw.com>; Brust, Steve <SBRUST@sgrlaw.com>; Pennington, John <jpennington@sgrlaw.com>; Tzou, Darlene <dtzou@sgrlaw.com>
**Subject:** Baggage v. Roadie

Jason,

Please see the attached correspondence.  Thank you.

John


**J<small>OHN</small> P. M<small>OY</small>** | **Counsel**

202-263-4337 *phone*
202-263-4329 *fax*
*www.sgrlaw.com*
*jmoy@sgrlaw.com*

1055 Thomas Jefferson Street, N.W.
Suite 400
Washington, D.C. 20007

 S<small>MITH</small>, G<small>AMBRELL</small> & R<small>USSELL</small>, LLP

Confidentiality Notice
This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

# EXHIBIT U

| | |
|---|---|
| **From:** | Pennington, John |
| **To:** | Cole Carlson; Tzou, Darlene |
| **Cc:** | Pennington, Edward; Moy, John; Smith, Deanna H.; Brust, Steve; Stefan V. Stein, B.C.S; Jessica M. Gonzalez; Brock Magruder; Mayanne Downs; William V. Stein; Jason A. Zimmerman |
| **Subject:** | RE: Bags v Roadie - Edits to Proposed Protective Order |
| **Date:** | Monday, April 16, 2018 2:51:37 PM |

Cole,

In the letter dated March 19 from Mr. Moy to your team, which was written under Rule 11, we identified glaring deficiencies in your client's infringement case and requested that your client drop its case immediately. Nearly a month later, and after sending a follow-up e-mail to your team, we are still waiting for a response. Please confirm whether Baggage will agree to dismiss this case and join a motion to stay all deadlines pending final dismissal. If Baggage intends to continue prosecuting this case, please provide its basis for doing so in light of the infringement allegation issues identified with particularity in Defendant's non-infringement contentions and in the correspondence from Mr. Moy.

As explained in prior correspondence, Baggage's insistence on pursuing this case in light of these deficiencies justifies sanctions under Rule 11 and section 285. The sanctions will continue to accrue the longer Baggage maintains this case.

Sincerely,
John Pennington


JOHN P. PENNINGTON | **Attorney at Law**

202-263-4360 *phone*
202-263-4329 *fax*
*www.sgrlaw.com*
*jpennington@sgrlaw.com*

1055 Thomas Jefferson Street, N.W.
Suite 400
Washington, D.C. 20007

 SMITH, GAMBRELL & RUSSELL, LLP

**From:** Cole Carlson [mailto:Cole.Carlson@gray-robinson.com]
**Sent:** Monday, April 16, 2018 9:31 AM
**To:** Tzou, Darlene
**Cc:** Pennington, Edward; Pennington, John; Moy, John; Smith, Deanna H.; Brust, Steve; Stefan V. Stein, B.C.S; Jessica M. Gonzalez; Brock Magruder; Mayanne Downs; William V. Stein; Jason A. Zimmerman
**Subject:** RE: Bags v Roadie - Edits to Proposed Protective Order

> **CAUTION: This email is from an external source. Do not click links or attachments unless it's from a verified sender.**

Counsel,

Does Roadie have any comments to the proposed edits?

Thanks,
Cole

**Cole Carlson | Associate Attorney**
**G R A Y** | **R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | Bio | vCard

**Facebook** | **LinkedIn** | **Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**From:** Cole Carlson
**Sent:** Thursday, March 29, 2018 1:16 PM
**To:** 'Tzou, Darlene'
**Cc:** Pennington, Edward; Pennington, John; Moy, John; Smith, Deanna H.; Brust, Steve; Stefan V. Stein, B.C.S; Jessica M. Gonzalez; Brock Magruder; Mayanne Downs; William V. Stein; Jason A. Zimmerman
**Subject:** Bags v Roadie - Edits to Proposed Protective Order

Counsel,

Attached for your review are clean and redlined versions of the proposed protective order.

Thanks,
Cole

# EXHIBIT V

| | |
|---|---|
| **From:** | Pennington, John |
| **To:** | Cole Carlson |
| **Cc:** | Pennington, Edward; Moy, John; Smith, Deanna H.; Brust, Steve; Jessica M. Gonzalez; Brock Magruder; Mayanne Downs; William V. Stein; Jason A. Zimmerman; Tzou, Darlene; Stefan V. Stein, B.C.S |
| **Subject:** | RE: Bags v Roadie - Responses to Discovery Requests |
| **Date:** | Monday, April 30, 2018 2:42:02 PM |

Counsel:

Thank you for your response. We do not agree to your request because it is unreasonable and will cause the Defendant to suffer serious prejudice.

The Federal Rules of Civil Procedure set forth explicit time limits for responding to discovery requests. As you know, we served our discovery requests on Plaintiff's counsel on March 29, 2018, which resulted in a response deadline of April 30, 2018 – today. Plaintiff has provided only two rationales for seeking an extension of this deadline. The first is that the number of discovery requests is high. To be clear, in its discovery requests, Defendant propounded fourteen interrogatories and fifty-six document requests. The number of interrogatories falls well under the limit of 25 provided by the scheduling order, and the number of document requests is well below the number that are ordinarily issued in patent cases. Moreover, if Plaintiff considered the volume too high, it should have requested an extension from the Defendant or otherwise objected well before the deadline. Plaintiff had possession of the discovery requests for 30 days before it notified Defendant's counsel of the issue – there is simply no excuse for waiting until the last possible day to indicate that it could not provide any responses on the basis of the volume of the requests.

The second issue identified is that Plaintiff is unable to prepare responses to Defendant's discovery requests due to the motion to stay filed by Defendant. There are three reasons why we cannot accept this excuse. (1) As described, above, Plaintiff has had possession of Defendant's discovery requests for a full month, only one week of which overlapped with the drafting of its responsive brief since Defendant's motion to stay wasn't filed until April 23. Assuming that responding to a single motion constituted an excuse to delay the production of discovery, which it clearly does not, Plaintiff still had plenty of time prior to the filing of the motion to stay to work on its responses. (2) Plaintiff has repeatedly opposed Defendant's offer to stay the case to avoid the expense and labor of discovery pending the resolution of Defendant's dispositive motions. Despite repeatedly rejecting these offers, Plaintiff is now using its inability to engage in motions practice and discovery concurrently as a basis for refusing to provide discovery on time. This defies logic - Plaintiff can either agree to stay discovery deadlines in this case or respond to discovery according to the Federal Rules; it can't refuse both. (3) Defendant's motion to stay was filed on April 23, 2018. If this constituted a proper excuse for delaying discovery, Plaintiff should have reached out to the Defendant immediately instead of waiting until the due date.

We have made numerous attempts to avoid the expense and labor of discovery by requesting that Plaintiff join a stay of the case pending resolution of our dispositive motions; all of these attempts were rejected by Plaintiff. We also have a 42-day-old Rule 11 letter identifying, with specificity, glaring deficiencies in Plaintiff's infringement contentions and demanding voluntary dismissal of its case. Despite repeated follow-up requests for a response, Plaintiff has failed to provide any substantive reply whatsoever. In fact, in the transmittal e-mail where we served our discovery

requests, we again requested that Plaintiff respond to our letter and dismiss its frivolous case, so we would not be forced to pursue offensive discovery. Plaintiff did not bother to respond. This refusal to dismiss a clearly frivolous case or even attempt a written defense of the infringement contentions, which forms the bedrock of Plaintiff's case, signals clearly that the case was brought in bad faith for the purpose of gaining a competitive edge by scaring Defendant's customers.

We have provided Plaintiff with every opportunity to avoid responding to discovery by dismissing or staying its case, and it has rejected us every time. We are only pursuing discovery in this case because the Plaintiff is forcing our hand. Truly, Plaintiff's discovery responses are likely directly relevant to a motion for summary judgment and/or a motion for sanctions and fees, motions that might be necessary only because of Plaintiff's refusal to terminate or stay this frivolous action. By refusing to provide this discovery, in contravention of the Federal Rules, Plaintiff increases Defendant's  fees and costs, and needlessly extends this meritless action, which causes serious prejudice to Defendant.

If there is some unidentified excuse for Plaintiff's delay in requesting an extension, or if Plaintiff is willing to withdraw its opposition to Defendant's motion to stay the case, please let us know.

Finally, again, we reiterate our request for Plaintiff's basis for prosecuting this action in view of the infringement contention deficiencies identified in Mr. Moy's letter dated March 19, 2018.

Sincerely,
John Pennington

**John P. Pennington | Attorney at Law**

202-263-4360 *phone*
202-263-4329 *fax*
*www.sgrlaw.com*
*jpennington@sgrlaw.com*

1055 Thomas Jefferson Street, N.W.
Suite 400
Washington, D.C. 20007

 Smith, Gambrell & Russell, LLP

**From:** Cole Carlson [mailto:Cole.Carlson@gray-robinson.com]
**Sent:** Monday, April 30, 2018 12:29 PM
**To:** Pennington, John
**Cc:** Pennington, Edward; Moy, John; Smith, Deanna H.; Brust, Steve; Jessica M. Gonzalez; Brock Magruder; Mayanne Downs; William V. Stein; Jason A. Zimmerman; Tzou, Darlene; Stefan V. Stein, B.C.S
**Subject:** RE: Bags v Roadie - Responses to Discovery Requests

John,

The response to the pending motion to stay the litigation is in the process of being drafted. Drafting the response in combination with preparing responses to discovery takes a large amount of attorney

and client time. An extension would be appreciated and returned in kind should one be needed in the future.

Thanks,
Cole

**Cole Carlson | Associate Attorney**
**G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**

**From:** Pennington, John [mailto:jpennington@sgrlaw.com]
**Sent:** Monday, April 30, 2018 11:04 AM
**To:** Cole Carlson
**Cc:** Pennington, Edward; Moy, John; Smith, Deanna H.; Brust, Steve; Jessica M. Gonzalez; Brock Magruder; Mayanne Downs; William V. Stein; Jason A. Zimmerman; Tzou, Darlene; Stefan V. Stein, B.C.S
**Subject:** RE: Bags v Roadie - Responses to Discovery Requests

Cole,

Thank you for the e-mail. So that we can properly assess your request, can you clarify what you meant in your e-mail when you wrote "the status of the case"?

Best,
John

Jᴏʜɴ P. Pᴇɴɴɪɴɢᴛᴏɴ | **Attorney at Law**

202-263-4360 *phone*
202-263-4329 *fax*
www.sgrlaw.com
jpennington@sgrlaw.com

1055 Thomas Jefferson Street, N.W.
Suite 400
Washington, D.C. 20007

 Sᴍɪᴛʜ, Gᴀᴍʙʀᴇʟʟ & Rᴜssᴇʟʟ, LLP
**From:** Cole Carlson [mailto:Cole.Carlson@gray-robinson.com]
**Sent:** Monday, April 30, 2018 10:46 AM
**To:** Pennington, John
**Cc:** Pennington, Edward; Moy, John; Smith, Deanna H.; Brust, Steve; Jessica M. Gonzalez; Brock Magruder; Mayanne Downs; William V. Stein; Jason A. Zimmerman; Tzou, Darlene; Stefan V. Stein, B.C.S
**Subject:** Bags v Roadie - Responses to Discovery Requests

**CAUTION: This email is from an external source. Do not click links or attachments unless it's from a verified sender.**

John,

Would Roadie be willing to grant a two week extension of time for Bags to respond to Roadie's discovery requests? Given the large number of requests and the status of the case, it is taking some time to prepare adequate responses.

Thanks,
Cole

**Cole Carlson | Associate Attorney**
**G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

Confidentiality Notice
This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

# EXHIBIT W

| | |
|---|---|
| **From:** | Pennington, John |
| **To:** | Cole Carlson; Tzou, Darlene; Pennington, Edward; Moy, John; Pilar Kraman |
| **Cc:** | Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein; Eve H. Ormerod |
| **Subject:** | RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA |
| **Date:** | Tuesday, June 05, 2018 4:48:09 PM |

Counsel:

Our most recent edits to the protective order are attached. Please let us know if this version is acceptable to Plaintiff.

With respect to Defendant's discovery responses, we do not understand your question concerning whether Plaintiff will receive "any documents" in response to the December requests for production; Plaintiff already received documents in response to the discovery requests served in December. In fact, it is the Plaintiff who has failed to produce any  documents in response to Defendant's requests for production of documents or even provide a date certain by which any documents will be produced. In any case, Defendant will be producing additional documents on June 8, 2018 and supplementing its response to Plaintiff's Interrogatory No. 1 on that same date. With respect to Plaintiff's supplemental responses to Defendant's discovery requests, we believe that Plaintiff's responses remain woefully deficient; we also note that Plaintiff has chosen to supplement its objections, which is completely improper. We propose conducting a telephonic meet and confer on Wednesday June 12 at 11:00 am to discuss Plaintiff's discovery responses and any remaining issues related to Defendant's discovery responses. Please let us know if that time works for Plaintiff.

We also note that June 12 is the deadline for the parties to submit a proposed schedule. Can you please let us know when we may expect a draft for review?

Finally, we have been waiting since March 19, 2018 for a response to our letter under Rule 11 identifying glaring deficiencies in Plaintiff's infringement contentions. Despite several promises by Plaintiff of a forthcoming response, including on our meet and confer on May 16, we still have not received any response from Plaintiff whatsoever. To be clear, it has now been two months and 18 days since the letter was served on Plaintiff. If Plaintiff is unable to provide a written response in this amount of time to counter Defendant's arguments, which relate to the very core of Plaintiff's allegations, this case should not have been filed. Please identify a date certain by which Defendant may expect to receive a response to its letter of March 19, 2018.

Thanks,
John

JOHN P. PENNINGTON | **Attorney at Law**

202-263-4360 *phone*
202-263-4329 *fax*
*www.sgrlaw.com*
*jpennington@sgrlaw.com*

1055 Thomas Jefferson Street, N.W.
Suite 400
Washington, D.C. 20007

 SMITH, GAMBRELL & RUSSELL, LLP

**From:** Cole Carlson [mailto:Cole.Carlson@gray-robinson.com]
**Sent:** Tuesday, June 05, 2018 12:54 PM
**To:** Tzou, Darlene; Pennington, Edward; Moy, John; Pennington, John; Pilar Kraman
**Cc:** Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein; Eve H. Ormerod
**Subject:** RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

> **CAUTION: This email is from an external source. Do not click links or attachments unless it's from a verified sender.**

Counsel,

We also have the issue of the pending proposed protective order that yet to be figured out. Attached is the version we last sent with some minor updates added by Bags' local counsel. We would propose to add this to the agenda for the meet and confer suggested for tomorrow at 1 pm. Does that time work for you? As Ms. Ormerod stated, if that date/time does not work for you, please provide an alternate date/time that does work.

Thanks,
Cole

**Cole Carlson | Associate Attorney**
**G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**

**From:** Eve H. Ormerod [mailto:eho@skjlaw.com]
**Sent:** Friday, June 01, 2018 2:04 PM
**To:** Cole Carlson; Darlene K. Tzou ; Edward Pennington; John P. Moy ; John Pennington; Pilar Kraman
**Cc:** Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein
**Subject:** RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

All:

Although the parties have not filed a scheduling order in this Court yet, I believe that we should be following Judge Andrews' procedures with respect to discovery disputes. Instead of a motion to compel, that requires the parties to have an oral meet and confer that involves Delaware counsel for each party before calling the Judge's Case Manager to schedule an in-person conference, and then three-page opening and responsive letters filed within 48 hours and 24 hours, respectively, of the

hearing.

Please let us know if Roadie is available for a meet and confer to discuss the issues set forth in Cole's email below on Wednesday, June 6 at 1pm EDT.  If that date or time does not work, please provide alternative dates/times in your response.  We look forward to hearing from you soon.

Thanks,

**Eve H. Ormerod**

# SMITH KATZENSTEIN
## JENKINS LLP

Smith, Katzenstein & Jenkins LLP | The Brandywine Building
1000 West Street, Suite 1501 | Wilmington, DE  19801
302.504.1681 Direct | 302.652.8400 Main
eormerod@skjlaw.com | www.skjlaw.com
This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** Cole Carlson [mailto:Cole.Carlson@gray-robinson.com]
**Sent:** Friday, June 01, 2018 1:07 PM
**To:** Eve H. Ormerod; Darlene K. Tzou ; Edward Pennington; John P. Moy ; John Pennington; Pilar Kraman
**Cc:** Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein
**Subject:** RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

Counsel,

Now that Defendant has received Plaintiff's Supplemental Responses, please let us know whether or not Defendant will be supplementing the first interrogatory propounded on Defendant back in December 2017. Also, please let us know whether or not Plaintiff will be receiving any documents in response to the Requests for Production also served in December 2017.

Defendant's statement in its May 21, 2018 email that "With respect to Defendant's objections and responses to Plaintiff's document requests, Defendant will continue to withhold documents in response to each of Plaintiff's document requests based on objections relating to overbreadth, undue burden, irrelevance, the attorney-client privilege, the work-product doctrine, and the pending dispositive motions" was vague. Furthermore, Defendant's statement was not the appropriate way to state an objection pursuant to Rule 34(a)(2)(C) regarding which documents are being withheld because of a failure to identify which requests have documents that are being withheld.

Therefore, as suggested by Plaintiff's emails of May 22, 2018 and May 24, 2018 to Defendant, Defendant's May 21, 2018 email seemed to suggest that nothing would be produced. Given that this is our third attempt requesting this information over the past two weeks, we will need an answer to both questions by close of business Tuesday either (1) identifying specific requests for which

documents are being withheld or (2) identifying that documents will be produced and when Defendant intends to produce said documents corresponding to specific requests or (3) a combination of (1) or (2). Otherwise, Plaintiff will have no recourse but to file a motion to compel pursuant to Fed. R. Civ. P. 37 and Local Rule 37.1 based on your lack of response. We look forward to your response by close of business on Tuesday.

Cole

**Cole Carlson | Associate Attorney**
**G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | Bio | vCard

**Facebook** | **LinkedIn** | **Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**From:** Eve H. Ormerod [mailto:eho@skjlaw.com]
**Sent:** Friday, June 01, 2018 11:04 AM
**To:** Darlene K. Tzou ; Edward Pennington; John P. Moy ; John Pennington; Pilar Kraman
**Cc:** Neal C. Belgam; Cole Carlson; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein
**Subject:** Baggaile Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

Counsel:

In connection with the above-referenced action, attached please find Plaintiff's Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1, 2, 3, 4, 5, 6, 7, 8, 11, 13 and 14).

Regards,

**Eve H. Ormerod**



Smith, Katzenstein & Jenkins LLP | The Brandywine Building
1000 West Street, Suite 1501 | Wilmington, DE 19801
302.504.1681 Direct | 302.652.8400 Main
eormerod@skjlaw.com | www.skjlaw.com

This email and any attachments thereto may contain private, confidential, and privileged material for

the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

# EXHIBIT X

202-263-4360 *phone*
202-263-4329 *fax*
www.sgrlaw.com
jpennington@sgrlaw.com

1055 Thomas Jefferson Street, N.W.
Suite 400
Washington, D.C. 20007

 Sᴍɪᴛʜ, Gᴀᴍʙʀᴇʟʟ & Rᴜssᴇʟʟ, LLP

**From:** Cole Carlson [mailto:Cole.Carlson@gray-robinson.com]
**Sent:** Friday, June 08, 2018 10:02 AM
**To:** Pennington, John
**Cc:** Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein; Eve H. Ormerod; Jay M. Layfield (jml@skjlaw.com); Tzou, Darlene; Pennington, Edward; Moy, John; Pilar Kraman
**Subject:** RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

John,

Thank you for providing edits to the protective order. We accepted most of your edits. See attached version for comments and changes.

Our local counsel also sent over a proposed scheduling order. Any comments on the proposed dates before our meet and confer?

With regard to Defendant's discovery responses, the question about whether Plaintiff would receive any documents was in response to your statement that documents were being withheld. The documents that have been produced amount to 11 total documents of publicly available information which is clearly not fully responsive to Plaintiff's eight document requests that have been pending since December. We will revisit this issue after review of the documents purported to be produced today.

With regard to Plaintiff's discovery responses, we will need more information regarding why Defendant considers the supplemental responses deficient so that we can properly prepare for the meet and confer. Also, with regard to document production, we invited Defendant to provide keywords in order to limit the scope of the 5,000+ documents we identified as potentially relevant to the 56 document requests. Given that Defendant has chosen not to do that, we have been forced to conduct a review of all 5,000+ documents. This is a time consuming process. We also offered to perform a rolling production which was not accepted. As such, Plaintiff cannot provide a date certain for complete production. Assuming clarification is provided, we have a conflict at 11 and would prefer to have the meet and confer at 1 pm or later on June 12.

Finally, with regard to your March 19 letter, beside the fact that the letter does not conform to the procedure dictated by Rule 11 and Plaintiff is not required to respond under any rule, Plaintiff considers the letter moot given the preliminary claim construction activities performed by the parties negating most of the arguments contained in the letter, if not all. Plaintiff considers the previously served amended infringement contentions as an adequate response.

Thanks,
Cole


**Cole Carlson | Associate Attorney**
**G R A Y** | **R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | Bio | vCard

**Facebook** | **LinkedIn** | **Twitter**

---

**From:** Pennington, John [mailto:jpennington@sgrlaw.com]
**Sent:** Tuesday, June 05, 2018 4:50 PM
**To:** Cole Carlson; Tzou, Darlene; Pennington, Edward; Moy, John; Pilar Kraman
**Cc:** Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein; Eve H. Ormerod
**Subject:** RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA


Attachment here.


J<small>OHN</small> P. P<small>ENNINGTON</small> | **Attorney at Law**

202-263-4360 *phone*
202-263-4329 *fax*
www.sgrlaw.com
jpennington@sgrlaw.com

1055 Thomas Jefferson Street, N.W.
Suite 400
Washington, D.C. 20007

 S<small>MITH</small>, G<small>AMBRELL</small> & R<small>USSELL</small>, LLP

**From:** Pennington, John
**Sent:** Tuesday, June 05, 2018 4:48 PM
**To:** 'Cole Carlson'; Tzou, Darlene; Pennington, Edward; Moy, John; Pilar Kraman
**Cc:** Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein; Eve H. Ormerod
**Subject:** RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

Counsel:

Our most recent edits to the protective order are attached. Please let us know if this version is acceptable to Plaintiff.

With respect to Defendant's discovery responses, we do not understand your question concerning whether Plaintiff will receive "any documents" in response to the December requests for production; Plaintiff already received documents in response to the discovery requests served in December. In fact, it is the Plaintiff who has failed to produce any  documents in response to Defendant's requests for production of documents or even provide a date certain by which any

documents will be produced. In any case, Defendant will be producing additional documents on June 8, 2018 and supplementing its response to Plaintiff's Interrogatory No. 1 on that same date. With respect to Plaintiff's supplemental responses to Defendant's discovery requests, we believe that Plaintiff's responses remain woefully deficient; we also note that Plaintiff has chosen to supplement its objections, which is completely improper. We propose conducting a telephonic meet and confer on Wednesday June 12 at 11:00 am to discuss Plaintiff's discovery responses and any remaining issues related to Defendant's discovery responses. Please let us know if that time works for Plaintiff.

We also note that June 12 is the deadline for the parties to submit a proposed schedule. Can you please let us know when we may expect a draft for review?

Finally, we have been waiting since March 19, 2018 for a response to our letter under Rule 11 identifying glaring deficiencies in Plaintiff's infringement contentions. Despite several promises by Plaintiff of a forthcoming response, including on our meet and confer on May 16, we still have not received any response from Plaintiff whatsoever. To be clear, it has now been two months and 18 days since the letter was served on Plaintiff. If Plaintiff is unable to provide a written response in this amount of time to counter Defendant's arguments, which relate to the very core of Plaintiff's allegations, this case should not have been filed. Please identify a date certain by which Defendant may expect to receive a response to its letter of March 19, 2018.

Thanks,
John

---

**From:** Cole Carlson [mailto:Cole.Carlson@gray-robinson.com]
**Sent:** Tuesday, June 05, 2018 12:54 PM
**To:** Tzou, Darlene; Pennington, Edward; Moy, John; Pennington, John; Pilar Kraman
**Cc:** Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein; Eve H. Ormerod
**Subject:** RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

**CAUTION:** This email is from an external source. Do not click links or attachments unless it's from a verified sender.

Counsel,

We also have the issue of the pending proposed protective order that yet to be figured out. Attached is the version we last sent with some minor updates added by Bags' local counsel. We would propose to add this to the agenda for the meet and confer suggested for tomorrow at 1 pm. Does that time work for you? As Ms. Ormerod stated, if that date/time does not work for you, please provide an alternate date/time that does work.

Thanks,
Cole

**Cole Carlson | Associate Attorney**
**G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | Bio | vCard

**Facebook** | **LinkedIn** | **Twitter**

---

**From:** Eve H. Ormerod [mailto:eho@skjlaw.com]
**Sent:** Friday, June 01, 2018 2:04 PM
**To:** Cole Carlson; Darlene K. Tzou ; Edward Pennington; John P. Moy ; John Pennington; Pilar Kraman
**Cc:** Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein
**Subject:** RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

All:

Although the parties have not filed a scheduling order in this Court yet, I believe that we should be following Judge Andrews' procedures with respect to discovery disputes.  Instead of a motion to compel, that requires the parties to have an oral meet and confer that involves Delaware counsel for each party before calling the Judge's Case Manager to schedule an in-person conference, and then three-page opening and responsive letters filed within 48 hours and 24 hours, respectively, of the hearing.

Please let us know if Roadie is available for a meet and confer to discuss the issues set forth in Cole's email below on Wednesday, June 6 at 1pm EDT.  If that date or time does not work, please provide alternative dates/times in your response.  We look forward to hearing from you soon.

Thanks,

**Eve H. Ormerod**

**SMITH KATZENSTEIN**
**JENKINS LLP**

Smith, Katzenstein & Jenkins LLP | The Brandywine Building
1000 West Street, Suite 1501 | Wilmington, DE 19801
302.504.1681 Direct | 302.652.8400 Main
eormerod@skjlaw.com | www.skjlaw.com
This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

---

**From:** Cole Carlson [mailto:Cole.Carlson@gray-robinson.com]
**Sent:** Friday, June 01, 2018 1:07 PM
**To:** Eve H. Ormerod; Darlene K. Tzou ; Edward Pennington; John P. Moy ; John Pennington; Pilar Kraman
**Cc:** Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein
**Subject:** RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

Counsel,

Now that Defendant has received Plaintiff's Supplemental Responses, please let us know whether or not Defendant will be supplementing the first interrogatory propounded on Defendant back in December 2017. Also, please let us know whether or not Plaintiff will be receiving <u>any</u> documents in response to the Requests for Production also served in December 2017.

Defendant's statement in its May 21, 2018 email that "With respect to Defendant's objections and responses to Plaintiff's document requests, Defendant will continue to withhold documents in response to each of Plaintiff's document requests based on objections relating to overbreadth, undue burden, irrelevance, the attorney-client privilege, the work-product doctrine, and the pending dispositive motions" was vague. Furthermore, Defendant's statement was not the appropriate way to state an objection pursuant to Rule 34(a)(2)(C) regarding which documents are being withheld because of a failure to identify which requests have documents that are being withheld.

Therefore, as suggested by Plaintiff's emails of May 22, 2018 and May 24, 2018 to Defendant, Defendant's May 21, 2018 email seemed to suggest that <u>nothing</u> would be produced. Given that this is our third attempt requesting this information over the past two weeks, we will need an answer to both questions by close of business Tuesday either (1) identifying specific requests for which documents are being withheld or (2) identifying that documents will be produced and when Defendant intends to produce said documents corresponding to specific requests or (3) a combination of (1) or (2). Otherwise, Plaintiff will have no recourse but to file a motion to compel pursuant to Fed. R. Civ. P. 37 and Local Rule 37.1 based on your lack of response. We look forward to your response by close of business on Tuesday.

Cole

**Cole Carlson | Associate Attorney**
**G R A Y** | R O B I N S O N

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | Bio | vCard

**Facebook** | **LinkedIn** | **Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**From:** Eve H. Ormerod [mailto:eho@skjlaw.com]
**Sent:** Friday, June 01, 2018 11:04 AM

**To:** Darlene K. Tzou ; Edward Pennington; John P. Moy ; John Pennington; Pilar Kraman
**Cc:** Neal C. Belgam; Cole Carlson; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein
**Subject:** Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

Counsel:

In connection with the above-referenced action, attached please find Plaintiff's Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1, 2, 3, 4, 5, 6, 7, 8, 11, 13 and 14).

Regards,

**Eve H. Ormerod**



Smith, Katzenstein & Jenkins LLP | The Brandywine Building
1000 West Street, Suite 1501 | Wilmington, DE 19801
302.504.1681 Direct | 302.652.8400 Main
eormerod@skjlaw.com | www.skjlaw.com

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

---

Confidentiality Notice
This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

# EXHIBIT Y



# NEWS, VIEWS & EVENTS

GrayRobinson Assists In The Acquisition Of Bags Inc. For $275 Million

ORLANDO, FL – December 4, 2018 – GrayRobinson attorneys Michael E. Neukamm, Richard A. Rodgers, Jack K. McMullen, Paul Quinn and Lisa A. Specht assisted founder and seller Craig Mateer of Baggage Airline Guest Services, Inc. and Home Serv Delivery, LLC (Bags) in its acquisition by SP Plus Corporation (SP+), for an all cash purchase price of $275 million. The deal closed in Orlando on November 30.

"We are proud to have represented Craig Mateer and Bags in this significant opportunity to combine Bags' capabilities with a like-minded industry partner," said Mike Neukamm, Orlando Managing Director of GrayRobinson. "With any deal we work on, we proactively work with our clients to aim for the very best outcome for all parties involved, and we are more than pleased with the results obtained in this scenario."

SP+ is a parking and ground transportation services provider. In addition to operating approximately 2 million parking spaces at 3,500 facilities across North America, SP+ specializes in valet services at luxury hotels and resorts, and runs shuttle buses at 70 airports.

Bags, based in Orlando, offers baggage delivery services and remote flight check-in for professionals and large groups, operating in more than 250 cities with clients including major airlines, airports, and leading hotels and resorts.

"We are really satisfied with the outcome of this deal and have been thoroughly impressed with the professionalism and service GrayRobinson provided us from the outset, and we couldn't have done this deal without them," said Mateer. "The SP+ team understands our business and provides the experience and resources needed to make Bags more valuable to our clients. This transaction presents the ideal opportunity for the continued growth of our company."

In a press release issued by SP+ immediately following the closing of the transaction, SP+ President and Chief Executive Officer G Marc Bauman stated, "[w]e are very excited to work with the Bags team, and look forward to leveraging our complementary service lines to accelerate growth and diversify our client base. I am confident that the strategic and financial merits of the acquisition will greatly benefit our shareholders, while the strength of the combined company will create new opportunities for our clients and employees."

In addition, Bob Miles, President of Bags, said, "SP+ is the ideal partner to help us grow our business and position Bags for long-term success. We look forward to continuing to deliver outstanding service and innovative, technology-driven solutions to our clients."

For more information on the deal, please click here.

*To contact your closest G|R Office call 800-338-3381*

| | |
|---|---|
| **From:** | Cole Carlson |
| **To:** | Pennington, John |
| **Cc:** | Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S.; William V. Stein; Eve H. Ormerod; Jay M. Layfield (jml@skjlaw.com); Tzou, Darlene; Pennington, Edward; Moy, John; Pilar Kraman |
| **Subject:** | RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA |
| **Date:** | Friday, June 08, 2018 10:02:29 AM |
| **Attachments:** | Bags v Roadie - Protective Order (GR 6-7-18 edits).DOCX |

John,

Thank you for providing edits to the protective order. We accepted most of your edits. See attached version for comments and changes.

Our local counsel also sent over a proposed scheduling order. Any comments on the proposed dates before our meet and confer?

With regard to Defendant's discovery responses, the question about whether Plaintiff would receive any documents was in response to your statement that documents were being withheld. The documents that have been produced amount to 11 total documents of publicly available information which is clearly not fully responsive to Plaintiff's eight document requests that have been pending since December. We will revisit this issue after review of the documents purported to be produced today.

With regard to Plaintiff's discovery responses, we will need more information regarding why Defendant considers the supplemental responses deficient so that we can properly prepare for the meet and confer. Also, with regard to document production, we invited Defendant to provide keywords in order to limit the scope of the 5,000+ documents we identified as potentially relevant to the 56 document requests. Given that Defendant has chosen not to do that, we have been forced to conduct a review of all 5,000+ documents. This is a time consuming process. We also offered to perform a rolling production which was not accepted. As such, Plaintiff cannot provide a date certain for complete production. Assuming clarification is provided, we have a conflict at 11 and would prefer to have the meet and confer at 1 pm or later on June 12.

Finally, with regard to your March 19 letter, beside the fact that the letter does not conform to the procedure dictated by Rule 11 and Plaintiff is not required to respond under any rule, Plaintiff considers the letter moot given the preliminary claim construction activities performed by the parties negating most of the arguments contained in the letter, if not all. Plaintiff considers the previously served amended infringement contentions as an adequate response.

Thanks,
Cole

**Cole Carlson | Associate Attorney**
**G R A Y** | R O B I N S O N

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602

**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | Bio | vCard

**Facebook** | **LinkedIn** | **Twitter**

**From:** Pennington, John [mailto:jpennington@sgrlaw.com]
**Sent:** Tuesday, June 05, 2018 4:50 PM
**To:** Cole Carlson; Tzou, Darlene; Pennington, Edward; Moy, John; Pilar Kraman
**Cc:** Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein; Eve H. Ormerod
**Subject:** RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

Attachment here.

JOHN P. PENNINGTON | **Attorney at Law**

202-263-4360 *phone*
202-263-4329 *fax*
www.sgrlaw.com
jpennington@sgrlaw.com

1055 Thomas Jefferson Street, N.W.
Suite 400
Washington, D.C. 20007

 SMITH, GAMBRELL & RUSSELL, LLP

**From:** Pennington, John
**Sent:** Tuesday, June 05, 2018 4:48 PM
**To:** 'Cole Carlson'; Tzou, Darlene; Pennington, Edward; Moy, John; Pilar Kraman
**Cc:** Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein; Eve H. Ormerod
**Subject:** RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

Counsel:

Our most recent edits to the protective order are attached. Please let us know if this version is acceptable to Plaintiff.

With respect to Defendant's discovery responses, we do not understand your question concerning whether Plaintiff will receive "any documents" in response to the December requests for production; Plaintiff already received documents in response to the discovery requests served in December. In fact, it is the Plaintiff who has failed to produce any  documents in response to Defendant's requests for production of documents or even provide a date certain by which any documents will be produced. In any case, Defendant will be producing additional documents on June 8, 2018 and supplementing its response to Plaintiff's Interrogatory No. 1 on that same date. With respect to Plaintiff's supplemental responses to Defendant's discovery requests, we believe that Plaintiff's responses remain woefully deficient; we also note that Plaintiff has chosen to supplement its objections, which is completely improper. We propose conducting a telephonic meet and confer on Wednesday June 12 at 11:00 am to discuss Plaintiff's discovery responses and any remaining issues related to Defendant's discovery responses. Please let us know if that time works for Plaintiff.

We also note that June 12 is the deadline for the parties to submit a proposed schedule. Can you please let us know when we may expect a draft for review?

Finally, we have been waiting since March 19, 2018 for a response to our letter under Rule 11 identifying glaring deficiencies in Plaintiff's infringement contentions. Despite several promises by Plaintiff of a forthcoming response, including on our meet and confer on May 16, we still have not received any response from Plaintiff whatsoever. To be clear, it has now been two months and 18 days since the letter was served on Plaintiff. If Plaintiff is unable to provide a written response in this amount of time to counter Defendant's arguments, which relate to the very core of Plaintiff's allegations, this case should not have been filed. Please identify a date certain by which Defendant may expect to receive a response to its letter of March 19, 2018.

Thanks,
John

**From:** Cole Carlson [mailto:Cole.Carlson@gray-robinson.com]
**Sent:** Tuesday, June 05, 2018 12:54 PM
**To:** Tzou, Darlene; Pennington, Edward; Moy, John; Pennington, John; Pilar Kraman
**Cc:** Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein; Eve H. Ormerod
**Subject:** RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

> **CAUTION: This email is from an external source. Do not click links or attachments unless it's from a verified sender.**

Counsel,

We also have the issue of the pending proposed protective order that yet to be figured out. Attached is the version we last sent with some minor updates added by Bags' local counsel. We would propose to add this to the agenda for the meet and confer suggested for tomorrow at 1 pm. Does that time work for you? As Ms. Ormerod stated, if that date/time does not work for you, please provide an alternate date/time that does work.

Thanks,
Cole

**Cole Carlson | Associate Attorney**
**G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | Bio | vCard

**Facebook** | **LinkedIn** | **Twitter**

**From:** Eve H. Ormerod [mailto:eho@skjlaw.com]
**Sent:** Friday, June 01, 2018 2:04 PM
**To:** Cole Carlson; Darlene K. Tzou ; Edward Pennington; John P. Moy ; John Pennington; Pilar Kraman
**Cc:** Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein
**Subject:** RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

All:

Although the parties have not filed a scheduling order in this Court yet, I believe that we should be following Judge Andrews' procedures with respect to discovery disputes.  Instead of a motion to compel, that requires the parties to have an oral meet and confer that involves Delaware counsel for each party before calling the Judge's Case Manager to schedule an in-person conference, and then three-page opening and responsive letters filed within 48 hours and 24 hours, respectively, of the hearing.

Please let us know if Roadie is available for a meet and confer to discuss the issues set forth in Cole's email below on Wednesday, June 6 at 1pm EDT.  If that date or time does not work, please provide alternative dates/times in your response.  We look forward to hearing from you soon.

Thanks,

**Eve H. Ormerod**

SMITH KATZENSTEIN
JENKINS LLP

Smith, Katzenstein & Jenkins LLP  |  The Brandywine Building
1000 West Street, Suite 1501  |  Wilmington, DE  19801
302.504.1681 Direct  |  302.652.8400 Main
eormerod@skjlaw.com  |  www.skjlaw.com

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

---

**From:** Cole Carlson [mailto:Cole.Carlson@gray-robinson.com]
**Sent:** Friday, June 01, 2018 1:07 PM
**To:** Eve H. Ormerod; Darlene K. Tzou ; Edward Pennington; John P. Moy ; John Pennington; Pilar Kraman
**Cc:** Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein
**Subject:** RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

Counsel,

Now that Defendant has received Plaintiff's Supplemental Responses, please let us know whether or not Defendant will be supplementing the first interrogatory propounded on Defendant back in December 2017. Also, please let us know whether or not Plaintiff will be receiving any documents in response to the Requests for Production also served in December 2017.

Defendant's statement in its May 21, 2018 email that "With respect to Defendant's objections and responses to Plaintiff's document requests, Defendant will continue to withhold documents in response to each of Plaintiff's document requests based on objections relating to overbreadth, undue burden, irrelevance, the attorney-client privilege, the work-product doctrine, and the pending dispositive motions" was vague. Furthermore, Defendant's statement was not the appropriate way to state an objection pursuant to Rule 34(a)(2)(C) regarding which documents are being withheld because of a failure to identify which requests have documents that are being withheld.

Therefore, as suggested by Plaintiff's emails of May 22, 2018 and May 24, 2018 to Defendant, Defendant's May 21, 2018 email seemed to suggest that nothing would be produced. Given that this is our third attempt requesting this information over the past two weeks, we will need an answer to both questions by close of business Tuesday either (1) identifying specific requests for which documents are being withheld or (2) identifying that documents will be produced and when Defendant intends to produce said documents corresponding to specific requests or (3) a combination of (1) or (2). Otherwise, Plaintiff will have no recourse but to file a motion to compel pursuant to Fed. R. Civ. P. 37 and Local Rule 37.1 based on your lack of response. We look forward to your response by close of business on Tuesday.

Cole


**Cole Carlson | Associate Attorney**
**G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**


This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**From:** Eve H. Ormerod [mailto:eho@skjlaw.com]
**Sent:** Friday, June 01, 2018 11:04 AM
**To:** Darlene K. Tzou ; Edward Pennington; John P. Moy ; John Pennington; Pilar Kraman
**Cc:** Neal C. Belgam; Cole Carlson; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein
**Subject:** Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA

Counsel:

In connection with the above-referenced action, attached please find Plaintiff's Supplemental Responses and Objections to Defendant's First Set of Interrogatories (Nos. 1, 2, 3, 4, 5, 6, 7, 8, 11, 13

and 14).

Regards,

**Eve H. Ormerod**



Smith, Katzenstein & Jenkins LLP | The Brandywine Building
1000 West Street, Suite 1501 | Wilmington, DE 19801
302.504.1681 Direct | 302.652.8400 Main
eormerod@skjlaw.com | www.skjlaw.com

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

---

Confidentiality Notice
This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

# EXHIBIT Z

| | |
|---|---|
| **From:** | Pennington, John |
| **To:** | Cole Carlson |
| **Cc:** | Neal C. Belgam; Jessica M. Gonzalez; Stefan V. Stein, B.C.S; William V. Stein; Eve H. Ormerod; Jay M. Layfield (jml@skjlaw.com); Tzou, Darlene; Pennington, Edward; Moy, John; Pilar Kraman |
| **Subject:** | RE: Baggage Airlines Guest Servs., Inc. v. Roadie, Inc., C.A. No. 18-707-RGA |
| **Date:** | Friday, June 08, 2018 2:51:38 PM |

Cole,

Thank you for the revised protective order. We will review this version and provide a response shortly.

On our meet and confer of May 16, 2018, we identified with particularity the deficiencies of each and every interrogatory response from Plaintiff, so the Plaintiff should be well aware of how its supplementation is deficient from Defendant's perspective. However, if you are having difficulty remembering the issues discussed, my e-mail of May 16, 2018 memorializing our meet and confer and my May 21, 2018 response to Mr. Stein's e-mail regarding supplementation will serve as useful guide for identifying how the supplemental responses remain incomplete or totally inadequate. Further, to date, we still have not received any documents from Plaintiff. To be clear, all of these documents were due to be produced on May 14, 2018, which was already two weeks after the original deadline. We are under no obligation to consent to a delayed rolling production, but if any of these documents were reviewed and ready to produce, they should have been produced already. Moreover, key words are used to identify potentially relevant documents – not to reduce the number of potentially relevant documents. If there are 5,000 potentially relevant documents, then they should be produced immediately.  Please provide a date certain by which all documents responsive to our requests will be produced

With respect to our Rule 11 letter, please explain how the "preliminary construction activities performed by the parties negat[ed] most of the arguments contained in the letter." We do not believe there is any basis for that statement whatsoever. Further, the amended infringement contentions do not solve any of the problems with Plaintiff's infringement case. Whether or not the letter conforms to the formal requirements of the rule, we have identified, with specificity, how Plaintiff <u>has no infringement case.</u> If Plaintiff is unwilling to even attempt to defend its positions after promising at least twice (one occurrence of which was in writing) that it would provide a response, it should drop this case immediately to limit further expenditure of fees on its frivolous action.

Finally, we are available on Tuesday at 1:00 pm for a call to discuss the draft scheduling order. If you are available at that time, we can discuss the issues above also. A conflict arose on our end for the Wednesday time.

Sincerely,
John Pennington

JOHN P. PENNINGTON | **Attorney at Law**